No. 22-8079

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

Leisl Carpenter,
Plaintiff-Appellant,

v.

Thomas Vilsack, United States Department of Agriculture Secretary, *et al.*,
Defendants-Appellees.

---

On Appeal from the United States District Court for the District of Wyoming
No. 21-cv-00103-NDF, The Honorable Nancy D. Freudenthal

---

## OPENING BRIEF OF PLAINTIFF-APPELLANT
## LEISL CARPENTER

---

Oral Argument Requested

---

William E. Trachman
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
E-mail: wtrachman@mslegal.org

Braden Boucek
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, Georgia 30075
Telephone: (770) 977-2131
E-mail: bboucek@southeasternlegal.org
*Attorneys for Plaintiff-Appellant*

## DISCLOSURE STATEMENT

The undersigned attorneys for Plaintiff-Appellant, Leisl M. Carpenter, certify that Ms. Carpenter is an individual. She is not a member of any publicly traded company or its parent corporation.

Respectfully submitted this 31st day of January 2023.

*/s/ William E. Trachman*
William E. Trachman
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
wtrachman@mslegal.org

Braden Boucek
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, Georgia 30075
Telephone: (770) 977-2131
E-mail: bboucek@southeasternlegal.org
*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ................................................................. i

TABLE OF CONTENTS .......................................................................... ii

TABLE OF AUTHORITIES ................................................................... iv

Statement of Related Cases .................................................................. ix

I.    Jurisdictional Statements ............................................................. 4

    a.    The District Court Possessed Subject Matter
        Jurisdiction Over the Dispute. ........................................... 4

    b.    This Court Possesses Appellate Jurisdiction Over the
        Dispute. .............................................................................. 4

    c.    Appellant Timely Appealed ............................................... 5

    d.    The District Court's Order Was Final and Disposed
        of the Entire Case. ............................................................. 5

II.   Statement of the Issues Presented for Review ............................. 5

III.  Statement of the Case ................................................................. 6

IV.   Statement of the Argument .......................................................... 8

V.    Argument ................................................................................... 11

    a.    Appellant's Constitutional Arguments are Not Moot. ....... 11

        i.    Standard of Review ................................................. 11

        ii.   The Court is Able to Provide at Least Some
            Relief to Address Appellant's Injuries. .................... 13

        iii.  There is No Such Thing as a De Minimis
            Injury Under the Equal Protection Clause. .............. 21

        iv.   Appellant's Residency in Wyoming Does Not
            Defeat Her Constitutional Claim. ........................... 23

v.      The Cases Relied Upon by Appellees Before
the District Court Did Not Arise in the Context
of a Pre-Existing Equal Protection Violation ..........          25

vi.     The Practical Questions Surrounding Leveling
the Playing Field do not go to the Question of
Mootness. ...................................................................          30

vii.    Appellant Adequately Prayed for Relief
Beyond the Invalidation of Section 1005. ...............          33

VI.    Conclusion ......................................................................          35

Oral Argument Statement ........................................................          36

CERTIFICATE OF COMPLIANCE.......................................          37

CERTIFICATE OF ELECTRONIC FILING..........................          38

CERTIFICATE OF SERVICE .................................................          39

ATTACHMENT 1: District Court Order Dismissing Case,
Filed on October 7, 2022 (10/07/2022) ...................................          40

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    **<u>Page</u>**

*Adarand Constructors, Inc. v. Pena*,
   515 U.S. 200 (1995) .............................................................    11

*Adarand Constructors, Inc. v. Slater*,
   528 U.S. 216 (2000) .............................................................    12

*American Charities for Reasonable Fundraising*
*Regulation, Inc. v. O'Bannon*,
   909 F.3d 329 (10th Cir. 2018) ..............................................    27

*American Freedom Defense Initiative v. Washington Metropolitan Area Transit*
   *Authority, WMATA*,
   901 F.3d 356 (D.C. Cir. 2018) .............................................    29

*American Wild Horse Preservation Campaign v. Jewell*,
   No: 14–CV–0152–NDF, 2015 WL 11070090 (D. Wyo., Mar. 3, 2015)    14

*Ayala v. Armstrong*,
   No. 1:16-cv-00501-BLW, 2017 WL 3659161 (D. Idaho, 2017).........    18

*Barr v. Am. Ass'n of Political Consultants*,
   140 S. Ct. 2335 (2020) ........................................................    16

*Berkley v. U.S.*,
   287 F.3d 1076 (Fed. Cir. 2002)............................................    21

*Billings v. Madison Metropolitan School Dist.*,
   259 F.3d 807 (7th Cir. 2001)................................................    21

*BioDiversity Conservation Alliance v. Bureau of Land Management*,
   608 F.3d 709 (10th Cir. 2010)..............................................    32

*Bolling v. Sharpe*,
   347 U.S. 497 (1954) ............................................................    4

*Brazell-Hill v. Parsons*,
   No. 2:17-cv-912, 2020 WL 4748545 (S.D. Oh., 2020) ......................    22

*Califano v. Westcott*,
   443 U.S. 76 (1979) ..............................................................    31

*Camfield v. City of Okla. City*,
    248 F.3d 1214 (10th Cir. 2001).............................................................. 27

*Chafin v. Chafin*,
    568 U.S. 165 (2013) .............................................................. 7, 32

*Clark v. Cohen*,
    794 F.2d 79 (3d Cir. 1986).............................................................. 19

*Copar Pumice Co., Inc. v. Tidwell*,
    603 F.3d 780 (10th Cir. 2010).............................................................. 13

*Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*,
    404 U.S. 415 (1972) .............................................................. 26

*Faust v. Vilsack*,
    519 F. Supp. 3d 470 (D. Wisc. 2021) ............................................ 1, 2, 6, 15, 31

*Fennell v. Marion Independent School Dist.*,
    963 F. Supp. 2d 623 (W.D. Tex. 2014).............................................................. 22

*Finstuen v. Crutcher*,
    496 F.3d 1139 (10th Cir. 2007).............................................................. 13

*Flint v. Dennison*,
    488 F.3d 816 (9th Cir. 2007).............................................................. 19

*Forest Guardians v. Johanns*,
    450 F.3d 455 (9th Cir. 2006).............................................................. 13

*Golden State Transit Corp. v. City of Los Angeles*,
    475 U.S. 608 (U.S. Cal., 1986) .............................................................. 13

*Heckler v. Matthews*,
    465 U.S. 728 (1984).............................................................. 16, 17, 20

*Herrera v. City of Espanola*,
    32 F.4th 980 (10th Cir. 2022) .............................................................. 11

*Holman v. Vilsack*,
    582 F.Supp.3d 568 (W.D. Tenn. 2022).............................................................. 20

*Holman v. Vilsack*,
No. 21-1085-STA-jay, 2021 WL 2877915 (W.D. Tenn., 2021) .........   6, 15, 31

*Hunter v. United States Department of Education*,
No. 6:21-cv-00474-AA, 2023 WL 172199 (D. Ore., Jan. 12, 2023)...   18

*In re Circuit City Stores, Inc.*,
No. 19-03091-KRH, 2022 WL 17722849, (E.D. Va. Bankr.,
Dec. 15, 2022) ..................................................................................   18

*Jicarilla Apache Nation v. Rio Arriba County*,
440 F.3d 1202 (10th Cir. 2006)............................................................   9

*Jordan v. Sosa*,
654 F.3d 1012 (10th Cir. 2012)............................................................   20

*Kansas Judicial Review v. Stout*,
562 F.3d 1240 (10th Cir. 2009)............................................................   28

*Kaszuk v. Bakery and Confectionery Union and Indus. Intern. Pension Fund*,
791 F.2d 548 (7th Cir. 1986)..................................................................   35

*Kent v. Vilsack*,
No. 3:21-cv-540-NJR, 2021 WL 6139523 (S.D. Ill., 2021) ................   7

*Knutzen v. Eben Ezer Lutheran Housing Center*,
815 F.2d 1343 (10th Cir. 1987)............................................................   25

*Kremens v. Bartley*,
431 U.S. 119 (1977)............................................................................   26

*Lewis v. Cont'l Bank Corp.*,
494 U.S. 472 (1990)............................................................................   25

*Lewis v. Woods*,
848 F.2d 649 (5th Cir. 1988)................................................................   21

*Lucas v. Turn Key Health Clinics, LLC*,
--- F.4th ---, 2023 WL 327846 (10th Cir., 2023) ................................   11

*Lutheran Church-Missouri Synod v. F.C.C.*,
141 F.3d 344 (D.C. Cir. 1998)............................................................   22

*Martinson v. Menifee*,
 No. 02 Civ. 9977(LTS)(HBP), 2007 WL 2106516
 (S.D.N.Y., Jul 18, 2007) ........................................................................ 22

*Milliken v. Bradley (Milliken II)*,
 433 U.S. 267 (1977) ............................................................................... 5, 19, 21

*Monterey Mechanical Co. v. Wilson*,
 125 F.3d 702 (9th Cir. 1997) ................................................................. 21

*Moritz v. C. I. R.*,
 469 F.2d 466 (10th Cir. 1972) ............................................................... 30

*Northeastern Florida Chapter of Associated General Contractors of America v.
 City of Jacksonville, Fla.*,
 508 U.S. 656 (1993) ............................................................................... 23

*Northland Baptist Church of St. Paul, Minnesota v. Walz*,
 530 F. Supp. 3d 790 (D. Minn. 2021) ................................................... 20

*Prison Legal News v. Federal Bureau of Prisons*,
 944 F.3d 868 (10th Cir. 2019) ............................................................... 12

*Regents of University of California v. Bakke*,
 438 U.S. 265 (1978) ............................................................................... 10

*Reynolds v. Slaughter*,
 541 F.2d 254 (10th Cir. 1976) ............................................................... 34

*Reznik v. inContact, Inc.*,
 18 F.4th 1257 (10th Cir. 2021) .............................................................. 34

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
 601 F.3d 1096 (10th Cir. 2010) ............................................................. 12, 20

*Safe Streets Alliance v. Hickenlooper*,
 859 F.3d 865 (10th Cir. 2017) ............................................................... 15

*Schutz v. Thorne*,
 415 F.3d 1128 (10th Cir. 2005) ............................................................. 24

*Serna v. Portales Municipal Schools*,
 499 F.2d 1147 (10th Cir. 1974) ............................................................. 9

vii

*State Employees Bargaining Agent Coalition v. Rowland*,
    494 F.3d 71 (2d Cir. 2007) ....................................................................... 19

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
    402 U.S. 1 (1971) ...................................................................................... 16

*Thomas S. by Brooks v. Flaherty*,
    902 F.2d 250 (4th Cir. 1990)................................................................... 17

*Thomas v. Bartow*,
    No. 10-C-557, 2010 WL 11619701 (E.D. Wisc., 2010)...................... 22

*Turner v. A. Passmore & Sons Inc.*,
    341 Fed. Appx. 363 (10th Cir. 2009)..................................................... 34

*U.S. v. Hahn*,
    359 F.3d 1315 (10th Cir. 2004)............................................................... 32

*U.S. v. Paradise*,
    480 U.S. 149 (1987) .................................................................................. 17

*Vitolo v. Guzman*,
    999 F.3d 353 (6th Cir. 2021).................................................... 9, 10, 12, 29

*West Virginia v. Environmental Protection Agency*,
    142 S. Ct. 2587 (2022) ............................................................................. 12

*Wiley v. National Collegiate Athletic Ass'n*,
    612 F.2d 473 (10th Cir. 1979)................................................................. 26

*Wynn v. Vilsack*,
    545 F. Supp. 3d 1271 (M.D. Fla. 2021) .................................. 6, 14, 15, 29, 30 31

*Xiong v. Knight Transporation, Inc.*,
    77 F. Supp. 3d 1016 (D. Colo. 2014)..................................................... 34

## **Statutes**

5 U.S.C. § 702 .............................................................................................. 4

28 U.S.C. § 1291 .......................................................................................... 4

28 U.S.C. § 1331 .......................................................................................... 4

**<u>Rules</u>**

Fed. R. App P. 4(a)(1)(B)(iii) .................................................................... 5

Fed. R. App. P. 27(d) ................................................................................ 37

Fed. R. App. P. 32(a)(5).......................................................................... 37

Fed. R. App. P. 32(a)(6).......................................................................... 37

Fed. R. Civ. P. 54(c)............................................................................... 34

## Statement of Related Cases

There are no prior or related appeals. As noted in the Docketing Statement, there is a similar issue pending before the District Court for the District of Colorado, in the case of *Rogers v. Vilsack*, 1:21-cv-01779-DDD-SKC.

President Biden signed the American Rescue Plan Act (ARPA) on March 11, 2021. Section 1005 of that law provided COVID-19 debt relief of up to 120% of debt to farmers and ranchers, based on their race. Appellees were responsible for implementing Section 1005 as officials of the United States Department of Agriculture (USDA). Appellant Leisl Carpenter (Appellant) was not eligible for COVID-19 debt relief under Section 1005, solely because of her Danish, Norwegian, and Swedish ancestry. [ER009]

Subsequently, several lawsuits were filed against Section 1005, including one in the Eastern District of Wisconsin, filed on April 29, 2021. *See Faust v. Vilsack*, 1:21-cv-00548-WCG (D. Wisc., Apr. 29, 2021). On June 10, 2021, Judge Griesbach of that court issued the first order halting the implementation of Section 1005. *See Faust v. Vilsack*, 519 F. Supp. 3d 470, 475 (D. Wisc. 2021) ("Here, Defendants lack a compelling interest for the racial classifications."); *see id.* at 478 ("Defendants are enjoined from forgiving any loans pursuant to Section 1005 until the Court rules on Plaintiffs' motion for a preliminary injunction.").

By that time, however—June 10, 2021—Appellees had unfortunately already begun implementing Section 1005. They provided payments on at least four loans based exclusively on race, apparently accounting for nearly $1 million. *See* [ER257-58; Brasher, *Democrats add farm debt relief to climate funding as Senate passage nears* (Aug. 6, 2022) ("USDA made nearly $ 1 million in forgiveness payments

1

before the program was shut down."). They had also at least offered to provide forgiveness on a fifth loan. Whether other implementation occurred before June 10, 2021, remains unknown. [ER253 ¶¶28-30 (detailing offers and payments made as of June 8, 2021); ER252 ¶ 23 (detailing, as of June 8, 2021, how payment reversals could proceed at a rate of 700-900 per week).]; *Faust*, 519 F. Supp. 3d at 477 ("Defendants sent offer letters to eligible farmers and ranchers as early as May 24, 2021. On June 9, 2021, Defendants sent offer letters to 8,580 farmers…"). To this day, there has never been a full account of Appellees' implementation of Section 1005. One thing is clear, however: Appellant suffered genuine discrimination on account of her race, by her own government.

To be clear, the District Court lacked evidence regarding the full extent of the implementation of Section 1005, when it issued its order of dismissal. It simply had the arguments of counsel in a footnote in its Reply Brief. [ER287 ("Defendants deny making any such payments or providing debt relief.")] Similarly, the Court should not overlook the fact that Appellees have never claimed that their implementation of Section 1005 has been unwound, or that Appellant's injury has been remedied. [ER224 (stating only that Section 1005 was never "fully" implemented).] Indeed, Appellees' view appears to be that regardless of how many payments were made, and how many dollars went to borrowers based solely on race, Appellant's challenge is moot solely because Congress repealed the statute authorizing Appellees' conduct.

[ER287 (asserting that no continuing injury is present regarding of "any other steps Defendants took toward implementing § 1005"). That cannot be.

This Court—and the District Court, on remand—may still grant relief and restore constitutional balance. [ER279 (Order in *Miller v. Vilsack*, No. 4:21-cv-0595-O, *20 (N.D. Tex., July 1, 2021)) ("Plaintiffs are suffering a continuing and irreparable injury based on the direct effects of the race- and ethnicity-based application process.").] [1] Courts have broad equitable powers, once having determined that an equal protection violation has occurred, to remedy unconstitutional conduct. Such relief constitutes prospective relief, and does not require a waiver of sovereign immunity, or even an amendment of the complaint below, because Appellant's prayer for relief was never limited to merely asking to hold Section 1005 unconstitutional. Because Appellees failed to meet their burden of establishing mootness, this Court should reverse, and remand to the District Court for additional proceedings.

## I.    Jurisdictional Statements

### a.    The District Court Possessed Subject Matter Jurisdiction Over the Dispute.

The District Court possessed subject matter jurisdiction because Appellant brought her complaint for prospective relief against two Executive Branch agency

---

[1] Note that this decision is not available in Westlaw, and was included as an attachment to Appellant's brief opposing dismissal before the District Court.

3

officials, for violations of the equal protection principles embraced by the Fifth Amendment to the U.S. Constitution. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 5 U.S.C. § 702 ("An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States …"); *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954) ("In view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government."). To be clear, neither the Appellees nor the District Court have ever questioned subject matter jurisdiction over Appellant's claims.

### b.  This Court Possesses Appellate Jurisdiction Over the Dispute.

Under 28 U.S.C. § 1291, this Court has jurisdiction over all final decisions from the U.S. District Court for the District of Wyoming.

### c.  Appellant Timely Appealed.

The District Court issued its Order dismissing Appellant's complaint on October 7, 2022. Because Executive Branch agency officials are parties to the case, the deadline to timely appeal was 60 days from the date of that order, or December

6, 2022. *See* F.R.A.P. 4(a)(1)(B)(iii). Appellant timely filed her Notice of Appeal on November 28, 2022.

> **d.    The District Court's Order Was Final and Disposed of the Entire Case.**

The District Court concluded that it lacked jurisdiction over Appellant's complaint, and dismissed the case in its entirety. [ER296 ("Because the Court lacks jurisdiction, this case is DISMISSED.")] This appeal is thus from a final order that disposes of all of the Appellant's claims.

## II.    Statement of the Issues Presented for Review.

1.    May state actor defendants engage in allegedly unconstitutional conduct, and then assert mootness in response to Appellant's constitutional arguments, when the statute authorizing such conduct is subsequently repealed?

2.    If Appellees made payments only to New Mexico farmers and ranchers, does that immunize their unconstitutional conduct, because Appellant lives in Wyoming?

## III.    Statement of the Case

There is no legal doctrine establishing that courts cannot correct past mistakes. Indeed, courts possess significant power to address *bona fide* equal protection violations. *See, e.g.*, *Milliken v. Bradley*, 433 U.S. 267, 280 (1977) ("[D]ecree[s] … must be designed as nearly as possible to restore the victims of discriminatory

5

conduct to the position they would have occupied in the absence of such conduct.")
(internal quotation marks omitted). In short, when the government gives some
people the benefit of a program based on their race and not others, an injury remains
to be redressed even after the government abandons its discriminatory policies.

Here, it is undisputed that Appellees successfully tested and partially
implemented a statute that multiple courts reviewed and found was likely
unconstitutional. *See Faust*, 519 F. Supp. 3d at 477 ("Plaintiffs are excluded from
the program based on their race and are thus experiencing discrimination at the hands
of their government."); *Holman v. Vilsack*, No. 21-1085-STA-jay, 2021 WL
2877915, *1 (W.D. Tenn., Jul 8, 2021) ("Plaintiff will be irreparably harmed if he is
denied his constitutional right to equal protection."); *Wynn v. Vilsack*, 545 F. Supp.
3d 1271 (M.D. Fla. 2021) ("To allow the perpetuation of discrimination in such a
manner would undermine the Supreme Court's ultimate goal of eliminating entirely
from governmental decisionmaking such irrelevant factors as a human being's
race.") (internal quotation marks omitted); [ER277 (Order in *Miller*, No. 4:21-cv-
0595-O, *18 ("[T]he loan forgiveness program is simultaneously overinclusive and
underinclusive: overinclusive in that the program provides debt relief to individuals
who may never have experienced discrimination or pandemic-related hardship, and
underinclusive in that it fails to provide any relief to those who have suffered such
discrimination but do not hold a qualifying FSA loan.")). Even the District Court for

the District of Wyoming, in dismissing this case, bluntly described Section 1005's racially discriminatory purpose and effect. [ER293 ("Suffice it to say that Section 1005 provided debt relief to farmers and ranchers based on their race.").][2]

But even now that Congress has impliedly recognized its unconstitutional acts, Appellees have never even attempted to undo their partial implementation of Section 1005.[3] Appellant's injuries—which are ongoing today—thus prevent this case from being moot. "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted). By contrast, "[a]s long as the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is not moot." *Id.* at 172 (emphasis added).

---

[2] One court even declined to grant a stay in a similar suit regarding the constitutionality of Section 1005, despite the fact that the plaintiff in that case was an unnamed class member in another action—*Miller v. Vilsack*—because that court impliedly rejected the idea that there could ever be a conflict in the way that Article III judges viewed the constitutionality of Section 1005. *See Kent v. Vilsack*, No. 3:21-cv-540-NJR, 2021 WL 6139523, *4 (S.D. Ill., Nov., 10, 2021) ("This argument is not persuasive because four courts have granted preliminary relief against Section 1005. … These judgments are not conflicting; instead, they appear to be consistent with one another.").

[3] On the merits of Appellant's equal protection claim, Appellees have even fewer arguments that they met the rigorous strict scrutiny standard in providing at least four payments to farmers and ranchers based on race, in addition to any other conduct undertaken pursuant to Section 1005. There is hardly any colorable argument that there is a compelling government interest pursued by a narrowly tailored means in partially implementing a statute.

## IV.    Statement of the Argument

First, the District Court erred in dismissing Appellant's complaint, and holding that Appellees have met their burden to establish mootness, and are thus entitled dismissal, even if they previously violated the Constitution in a manner that continues to treat Appellant unequally. [ER296 ("[W]hile Plaintiffs [sic] personal interest in the benefits of Section 1005 existed at the commencement of her case, that interest doesn't continue now."]; [ER296 ("Also, any 'claw back' of past benefits to others in New Mexico in no way advances or affects the specific personal interest Plaintiff pled in this case.")]

To be clear, Appellant's complaint pleaded more than merely that Section 1005 should be declared invalid. And more fundamentally, Appellant's "personal interest" is in being treated equally under the laws of the nation as required by the Fifth Amendment, regardless of which underlying statute originally authorized Appellees' conduct, or whether that statute has since been repealed. There is no dispute that at least some payments were made under Section 1005; while the District Court never had a full accounting of what payments were made, because Appellees have never provided one, it hardly matters. Appellant must first be permitted to establish a constitutional violation, because the nature of the violation determines the scope of relief. While it is not Appellant's job to craft every possible potential remedy for Appellees' constitutional violations, a well-established path

exists for courts to craft remedies tailored to address the equal protection violation at hand, and Appellees, as the government, will have the first opportunity to say what they propose to do to redress it. Here, Appellees have never had to address possible remedies at all, because the District Court held that the suit was moot merely on the basis that Appellees represented they would stop discriminating in the future. But the fact that Appellees can point to a repealed statute in response to constitutional violations is simply not good enough.

Put simply, as long as Section 1005 remains partially implemented, Appellant is denied the equal protection of the laws. *See, e.g.*, *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1209 (10th Cir. 2006) (court had jurisdiction to address equal protection injuries not addressed by change in statute, including claim for injunctive relief); *Serna v. Portales Municipal Schools*, 499 F.2d 1147, 1154 (10th Cir. 1974) (Holding that a remedial plan for educational discrimination was inadequate, and stating: "Under these circumstances the trial court had a duty to fashion a program which would provide adequate relief for Spanish surnamed children."); *accord Vitolo v. Guzman*, 999 F.3d 353, 359 (6th Cir. 2021) (enjoining administration of a COVID-19 relief statute even after noting that "[t]he statute now requires the Small Business Administration to begin processing grant requests in the order they were received, without regard to the applicants' race or sex.").

9

To hold otherwise would, in essence, bless racial discrimination, and chart a clear path for Executive Branch officials to violate the Constitution, and simply argue for mootness when caught. Such a framework is inconsistent with the Fifth Amendment. *See Regents of University of California v. Bakke*, 438 U.S. 265, 289-90 (1978) ("The guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color. If both are not accorded the same protection, then it is not equal."); *see also Vitolo*, 999 F.3d at 366 ("It has been twenty-five years since the Supreme Court struck down the race-conscious policies in *Adarand*. And it has been nearly twenty years since the Supreme Court struck down the racial preferences in *Gratz*. As today's case shows once again, the way to stop discrimination on the basis of race is to stop discriminating on the basis of race.").

Second, the District Court erred in determining that, in any event, Appellant's residence in Wyoming defeats her equal protection claim, since some or all of the payments issued under Section 1005 went to farmers or ranchers in New Mexico. [ER296 ("Appellant did not "show any actual injury, in 2021 or now, from the actions taken by Defendants that solely affected loan borrowers in New Mexico."). Setting aside the lack of a full accounting of how Section 1005 was implemented—given that no discovery has taken place—it hardly makes sense to deprive Appellant of her constitutional rights based on the unilateral decisions of Appellees in selecting

the state residencies of recipients of Section 1005 payments. This argument, advanced merely in a footnote in the Appellees' reply brief on its motion to dismiss, [ER288, n.5], is also contrary to settled Supreme Court caselaw. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 221 (1995) (The equal protection injury is not simply the unfair *outcome* that may or may not result, but "that a discriminatory classification prevents the plaintiff from competing on an equal footing.").

## V.    Argument

### a.    Appellant's Constitutional Arguments are not Moot.

Appellees' position would incentivize Executive Branch agency officials to commit as much unconstitutional conduct as possible before being enjoined by courts, and then argue that the mootness doctrine requires all pending lawsuits to be dismissed once the statute is repealed. For several reasons, the Court should reject that position.

### i.    Standard of Review.

The Court reviews a District Court's grant of a motion to dismiss *de novo*. *See Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022). The Court also "accept[s] a complaint's well-pleaded allegations as true, viewing all reasonable inferences in favor of the nonmoving party, and liberally construe[s] the pleadings." *Lucas v. Turn Key Health Clinics, LLC*, --- F.4th ---, 2023 WL 327846, *3 (10th Cir., Jan. 20, 2023).

11

In the context of mootness, "[t]he party arguing in favor of mootness due to its discontinued conduct bears the burden to show the case is moot." *Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868, 878 (10th Cir. 2019); *see also Vitolo*, 999 F.3d at 359 ("Mootness is a high hurdle. The government must show that a court could order no effectual relief whatever for the plaintiffs' injury.") (internal quotation marks omitted). The burden on the government is even heavier when it relies on its own conduct. *See West Virginia v. Environmental Protection Agency*, 142 S. Ct. 2587, 2607 (2022) ("That burden is 'heavy' where, as here, the only conceivable basis for a finding of mootness in the case is the respondent's voluntary conduct.") (internal brackets and quotation marks omitted); *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 224 (2000) ("It is no small matter to deprive a litigant of the rewards of its efforts … Such action on grounds of mootness would be justified only if it were *absolutely clear* that the litigant no longer had any need of the judicial protection that it sought.") (emphasis added).

Appellees did not satisfy their burden in the District Court, and this Court should thus reverse and remand for further proceedings.

### ii.    The Court is Able to Provide at Least Some Relief to Address Appellant's Injuries.

Congress has repealed Section 1005. Appellees will thus assert that that repeal alone is sufficient to make the constitutional challenge to their previous conduct moot. That has never been the rule, however. *See Rio Grande Silvery Minnow v.*

12

*Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010) ("Voluntary actions may, nevertheless, moot litigation if two conditions are satisfied: (1) there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events *have completely and irrevocably eradicated the effects of the alleged violation.*") (emphasis added) (internal quotation marks omitted)[4]; *Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780, 793 (10th Cir. 2010) ("Because determining these issues will affect the parties' relationship, Copar's challenge to this requirement is not moot."); *Finstuen v. Crutcher*, 496 F.3d 1139, 1150 (10th Cir. 2007) (challenge to same-sex adoption law was not moot because no revised birth certificate had been issued, even though Oklahoma state agency announced that its law did not apply to Appellants); *Prison Legal News*, 944 F.3d at 881 ("A defendant's corrective actions that do not fully comport with the relief sought are also insufficient."); *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) ("That burden is "heavy"; a case is not moot where *any* effective relief may be granted.") (original emphasis).

Moreover, the "real-world" effect of an order need not be earth-shaking. *See Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 613 n.3 (rejecting mootness argument based on intervening events when a party merely "would be more likely to have an operating franchise now," but for the government's

---

[4] In *Rio Grande*, the Court held that the dispute was moot. But it distinguished its holding from an other case by noting that "[t]he absence of an on-going ESA violation makes this case distinguishable…". *Id.* at 1115.

unconstitutional conduct.); *American Wild Horse Preservation Campaign v. Jewell*, No: 14–CV–0152–NDF, 2015 WL 11070090, *5 (D. Wyo., Mar. 3, 2015) (reversed on other grounds) ("Because of this, and assuming Petitioners prevail on the merits, a determination can be issued with real-world effect, whether it is an order to return horses or to cure a procedural irregularity. Therefore, Petitioners' claims are not moot.").

Appellees' payments to certain farmers and ranchers based on their race, without more, injured Appellant. They continue to injure Appellant to this day, so long as there are similarly situated farmers and ranchers who have been treated differently based on their race. [*See, e.g.*, ER279 (Miller, *20) ("Plaintiffs are suffering a continuing and irreparable injury based on the direct effects of the race- and ethnicity-based application process.").]; *Wynn*, 545 F. Supp. 3d at 1290 ("Thus, that injury—the unequal treatment based solely on race—and not merely Plaintiff's inability to benefit from Section 1005 is the harm Plaintiff will suffer in the absence of injunctive relief.").

Indeed, several courts enjoined Section 1005 because they held that even a partial implementation of Section 1005 would constitute an inherent deprivation of constitutional rights. *Wynn v. Vilsack*, 545 F. Supp. 3d at 1290 ("The harm he purports to suffer is the denial of his right to equal protection–his exclusion, solely on account of his race, from eligibility for an extraordinary government benefit

under Section 1005. This constitutional harm is a real harm."); *Holman*, 2021 WL 2877915, *12 ("Therefore, even if Plaintiff obtained financial relief after a trial on the merits, he would have suffered irreparable harm merely by the deprivation of his constitutional rights during the pendency of this matter."); *Faust*, 519 F. Supp. 3d at 476-77 ("Defendants make the extraordinary argument that racial discrimination inflicts no harm at all. [But] Plaintiffs are excluded from the program based on their race and are thus experiencing discrimination at the hands of their government."). That Section 1005—which authorized the unequal treatment Appellees engaged in—has been repealed does not cure Appellant's injury in any shape.

While unwinding the implementation of Section 1005 may be challenging, the recipients of Section 1005 relief have no right to keep the ill-gotten gains of their race-based loan forgiveness. *See Wynn*, 545 F. Supp. 3d at 1293 ("Likewise, if Section 1005 is discriminatory, SDFRs have no legitimate right to the proceeds of a facially unconstitutional legislative enactment."); [ER281 (Miller, at *22) ("[T]he inherent harm from an unlawful government-run racially discriminatory program is detrimental to the public interest.").]; *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 901 (10th Cir. 2017) ("[T]he scope of a federal court's equitable powers to remedy wrongs is broad, for breadth and flexibility are inherent in equitable remedies.") (internal quotation marks, brackets, and ellipses omitted).

15

While this Court need not figure out at this junction *how* to remedy the ongoing violation of Appellant's right, courts certainly are institutionally capable of addressing an equal protection violation. *See Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2354 (2020) ("When the constitutional violation is unequal treatment, as it is here, a court theoretically can cure that unequal treatment either by extending the benefits or burdens to the exempted class, or by nullifying the benefits or burdens for all.") (citing *Heckler v. Mathews*, 465 U.S. 728, 740 (1984)). To be sure, sometimes these cases can raise "knotty questions" about whether to "extend benefits or burdens," *id.,* but ultimately the onus should be on the Appellees to "come forward with a plan that promises realistically to work" *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 12-13 (1971), and that courts can review for constitutional compliance.

Courts have long held that it is plainly permissible to order government officials to undo the constitutional damage that they have done in the past. *See, e.g.*, *Swann*, 402 U.S. at 15 ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."); *see id.* at 16-17 ("[A] school desegregation case does not differ fundamentally from other cases involving the framing of equitable remedies to repair the denial of a constitutional right. The task

is to correct, by a balancing of the individual and collective interests, the condition that offends the Constitution.").

What that remedy looks like is, at this stage, a premature question. But for this Court's purposes, the critical point is that there is no *per se* bar to courts correcting ongoing injuries merely because the injury had its genesis in the past. *See Heckler v. Mathews*, 465 U.S. 728, 740 (1984) ("[T]he right to equal treatment guaranteed by the Constitution is not co-extensive with any substantive rights to the benefits denied the party discriminated against. Rather, as we have repeatedly emphasized, discrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group.") (internal citations omitted); *U.S. v. Paradise*, 480 U.S. 149, 191 (1987) (Stevens, J., concurring) ("In this case, the record discloses an egregious violation of the Equal Protection Clause. It follows, therefore, that the District Court had broad and flexible authority to remedy the wrongs resulting from this violation.").

Indeed, in numerous contexts, courts have held that government actors owe a duty to correct the wrongs of the past, if an injury lingers. *See Thomas S. by Brooks v. Flaherty*, 902 F.2d 250, 255 (4th Cir. 1990) ("If the present conditions under which class members live do not meet constitutional requirements as explained in

17

*Youngberg*, or if a patient is presently suffering from unconstitutional conditions imposed while in the hospital, the decree provides appropriate prospective relief."); *see id.* at 255 ("The decree addresses the present needs of the patients."); *Ayala v. Armstrong*, No. 1:16-cv-00501-BLW, 2017 WL 3659161, *2 (D. Idaho, Aug. 24, 2017) ("Here, the State of Idaho's past unconstitutional acts have led to 'continuing conditions of inequality' for same-sex couples who desired to marry but were unconstitutionally denied that right by the State of Idaho."); *Hunter v. United States Department of Education*, No. 6:21-cv-00474-AA, 2023 WL 172199, *7 (D. Ore., Jan. 12, 2023) (students who had graduated from college still had standing under Title IX because "the Court can redress the stigmatic, emotional, and procedural injuries that Plaintiffs are experiencing *now*.") (emphasis added); *In re Circuit City Stores, Inc.*, No. 19-03091-KRH, 2022 WL 17722849, *3 (E.D. Va. Bankr., Dec. 15, 2022) ("[T]he Court rejects the Defendants' argument that correcting the assessments on a going-forward basis is sufficient in and of itself to provide adequate relief."); *C.M. ex rel. Marshall v. Bentley*, 13 F. Supp. 3d 1188, 1203 (M.D. Ala. 2014) (injury was redressable by court if "other students are no longer allowed to enjoy the benefits that Plaintiffs are being denied.").

The fact that the Appellees are Executive Branch agency officials is equally immaterial. A court may freely impose duties on public officials to prospectively comply with the Constitution, even if that means correcting past mistakes. *See*

*Milliken v. Bradley*, 433 U.S. at 290 ("That the programs are also 'compensatory' in nature does not change the fact that they are part of a plan that operates prospectively to bring about the delayed benefits of a unitary school system. We therefore hold that such prospective relief is not barred by the Eleventh Amendment."); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) ("Here, the injunctions Flint seeks as related to past violations serve to expunge from University records the 2003 censure and 2004 denial of his Senate seat, which actions may cause Flint harm."); *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007) ("We are specifically required by *Ex parte Young* to examine whether there exists an ongoing violation of federal law. … Thus, it is relevant—in considering the existence *vel non* of an ongoing violation—to ask whether the claimed remedy is still available.") (internal citation omitted); *Clark v. Cohen*, 794 F.2d 79, 84 (3d Cir. 1986) ("Given the square holding in *Milliken II* that a federal court may order state officials to fund from the state treasury remedial measures found necessary to undo the harmful effects of past constitutional violations, we hold that the Commonwealth defendants' eleventh amendment argument is meritless.").

By contrast, this Court should reject the idea that merely forgoing inflicting new injuries suffices for mootness. And because this Court may yet remedy Appellant's ongoing injury—at a minimum, by ordering Appellees to attempt to claw back unconstitutional payments—Appellees have not "completely and

irrevocably eradicated the effects of the alleged violation," and cannot establish that this matter is moot. *Heckler*, 465 U.S. at 740 ("[W]hen the right invoked is that of equal treatment, the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class."); *see Rio Grande Silvery Minnow*, 601 F.3d at 1110 ("The crucial question is whether granting a present determination of the issues offered will have some effect in the real world.") (internal quotation marks omitted); *see also Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2012) (plaintiffs may seek declaratory relief where, if granted, it "would affect the behavior of the particular parties listed in his complaint."); *Northland Baptist Church of St. Paul, Minnesota v. Walz*, 530 F. Supp. 3d 790, 802 (D. Minn. 2021) ("If this Court were to rule that the EOs must treat Faith-Based Plaintiffs in the same manner as 'Critical' businesses are treated, that ruling would redress the alleged harm that the Faith-Based Plaintiffs experience.").

### iii.    There is No Such Thing as a *De Minimis* Injury Under the Equal Protection Clause.

Admittedly, another court evaluating Section 1005 referred to the four known payments made by Appellees as merely a *de minimis* injury. *See Holman v. Vilsack*, 582 F. Supp. 3d 568, 581 (W.D. Tenn. 2022) ("[T]he approval was limited to four recipients as part of a processing test. Any injury suffered by Plaintiff as the result of this limited approval is *de minimis*.") (internal brackets omitted). Of course,

Appellees have never established as an evidentiary matter that only four payments were made under Section 1005. Nor did either Appellees or the District Court rely on this argument below. However, even assuming that Appellees made only four payments authorized by Section 1005, Appellant would still properly allege a cognizable equal protection violation.

Court after court has held that there is no such thing as a *de minimis* exception to an injury caused by invidious racial discrimination. *See, e.g.*, *Monterey Mechanical Co. v. Wilson*, 125 F.3d 702, 712 (9th Cir. 1997) ("More important, we can find no authority, and appellees have cited none, for a *de minimis* exception to the Equal Protection Clause. … Race discrimination is never a 'trifle.'"); *Berkley v. U.S.*, 287 F.3d 1076, 1088 (Fed. Cir. 2002) (relying on *Monterey Mechanical*); *Billings v. Madison Metropolitan School Dist.*, 259 F.3d 807, 814 (7th Cir. 2001) ("The racial classification that occurred in Ms. Zabel's class was not the sort of total racial segregation at issue in *Brown* or in *Milliken*. It was also of short duration. Yet it did involve setting apart certain students for different treatment solely on account of their race. Although the effect on the student from this relatively minor and transitory discrimination might well have been minimal, especially when compared with the situations in more pervasive and enduring educational discrimination, our faithfulness to constitutional principles does not permit us to overlook it or to declare it a *de minimis* matter."); *Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988) ("A

21

violation of constitutional rights is never *de minimis*, a phrase meaning so small or trifling that the law takes no account of it."); *Fennell v. Marion Independent School Dist.*, 963 F. Supp. 2d 623, 635-36 (W.D. Tex. 2014) ("In other words, Plaintiffs have alleged that Kyana received unequal treatment—that she was criticized and embarrassed in front of her classmates—that she would not have received if she were not African–American. These allegations, if true, could support a finding that Davis violated Kyana's equal-protection rights.") (relying on cases cited above); *Brazell-Hill v. Parsons*, No. 2:17-cv-912, 2020 WL 4748545, *10 (S.D. Oh., Aug. 17, 2020) ("[D]ifferential treatment on the basis of race by school officials is a constitutional violation, and there is no exception for 'de minimus violations.'"); *accord Lutheran Church-Missouri Synod v. F.C.C.*, 141 F.3d 344, 351 (D.C. Cir. 1998) ("While there is a textual basis under Title VII for drawing such a line, the Equal Protection Clause would not seem to admit a *de minimis* exception."); *Martinson v. Menifee*, No. 02 Civ. 9977(LTS)(HBP), 2007 WL 2106516, *9 (S.D.N.Y., Jul 18, 2007) ("Unlike claims of retaliation, there is no *de minimis* qualification constraining a plaintiff's ability to sustain claims brought under the Equal Protection Clause."); *Thomas v. Bartow*, No. 10-C-557, 2010 WL 11619701, *1 (E.D. Wisc., Jul. 20, 2010) (denying a prisoner's claim that he was denied ice cream to due to his race on *Iqbal* grounds, yet still noting that "there is no such thing as a *de minimis* exception to the Equal Protection Clause…") (internal quotation marks omitted). Thus, even if the evidence

in this case revealed merely four payments under Section 1005, Appellant would still plead a cognizable violation of the equal protection clause.

### iv.     Appellant's Residency in Wyoming Does Not Defeat Her Constitutional Claim.

In a footnote in its reply brief before the District Court, Appellees advanced the argument that Appellant could never succeed on an equal protection challenge to the partial implementation of Section 1005, because all of the recipients of those payments were New Mexico farmers or ranchers. [E288, n.5] The District Court found this argument persuasive, noting in its order dismissing the complaint that "Plaintiff was never within that 'so-called' playing field for the simple reason that her property is in Wyoming." [ER296]

This is error. The injury that the Appellant pleads is the injury of being treated differently based on her race. Residents of New Mexico are not entitled to unequal treatment under the law; nor may Wyoming residents be deprived of their constitutional rights merely because the beneficiaries of such deprivations live in other states. To be clear, living in New Mexico was not one of the criteria of Section 1005; and put simply, Appellant could *never* have received payments under Section 1005, regardless of where she resided, solely due to her race. *See Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993) ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the

23

imposition of the barrier, not the ultimate inability to obtain the benefit."); *see also Schutz v. Thorne*, 415 F.3d 1128, 1134 (10th Cir. 2005) (referring to the "equal footing doctrine"); [ER295 ("Plaintiff took out a real estate loan from the Farm Service Agency (FSA), and she would be eligible for the Section 1005 forgiveness program, and future FSA loans, except for the fact that she is not a member of any of the racial groups that are eligible for loan forgiveness.").]

Of course, the District Court's factual finding was supported only by a footnote and a declaration filed on another issue in 2021, and not by any testimony purporting to recount the full scope of the implementation of Section 1005. Moreover, the fact that, after the complaint was filed, the Appellees unilaterally chose New Mexico farmers and ranchers as a test ground—not because of the text of Section 1005, but allegedly because it happened to have a lot of FSA borrowers and because the FSA staff there was well-qualified—does not immunize the government's conduct with respect to the other 49 states.[5]

---

[5] The Declaration of William Cobb, executed on June 8, 2021, described other reasons for the selection of the test recipients. [ER253, ¶ 28 ("The eligible accounts were selected based on the borrowers being sole proprietors rather than entities, and past interactions with FSA that reflected a willingness to be part of a pilot initiative.").] Surely the District Court did not mean to suggest that Appellant could never possess standing to bring her equal protection clause complaint unless she also had past interactions with the FSA that "reflected a willingness to be part of a pilot initiative," when that was a unilateral, non-textual reason for the Appellees' conduct.

### v. The Cases Relied Upon by Appellees Before the District Court Did Not Arise in the Context of a Pre-Existing Equal Protection Violation.

In their briefing below, Appellees cited several cases for the general proposition that the repeal of a statute ordinarily triggers the mootness doctrine. However, none of the cases involved an equal protection challenge where the government engaged in invidious race discrimination prior to the repeal of a statute, and failed to unwind its misconduct even after repeal of the relevant statute.

In *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472 (1990), for instance, an Illinois bank holding company challenged a Florida law under the dormant commerce clause. When Congress amended the Bank Holding Company Act of 1956, it undercut the very claim asserted in the case. The Supreme Court thus held that the challenge was moot. *See id.* at 477 ("[T]he only evidence of Continental's stake in the outcome was its application to establish and operate an ISB. … Thus, the stake represented by that application was eliminated by the 1987 amendments to the BHCA, which make it clear that no matter how the Commerce Clause issues in this suit are resolved the application can constitutionally be denied."). *Lewis*, however, did not involve an ongoing injury that remained unaddressed by the government. *Accord Knutzen v. Eben Ezer Lutheran Housing Center*, 815 F.2d 1343, 1355 (10th Cir. 1987) ("[T]he appellees never actually did cease their objectionable conduct and the appellants' claims are not moot.").

25

Similarly, in *Kremens v. Bartley*, 431 U.S. 119 (1977), the Court evaluated a suit by mental health patients between the ages of 15 and 18, which challenged Pennsylvania's laws governing commitment to Pennsylvania mental health institutions. When Pennsylvania's law changed in the middle of the appeal, the Supreme Court held that the plaintiffs had obtained all of the relief that they sought. *Id.* at 129 ("These concerns were eradicated with the passage of the new Act, which applied immediately to all persons receiving voluntary treatment."); *id.* at 129 ("After the passage of the Act, in no sense were the named appellees 'detained and incarcerated involuntarily in mental hospitals,' as they had alleged in the complaint."). Appellant, by contrast, has not obtained all of the relief that she sought. Instead, she continues to seek relief for unequal treatment under Section 1005 to correct an ongoing constitutional injury. *Accord Wiley v. National Collegiate Athletic Ass'n*, 612 F.2d 473, 476 (10th Cir. 1979) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot. This is particularly true when, as here, *the amendment does not fully comport with the relief sought by the plaintiff*.") (emphasis added, and internal quotation marks omitted).

In *Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*, 404 U.S. 415 (1972), the Supreme Court dismissed as moot a challenge to a Florida law exempting certain church property from taxation. There, the Court held that because the

challenge sought exclusively declaratory relief with respect to the taxation statute, and because Florida has amended the statute, the case was to be remanded with leave to amend the pleadings. *Id.* at 414-15 ("The only relief sought in the complaint was a declaratory judgment that the now repealed [statute] is unconstitutional as applied to a church parking lot used for commercial purposes and an injunction against its application to said lot. This relief is, of course, inappropriate now that the statute has been repealed."). By contrast, Appellant here has sought significantly more relief than merely the repeal of Section 1005.

Next, in *Camfield v. City of Okla. City*, 248 F.3d 1214 (10th Cir. 2001), the plaintiff challenged a law that precluded video rental stores from carrying an Oscar-award winning film due to alleged child pornography in the film. When the law was amended to change the scope of the law, the plaintiff's case was mooted because he had accomplished all that he had sought. *Id.* at 1223 ("Here, the Legislature deleted the 'simulated sex' language from section 1021.2 that Camfield argues is overbroad."). By contrast, Appellant has not yet obtained the remedy of unwinding the extant and ongoing differential treatment based on race that was caused by implementing Section 1005.

In *American Charities for Reasonable Fundraising Regulation, Inc. v. O'Bannon*, 909 F.3d 329 (10th Cir. 2018), the court dismissed as moot a challenge to Utah's permitting and registration requirements for professional fundraising

consultants. After the District Court had ruled for the Defendants, Utah amended its law. Because the new law no longer covered the plaintiff, the court deemed the case moot. *Id.* at 331 ("[D]uring the appeal, Utah substantially revised its law, prompting officials to concede that the new restrictions do not apply to Rainbow."). Here, by contrast, Appellees cannot assert that Section 1005 was never implemented, or that its partial implementation has been fully unwound such that this Court could not order any effective relief.

Last, Appellees relied on *Kansas Judicial Review v. Stout*, 562 F.3d 1240 (10th Cir. 2009). Read broadly, however, that case actually supports Appellant's theory of the case. *See id.* at 1246 ("In deciding whether a case is moot, *the crucial question is whether granting a present determination of the issues offered will have some effect in the real world*.") (emphasis added) (internal ellipses, quotation marks, and brackets omitted). In the case, the Tenth Circuit noted that certain canons of the Kansas Judicial Code were challenged as unconstitutional, but later repealed. *Id.* at 1246 ("As plaintiffs readily concede, in adopting the new canons, the Kansas Supreme Court completely eliminated the challenged portion of the Clause."). But the court noted that this was true only because an *old* injury had ceased with the repeal. *Id.* at 1246 ("[A]ny injury caused by the old Pledges and Commits Clauses has ceased because they are no longer in effect—the old canons thus cannot possibly

chill the *future* speech of the plaintiffs.") (original emphasis). That is not the case here.

Appellant's constitutional injury is ongoing and continues to this day. And there can be no doubt that, at minimum, an order by this Court to unwind payments made under Section 1005 would "have some effect in the real world." *Accord Vitolo,* 999 F.3d at 359; *see also American Freedom Defense Initiative v. Washington Metropolitan Area Transit Authority, WMATA,* 901 F.3d 356, 362 (D.C. Cir. 2018) (holding constitutional challenge was not moot, and noting that the defendant WMATA "does not contend the change to the Guidelines has remedied AFDI's alleged injury.").

Here, as a factual matter, the government has not established that it has completely and irrevocably eradicated the effects of its previous implementation of Section 1005. *Accord Wynn*, 545 F. Supp. 3d at 1293-94 ("While the Government argues Plaintiff's interest as an individual could not possibly outweigh the interests of thousands of [socially disadvantaged farmers and ranchers], this argument ignores the fact that *Plaintiff challenges the very premise that the Constitution permits the specific race-based debt relief provided under Section 1005 to proceed at all*, regardless of how well-intended the program may be or how many beneficiaries stand to be impacted.") (emphasis added).

### vi.    The Practical Questions Surrounding Remedies do not go to the Question of Mootness.

Appellees asserted below that there is no basis for a court to order that non-parties reimburse the government. [E287 ("The mere payment of funds to other farmers does not constitute an equal protection injury."); ER 288 ("Plaintiff thus suffers no equal protection injury from the payment of funds to others.").] But that assertion was unsupported, and, to be clear, Appellees did not assert below that it is literally impossible to undo its implementation of Section 1005, by either sending borrowers a bill, adjusting the numbers within the accounts of borrowers who owe funds to the USDA, or otherwise.

Nor, even if it were difficult to do with complete success, would the difficulty in unwinding Section 1005 be a reason for this Court to conclude that Appellees have satisfied their burden of establishing that no relief is possible. *See, e.g.*, *Wynn*, 545 F. Supp. 3d at 1295 ("As noted by the Supreme Court, 'once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation.'"); *Moritz v. C. I. R.*, 469 F.2d 466, 470 (10th Cir. 1972) ("Where a court is compelled to hold such a statutory discrimination invalid, it may consider whether to treat the provisions containing the discriminatory underinclusion as generally invalid, or whether to extend the coverage of the statute.").

30

Separately, any argument regarding the practicality of remedies must take into account that Appellees previously represented to numerous courts that they were prepared to address unequal treatment under Section 1005, if courts found the statute unconstitutional. *Wynn*, 545 F. Supp. 3d at 1293 (noting that the government argued for "[j]udicially rewriting Section 1005 to create a debt relief program that would include a White farmer and ordering the Government to provide Plaintiff debt relief," if the court later found a constitutional violation); *Faust*, 519 F. Supp. 3d at 478 ("Defendants assert that, even if Plaintiffs suffer irreparable harm, the harm is not imminent because the USDA is 'just beginning' to administer the program and the funds are 'statutorily unlimited.'"); *Holman*, 2021 WL 2877915, at *11 ("Defendants contend that rather than enjoining the program, the Court could, at a later date, 're-write' Section 1005 to include Plaintiff."); [ER278 (*Miller*, at *`9 ("The Government contends that, if Plaintiffs succeed on the merits of their claim, the Court could order debt relief from program funds; therefore, any harm at this stage is reparable.").] Indeed, the government relied on *Califano v. Westcott*, 443 U.S. 76 (1979), for the proposition that courts were free to enter remedial orders on behalf of white farmers and ranchers, as compared with non-white farmers and ranchers, if courts subsequently found an equal protection violation. *Holman*, 2021 WL 2877915 at *11 ("Defendants rely on the Supreme Court's decision in *Califano* … [where] the Court ultimately expanded the statute to include mothers as well as

fathers."). In other words, what Appellees once argued with respect to Section 1005 was that federal courts had broad leverage to grant effectual relief—so broad, in fact, that courts could rewrite federal statutes as part of their remedies.

In any event, the discussion hardly makes a difference with respect to mootness. Appellees may not sustain an argument regarding mootness based on mere remedial impracticality alone. *See Chafin*, 568 U.S. at 176 ("However small that concrete interest may be due to potential difficulties in enforcement, it is not simply a matter of academic debate, and is enough to save this case from mootness.") (internal brackets and quotation marks omitted); *id.* at 177 ("Such relief would of course not be fully satisfactory, but with respect to the case as whole, even the availability of a partial remedy is sufficient to prevent a case from being moot.") (internal brackets and quotation marks omitted); *BioDiversity Conservation Alliance v. Bureau of Land Management*, 608 F.3d 709, 714 (10th Cir. 2010) ("Even where it is too late to provide a fully satisfactory remedy the availability of a partial remedy will prevent the case from being moot."); *U.S. v. Hahn*, 359 F.3d 1315, 1323 (10th Cir. 2004) (*en banc*) ("Further, the Supreme Court has held that even the availability of a partial remedy is sufficient to prevent a case from being moot.") (internal quotation marks omitted).

### vii.     Appellant Adequately Prayed for Relief Beyond the Invalidation of Section 1005.

Appellees did not make any argument before the District Court that Appellant insufficiently pleaded her injury in her complaint. Nor could they. Appellant's complaint was filed on May 24, 2021. [ER22] Of course, she had no knowledge that only days later, despite having filed her complaint, Appellees would begin forgiving loans on the basis of race. Nevertheless, the prayer for relief in her complaint fairly encompasses the unwinding of the implementation of Section 1005:

> A.   Enter a declaratory judgment that the racial classifications under Section 1005 of the ARPA are unconstitutional under the Equal Protection principles of the Fifth Amendment of the United States Constitution.
>
> …
>
> F.   In the alternative, enjoin Defendants from enforcing Section 1005 of the American Rescue Plan Act in its entirety and enjoining Defendants from distributing loan assistance under Section 1005 to farmers and ranchers.
>
> …
>
> I.   Grant Plaintiff such other and further relief as the Court deems appropriate.

[ER21]. In the complaint, Appellant asked the District Court to declare that Section 1005 imposed unlawful racial classifications. There is no reason why that must logically preclude unwinding racial classifications that occurred before the statute was repealed. She further asked the Court to enjoin Appellees from enforcing

Section 1005 "in its entirety," which must include implementation that continues to injure her. And, at a minimum, the Court should we remand for the District Court's consideration as to other and further relief as it deems appropriate. *Accord Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021) (appellate court must liberally construe pleadings when reviewing order of dismissal).

In any event, there can be no doubt that Appellees were on notice that Appellant was trying to prevent Section 1005 from unlawfully discriminating against her, in any form. *Accord Xiong v. Knight Transportation, Inc.*, 77 F. Supp. 3d 1016, 1026 (D. Colo. 2014) ("The Court therefore finds that Ms. Xiong's prayer for relief sufficiently put the defendant on notice that she sought all interest to which she would be entitled under the law."). Moreover, the Tenth Circuit has emphasized the breadth of a District Court's power to enter appropriate relief. *See Reynolds v. Slaughter*, 541 F.2d 254, 256 (10th Cir. 1976) ("Under the rule, which has been liberally applied, the court is not restricted to the relief set out in the pleadings; rather, it should grant the relief which is consistent with the pleadings or proof.").

And, at a minimum, the Federal Rules of Civil Procedure unambiguously support Appellant's right to obtain relief in the matter. *See* F.R.C.P. 54(c) ("Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *Turner v. A. Passmore & Sons Inc.*, 341 Fed. Appx. 363, 367 (10th Cir. 2009) ("Again, this rule stresses the

34

federal rules' simplification of procedure and rejection of formalism."). Indeed, the District Court's duty extends to granting Appellant relief if she is entitled to as much. *See Kaszuk v. Bakery and Confectionery Union and Industry Intern. Pension Fund*, 791 F.2d 548, 559 (7th Cir. 1986) ("Rule 54(c) has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved."). It was error, then, for the District Court to imply that Appellant's interest in the case was limited to seeking the repeal of Section 1005. [ER296 ("[T]his injury cannot be redressed by a favorable judicial decision.")]

## VI.    Conclusion

Section 1005 unconstitutionally discriminated against Appellant based on her race. That it was partially implemented before repeal is a stain on the country, and on the Constitution. Moreover, Appellant's injury continues as long as others who are similarly situated experienced a windfall based on their race. Appellees cannot come close to meeting their burden to establish that the case is moot; indeed, the weight of the evidence is on the other side of the coin. For these reasons, the Court should reverse the District Court's entry of dismissal of this Appellant's complaint, and remand for further proceedings.

## Oral Argument Statement

Oral argument is necessary in the case because the issues and authorities presented by the parties are nuanced, and the Court may wish to press the parties on these topics. Additionally, because the holding in this case is likely to apply to other federal programs where subsidies have previously been provided based on race, ethnicity, or skin color, it may be valuable for the Court to ask questions to the parties on the proper scope of its decision.

DATED this 31st day of January 2023.

Respectfully submitted,

/s/    William E. Trachman

William E. Trachman
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
E-mail: wtrachman@mslegal.org

Braden Boucek
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, Georgia 30075
Telephone: (770) 977-2131
E-mail: bboucek@southeasternlegal.org

*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

This motion complies with the requirements of Fed. R. App. P. 27(d) and Circuit Rules 27-1(1)(d) and 32-3(2) because it has 8,635 words.

This motion also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

DATED this 31st day of January 2023.


*/s/ William E. Trachman*
William E. Trachman

**CERTIFICATE OF ELECTRONIC FILING**

In accordance with this Court's CM/ECF User's Manual and Local Rules, I hereby certify that the foregoing has been scanned for viruses with Sentinel One, updated January 31, 2023, and is free of viruses according to that program.

In addition, I certify that all required privacy redactions have been made and the electronic version of this document is an exact copy of the written document to be filed with the Clerk.

DATED this 31st day of January 2023.

*/s/    William E. Trachman*
William E. Trachman

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2023, the foregoing **OPENING BRIEF OF PLAINTIFF-APPELLANT LEISL CARPENTER** was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit through the Court's CM/ECF system. I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system and that a PDF copy of this motion will be emailed to opposing counsel immediately after it is filed.

DATED this 31st day of January 2023.

*/s/     William E. Trachman*
William E. Trachman

# ATTACHMENT 1:

***District Court Order of
Dismissal
Filed October 7, 2022
(10/07/2022)***



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

**3:25 pm, 10/7/22**

**Margaret Botkins**
**Clerk of Court**

LEISL M. CARPENTER,

      Plaintiff,

vs.

THOMAS J. VILSACK, in his official
capacity as Secretary of Agriculture, et al.,

      Defendants.

Case No.  21-CV-0103-F

**ORDER GRANTING DEFENDANTS' MOTION TO**
**LIFT STAY AND DISMISS AS MOOT**

This matter comes before the Court on Defendants' *Motion to Lift Stay and Dismiss Case as Moot.*  ECF 37.  Defendants argue the case is now moot given the express repeal of Section 1005 of the American Rescue Plan Act (ARPA), which section was challenged by Plaintiff as violative of the equal protection principles of the Fifth Amendment of the U.S. Constitution.   Plaintiff opposes Defendants' motion, arguing Plaintiff's injury continues because others who are similarly situated experienced a windfall based on their race by way of payments made under Section 1005 which should be unwound to restore constitutional balance.   Based on the conclusion that there is no ongoing case or controversy under which Plaintiff can obtain relief on the claims pled, the Court GRANTS Defendants' motion to lift stay and DISMISSES the case.

Background

The parties are familiar with the facts and procedural history of this case so the Court will not repeat it here in any detail.  Suffice to say that Section 1005 provided debt relief to farmers and ranchers based on their race.  Even though Plaintiff is a rancher with qualifying debt, her Norwegian and Swedish ancestry disqualified her from Section 1005 relief.  Plaintiff filed her complaint seeking declaratory and injunctive relief and "other and further relief as the Court deems appropriate." ECF 1, p. 14.  Plaintiff's contention is that Section 1005 – and Defendants' implementation of that section – violates the U.S. Constitution's guarantee of equal protection of the laws.

The Court stayed this case recognizing, among other considerations, that the preliminary injunctions entered by other courts prohibited enforcement of Section 1005's racial exclusions.  ECF 33.  Now Congress has definitively acted to repeal Section 1005.  *See* Inflation Reduction Act of 2022 (IRA) § 22008.  However, before the injunctions and the repeal, Defendants tested "the effectiveness of the procedures" to deliver debt relief by mailing five Section 1005 "offer letters" to eligible recipients in New Mexico.  ECF 39-1, ¶ 28.  New Mexico was selected for the test "based in part on having one of the larger volumes of direct loan borrowers eligible for [debt relief] and a high level of experienced staff."  *Id*.  Four eligible test recipients responded and received debt relief payments. *Id*. at ¶¶ 28-30.

Applicable Legal Standard

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Disability Law Ctr. v. Millcreek*

2

*Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005) (quoting *McClendon v. City of Albuquerque*, 100 F.3d 863,867 (10th Cir. 1996)).   The Tenth Circuit summarized the mootness doctrine as follows:

> In cases involving mootness, "[t]he starting point for [our] analysis is the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413, (1971)). The mootness doctrine "derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *Id*. The Supreme Court has described it as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363,1384 (1973)). "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (quoting *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1223 (10th Cir. 2001)). "Put another way, a case becomes moot 'when a plaintiff no longer suffers "actual injury that can be redressed by a favorable judicial decision." ' " *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (quoting *Rhodes v. Judiscak*, 676 F.3d 931, 933(10th Cir. 2012)).

*Ghailani v. Sessions*, 859 F.3d 1295, 1300-1301 (10th Cir. 2017).

<u>Discussion</u>

There is no question that Section 1005 has been repealed.  Consequently, Plaintiff's request to enjoin Defendants from applying, implementing, or enforcing Section 1005 is moot.  Simply put, the legislative repeal means that Defendants lack any authority to apply, implement, or enforce Section 1005 and this Court cannot alter this situation.

3

Further, the repeal also moots Plaintiff's requests for declarations relating to Plaintiff's eligibility for Section 1005 loan forgiveness and the constitutional soundness of further loans to those who receive Section 1005 loan forgiveness. Following the repeal of Section 1005, neither Plaintiff nor anyone else may receive loan forgiveness or further loans under this section. Therefore, this Court lacks any power to alter or affect the rights of Plaintiff or others relating to these questions.

The only remaining issue is Plaintiff's argument that the case is not moot because Defendants' past actions in the New Mexico test continue to injure Plaintiff's equal protection rights. According to Plaintiff, this injury can only be remedied by a declaration that Defendant's actions in testing Section 1005 violated the constitution, and an award of "other relief" to require that Defendants claw back the benefits provided. For the following reasons, Plaintiff's last argument is unpersuasive.

In returning to Tenth Circuit precedent, the analysis is clearer by reviewing mootness in the context of "standing set in a timeframe." *Ghailani*, 859 F.3d at 1300 (quoting *U.S. Parole Comm'n*, 445 U.S. at 397). Plaintiff's personal interest is specifically pled. Plaintiff raises cattle and farms hay in Wyoming. ECF 1, ¶ 20. Plaintiff took out a real estate loan from the Farm Service Agency (FSA), and she would be eligible for the Section 1005 loan forgiveness program, and future FSA loans,[1] except for the fact that she is not a member of any of the racial groups that are eligible for loan forgiveness. *Id*. at ¶¶ 13.

---

[1] The law prohibits her from obtaining further loans from the Department of Agriculture if she received any form of debt forgiveness on her FSA loan, with the only exception being loan forgiveness under Section 1005. ECF 1, ¶ 22.

Given the repeal of Section 1005, Plaintiff's personal interest in Section 1005 benefits (i.e., receiving loan forgiveness and future FSA loans) is now entirely lost to her and everyone else. In other words, while Plaintiffs personal interest in the benefits of Section 1005 existed at the commencement of her case, that interest doesn't continue now. Also, any "claw back" of past benefits to others in New Mexico in no way advances or affects the specific personal interest Plaintiff pled in this case. The actual injury pled was that Plaintiff could not receive loan forgiveness with an opportunity to obtain a future FSA loan, and this injury cannot be redressed by a favorable judicial decision. In short, this is a classic case for the application of the mootness doctrine.

Finally, Plaintiff has no persuasive argument to equalize the playing field by unwinding Defendant's test of Section 1005. Completely apart from any considerations of race, Plaintiff was never within that so-called "playing field" for the simple reason that her property is in Wyoming. Thus, Plaintiff fails to show any actual injury, in 2021 or now, from the actions taken by Defendants that solely affected FSA loan borrowers in New Mexico.

For the forgoing reasons, the Court GRANTS Defendant's motion to lift stay and dismiss the case. The stay entered by order of the Court (ECF 33) is LIFTED. Because the Court lacks jurisdiction, this case is DISMISSED.

Dated this 7th day of October, 2022.

_Nancy D. Freudenthal_

_____
NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE