**No. 22-8079**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

Leisl Carpenter
Plaintiffs-Appellants,

v.

Thomas Vilsack, United States Department of Agriculture Secretary, *et al.*,
Defendants-Appellees.

---

On Appeal from the United States District Court for the District of Wyoming
No. 21-cv-00103-NDF, The Honorable Nancy D. Freudenthal

---

**APPELLANT'S EXCERPTS OF RECORD**

---

William E. Trachman
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
E-mail: wtrachman@mslegal.org

Braden Boucek
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, Georgia 30075
Telephone: (770) 977-2131
E-mail: bboucek@southeasternlegal.org
*Attorneys for Plaintiffs-Appellants*

# EXCERPTS OF RECORD INDEX

*Leisl Carpenter v. Thomas Vilsack, et al.*

*No. 22-8079*

District Court Docket. Case No. 21-cv-00103-NDF
(D. Wyoming) ............................................................................. ER001

Plaintiff's Complaint for Declaratory and Injunctive Relief
(ECF No. 1) .............................................................................. ER008

Civil Cover Sheet
(ECF No. 1-1) ........................................................................... ER023

Summons – Vilsack
(ECF No. 2) .............................................................................. ER024

Summons – Ducheneaux
(ECF No. 3) .............................................................................. ER026

Order Granting Admission Pro Hac Vice of Boucek, Bartkus, Hermann, and
Trachman for Plaintiff
(ECF No. 8) .............................................................................. ER028

Notice of Entry of Appearance for W. Trachman
(ECF No. 11) ............................................................................ ER030

Proof of Service – Vilsack
(ECF No. 24) ............................................................................ ER033

Proof of Service – Ducheneaux
(ECF No. 25) ............................................................................ ER042

Notice of Entry of Appearance of W. Trachman to Appear Pro Hac Vice
(ECF No. 26) ............................................................................ ER053

Defendants' Motion to Stay Proceedings Pending Resolution of Related Class
Action
(ECF No. 27) ............................................................................ ER056

Memorandum in Support of Defendants' Motion to Stay Proceedings Pending
Resolution of Related Class Action
(ECF No. 28)    ........................................................................    ER058

Exhibit A - Miller Decision
(ECF No. 28-1) ........................................................................    ER070

Defendants' Unopposed Motion to Extend Deadline to Answer Plaintiff's
Complaint
(ECF No. 29)...........................................................................    ER095

Order Granting Defendants' Unopposed Motion to Extend Deadline to Answer
Plaintiff's Complaint
(ECF No. 30)...........................................................................    ER098

Plaintiff's Opposition to Defendants' Motion to Stay Proceedings Pending
Resolution of Related Class Action [ECF NO. 27]
(ECF No. 31)...........................................................................    ER099

Exhibit 1 – A Career Counselor's Guide to Lateral Hiring at DOJ
(ECF No. 31-1) ........................................................................    ER112

Exhibit 2 – Choose Justice – Guide to U.S. DOJ for Law Students and Exp.
Attorneys
(ECF No. 31-2) ........................................................................    ER121

Exhibit 3 – Order Denying Motion to Stay
(ECF No. 31-3) ........................................................................    ER180

Defendants' Reply in Support of their Motion to Stay Pending Resolution of
Related Class Action
(ECF No. 32)...........................................................................    ER185

Order Granting Defendants' Motion to Stay
(ECF No. 33)...........................................................................    ER192

Defendants' Status Report
(ECF No. 34)...........................................................................    ER203

Defendants' Status Report
(ECF No. 35)...........................................................................    ER206

Defendants' Status Report
(ECF No. 36) .......................................................................... ER209

Exhibit A – Joint Stipulation of Dismissal (*ECF No. 236. Miller v. Vilsack,
No. 4:21-cv-959 (N.D. Tex.) August 29, 2022*)
(ECF No. 36-1) ....................................................................... ER212

Defendants' Motion to Lift Stay and Dismiss as Moot
(ECF No. 37) .......................................................................... ER216

Memorandum in Support of Defendants' Motion to Lift Stay and Dismiss
as Moot
(ECF No. 38) .......................................................................... ER218

Plaintiff's Opposition to Defendants' Motion to Lift Stay and to Dismiss as
Moot, Memorandum in Support Thereof [ECF NO. 37 and 38]
(ECF No. 39) .......................................................................... ER227

Exhibit 1 – Cobb Declaration
(ECF No. 39-1) ....................................................................... ER248

Exhibit 2 – Democrats add farm  debt relief to climate funding as Senate
passage nears
(ECF No. 39-2) ....................................................................... ER256

Exhibit 3 – Order Regarding Miller v. Vilsack
(ECF No. 39-3) ....................................................................... ER259

Reply Brief in Support of Defendants' Motion to Lift Stay and to Dismiss as
Moot
(ECF No. 40) .......................................................................... ER284

Order Granting Defendants' Motion to Lift Stay and Dismiss as Moot
(ECF No. 41) .......................................................................... ER292

Notice of Appeal
(ECF No. 42) .......................................................................... ER297

# U.S. District Court
## District of Wyoming (Cheyenne)
## CIVIL DOCKET FOR CASE #: 2:21-cv-00103-NDF

Carpenter v. United States Department of Agriculture Secretary et al

Assigned to: Senior District Judg Nancy D Freudenthal

Referred to: Honorable Kelly H Rankin

Case in other court:  USCA, 22-08079

Cause: 42:2000 Job Discrimination (Race)

Date Filed: 05/24/2021

Date Terminated: 10/07/2022

Jury Demand: None

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Leisl M Carpenter**                               represented by    **Timothy Michael Stubson**
CROWLEY FLECK PLLP
Petroleum Building
111 West Second Street, Suite 220
Casper, WY 82601
307/265-2279
Email: tstubson@crowleyfleck.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Edward Trachman**
MOUNTAIN STATES LEGAL
FOUNDATION
2596 South Lewis Way
Lakewood, CO 80227
303-292-2021
Email: wtrachman@mslegal.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Braden Boucek**
Southeastern Legal Foundation
560 West Crossville Road
Suite 104
Roswell, GA 30075
770-977-2131
Fax: 770-977-2134
Email: bboucek@southeasternlegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Corey Christopher Bartkus**
SHARUZI LAW GROUP
518 17th St.
Ste. 270
80202
Denver, CO 80202

Appellate Case: 22-8079    Document: 010110806323    Date Filed: 01/31/2023    Page: 6

303-226-0330
Email: cbartkus@sharuzilaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kimberly S. Hermann**
58-12 Southeastern Legal Foundation
560 W. Crossville Rd.
Suite 104
Roswell, GA 30075-7509
770-977-2131
Fax: 770-977-2134
Email: khermann@southeasternlegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

<u>**Defendant**</u>

**United States Department of Agriculture Secretary**
*in his official capacity*
*also known as*
Thomas J Vilsack

represented by **Emily Sue Newton**
DOJ-CIV
Federal Programs Branch, Civil Division
1100 L Street, NW
Room 12104
Washington, DC 20005
202-305-8356
Email: emily.s.newton@usdoj.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kyla Snow**
UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION
1100 L Street NW
Washington, DC 20005
202-514-3259
Email: kyla.snow@usdoj.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Vassallo**
US ATTORNEY'S OFFICE
P O Box 668
Cheyenne, WY 82003-0668
307/772-2124
Fax: 307/772-2123
Email: nick.vassallo@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**ER002**

Appellate Case: 22-8079    Document: 010110806323    Date Filed: 01/31/2023    Page: 7

**Farm Service Agency Administrator**                    represented by **Emily Sue Newton**
*in his official capacity*                                                          (See above for address)
*also known as*                                                                    *LEAD ATTORNEY*
Zach Ducheneaux                                                                 *PRO HAC VICE*
                                                                                        *ATTORNEY TO BE NOTICED*

                                                                                        **Kyla Snow**
                                                                                        (See above for address)
                                                                                        *LEAD ATTORNEY*
                                                                                        *PRO HAC VICE*
                                                                                        *ATTORNEY TO BE NOTICED*

                                                                                        **Nicholas Vassallo**
                                                                                        (See above for address)
                                                                                        *LEAD ATTORNEY*
                                                                                        *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 05/24/2021 | 1 | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF (2 summonses issued) **Counsel - payment is due within three calendar days. To pay the filing fee with a credit card, please use the event Notice of Civil Filing Fee in CM/ECF or send a check to the Clerk of US District Court, 2120 Capitol Avenue Room 2131, Cheyenne, WY 82001,** filed by Leisl M Carpenter. (Attachments: # 1 Civil Cover Sheet) (Court Staff, skb) (Entered: 05/25/2021) |
| 05/24/2021 | 2 | Summons Issued - Thomas J. Vilsack. (Court Staff, skb) (Entered: 05/25/2021) |
| 05/24/2021 | 3 | Summons Issued - Zach Ducheneaux. (Court Staff, skb) (Entered: 05/25/2021) |
| 05/25/2021 | 4 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Braden Boucek to appear pro hac vice; Check not tendered; filed by Plaintiff Leisl M Carpenter. (Attachments: # 1 Affidavit, # 2 Proposed Order)(Stubson, Timothy) (Entered: 05/25/2021) |
| 05/25/2021 | 5 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Corey C. Bartkus to appear pro hac vice; Check not tendered; filed by Plaintiff Leisl M Carpenter. (Attachments: # 1 Affidavit, # 2 Proposed Order)(Stubson, Timothy) (Entered: 05/25/2021) |
| 05/25/2021 | 6 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Kimberly S. Hermann to appear pro hac vice; Check not tendered; filed by Plaintiff Leisl M Carpenter. (Attachments: # 1 Affidavit, # 2 Proposed Order)(Stubson, Timothy) (Entered: 05/25/2021) |
| 05/25/2021 | 7 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for William E. Trachman to appear pro hac vice; Check not tendered; filed by Plaintiff Leisl M Carpenter. (Attachments: # 1 Affidavit, # 2 Proposed Order)(Stubson, Timothy) (Entered: 05/25/2021) |
| 05/25/2021 | 8 | ORDER by the Honorable Kelly H Rankin granting 4 Motion for Braden Boucek to appear pro hac vice ; granting 5 Motion for Corey C. Bartkus to appear pro hac vice ; granting 6 Motion for Kimberly S. Hermann to appear pro hac vice ; granting 7 Motion for William E. Trachman to appear pro hac vice on behalf of Leisl M. Carpenter. (Copy of order emailed to PHV counsel on this date). (Court Staff, stmo) Modified docket text on 6/1/2021 (Court Staff, stmo). (Entered: 05/25/2021) |
| 05/25/2021 |   | FINANCIAL ENTRY: $402 filing fee paid via Pay.gov on this date. Receipt AWYDC-1939483. (Court Staff, sjk) (Entered: 06/15/2021) |

Appellate Case: 22-8079     Document: 010110806323     Date Filed: 01/31/2023     Page: 8

| 05/27/2021 | 9 | Notice of Pro Hac Vice Attorney Appearance by Kimberly S. Hermann on behalf of Leisl M Carpenter Filing fee $ 100, receipt number AWYDC-1941176. (Hermann, Kimberly) (Entered: 05/27/2021) |
| --- | --- | --- |
| 05/27/2021 | 10 | Notice of Pro Hac Vice Attorney Appearance by Braden Boucek on behalf of Leisl M Carpenter (Boucek, Braden) (Entered: 05/27/2021) |
| 05/27/2021 | 11 | Notice of Pro Hac Vice Attorney Appearance by William Edward Trachman on behalf of Leisl M Carpenter (Trachman, William) (Entered: 05/27/2021) |
| 05/27/2021 | 12 | Notice of Pro Hac Vice Attorney Appearance by Corey Christopher Bartkus on behalf of Leisl M Carpenter (Bartkus, Corey) (Entered: 05/27/2021) |
| 05/27/2021 | | FINANCIAL ENTRY: Payment of $100 received for pro hac vice for Braden Boucek. Receipt CHY034787. (Court Staff, sjk) (Entered: 05/28/2021) |
| 05/27/2021 | | FINANCIAL ENTRY: Payment of $200 received for pro hac vice fees for William E Trachman & Corey C Bartkus. Receipt CHY034788. (Court Staff, sjk) (Entered: 05/28/2021) |
| 05/28/2021 | 13 | (TEXT-ONLY) Notice of Failure to Pay Filing Fee. Filing Fee Due: 5/28/21. (Court Staff, sjlg) (Entered: 05/28/2021) |
| 05/28/2021 | | Notice of Civil Case Filing Fee Payment: Filing Fee $402 was paid with Receipt Number: CHY034790 (Court Staff, sbh). Receipt CHY034790 to be refunded to Mountain States Legal Foundation as fee was already paid via Pay.gov on 5/25/21. Modified on 6/15/2021 (Court Staff, sjk). (Entered: 05/28/2021) |
| 06/01/2021 | 14 | Notice of Pro Hac Vice Attorney Appearance by Corey Christopher Bartkus on behalf of Leisl M Carpenter (Bartkus, Corey) (Entered: 06/01/2021) |
| 06/09/2021 | 15 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Emily Sue Newton to appear pro hac vice; Check not tendered; filed by Defendants Farm Service Agency Administrator, United States Department of Agriculture Secretary. (Attachments: # 1 Newton Declaration, # 2 Proposed Order)(Vassallo, Nicholas) (Entered: 06/09/2021) |
| 06/09/2021 | 16 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Kyla M. Snow to appear pro hac vice; Check not tendered; filed by Defendants Farm Service Agency Administrator, United States Department of Agriculture Secretary. (Attachments: # 1 Snow Declaration, # 2 Proposed Order)(Vassallo, Nicholas) (Entered: 06/09/2021) |
| 06/09/2021 | 17 | NOTICE of Attorney Appearance by Nicholas Vassallo on behalf of Farm Service Agency Administrator, United States Department of Agriculture Secretary (Vassallo, Nicholas) (Entered: 06/09/2021) |
| 06/10/2021 | 18 | ORDER by the Honorable Kelly H Rankin granting 15 Motion for Emily S. Newton to appear pro hac vice ; granting 16 Motion for Kyla M. Snow to appear pro hac vice on behalf of Defendants Farm Service Agency Administrator, United States Department of Agriculture Secretary (copy of order sent to pro hac vice counsel via e-mail). (Court Staff, stmo) Modified docket text on 6/14/2021 (Court Staff, stmo). (Entered: 06/10/2021) |
| 06/16/2021 | 19 | Notice of Pro Hac Vice Attorney Appearance by Kyla Snow on behalf of Farm Service Agency Administrator, United States Department of Agriculture Secretary (Snow, Kyla) (Entered: 06/16/2021) |
| 06/21/2021 | 20 | ORDER REGARDING SERVICE by the Honorable Nancy D Freudenthal. Plaintiff shall file returns of service, or a status report, by 7/6/21.(Court Staff, sal) (Entered: 06/21/2021) |

**ER004**

Appellate Case: 22-8079     Document: 010110806323     Date Filed: 01/31/2023     Page: 9

| | | |
|---|---|---|
| 06/21/2021 | 21 | DISREGARD. To be refiled. ~~SUMMONS Returned Executed by Leisl M Carpenter. United States Department of Agriculture Secretary served on 5/26/2021, answer due on 7/26/2021. Served through the Tom Vilsack. (Trachman, William)~~ Modified on 6/21/2021 (Court Staff, sbh). (Entered: 06/21/2021) |
| 06/21/2021 | 22 | DISREGARD. To be refiled. ~~SUMMONS Returned Executed by Leisl M Carpenter. Farm Service Agency Administrator served on 5/26/2021, answer due on 7/26/2021. Served through the Zach Ducheneaux. (Trachman, William)~~ Modified on 6/21/2021 (Court Staff, sbh). (Entered: 06/21/2021) |
| 06/21/2021 | 23 | SUMMONS Returned Executed by Leisl M Carpenter. United States Department of Agriculture Secretary served on 6/1/2021, answer due on 8/2/2021. Served through the Tim Vilsack. (Trachman, William) (Entered: 06/21/2021) |
| 06/21/2021 | 24 | SUMMONS Returned Executed by Leisl M Carpenter. Farm Service Agency Administrator served on 6/1/2021, answer due on 8/2/2021. Served through the Zach Ducheneaux. (Trachman, William) (Entered: 06/21/2021) |
| 06/21/2021 | 25 | NOTICE of Attorney Appearance by Emily Sue Newton on behalf of Farm Service Agency Administrator, United States Department of Agriculture Secretary (Newton, Emily) (Entered: 06/21/2021) |
| 07/14/2021 | 26 | DISREGARD - Duplicate filing filed in error. ~~NOTICE of Attorney Appearance by William Edward Trachman on behalf of Leisl M Carpenter (Trachman, William)~~ Modified on 7/14/2021 (Court Staff, stmo). (Entered: 07/14/2021) |
| 07/19/2021 | 27 | MOTION to stay case filed by Defendants Farm Service Agency Administrator, United States Department of Agriculture Secretary. (Attachments: # 1 Proposed Order)(Snow, Kyla) (Entered: 07/19/2021) |
| 07/19/2021 | 28 | MEMORANDUM in Support of 27 Motion to Stay Case filed by Defendants Farm Service Agency Administrator, United States Department of Agriculture Secretary. (Attachments: # 1 Exhibit A - Miller Decision) (Snow, Kyla) (Entered: 07/19/2021) |
| 07/23/2021 | 29 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for Extension of Time (Non-Dispositive) requesting extension of deadline to answer Plaintiff's complaint filed by Defendants Farm Service Agency Administrator, United States Department of Agriculture Secretary. (Attachments: # 1 Proposed Order)(Snow, Kyla) (Entered: 07/23/2021) |
| 07/26/2021 | 30 | ORDER by the Honorable Kelly H Rankin granting 29 Motion for Extension of Time. Defendants shall answer Plaintiffs Complaint by August 31, 2021.(Court Staff, smh) (Entered: 07/26/2021) |
| 08/02/2021 | 31 | RESPONSE in Opposition re 27 MOTION to stay case filed by Plaintiff Leisl M Carpenter. (Attachments: # 1 Exhibit 1 - A Career Counselors Guide to Lateral Hiring at DOJ, # 2 Exhibit 2 - Choose Justice - Guide to U.S. DOJ for Law Students and Exp. Attorneys, # 3 Exhibit 3 - Order Denying Motion to Stay) (Trachman, William) (Entered: 08/02/2021) |
| 08/09/2021 | 32 | ~~NON-PUBLIC DOCUMENT pursuant to the Judicial Conference Policy on Privacy and Public Access~~ REPLY BRIEF re 27 Motion to Stay Case filed by Defendants Farm Service Agency Administrator, United States Department of Agriculture Secretary. (Newton, Emily) Security modified on 8/9/2021 (Court Staff, sal). (Entered: 08/09/2021) |
| 08/16/2021 | 33 | ORDER by the Honorable Nancy D Freudenthal granting 27 Motion to Stay Case. Defendants shall file and serve a Status Report every 6 months and shall also promptly report any action as specified in this Order. (Court Staff, sal) (Entered: 08/16/2021) |

**ER005**

| 02/16/2022 | 34 | STATUS REPORT by Farm Service Agency Administrator, United States Department of Agriculture Secretary. (Snow, Kyla) (Entered: 02/16/2022) |
|---|---|---|
| 08/16/2022 | 35 | STATUS REPORT by Farm Service Agency Administrator, United States Department of Agriculture Secretary. (Snow, Kyla) (Entered: 08/16/2022) |
| 09/06/2022 | 36 | STATUS REPORT by Farm Service Agency Administrator, United States Department of Agriculture Secretary. (Attachments: # 1 Exhibit A - Miller Stipulation of Dismissal) (Snow, Kyla) (Entered: 09/06/2022) |
| 09/13/2022 | 37 | MOTION to lift stay , MOTION to Dismiss Case, filed by Defendants Farm Service Agency Administrator, United States Department of Agriculture Secretary. (Snow, Kyla) (Entered: 09/13/2022) |
| 09/13/2022 | 38 | MEMORANDUM in Support of 37 Motion to Lift Stay, Motion to Dismiss Case filed by Defendants Farm Service Agency Administrator, United States Department of Agriculture Secretary. (Snow, Kyla) (Entered: 09/13/2022) |
| 09/27/2022 | 39 | RESPONSE in Opposition re 37 Motion to Lift Stay, Motion to Dismiss Case filed by Plaintiff Leisl M Carpenter. (Attachments: # 1 Exhibit 1- Cobbs Declaration, # 2 Exhibit 2- Democrats add farm debt relief to climate funding, # 3 Exhibit 3- Order) (Trachman, William) (Entered: 09/27/2022) |
| 10/04/2022 | 40 | REPLY BRIEF re 37 Motion to Lift Stay, Motion to Dismiss Case filed by Defendants Farm Service Agency Administrator, United States Department of Agriculture Secretary. (Snow, Kyla) (Entered: 10/04/2022) |
| 10/07/2022 | 41 | ORDER by the Senior District Judge Nancy D Freudenthal granting 37 Motion to Lift Stay and granting 37 Motion to Dismiss Case (Court Staff, sal) (Entered: 10/07/2022) |
| 11/28/2022 | 42 | NOTICE OF APPEAL as to 41 Order on Motion to Lift Stay, Order on Motion to Dismiss Case filed by Plaintiff Leisl M Carpenter. (Trachman, William) (Entered: 11/28/2022) |
| 11/28/2022 | 43 | Preliminary Record of appeal sent to USCA and counsel re 42 Notice of Appeal (Attorney) **The procedures and appeals forms may be obtained from the U.S. Court of Appeals website: www.ca10.uscourts.gov.** (Attachments: # 1 Preliminary Record on Appeal Including Notice of Appeal) (Court Staff, stbd) (Entered: 11/28/2022) |
| 11/29/2022 | 44 | Appeal Number **22-8079** received from USCA for 42 Notice of Appeal (Attorney) filed by Leisl M Carpenter. Fee, transcript order form, docketing statement, and notice of appearance are due by 12/13/2022 for Leisl M. Carpenter. Notice of appearance due on 12/13/2022 for Zach Ducheneaux and Thomas J. Vilsack (Court Staff, stbd) (Entered: 11/29/2022) |
| 12/12/2022 | 45 | USCA Appeal Fees received $ 505 receipt number 2-788 re 42 Notice of Appeal (Attorney) filed by Leisl M Carpenter (Court Staff, stmo) (Entered: 12/13/2022) |
| 12/13/2022 | 46 | (TEXT-ONLY) APPEAL ORDER from USCA as to 42 Notice of Appeal (Attorney) filed by Leisl M Carpenter **Record on appeal/Notice due 12/20/2022** (Court Staff, stbd) (Entered: 12/13/2022) |
| 12/13/2022 | 47 | TRANSCRIPT REQUEST (No Transcripts Necessary) by Plaintiff Leisl M Carpenter re 42 Notice of Appeal (Attorney). (Trachman, William) (Entered: 12/13/2022) |
| 12/21/2022 | 48 | Transcript Letter transmitted to USCA re 42 Notice of Appeal (Attorney). No transcripts have been ordered for this appeal. For purpose of appeal, the record is now ready. (Court Staff, stbd) (Entered: 12/21/2022) |

**ER006**

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/26/2023 10:25:36 | | | |
| **PACER Login:** | wtrachman1 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:21-cv-00103-NDF |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

**ER007**

Timothy M. Stubson (Bar No. 6-3144)
Crowley Fleck, PLLP
111 W. 2nd Street, Suite 220
Casper, WY 82601
(307) 265-2279
tstubson@crowleyfleck.com

William E. Trachman*
Corey C. Bartkus*
(*pro hac vice pending)
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org

Kimberly S. Hermann*
Braden H. Boucek*
(*pro hac vice pending)
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, GA 30075
Telephone: (770) 977-2131
khermann@southeasternlegal.org
bboucek@southeasternlegal.org

*Attorneys for Plaintiff Leisl M. Carpenter*

**FILED**



*5:00 pm, 5/24/21*

**Margaret Botkins
Clerk of Court**

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| LEISL M. CARPENTER,<br><br>    Plaintiff,<br><br>        v.<br>THOMAS J. VILSACK, in his official<br>capacity as Secretary of the United States<br>Department of Agriculture, and<br><br>ZACH DUCHENEAUX, in his official<br>capacity as Administrator of the Farm Service<br>Agency,<br><br>    Defendants. | No.   21-CV-103-F<br><br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

**ER008**

Plaintiff Leisl M. Carpenter is a Wyoming rancher and the young mother of a 19-month old son. She is of Danish, Norwegian, and Swedish ancestry. She and her husband Tim sell weaned calves, grass finished or corn fed beef, grass hay, livestock protein supplements, custom hay, and cull cows and bulls. Because she has no job other than ranching, her entire family's income stems from the ranch. Although she meets the definition of "socially disadvantaged" for some purposes relating to the U.S. Department of Agriculture's Farm Service Agency loans, she is not covered by the American Rescue Plan Act, signed in March 2021. On the other hand, if she were a different race—regardless of whether she was affected by COVID-19 or in fact needed loan forgiveness—the federal government would automatically forgive her loan.

Ms. Carpenter brings this complaint against Defendants Thomas J. Vilsack, Secretary of the United States Department of Agriculture, and Zach Ducheneaux, Administrator of the Farm Service Agency (FSA), as follows:

## INTRODUCTION

1. The Constitution requires that "all racial classifications imposed by government must be analyzed by a reviewing court under strict scrutiny." *Johnson v. California*, 543 U.S. 499, 505 (2005) (internal quotation marks omitted). "We have insisted on strict scrutiny in every context, even for so-called 'benign' racial classifications, such as race-conscious university admissions policies, race-based preferences in government contracts, and race-based districting intended to improve minority representation." *Id.* at 505 (internal citations omitted).

2. Equal protection under the law is the cornerstone of modern-day American constitutional jurisprudence. It is the principle etched into our nation and was "[p]urchased at the price of immeasurable human suffering." *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 240 (1995) (Thomas, J., concurring in part and concurring in judgment).

3. In March 2021, however, Congress opted to enshrine into law race classifications that divide American citizens by skin color, and which are unmoored from any interest that the government may have in remedying past discrimination.

2

**ER009**

4. In the American Rescue Plan Act of 2021, H.R. 1319, 117th Cong. (2021) ("ARPA"), Congress allotted billions of dollars in debt relief to "socially disadvantaged" farmers and ranchers. The program will erase the debts of certain farmers and ranchers who took out loans, but only for farmers or ranchers of races.

5. The program does so by providing a payment in an amount up to 120 percent of the outstanding indebtedness, to remain available until expended, for the cost of loan modifications and payments under this section.

6. A "socially disadvantaged farmer or rancher" is defined by federal law, 7 U.S.C. § 2279(a)(5), as "a farmer or rancher who is a member of a socially disadvantaged group."

7. In turn, a "socially disadvantaged group" is a "group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." 7 U.S.C. § 2279(a)(6).

8. The United States Department of Agriculture ("USDA") interprets the phrase "socially disadvantaged group" to include explicit racial classifications. Indeed, to be eligible for ARPA's debt relief, farmers and ranchers must be "Black, American Indian/Alaskan Native, Hispanic, or Asian, or Hawaiian/Pacific Islander." *See American Rescue Plan Debt Payments FAQ*, at Question 1, at https://www.farmers.gov/americanrescueplan/arp-faq (last visited, May 23, 2021).

9. The USDA considers Plaintiff Leisl Carpenter to be "socially disadvantaged" in some respects regarding her loan status, although not under ARPA. *See id.* at Question 1 ("Section 2501 [of the Food, Agriculture, Conservation and Trade Act of 1990] does not include gender. While some women may be eligible [for ARPA debt relief] due to their race or ethnicity, gender is not an eligible criterion in and of itself, based on the law enacted by Congress."). She is not considered to be a part of any of these racial categories and would generally be considered white or Caucasian.

3

**ER010**

10.  Defendants are responsible for running this race-based loan-forgiveness program through the Farm Service Agency. Defendants assert that the purpose of this program is to remedy "systemic racism" within USDA and more broadly "across agriculture."

11.  The United States Constitution "forbids" discrimination by the federal government "against any citizen because of his race." *Adarand*, 515 U.S. at 216 (internal citations omitted). When the government distributes "benefits on the basis of individual racial classifications," as Defendants do in this case, the government bears the burden of meeting "strict scrutiny." In other words, the government must prove that its discriminatory benefit is narrowly tailored and serves a compelling government interest. *Id.* at 227. It cannot do so here.

12.  Defendants' use of race discrimination as a tool to end "systemic racism" is patently unconstitutional and should be enjoined by the Court. Enjoining this discriminatory conduct will promote equal rights under the law for all American citizens and promote efforts to stop further racial discrimination because "[t]he way to stop discrimination on the basis of race is to stop discriminating on the basis of race." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 748 (2007) (plurality opinion).

**PARTIES**

13.  Plaintiff Leisl Maria Carpenter owns a ranch in Albany County, near Laramie, in the District of Wyoming. Ms. Carpenter is a Wyoming rancher whose family started ranching in the Centennial Valley following their immigration to the United States from Denmark, Norway, and Sweden. In 2012, she took out a real estate loan from the FSA, which is covered under the terms of ARPA.[1] Ms. Carpenter's Promissory Note names the FSA's office located in Wheatland, Wyoming, as the payee for the USDA. Ms. Carpenter would be eligible for the loan forgiveness program in Section 1005 of ARPA, and future FSA loans, except for the fact that she is not a member of any of the racial groups that are eligible for loan forgiveness.

---

[1] Ms. Carpenter's loan was taken in her maiden name, Leisl Maria Stonum.

4

14.     Defendant Thomas J. Vilsack is the Secretary of Agriculture. He is responsible for leading the USDA, which includes the FSA. Under Section 1005 of ARPA, Defendant Vilsack is required to provide debt relief to certain farmers based on race. He is sued in his official capacity.

15.     Defendant Zach Ducheneaux is the Administrator of the FSA. Among other things, FSA oversees certain loan programs. Under Section 1005 of ARPA, FSA will provide debt relief to certain farmers with direct loans or USDA-backed loans based on race. He is sued in his official capacity.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this complaint under 28 U.S.C. §§ 1331 and 1343 because this case presents a substantial question of federal law, specifically whether Section 1005 of ARPA—and Defendants' implementation of that section—violates the United States Constitution's guarantee of equal protection of the laws.

17.     This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

18.     Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1). A substantial part of the events giving rise to this claim occurred in this district, Defendants maintain one or more offices and employees in this district, a substantial part of the property subject to this action is situated in this district, and a plaintiff resides in this district.

### Ms. Carpenter is a Rancher with Outstanding Debt on an FSA Loan

19.     Despite being the young mother of an 18-month old son, Ms. Carpenter continues to ranch in Albany County, Wyoming.

20.     Ms. Carpenter raises about 575 head of cattle and farms hay on her 160-acre ranch, which has been in her family since they homesteaded the land in 1894.

21.     Ms. Carpenter has FSA loans and is otherwise eligible for the loan forgiveness program in Section 1005 of ARPA, except that her ancestors were from Denmark, Norway, and Sweden, and she is commonly considered white or Caucasian.

**ER012**

22. Under existing law, Ms. Carpenter would be prohibited from obtaining further loans from the Department if she received any form of debt forgiveness on her FSA loans.

23. Ms. Carpenter's Promissory Note contains the following statement, on Page 1: "The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin . . .."

### President Biden Signs the American Rescue Plan Act

24. On March 11, 2021, President Biden signed ARPA into law.

25. In a Rose Garden ceremony, President Biden emphasized that the $1.9 trillion in spending authorized by ARPA was necessary in response to COVID-19. Biden said: "It directly addressed the emergency in this country. Because it focuses on what people need most." *See* President Joe Biden on the American Rescue Plan and recovery, CNBC YouTube Channel, at https://www.youtube.com/watch?v=dj2zCWetr1Y (Time Stamp 3:33).

26. In Section 1005 of ARPA, Congress appropriated "such sums as may be necessary" to pay for the cost of loan modifications and payments for "each socially disadvantaged farmer or rancher as of January 1, 2021." ARPA § 1005(a)(1)-(2).

27. Section 1005(a) requires Defendant Vilsack to use the appropriated funds to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021." ARPA § 1005(a)(2).

28. A "socially disadvantaged farmer or rancher" has "indebtedness" if that farmer or rancher owes money on a "direct farm loan made by the Secretary" or a "farm loan guaranteed by the Secretary." ARPA § 1005(a)(2)(A)-(B).

29. Finally, Section 1005(a)(3) states that "the term 'socially disadvantaged famer or rancher' has the meaning given in section 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990 (7 U.S.C. § 2279(a))." That Act defines "socially disadvantaged farmer or rancher" as "a farmer or rancher who is a member of a socially disadvantaged group." 7 U.S.C. § 2279(a)(5). "Socially disadvantaged group," in turn, is defined as "a group whose members have

**ER013**

been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." 7 U.S.C. § 2279(a)(6).

30.     Defendants Vilsack and Ducheneaux are responsible for the implementation of the loan forgiveness provisions in ARPA Section 1005.

31.     On March 25, 2021, Defendant Vilsack offered written testimony to the House of Representatives Committee on Agriculture. *See Opening Statement of Thomas J. Vilsack Before the House Committee on Agriculture – Remarks as Prepared*, (March 25, 2021), at https://www.usda.gov/media/press-releases/2021/03/25/opening-statement-thomas-j-vilsack-house-committee-agriculture (last visited, May 24, 2021).

32.     In true doublespeak fashion, Defendant Vilsack claimed that he would be committed to rooting out discrimination within the Department: "I am here today to say that racism and discrimination have no place at the Department of Agriculture. I will not tolerate it, and I am committed to rooting it out and establishing a relationship with producers that is built on a commitment to equity, trust and customer service."

33.     On March 26, 2021, Defendant Ducheneaux authored a blog post detailing how FSA intends to implement Section 1005 of ARPA. *See* Zach Ducheneaux, "American Rescue Plan Socially Disadvantaged Farmer Debt Payments," (March 26, 2021), at https://www.farmers.gov/connect/blog/loans-and-grants/american-rescue-plan-socially-disadvantaged-farmer-debt-payments. According to this document: "USDA recognizes that socially disadvantaged farmers and ranchers have faced systemic discrimination with cumulative effects that have, among other consequences, led to a substantial loss in the number of socially disadvantaged producers, reduced the amount of farmland they control, and contributed to a cycle of debt that was exacerbated during the COVID-19 pandemic."

34.     Defendant Ducheneaux explained that through ARPA, FSA will provide "historic debt relief to socially disadvantaged producers including Black/African American, American Indian or Alaskan native, Hispanic or Latino, and Asian American or Pacific Islander."

**ER014**

35.     According to Defendant Ducheneaux, "[a]ny socially disadvantaged borrower with direct or guaranteed farm loans as well as Farm Storage Facility Loans qualifies." Defendant Ducheneaux defines "socially disadvantaged" borrowers as only those borrowers "with direct or guaranteed farm loans as well as Farm Storage Facility Loans" and who are members of one or more of the following racial groups: "Black/African American, American Indian or Alaskan native, Hispanic or Latino, and Asian American or Pacific Islander."

36.     On or about April 12, 2021, USDA updated its website to provide further information about the payments under Section 1005 of ARPA. The website confirms that only certain farmers will be eligible based on race: "Eligible borrowers include those who identify as one or more of the following: Black/African American, American Indian, Alaskan native, Hispanic/Latino, Asian American, or Pacific Islander." *See American Rescue Plan Debt Payments,* at https://www.farmers.gov/americanrescueplan.

37.     Although public officials have made stray comments about remedying past discrimination committed by the Department of Agriculture, Defendant Vilsack made clear the real reasons for ARPA's race classifications: "[T]hese provisions recognized that on top of the economic pain caused by the pandemic's impact on the economy and agriculture, socially disadvantaged farmers are also dealing with a disproportionate share of COVID infection rates, hospitalizations, death and economic hurt." *See id.* ("The law provides funding to address longstanding racial equity issues within the Department and *across agriculture*.") (emphasis added).

38.     To be clear, the program at issue does not target farmers or ranchers who suffered economic pain during the COVID-19 crisis. Nor does it target farmers or ranchers who contracted COVID-19. It does not even target farmers or ranchers who have suffered discrimination, much less at the hands of the Department of Agriculture. Under the relevant provisions, it forgives the loans of farmers or ranchers whose race matches the race of a group whose members have suffered discrimination, per the Department. (A farmer or rancher who is a member of a socially disadvantaged group.) As Secretary Vilsack stated in his testimony, part of his goal is to make it

8

**ER015**

1    clear to Congress and the public that "that prosperous farmers of color means a prosperous

2    agricultural sector and a prosperous America."

3        39.    In fact, socially disadvantaged farmers who were previously successful claimants

4    in class action settlements (e.g., Pigford, Keepseagle) and received debt forgiveness are eligible

5    for further debt forgiveness. *See American Rescue Plan Debt Payments FAQ*, at Question 3.

6        40.    The USDA has stated that individuals who receive loan forgiveness under the

7    ARPA will be eligible for future FSA loans. *See American Rescue Plan Debt Payments FAQ*, at

8    Question 29 at https://www.farmers.gov/americanrescueplan/arp-faq.

9        41.    As for timing and process, it appears that USDA will soon be reaching out to begin

10   providing payments to those individuals who meet the racial classifications, based on the

11   information in USDA's files. See *American Rescue Plan Debt Payments FAQ*, at Question 9-10

12   ("Question 9: Do I need to apply or take any action to receive a debt payment? A. No action on

13   your part is needed right now."); *see id.* at Question 10 ("Details of the process and your debt

14   payment    will    be    reviewed    with    you    prior    to    final    processing.")    at

15   https://www.farmers.gov/americanrescueplan/arp-faq.

16

17       42.    Upon information and belief, the USDA further instructs potential applicants who

18   are "uncertain of [their demographic designation on file at FSA" to call their local service center

19   to verify their classification on record, and to update as needed.

20       43.    Upon information and belief, on or about May 4, 2021, USDA sent correspondence

21   to borrowers who have not previously designated details about their demographic information

22   including race and ethnicity data, to "encourage" them to contact their local FSA Service center to

23   update their demographic information in FSA records.

24       44.    Beginning in the week of May 24, 2021 and continuing through June 2021, Direct

25   Loan borrowers will receive a letter from FSA, outlining the payment they will receive, and that

26   they will need to sign and return it. Guaranteed Loan borrowers will be available within 120 days.

27   *See American Rescue Plan Debt Payments*, at https://www.farmers.gov/americanrescueplan.

28

**ER016**

45.     The FSA will begin to process signed letters for payments in June.  About three weeks after a signed letter is received, qualified socially disadvantaged borrowers will receive 20% of their qualified debt by direct deposit which may be used for tax liabilities and other fees associated with payment of the debt. Payments will be issued on a rolling basis. *See American Rescue Plan Debt Payments,* https://www.farmers.gov/americanrescueplan.

46.     Defendants are currently implementing and will continue to implement Section 1005 of ARPA to impose a race-based loan forgiveness program.  Defendants' implementation includes the expenditure of federal funds, and Defendants will begin processing letters for payment in June of 2021.

### Injury to Ms. Carpenter

47.     Plaintiff is a rancher who has an FSA direct farm loan and is otherwise eligible for loan forgiveness under Section 1005 of ARPA.

48.     But because Plaintiff is white, she is ineligible for the loan forgiveness benefit under Section 1005 of ARPA as administered by Defendants.

49.     Were Plaintiff eligible for the loan forgiveness benefit, she would have the opportunity to make additional investments in her property, expand her ranch, purchase equipment and supplies, and otherwise support her family. Because Plaintiff is ineligible to receive loan forgiveness solely due to her race, she has been denied the equal protection of the laws and has therefore suffered harm.

50.     Because Plaintiff is considered white, any other farm loan forgiveness she could obtain from USDA would not be up to 120% and would not cover tax liabilities.

51.     If Plaintiff obtained any form of forgiveness of her loan, then she would not be eligible for any future direct or guaranteed loans, or loan forgiveness on a direct loan, from the Department.

### CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

10

**ER017**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(Fifth Amendment of the United States Constitution)
(Equal Protection Violation)

52.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

53.    "[T]he moral imperative of racial neutrality is the driving force of the Equal Protection Clause, and racial classifications are permitted only as a last resort." *Bartlett v. Strickland*, 556 U.S. 1, 21 (2009). "[A]ll racial classifications, imposed by whatever federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny. *Adarand*, 515 U.S. at 227. "Under strict scrutiny, the government has the burden of proving that racial classifications are narrowly tailored measures that further compelling governmental interests." *Johnson v. California*, 543 U.S. at 505. When the government invokes an interest as meeting strict scrutiny, the court must closely examine how the government has gone about satisfying that interest. *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 299 (2013) ("Strict scrutiny does not permit a court to accept a school's assertion that its admissions process uses race in a permissible way without closely examining how the process works in practice.").

54.    "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

55.    Section 1005 of ARPA imposes racial classifications. Farmers or ranchers with direct farm loans, guaranteed farm loans, or Farm Storage Facility Loans qualify for loan forgiveness only if they are members of one of the following racial groups: Black/African American, American Indian or Alaskan native, Hispanic or Latino, or Asian American or Pacific Islander.

56.    Defendants are responsible for interpreting and implementing Section 1005 of ARPA.

11

**ER018**

57.    Although Plaintiff is a rancher with a direct FSA loan, and otherwise eligible for the loan forgiveness program under Section 1005 of ARPA, she is ineligible for this federal benefit because she is white.

58.    Plaintiff is harmed by the Defendants' racial classifications because, but for Plaintiff's skin color, she would be receiving up to 120% of the value of her outstanding debt and she would use that money to benefit her ranch and family.

59.    The racial classifications under Section 1005 of ARPA do not satisfy strict scrutiny. There is no compelling interest in providing subsidies by scattershot to farmers and ranchers simply on the basis of their membership in a racial group.

60.    Remedying societal discrimination does not constitute a compelling interest under the Fifth Amendment's equal protection principles. *Fisher v. Univ. of Texas at Austin*, 570 U.S. at 318 (permitting such an interest would have "no logical stopping point").

61.    Nor is Section 1005 narrowly tailored, since it is both underinclusive—it does not provide relief to white or Caucasian farmers who have contracted COVID-19 or suffered due to COVID-19—and overinclusive—it includes farmers or ranchers who may meet the racial qualifications, but who have not contracted COVID-19, suffered uniquely due to COVID-19, or suffered discrimination on any basis.

62.    Because the racial classifications under Section 1005 of ARPA are not narrowly tailored to serve a compelling government interest, they cannot survive strict scrutiny.

## SECOND CLAIM FOR RELIEF

### (Illegally Allowing Future Eligibility)

63.    Plaintiff realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

64.    Prior to the enactment of the ARPA, the Department was prohibited, by statute, from providing future loans to persons who receive forgiveness of a direct or guaranteed loan, except in narrowly specified circumstances. *See* 7 U.S.C. § 2008h(b).

12

**ER019**

65.    Prior to the enactment of the ARPA, the Department was prohibited, by statute, from providing debt forgiveness on a direct loan to any person who had previously received debt forgiveness. *See* 7 U.S.C. § 2008h(c).

66.    As the ARPA was originally proposed, Section 1005 provided that the provision of a payment under paragraph (2) to a socially disadvantaged farmer or rancher shall not affect the eligibility of such farmer or rancher for a farm loan after the date on which the payment is provided. *See* American Rescue Plan Act of 2021, 117 H.R. 1319, 2021 H.R. 1319, 117 H.R. 1319, Title I, § 1005(3) ("EFFECT ON ELIGIBILITY.-- Notwithstanding any other provision of law, the provision of a payment under paragraph (2) to a socially disadvantaged farmer or rancher shall not affect the eligibility of such farmer or rancher for a farm loan after the date on which the payment is provided.") (proposed language).

67.    This provision did not make it into Section 1005 as enacted.

68.    Yet on or about May 21, 2021, citing no statutory authority, the Department stated, *ipse dixit*, on its website that persons who receive loan forgiveness under the ARPA will be eligible for future FSA loans.    *See American Rescue Plan Debt Payments FAQ*, at Question 29 https://www.farmers.gov/americanrescueplan/arp-faq.

69.    Because the Department has no authority to treat anyone who received loan forgiveness as eligible for future loans, but has said that it will do so anyway, it will be acting unlawfully.

**RELIEF REQUESTED**

Plaintiff respectfully requests that this Court:

A.     Enter a declaratory judgment that the racial classifications under Section 1005 of ARPA are unconstitutional under the Equal Protection principles of the Fifth Amendment of the United States Constitution.

B.     Enter a declaratory judgment that Plaintiff is eligible to receive loan forgiveness pursuant to ARPA.

C.     Enter a declaratory judgment that providing further loans to those who receive loan forgiveness is illegal.

D.     Enter an order permanently enjoining Defendants from applying racial classifications when determining eligibility for loan modifications and payments under Section 1005 of ARPA.

E.     Enter an order permanently enjoining Defendants from declaring Plaintiff ineligible for future FSA loan participation, to the extent that such participation is permitted for recipients of ARPA relief.

F.     In the alternative, enjoin Defendants from enforcing Section 1005 of the American Rescue Plan of 2021 in its entirety and enjoining Defendants from distributing loan assistance under Section 1005 to farmers and ranchers.

G.     Enter an award for nominal damages of $1.00.

H.     Award Plaintiff such costs and attorney fees as allowed by law; and

I.     Grant Plaintiff such other and further relief as the Court deems appropriate.

14

**ER021**

DATED this 24th day of May, 2021.

Respectfully submitted,

/s/ Timothy M. Stubson
Timothy M. Stubson (Bar No. 6-3144)
Crowley Fleck, PLLP
111 W. 2nd Street, Suite 220
Casper, WY 82601
(307) 265-2279
tstubson@crowleyfleck.com

William E. Trachman*
Corey C. Bartkus*
(*pro hac vice pending)
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org

Kimberly S. Hermann*
Braden Boucek*
(*pro hac vice pending)
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, GA 30075
Telephone: (770) 977-2131
khermann@southeasternlegal.org
bboucek@southeasternlegal.org

Attorneys for Plaintiff Leisl M. Carpenter

**ER022**

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

LEISL M. CARPENTER

## DEFENDANTS

THOMAS J. VILSACK and ZACH DUCHENEAUX

**(b)** County of Residence of First Listed Plaintiff    Albany County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Washington County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

William E. Trachman|Mountain States Legal Foundation
2596 S Lewis Way | Lakewood, CO | 303.292.2021

Attorneys *(If Known)*

Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1   U.S. Government    Plaintiff | ☐ 3   Federal Question    *(U.S. Government Not a Party)* |
| ☒ 2   U.S. Government    Defendant | ☐ 4   Diversity    *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place   of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated *and* Principal Place   of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a   Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - |    of Property 21 USC 881 | 423 Withdrawal | 376 Qui Tam (31 USC |
| 130 Miller Act | 315 Airplane Product |    Product Liability | 690 Other |    28 USC 157 |    3729(a)) |
| 140 Negotiable Instrument |    Liability | 367 Health Care/ | | **INTELLECTUAL** | 400 State Reapportionment |
| 150 Recovery of Overpayment | 320 Assault, Libel & |    Pharmaceutical | | **PROPERTY RIGHTS** | 410 Antitrust |
|    & Enforcement of Judgment |    Slander |    Personal Injury | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 330 Federal Employers' |    Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted |    Liability | 368 Asbestos Personal | | 835 Patent - Abbreviated | 460 Deportation |
|    Student Loans | 340 Marine |    Injury Product | |    New Drug Application | 470 Racketeer Influenced and |
|    (Excludes Veterans) | 345 Marine Product |    Liability | | 840 Trademark |    Corrupt Organizations |
| 153 Recovery of Overpayment |    Liability | **PERSONAL PROPERTY** | **LABOR** | 880 Defend Trade Secrets | 480 Consumer Credit |
|    of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | 710 Fair Labor Standards |    Act of 2016 |    (15 USC 1681 or 1692) |
| 160 Stockholders' Suits | 355 Motor Vehicle | 371 Truth in Lending |    Act | | 485 Telephone Consumer |
| 190 Other Contract |    Product Liability | 380 Other Personal | 720 Labor/Management | **SOCIAL SECURITY** |    Protection Act |
| 195 Contract Product Liability | 360 Other Personal |    Property Damage |    Relations | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise |    Injury | 385 Property Damage | 740 Railway Labor Act | 862 Black Lung (923) | 850 Securities/Commodities/ |
| | 362 Personal Injury - |    Product Liability | 751 Family and Medical | 863 DIWC/DIWW (405(g)) |    Exchange |
| |    Medical Malpractice | |    Leave Act | 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement | | 893 Environmental Matters |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee |    Income Security Act | **FEDERAL TAX SUITS** | 895 Freedom of Information |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate | | 870 Taxes (U.S. Plaintiff |    Act |
| 240 Torts to Land | 443 Housing/ |    Sentence | |    or Defendant) | 896 Arbitration |
| 245 Tort Product Liability |    Accommodations | 530 General | | 871 IRS—Third Party | 899 Administrative Procedure |
| 290 All Other Real Property | 445 Amer. w/Disabilities - | 535 Death Penalty | **IMMIGRATION** |    26 USC 7609 |    Act/Review or Appeal of |
| |    Employment | **Other:** | 462 Naturalization Application | |    Agency Decision |
| | 446 Amer. w/Disabilities - | 540 Mandamus & Other | 465 Other Immigration | | 950 Constitutionality of |
| |    Other | 550 Civil Rights |    Actions | |    State Statutes |
| | 448 Education | 555 Prison Condition | | | |
| | | 560 Civil Detainee - | | | |
| | |    Conditions of | | | |
| | |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1   Original    Proceeding | ☐ 2   Removed from    State Court | ☐ 3   Remanded from    Appellate Court | ☐ 4   Reinstated or    Reopened | ☐ 5   Transferred from    Another District    *(specify)* | ☐ 6   Multidistrict    Litigation -    Transfer |

☐ 8   Multidistrict    Litigation -    Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000d and 7 C.F.R. 15 Subpart

Brief description of cause:
Discrimination on the grounds of race, color, or national origin in any program that received federal funds

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE            DOCKET NUMBER

DATE   5/24/21

SIGNATURE OF ATTORNEY OF RECORD
/s/ William E. Trachman

### FOR OFFICE USE ONLY

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE   NDF      MAG. JUDGE   KHR

ER023

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Wyoming

| | |
|---|---|
| LEISL M. CARPENTER | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )   Civil Action No.   21-CV-103 |
| THOMAS J. VILSACK, in his official capacity as | ) |
| Secretary of the United States Department of | ) |
| Agriculture, and ZACH DUCHENEAUX, in his offical | ) |
| capacity as Administrator of the Farm Service Agency | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Tom Vilsack
Secretary of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

William E. Trachman
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO  80227

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



*CLERK OF COURT*

Date:   5/24/2021   _____

*Signature of Clerk or Deputy Clerk*

**ER024**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*   Tom Vilsack

was received by me on *(date)*   May 24, 2021   .

❏ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ ☒ Other *(specify):*

| Tom Vilsack | Attorney General of the United States | Civil Process Clerk |
| Secretary of Agriculture | U.S. Department of Justice | United States Attorney's Office |
| 1400 Independence Ave., S.W. | 950 Pennsylvania Avenue, NW | J.C. O'Mahoney Federal Courthouse 2120 |
| Washington, D.C. 20250 | Washington, DC 20530-0001 | Capitol Avenue, Suite 4000 Cheyenne, WY 82001 |

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:   May 26, 2021

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**ER025**

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Wyoming

LEISL M. CARPENTER )
)
)
)
_____ )
*Plaintiff(s)* )
v. ) Civil Action No.   21-CV-103
)
THOMAS J. VILSACK, in his official capacity as )
Secretary of the United States Department of )
Agriculture, and ZACH DUCHENEAUX, in his offical )
capacity as Administrator of the Farm Service Agency )
_____ )
*Defendant(s)* )

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Zach Ducheneaux
Administrator of the Farm Service Agency
U.S. Department of Agriculture
1400 Independence Ave., S.W..
STOP. 0506
Washington, D.C. 20250-0506

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

William E. Trachman
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO  80227

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



CLERK OF COURT

Date:   5/24/2021   _____
*Signature of Clerk or Deputy Clerk*

**ER026**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*      Zach Ducheneaux

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

☒ Other *(specify):*

| Zach Ducheneaux | Attorney General of the United States | Civil Process Clerk |
| Administrator of the Farm Service Agency | U.S. Department of Justice | United States Attorney's Office |
| U.S. Department of Agriculture | 950 Pennsylvania Avenue, NW | J.C. O'Mahoney Federal Courthouse |
| 1400 Independence Ave., S.W.. | Washington, DC 20530-0001 | 2120 Capitol Avenue, Suite 4000 |
| STOP. 0506 | | Cheyenne, WY 82001 |
| Washington, D.C. 20250-0506 | | |

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

### Mailed via Certified Mail - Return Receipt Requested

I declare under penalty of perjury that this information is true.


Date: _____        _____
                                                    *Server's signature*

                                                    _____
                                                    *Printed name and title*


                                                    _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

# ER027

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

**FILED**

4:41 pm, 5/25/21

**Margaret Botkins
Clerk of Court**

| | | |
|---|---|---|
| LEISL M. CARPENTER, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | Civil Action No. 21-CV-00103-NDF |
| | ) | |
| | ) | |
| THOMAS J. VILSACK, in his official | ) | |
| capacity as Secretary of the United States | ) | |
| Department of Agriculture, and | ) | |
| | ) | |
| ZACH DUCHENEAUX, in his official | ) | |
| capacity as Administrator of the Farm | ) | |
| Service Agency, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING ADMISSION PRO HAC VICE OF BRADEN H. BOUCEK, COREY C. BARTKUS, KIMBERLY S. HERMANN, AND WILLIAM E. TRACHMAN AS COUNSEL FOR PLAINTIFF LEISL M. CARPENTER

**THIS MATTER** having come before the Court upon the motion of counsel for the Plaintiff, Leisl M. Carpenter, pursuant to Rule 84.2(b) of the Local Rules of the United States District Court for the District of Wyoming, for the purpose of admitting Braden H. Boucek, Corey C. Bartkus, Kimberly S. Hermann, and William E. Trachman as Pro Hac Vice counsel in the District of Wyoming. The Court has reviewed this matter, and finds that the motion should be granted. Accordingly,

**ER028**

**IT IS HEREBY ORDERED** that Braden H. Boucek, Corey C. Bartkus, Kimberly S. Hermann, and William E. Trachman are hereby admitted to practice before this Court for all purposes in this matter.

**IT IS FURTHER ORDERED** that local counsel shall be present in Court during all proceedings in connection with the case, unless excused by the Court, and shall have full authority to act for an on behalf of the client in all matters including pretrial conferences, as well as trial or any other hearings.  Any notice, pleading or other paper shall be served on all counsel of record including local counsel.

**DATED** this 25th of May, 2021.

KELLY H. RANKIN,
UNITED STATES MAGISTRATE JUDGE

**ER029**

Timothy M. Stubson (Bar No. 6-3144)
CROWLEY FLECK, PLLP
111 W. 2nd Street, Suite 220
Casper, WY 82601
(307) 265-2279
tstubson@crowleyfleck.com

William E. Trachman
Corey C. Bartkus
MOUNTAIN STATES LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org
corey@mslegal.org

Kimberly S. Hermann
Braden Boucek
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Telephone: (770) 977-2131
khermann@southeasternlegal.org
bboucek@southeasternlegal.org

*Attorneys for Plaintiff Leisl M. Carpenter*

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| LEISL M. CARPENTER,<br><br>          Plaintiff,<br><br>               v.<br><br>THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, and<br><br>ZACH DUCHENEAUX, in his official capacity as Administrator of the Farm Service Agency,<br><br>Defendants. | Case No. 0:21-cv-00103-NDF<br><br><br>**NOTICE OF ENTRY OF APPEARANCE OF WILLIAM E. TRACHMAN TO APPEAR *PRO HAC VICE*** |

**ER030**

To the Clerk of the Court and all parties of record:

Pursuant to LCvR 84.3(b)(2), William E. Trachman, hereby enters his appearance to appear *pro hac vice* in this action as counsel for Plaintiff, Leisl M. Carpenter.  The Clerk of the Court is respectfully requested to add Mr. Trachman's name to the list of attorneys of record.  Mr. Trachman is registered for ECF and will receive copies of filings, notices and orders electronically.

Mr. Trachman's contact information is as follows:

William E. Trachman
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
wtrachman@mslegal.org

DATED this 27th day of May 2021.

Respectfully submitted,

*/s/ William E. Trachman*

William E. Trachman, CO Bar No. 45684
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
wtrachman@mslegal.org

*Attorney for Plaintiff Leisl M. Carpenter*

**ER031**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2021, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF system which sent notification of such filing to all counsel of record of this matter.

*/s/ William E. Trachman*
William E. Trachman

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*     Tom Vilsack

was received by me on *(date)*     May 24, 2021      .

❐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

☒ Other *(specify):*   | Tom Vilsack<br>Secretary of Agriculture<br>1400 Independence Ave., S.W.<br>Washington, D.C. 20250 | Attorney General of the United States<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-000 | Civil Process Clerk<br>United States Attorney's Office<br>J.C. O'Mahoney Federal Courthouse<br>2120 Capitol Avenue, Suite 4000<br>Cheyenne, WY 82001 |

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

**Mailed via Certified Mail | Return Receipt Requested**

I declare under penalty of perjury that this information is true.

Date:   **May 26, 2021**

                                                    */s/ Meri Pincock*
                                                    *Server's signature*

                                        **Meri Pincock | Paralegal**
                                                    *Printed name and title*

                                        **Mountain States Legal Foundation**
                                        **2596 S Lewis Way**
                                        **Lakewood, CO  80227**
                                                    *Server's address*

Additional information regarding attempted service, etc:

**ER033**

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Wyoming

| | |
|---|---|
| LEISL M. CARPENTER | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| THOMAS J. VILSACK, in his official capacity as | ) |
| Secretary of the United States Department of | ) |
| Agriculture, and ZACH DUCHENEAUX, in his offical | ) |
| capacity as Administrator of the Farm Service Agency | ) |
| *Defendant(s)* | ) |

Civil Action No.    21-CV-103

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Tom Vilsack
Secretary of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    William E. Trachman
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO  80227

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



*CLERK OF COURT*

Date:   5/24/2021  _____

_____
*Signature of Clerk or Deputy Clerk*

**ER034**

# USPS Tracking®

FAQs ›

## Track Another Package +

**Tracking Number:** 70042510000619857294

Remove ✕

Your item was delivered to the front desk, reception area, or mail room at 11:27 am on June 1, 2021 in WASHINGTON, DC 20250.

## ✓ Delivered, Front Desk/Reception/Mail Room

June 1, 2021 at 11:27 am
WASHINGTON, DC 20250

Get Updates ⌄



Text & Email Updates

Tracking History

Product Information

See Less ⌃

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**ER035**

Page: 39   Date Filed: 01/31/2023   Document: 01011080323   Appellate Case: 22-8079

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*    Tom Vilsack

was received by me on *(date)*    May 24, 2021    .

❏ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

☒ Other *(specify):*

| Tom Vilsack | Attorney General of the United States | Civil Process Clerk |
| Secretary of Agriculture | U.S. Department of Justice | United States Attorney's Office |
| 1400 Independence Ave., S.W. | 950 Pennsylvania Avenue, NW | J.C. O'Mahoney Federal Courthouse |
| Washington, D.C. 20250 | Washington, DC 20530-000 | 2120 Capitol Avenue, Suite 4000 |
| | | Cheyenne, WY 82001 |

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

**Mailed via Certified Mail | Return Receipt Requested**

I declare under penalty of perjury that this information is true.

Date:   **May 26, 2021**

_____                    */s/ Meri Pincock*
                                    *Server's signature*

                            **Meri Pincock | Paralegal**
                                    *Printed name and title*

                            **Mountain States Legal Foundation**
                            **2596 S Lewis Way**
                            **Lakewood, CO  80227**
                                    *Server's address*

Additional information regarding attempted service, etc:

**ER036**

Appellate Case: 22-8079    Document: 010110806323    Date Filed: 01/31/2023    Page: 41



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |

Tot...

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

5/26

7004 2510 0006 1985 7324

PS Form 3800, June 2002                See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

9590 9402 2392 6249 8054 44

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                   ☐ Agent
                                    ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

JUN 0 2 2021

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...stricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)

7004 2510 0006 1985 7324

PS Form 3811, July 2015 PSN 7530-02-000-9053            Domestic Return Receipt

**ER037**

AO 440 (Rev. 06/12)  Summons in a Civil Action

*attorney General*

# UNITED STATES DISTRICT COURT
### for the
### District of Wyoming

*Vislack 9*
*Duchereaux*

|  |  |
|---|---|
| LEISL M. CARPENTER | ) |
|  | ) |
|  | ) |
|  | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| THOMAS J. VILSACK, in his official capacity as | ) |
| Secretary of the United States Department of | ) |
| Agriculture, and ZACH DUCHENEAUX, in his offical | ) |
| capacity as Administrator of the Farm Service Agency | ) |
|  | ) |
| *Defendant(s)* | ) |

Civil Action No.    21-CV-103

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Tom Vilsack
Secretary of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  William E. Trachman
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO  80227

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



*CLERK OF COURT*

Date:   5/24/2021

*Kim Blonigen*

*Signature of Clerk or Deputy Clerk*

Page: 42        Date Filed: 01/31/2023        Document: 010110806323        Appellate Case: 22-8079

**ER038**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*    Tom Vilsack

was received by me on *(date)*    May 24, 2021    .

❏ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ ☒ Other *(specify)*:

| Tom Vilsack | Attorney General of the United States | Civil Process Clerk |
| Secretary of Agriculture | U.S. Department of Justice | United States Attorney's Office |
| 1400 Independence Ave., S.W. | 950 Pennsylvania Avenue, NW | J.C. O'Mahoney Federal Courthouse |
| Washington, D.C. 20250 | Washington, DC 20530-000 | 2120 Capitol Avenue, Suite 4000 |
| | | Cheyenne, WY 82001 |

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

**Mailed via Certified Mail | Return Receipt Requested**

I declare under penalty of perjury that this information is true.

Date:    **May 26, 2021**                    */s/ Meri Pincock*
                                            *Server's signature*

                                    **Meri Pincock | Paralegal**
                                            *Printed name and title*

                                    **Mountain States Legal Foundation**
                                    **2596 S Lewis Way**
                                    **Lakewood, CO  80227**
                                            *Server's address*

Additional information regarding attempted service, etc:

Page: 43     Date Filed: 01/31/2023     Document: 010110806323     Appellate Case: 22-8079

**ER039**

Date Filed: 01/31/2023    Page: 44

Document: 010110806323

Appellate Case: 22-8079



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total | |

7004 2510 0006 1985 7317

5/26

Sent To   Civil Process Clerk
Street,    United States Attorney's Office
or PO E   J.C. O'Mahoney Fed. Courthouse
City, St   2120 Capitol Avenue, Suite 4000
          Cheyenne, WY 82001

PS Form 3800, June 2002                    See Reverse for Inst

**SENDER:** *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Civil Process Clerk
United States Attorney's Office
J.C. O'Mahoney Fed. Courthouse
2120 Capitol Avenue, Suite 4000
Cheyenne, WY 82001

9590 9402 2392 6249 8054 37

2. Article Number *(Transfer from service label)*
7004 2510 0006 1985 7317

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053              Domestic Return Receipt

**ER040**

AO 440 (Rev. 06/12)  Summons in a Civil Action

*Civil Process*

# UNITED STATES DISTRICT COURT

*Cheyenne, Wy.*

for the

District of Wyoming

*Tom + Zach*

<table>
<tr><td>LEISL M. CARPENTER</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>*Plaintiff(s)*</td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Civil Action No.    21-CV-103</td></tr>
<tr><td>THOMAS J. VILSACK, in his official capacity as<br>Secretary of the United States Department of<br>Agriculture, and ZACH DUCHENEAUX, in his offical<br>capacity as Administrator of the Farm Service Agency</td><td>)<br>)<br>)<br>)</td><td></td></tr>
<tr><td>*Defendant(s)*</td><td>)</td><td></td></tr>
</table>

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Tom Vilsack
Secretary of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: William E. Trachman
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO  80227

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date:   5/24/2021



*CLERK OF COURT*

*Kim Blonigen*

*Signature of Clerk or Deputy Clerk*

Page: 45     Date Filed: 01/31/2023     Document: 010110806323     Appellate Case: 22-8079

**ER041**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*    Zach Ducheneaux

was received by me on *(date)*    May 24, 2021    .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

☒ Other *(specify):*

| | | |
|---|---|---|
| Zach Ducheneaux<br>Administrator of the Farm Service Agency<br>U.S. Department of Agriculture<br>1400 Independence Ave., S.W..<br>STOP. 0506<br>Washington, D.C. 20250-0506 | Attorney General of the United States<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | Civil Process Clerk<br>United States Attorney's Office<br>J.C. O'Mahoney Federal Courthouse<br>2120 Capitol Avenue, Suite 4000<br>Cheyenne, WY 82001 |

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

**Mailed via Certified Mail - Return Receipt Requested**

I declare under penalty of perjury that this information is true.

Date:   May 26, 2021                    */s/ Meri Pincock*
                                         *Server's signature*

                                         Meri Pincock
                                         *Printed name and title*

                                         Mountain States Legal Foundation
                                         2596 S Lewis Way
                                         Lakewood, CO  80227
                                         *Server's address*

Additional information regarding attempted service, etc:

**ER042**

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Wyoming

| | | |
|---|---|---|
| LEISL M. CARPENTER | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No.   21-CV-103 |
| THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, and ZACH DUCHENEAUX, in his offical capacity as Administrator of the Farm Service Agency | ) ) ) ) | |
| *Defendant(s)* | ) | |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Zach Ducheneaux
Administrator of the Farm Service Agency
U.S. Department of Agriculture
1400 Independence Ave., S.W..
STOP. 0506
Washington, D.C. 20250-0506

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   William E. Trachman
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO  80227

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



CLERK OF COURT

Date:   5/24/2021    _____
*Signature of Clerk or Deputy Clerk*

Page: 47   Date Filed: 01/31/2023   Document: 010110806323   Appellate Case: 22-8079

**ER043**

# USPS Tracking®

FAQs >

## Track Another Package +

**Tracking Number:** 70042510000619857300                    Remove ✕

Your item was delivered to the front desk, reception area, or mail room at 11:27 am on June 1, 2021 in WASHINGTON, DC 20250.

## ⊘ Delivered, Front Desk/Reception/Mail Room

June 1, 2021 at 11:27 am
WASHINGTON, DC 20250

---

**Text & Email Updates**

Select what types of updates you'd like to receive

**Text**      **Email**

☐          ☐      All Below Updates

☐          ☐      Expected Delivery Updates ⓘ

☐          ☐      Day of Delivery Updates ⓘ

☐          ☐      Package Delivered ⓘ

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage | |

5/26 Postmark Here

*Sent To*
Zach Ducheneaux
Administrator of the Farm Service Agency

*Street, Apt. No. or PO Box No.*
U.S. Department of Agriculture
1400 Independence Ave., S.W.. STOP. 0506

*City, State, ZIP+4*
Washington, D.C. 20250-0506

PS Form 3800, June 2002                        See Reverse for Instructions

7004 2510 0004 1985 7300

**ER044**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*     Zach Ducheneaux

was received by me on *(date)*     May 24, 2021     .

❑ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑✗ Other *(specify):*

| Zach Ducheneaux | Attorney General of the United States | Civil Process Clerk |
|---|---|---|
| Administrator of the Farm Service Agency | U.S. Department of Justice | United States Attorney's Office |
| U.S. Department of Agriculture | 950 Pennsylvania Avenue, NW | J.C. O'Mahoney Federal Courthouse |
| 1400 Independence Ave., S.W.. | Washington, DC 20530-0001 | 2120 Capitol Avenue, Suite 4000 |
| STOP. 0506 | | Cheyenne, WY 82001 |
| Washington, D.C. 20250-0506 | | |

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

**Mailed via Certified Mail - Return Receipt Requested**

I declare under penalty of perjury that this information is true.

Date:     May 26, 2021

                                             */s/ Meri Pincock*
                                        _____
                                                *Server's signature*

                                             Meri Pincock
                                        _____
                                                *Printed name and title*

                                             Mountain States Legal Foundation
                                             2596 S Lewis Way
                                             Lakewood, CO  80227
                                        _____
                                                *Server's address*

Additional information regarding attempted service, etc:

Page: 49     Date Filed: 01/31/2023     Document: 010110806323     Appellate Case: 22-8079

**ER045**

Appellate Case: 22-8079    Document: 010110806323    Date Filed: 01/31/2023    Page: 50

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ | |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total | | |

Postmark Here

7004 2510 0006 1985 7324

Sent To
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

5/26

PS Form 3800, June 2002                     See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

9590 9402 2392 6249 8054 44

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                        ☐ Agent
                                         ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

JUN 02 2021

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)
7004 2510 0006 1985 7324

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

ER046

Page: 51    Date Filed: 01/31/2023    Document: 010110806323    Appellate Case: 22-8079

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of Wyoming

| | |
|---|---|
| LEISL M. CARPENTER | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | )   Civil Action No.    21-CV-103 |
| THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, and ZACH DUCHENEAUX, in his offical capacity as Administrator of the Farm Service Agency | ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Zach Ducheneaux
Administrator of the Farm Service Agency
U.S. Department of Agriculture
1400 Independence Ave., S.W..
STOP. 0506
Washington, D.C. 20250-0506

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

William E. Trachman
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO  80227

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



*CLERK OF COURT*

Date:   5/24/2021 _____    _____
                                                              *Signature of Clerk or Deputy Clerk*

**ER047**

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Wyoming

|  |  |
|---|---|
| LEISL M. CARPENTER | ) |
|  | ) |
|  | ) |
|  | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No.   21-CV-103 |
| THOMAS J. VILSACK, in his official capacity as | ) |
| Secretary of the United States Department of | ) |
| Agriculture, and ZACH DUCHENEAUX, in his offical | ) |
| capacity as Administrator of the Farm Service Agency | ) |
|  | ) |
| *Defendant(s)* | ) |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Tom Vilsack
Secretary of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  William E. Trachman
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO  80227

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



*CLERK OF COURT*

Date:  5/24/2021 _____

_____
*Signature of Clerk or Deputy Clerk*

Page: 52        Date Filed: 01/31/2023        Document: 010110806323        Appellate Case: 22-8079

**ER048**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*    Zach Ducheneaux

was received by me on *(date)*    May 24, 2021    .

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☒ Other *(specify):*

| Zach Ducheneaux | Attorney General of the United States | Civil Process Clerk |
|---|---|---|
| Administrator of the Farm Service Agency | U.S. Department of Justice | United States Attorney's Office |
| U.S. Department of Agriculture | 950 Pennsylvania Avenue, NW | J.C. O'Mahoney Federal Courthouse |
| 1400 Independence Ave., S.W.. | Washington, DC 20530-0001 | 2120 Capitol Avenue, Suite 4000 |
| STOP. 0506 | | Cheyenne, WY 82001 |
| Washington, D.C. 20250-0506 | | |

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

### Mailed via Certified Mail - Return Receipt Requested

I declare under penalty of perjury that this information is true.

Date:    May 26, 2021                    */s/ Meri Pincock*

                                        *Server's signature*

                            Meri Pincock

                                        *Printed name and title*

                            Mountain States Legal Foundation
                            2596 S Lewis Way
                            Lakewood, CO  80227

                                        *Server's address*

Additional information regarding attempted service, etc:

Page: 53   Date Filed: 01/31/2023   Document: 010110806323   Appellate Case: 22-8079

**ER049**

Page: 54

Date Filed: 01/31/2023

Document: 010110806323

Appellate Case: 22-8079



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage $
Certified Fee
Return Receipt Fee
(Endorsement Required)
Restricted Delivery Fee
(Endorsement Required)
Total

5/26

Sent To   Civil Process Clerk
Street,   United States Attorney's Office
or PO B   J.C. O'Mahoney Fed. Courthouse
City, Si   2120 Capitol Avenue, Suite 4000
          Cheyenne, WY 82001

7004 2510 0006 1985 7317

PS Form 3800, June 2002                See Reverse for Inst...

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Civil Process Clerk
   United States Attorney's Office
   J.C. O'Mahoney Fed. Courthouse
   2120 Capitol Avenue, Suite 4000
   Cheyenne, WY 82001

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

9590 9402 2392 6249 8054 37

2. Article Number (Transfer from service label)
7004 2510 0006 1985 7317

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

**ER050**

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Wyoming

<table>
<tr><td>LEISL M. CARPENTER<br><br><br><br><br>_____<br><i>Plaintiff(s)</i><br>v.<br>THOMAS J. VILSACK, in his official capacity as<br>Secretary of the United States Department of<br>Agriculture, and ZACH DUCHENEAUX, in his offical<br>capacity as Administrator of the Farm Service Agency<br>_____<br><i>Defendant(s)</i></td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Civil Action No.    21-CV-103</td></tr>
</table>

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Zach Ducheneaux
Administrator of the Farm Service Agency
U.S. Department of Agriculture
1400 Independence Ave., S.W..
STOP. 0506
Washington, D.C. 20250-0506

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

William E. Trachman
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO  80227

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



CLERK OF COURT

Date: 5/24/2021 _____      _____
                                              *Signature of Clerk or Deputy Clerk*

Page: 55

Date Filed: 01/31/2023

Document: 010110806323

Appellate Case: 22-8079

**ER051**

AO 440 (Rev. 06/12)  Summons in a Civil Action

*Civil Process*
*Cheyenne, Wy.*
*Tom & Zach*

# UNITED STATES DISTRICT COURT
### for the
### District of Wyoming

| | | |
|---|---|---|
| LEISL M. CARPENTER | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No.   21-CV-103 |
| THOMAS J. VILSACK, in his official capacity as | ) | |
| Secretary of the United States Department of | ) | |
| Agriculture, and ZACH DUCHENEAUX, in his offical | ) | |
| capacity as Administrator of the Farm Service Agency | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Tom Vilsack
Secretary of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  William E. Trachman
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO  80227

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



CLERK OF COURT

Date:   5/24/2021

*Signature of Clerk or Deputy Clerk*

Page: 56      Date Filed: 01/31/2023      Document: 010110806323      Appellate Case: 22-8079

**ER052**

Timothy M. Stubson (Bar No. 6-3144)
CROWLEY FLECK, PLLP
111 W. 2nd Street, Suite 220
Casper, WY 82601
(307) 265-2279
tstubson@crowleyfleck.com

William E. Trachman (*Pro Hac Vice*)
Corey C. Bartkus (*Pro Hac Vice*)
MOUNTAIN STATES LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org
corey@mslegal.org

Kimberly S. Hermann
Braden Boucek
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Telephone: (770) 977-2131
khermann@southeasternlegal.org
bboucek@southeasternlegal.org

*Attorneys for Plaintiff Leisl M. Carpenter*

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| LEISL M. CARPENTER, | Case No. 0:21-cv-00103-NDF |
| Plaintiff, | |
| v. | **NOTICE OF ENTRY OF APPEARANCE OF WILLIAM E. TRACHMAN TO APPEAR *PRO HAC VICE*** |
| THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, and | |
| ZACH DUCHENEAUX, in his official capacity as Administrator of the Farm Service Agency, | |
| Defendants. | |

**ER053**

To the Clerk of the Court and all parties of record:

Pursuant to LCvR 84.3(b)(2), William E. Trachman, hereby enters his appearance to appear *pro hac vice* in this action as counsel for Plaintiff, Leisl M. Carpenter.  The Clerk of the Court is respectfully requested to add Mr. Trachman's name to the list of attorneys of record.  Mr. Trachman is registered for ECF and will receive copies of filings, notices and orders electronically.

Mr. Trachman's contact information is as follows:

William E. Trachman
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
wtrachman@mslegal.org

DATED this 14th day of July 2021.

Respectfully submitted,

*/s/ William E. Trachman*

William E. Trachman, CO Bar No. 45684
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
wtrachman@mslegal.org

*Attorney for Plaintiff Leisl M. Carpenter*

**ER054**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2021, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF system which sent notification of such filing to all counsel of record of this matter.

*/s/ William E. Trachman*
William E. Trachman

**ER055**

L. ROBERT MURRAY
Acting United States Attorney
NICHOLAS VASSALLO (WY Bar #5-2443)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Nick.vassallo@usdoj.gov

BRYAN M. BOYNTON
Acting Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
EMILY SUE NEWTON (Va. Bar No. 80745)
Senior Trial Counsel
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

|  |  |  |
|---|---|---|
| **LEISL M. CARPENTER**, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-103-F |
| | ) | |
| **THOMAS J. VILSACK**, in his official | ) | |
| capacity as Secretary of Agriculture, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF RELATED CLASS ACTION

**ER056**

For the reasons stated in the attached memorandum, Defendants Thomas J. Vilsack, in his official capacity as Secretary of Agriculture, and Zach Ducheneaux, in his official capacity as Administrator of the Farm Service Agency (collectively, USDA or Defendants), move to stay this case until final resolution related litigation that has been certified as a class action under Federal Rule of Civil Procedure 23(b)(2). Counsel for Defendants have conferred with counsel for Plaintiff, and Plaintiff opposes this request.

Dated: July 19, 2021

Respectfully submitted,

L. ROBERT MURRAY
Acting United States Attorney

/s/ Nicholas Vassallo
NICHOLAS VASSALLO (WY Bar #5-2443)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Nick.vassallo@usdoj.gov

BRIAN M. BOYNTON
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

/s/ Kyla M. Snow
EMILY SUE NEWTON (VA Bar No. 80745)
Senior Trial Counsel
MICHAEL F. KNAPP
KYLA M. SNOW (Ohio Bar No. 96662)
GARY D. FELDON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Attorneys for Defendants*

**ER057**

L. ROBERT MURRAY
Acting United States Attorney
NICHOLAS VASSALLO (WY Bar #5-2443)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Nick.vassallo@usdoj.gov

BRYAN M. BOYNTON
Acting Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
EMILY SUE NEWTON (Va. Bar No. 80745)
Senior Trial Counsel
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| **LEISL M. CARPENTER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-103-F |
| | ) | |
| **THOMAS J. VILSACK**, in his official | ) | |
| capacity as Secretary of Agriculture, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY
## PROCEEDINGS PENDING RESOLUTION OF RELATED CLASS ACTION

**ER058**

In March 2021, Congress enacted Section 1005 of the American Rescue Plan Act (ARPA), which authorizes funds to relieve the U.S. Department of Agriculture (USDA) debts held by certain socially disadvantaged farmers. Congress determined that this relief was necessary to remedy the lingering effects of decades of discrimination against minority farmers in the implementation of USDA farm loan programs, which effects were exacerbated by COVID-19 and the failure of prior relief to reach those farmers. Plaintiff Leisl Carpenter filed this action to challenge USDA's implementation of Section 1005 on equal protection grounds. *See* Compl., ECF No. 1. Plaintiff's lawsuit is not the only challenge to Section 1005. There are currently twelve such lawsuits pending before courts across the country, and multiple courts have already granted preliminary relief.

Recent developments in the earliest-filed challenge to Section 1005 warrant a stay of this case. Specifically, on July 2, 2021, the Northern District of Texas certified two Rule 23(b)(2) classes of farmers and ranchers bringing an equal protection challenge to Section 1005 like the one Plaintiff brings here. *See* Order on Class Cert. & PI, *Miller v. Vilsack*, 4:21-cv-595, ECF No. 60 (N.D. Tex.) (attached as Ex. A) (hereinafter "*Miller* Order"). At the same time, that court issued an injunction that prevents the Government from disbursing Section 1005 funds while the case is adjudicated on the merits. *Id.* Plaintiff is a member of the classes certified by *Miller*, and Defendants will be bound by any relief granted to the classes with respect to Plaintiff should their equal protection claim prevail. Thus, continued adjudication of Plaintiff's claims in this Court, separate from the classes to which she belongs, would be unnecessarily duplicative and risk inconsistent results. A stay, on the other hand, would not prejudice Plaintiff, who will be bound by and benefit from any judgment applicable to the classes and in the meantime is protected by the preliminary injunction entered by the *Miller* court as well as the nationwide injunctions entered by other courts. But a stay would preserve judicial resources and prevent hardship to Defendants, who would otherwise be required to continue defending against duplicative claims in separate courts. For these very reasons, courts routinely stay proceedings pending

**ER059**

resolution of a class action—particularly those under Rule 23(b)(2)—to which the plaintiff belongs. This Court should do likewise and stay the case until final resolution of the class challenge to Section 1005 in *Miller*.[1]

## BACKGROUND

On May 24, 2021, Plaintiff filed this case, alleging that USDA's implementation of Section 1005, which authorizes debt relief to socially disadvantaged farmers or ranchers, violates her right to equal protection. *See* Compl. This case is one of twelve brought in courts around the country bringing a similar challenge.[2] Three courts have preliminarily enjoined disbursement of programmatic funds. *See Miller* Order; *Holman v. Vilsack*, 1:21-cv-1085 (W.D. Tenn.), PI Order, ECF No. 41; PI Order, *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla.)*,* ECF No. 41.[3]

*Miller*, the first-filed case, commenced on April 26, 2021. Compl., *Miller*, ECF No. 1. On June 2, the five *Miller* plaintiffs moved to certify two classes of farmers and ranchers, Br. in Supp. of Mot. for Class Cert., *id.*, ECF No. 13, and for a preliminary injunction, Br. in Supp. of Mot. for PI, *id.*, ECF No. 18.[4] And on June 30, 2021, the *Miller* court granted both motions. *Miller* Order. Adopting the plaintiffs' proposed class definitions in full, the court certified the following two classes under Rule 23(b)(2):

---

[1] Defendants are filing stay motions in all of the other related cases challenging Section 1005.

[2] *Miller*, 4:21-cv-595; *Holman*, 1:21-cv-1085; *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.); *Wynn*, 3:21-cv-514 (M.D. Fla.); *Faust v. Vilsack*, 1:21-cv-548 (E.D. Wis.); *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex.); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill.); *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or.); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.); *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D.); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn.). Defendants have not yet been served in all of these cases, and the Government does not waive any objections regarding service.

[3] The court in *Faust* had entered a temporary restraining order on June 8, 2021, but recently dissolved that order and stayed the *Faust* plaintiffs' motion for preliminary injunction in light of the preliminary injunction entered in *Wynn*. Order 7, *Faust*, ECF No. 49.

[4] Although the plaintiffs in *Miller* assert equal protection, Title VI, and statutory construction claims, their preliminary injunction and class certification motions relied solely on their equal protection challenge to Section 1005 that is virtually identical to Plaintiff's challenge here. *See* Br. in Supp. of Mot. for Class Cert. 4.

1. All farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act.

2. All farmers and ranchers in the United States who are currently excluded from the definition of "socially disadvantaged farmer or rancher," as defined in 7 U.S.C. § 2279(a)(5)–(6)[5] and as interpreted by the Department of Agriculture.

*Id.* at 5-6. Although *Miller* certified two classes, the plaintiffs and the court emphasized that the classes were specific to the plaintiffs' challenge to Section 1005. *Id.* at 13; Class Cert. Reply 1, ECF No. 41 ("The plaintiffs—at this point in the litigation—are seeking classwide relief *only* against the continued enforcement of the racial exclusions in section 1005 of the American Rescue Plan Act."); *id.* at 4 ("These classes are being proposed for the purpose of obtaining preliminary classwide relief against the racial exclusions in section 1005.").

Additionally, in granting the plaintiffs' preliminary-injunction motion, the court enjoined Defendants

> from discriminating on account of race or ethnicity in administering section 1005 of [ARPA] for any applicant who is a member of the Certified Classes. This prohibition encompasses: (a) considering or using an applicant Class Member's race or ethnicity as a criterion in determining whether that applicant will obtain loan assistance, forgiveness, or payments; and (b) considering or using any criterion that is intended to serve as a proxy for race or ethnicity in determining whether an applicant Class member will obtain loan assistance, forgiveness, or payments.

*Miller* Order 22-23, *id.* Like the other nationwide injunctions, the *Miller* injunction precludes disbursement of Section 1005 funds while the case is adjudicated on the merits. The *Miller* court ordered the parties to submit a proposed schedule for resolving the case on the merits by July 16.[6]

## STANDARD OF REVIEW

"The District Court has broad discretion to stay proceedings as an incident to its power to

---

[5] Section 1005 incorporates the definition of "socially disadvantaged farmer or rancher" set out in 7 U.S.C. § 2279(a).

[6] On June 29, Defendants filed a partial answer and partial motion to dismiss the *Miller* plaintiffs' non-Section 1005 claims. *See* ECF Nos. 49, 51.

**ER061**

control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). That power applies "especially in cases of extraordinary public moment," when "a plaintiff may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id.* at 707 (modifications omitted).

"Generally, proceedings may be stayed to ensure that justice is done or to provide for the efficient and economic use of judicial resources." *Denbury Onshore, LLC v. Christensen*, 14-cv-19, 2015 WL 11023558, at *2 (D. Wyo. May 7, 2015), *aff'd*, 722 F. App'x 768 (10th Cir. 2018). "Allowing the same issue to be decided more than once wastes litigants' resources and adjudicators' time." *B&B Hardware, Inc. v. Hargus Indus., Inc.*, 575 U.S. 138, 140 (2015); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . the general principle is to avoid duplicative litigation."). Thus, it is a "well established policy that a court may, in its discretion, defer or abate proceedings where another suit, involving the identical issues, is pending . . . and it would be duplicative, uneconomical, and vexatious to proceed." *Blinder, Robinson & Co. v. SEC*, 692 F.2d 102, 106 (10th Cir. 1982). In exercising such discretion, courts weigh various factors, including (1) the interests of judicial economy, (2) harm to the movant in the absence of a stay, (3) harm to the non-movant in the issuance of a stay, (4) and the public interests at stake. *See id.*; *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F. 3d 1222, 1227 (10th Cir. 2003).

## ARGUMENT

The Court should stay this case until final resolution of the class challenge to Section 1005 in *Miller*.[7] All relevant factors support this proposed stay. First, and most significantly, a stay serves the interests of judicial economy. Because Plaintiff is a member of the classes challenging Section 1005 and will directly benefit from any relief granted in *Miller*, staying this case will avoid unnecessarily

---

[7] Defendants have not appealed the order granting a preliminary injunction and certifying the classes in *Miller* but reserve their right to do so. If the classes in *Miller* are decertified for any reason, the parties can brief this Court on whether to lift the stay.

duplicative litigation and potentially inconsistent results.  Second, a stay will not prejudice Plaintiff, who is already protected by multiple preliminary injunctions and who may receive all the relief she is entitled to upon entry of final judgment in *Miller*.  Third, continuing to adjudicate Plaintiff's claim in this Court and in *Miller* simultaneously would impose hardship on Defendants, who would be required to defend against identical claims in multiple courts at the same time—including in eleven other cases around the country.  Finally, courts regularly stay cases pending resolution of related class actions. This Court should do likewise.

## I.     A stay would promote judicial economy and avoid inconsistent results.

First, staying this case would promote judicial economy by avoiding simultaneous, duplicative litigation of Plaintiff's claim in multiple courts and protecting the parties and the courts from conflicting results.  Plaintiff undisputedly falls within the definition of the *Miller* classes: She is a farmer who alleges that she is being subjected to racial discrimination due to USDA's provision of Section 1005 debt relief to socially disadvantaged farmers, because the definition of "socially disadvantaged farmer or rancher" does not automatically include farmers like her who self-identify as white.  And the classes in *Miller* were certified under Rule 23(b)(2), which means that Plaintiff cannot opt out of any judgment applicable to the classes. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361-63 (2011). Thus, any relief ordered in *Miller* will apply equally to Plaintiff as it does to all other class members. *Id.* at 361-62 (noting that the relief sought in a Rule 23(b)(2) class "perforce affect[s] the entire class at once"); *see also Juris v. Inamed Corp.*, 685 F.3d 1294, 1312 (11th Cir. 2012) ("Class action judgments will typically bind all members of the class.").  Indeed, that relief will be *binding* on Plaintiff and preclude her, like all other class members, from obtaining an alternative judgment in another proceeding. *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 874 (1984).

Accordingly, permitting Plaintiff to continue litigating her claims in this Court, separate from the rest of the class to which she belongs, would create a risk of inconsistent results that could

**ER063**

undermine the preclusive effect of a classwide judgment and confuse Defendants' obligations to different class members. *See Dunn v. Air Line Pilots Ass'n*, 836 F. Supp. 1574, 1584 (S.D. Fla. 1993), *aff'd*, 193 F.3d 1185 (11th Cir. 1999) (expressing concern with "avoid[ing] conflicting orders"). For instance, if the plaintiff class succeeds in its equal protection challenge to Section 1005 in *Miller* but Plaintiff loses her claim here (or vice versa), Defendants would be subject to conflicting judgments concerning the constitutionality of Section 1005 and, importantly, their obligations toward this Plaintiff. Staying this case pending resolution of the class challenge to Section 1005 would promote judicial efficiency by avoiding this risk of contradictory outcomes.

That *Miller* was certified as a class action after Plaintiff filed her case does not undermine the preclusive effect of any classwide judgment or justify Plaintiff's continued litigation of her claims separately in this Court. *Miller* was the first-filed case, and under the first-filed rule, "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Hospah Coal. Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) (citation omitted). The rule takes three factors into consideration: "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.,* 910 F.3d 1118, 1124 (10th Cir. 2018) (citation omitted). Here, the parties and issues involved are not just similar—they are identical. Indeed, because Plaintiff is a class member, *this Plaintiff's claim* is being simultaneously litigated in two separate courts. And "[i]f a class member cannot relitigate issues after final judgment in a class action suit, by analogy a class member should not be able to prosecute a separate equitable action once the member's class has been certified." *Bennett v. Blanchard*, 802 F.2d 456 (6th Cir. 1986) (table). Thus, litigating Plaintiff's claim separately here would only "interfere[] with the ongoing class action." *McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir. 1991). That would undermine judicial economy and "[t]wo of the primary purposes underlying [Rule] 23": avoiding "duplicative litigation and inconsistent standards." *Goff v. Menke*, 672

**ER064**

F.2d 702, 704 (8th Cir. 1982).  Under general principles of judicial economy, underscored by the first-filed rule, the better course by far is to stay this action pending resolution of the class action certified in the earliest-filed Section 1005 case.

## II.    A stay would not prejudice Plaintiff and would avoid hardship to the Government.

For similar reasons, staying this case pending resolution of the class challenge to Section 1005 in *Miller* would not prejudice Plaintiff.  Again, the classes certified in *Miller* challenge the same agency action and seek the same relief as Plaintiff challenges and seeks here.  *Compare* Pls.' Br. in Supp. of Prelim. Inj. ECF No. 18, *Miller* (challenging the implementation of Section 1005 based on USDA's interpretation of "socially disadvantaged farmer or rancher" with reference to race), *with* Compl. (same).  Because Defendants will be bound by a final judgment in the class action with respect to this Plaintiff, staying her duplicative case in this Court will not impede her ability to obtain the relief she seeks.  And no harm could possibly befall Plaintiff while her case is stayed and the class litigation continues, as three overlapping preliminary injunctions are "preserv[ing] the status quo" in the meantime.  Order 7, *Faust* (staying the plaintiffs' preliminary injunction motion because the *Wynn* nationwide injunction adequately protected the plaintiffs).

Moreover, the cases are still in their early stages.  The parties just submitted a proposed case schedule in *Miller* on July 16.  Joint Report, *Miller*, ECF No. 70.  And the sole upcoming deadline in this case is Defendants' deadline to respond to Plaintiff's Complaint, by July 31.[8]  Thus, staying this case at this early stage of the proceedings would not unnecessarily disrupt or delay litigation of Plaintiff's claim but would only promote its efficient resolution before any case deadlines have passed.

Additionally, staying this case would avoid hardship to the Government.  As stated, there are currently eleven other substantively similar lawsuits pending around the country.  Particularly given

---

[8] Plaintiff has agreed to an extension of the Answer deadline to August 31, 2021, and an unopposed motion for extension of that deadline is forthcoming.

the importance of the issues at stake, requiring the Government to defend against any one of them separately from the class action—contending with differing case schedules and discovery obligations—would run contrary to the Government's and the public's interest in just and efficient resolution of cases, and especially those of "extraordinary public moment." *Clinton*, 520 U.S. at 707 ("[E]specially in cases of extraordinary public moment, a plaintiff may be required to submit to delay." (modifications omitted)).   Requiring the Government to defend against up to *twelve* cases simultaneously—on varying schedules and in different jurisdictions—would substantially burden the Government's (and the courts') resources without benefitting Plaintiff.

## III.   Courts regularly stay cases pending resolution of related class actions.

Finally, a stay here would be consistent with other courts' recognition that a stay (or even dismissal) is generally warranted upon certification of a class of which the plaintiff is a member.[9] *See, e.g., Jiaming Hu v. U.S. Dep't of Homeland Sec.*, 4:17-cv-02363, 2018 WL 1251911, at *4 (E.D. Mo. Mar. 12, 2018) ("Since class members generally cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable action once his or her class has been certified." (internal quotation marks omitted) (citing cases dismissing actions where the plaintiff was a member of certified class in another case)); *see also Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89, 91 (2d Cir. 2004) (affirming dismissal without prejudice "based on the rule against duplicative litigation" where plaintiff's allegations "duplicated claims that had been included in separate class actions" against the defendant, and plaintiffs "were members of those classes"); *Aleman ex rel. Ryder Sys., Inc. v. Sancez*, 21-cv-20539, 2021 WL 917969, at *2 (S.D. Fla. Mar. 10, 2021) (noting that "the Court entered an order staying proceedings" pending resolution of a related

---

[9] Indeed, federal courts regularly stay cases when a class certification motion is only *pending*, rather than already granted, in an earlier-filed related case. *See, e.g., Sanchez-Cobarrubias v. Bland*, CV609-005, 2011 WL 841082, at *1 (S.D. Ga. Mar. 7, 2011) (reciting case history); *Bargas v. Rite Aid Corp.*, CV1303865MWFJEMX, 2014 WL 12538151, at *3 (C.D. Cal. Oct. 21, 2014).

**ER066**

class action, "recognizing that the cases are related, and that the resolution of the issues raised in the Class Action will necessarily impact the proceedings in" the case); *Richard K. v. United Behavioral Health*, 18-cv-6318, 2019 WL 3083019, at *7 (S.D.N.Y. June 28, 2019), report and recommendation adopted, 18-cv-6318, 2019 WL 3080849 (S.D.N.Y. July 15, 2019) (stay and dismissal without prejudice "are routinely found appropriate where, as here, the claims made in an individual lawsuit overlap with the claims being pursued by a certified class of which the individual plaintiff is a member").

In such cases, courts have ordered a stay of the same scope Defendants seek here: a stay of all proceedings until final resolution of the related class action. *See, e.g.*, *Gonzales v. Berryhill*, 18-cv-603, ECF No. 28 (D.N.M. Mar. 5, 2019) (staying proceedings until the district court in a related case "issues a decision on the forthcoming motion for class certification and, if a class is certified in [the related case], until the conclusion of all proceedings in [that case], including any appeals.").

The First Circuit's decision in *Taunton Gardens Co. v. Hills* illustrates the propriety of a stay in circumstances strikingly similar to this case. 557 F.2d 877 (1st Cir. 1977). There, the plaintiffs challenged "the administration of a major federal program and the disbursement of a significant amount of federal money," and the case thus "present[ed] issues of 'public moment.'" *Id.* at 879. And there, much like here, the implementation of that federal program had spurred litigation "in more than ten district courts" around the country, and the Government was subject to multiple injunctions. *Id.* Moreover, like this case, a related action was certified as a class action. *See Taunton Gardens Co. v. Hills*, 421 F. Supp. 524, 526 (D. Mass. 1976). Although the plaintiffs in *Taunton Gardens* were not members of that class, the court noted that they challenged the same program and sought identical relief and, thus, that the class action determined the merits of the case. *Id.* Accordingly, the district court found it was in "the interest of justice" to stay all proceedings—including litigation of the pending motion for preliminary injunction—"pending entry of a final judgment in the class action case." *Id.* The First Circuit upheld the stay, also emphasizing that it was in the "public interest, the court's interest in

**ER067**

efficient procedures, and the interest of justice" to stay the case and afford the Government "a reasonable opportunity to resolve its obligations in the national class action." 557 F.2d at 879. It also pointed out that the stay's duration, lasting until an appeal of the class action judgment was resolved, was reasonable. *Id.*

All of the factors considered by *Taunton Gardens* support a stay here: Plaintiff challenges a significant federal program presenting issues of "public moment," and undersigned counsel are defending against claims in twelve courts around the country. Additionally, the recently certified classes in *Miller* seek the same relief Plaintiff seeks in this case—and indeed, since Plaintiff is a member of those classes, resolution of the challenge to Section 1005 in *Miller*, and any relief granted by that court, will operate to protect Plaintiff together with all other class members. Finally, the scope of the stay requested here—until resolution of the class action—is the same as that approved in *Taunton Gardens* and other cases. There, as here, the "public interest, the court's interest in efficient procedures, and the interest of justice" support a stay of all procedures pending resolution of the class challenge to Section 1005 in *Miller*.

## CONCLUSION

For these reasons, the Court should stay proceedings in this case pending resolution of the class challenge to Section 1005 in *Miller*.

Dated: July 19, 2021

Respectfully submitted,

L. ROBERT MURRAY
Acting United States Attorney

*/s/ Nicholas Vassallo*
NICHOLAS VASSALLO (WY Bar #5-2443)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Nick.vassallo@usdoj.gov

BRIAN M. BOYNTON

**ER068**

Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Kyla M. Snow*
EMILY SUE NEWTON (VA Bar No. 80745)
Senior Trial Counsel
MICHAEL F. KNAPP
KYLA M. SNOW (Ohio Bar No. 96662)
GARY D. FELDON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Counsel for Defendants*

11

**ER069**

# EXHIBIT A

ER070

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **SID MILLER, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-0595-O** |
| | § | |
| **TOM VILSACK,** *in his official capacity as* | § | |
| *Secretary of Agriculture,* | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

Before the Court are Plaintiffs' Motion for Class Certification (ECF Nos. 12–13), filed

June 2, 2021; the Government's Response (ECF No. 28), filed June 11, 2021; Plaintiffs' Reply

(ECF No. 41), filed June 18, 2021; Plaintiffs' Motion for Preliminary Injunction (ECF Nos. 17–

18), filed June 2, 2021; the Government's Response (ECF No. 27), filed June 11, 2021; and

Plaintiffs' Reply (ECF No. 42), filed June 18, 2021. Plaintiffs seek a preliminary injunction to

enjoin the Department of Agriculture from providing loan forgiveness to farmers and ranchers on

the basis of race or ethnicity. *See* Inj. Mot., ECF No. 18. Having considered the briefing, relevant

facts, and applicable law, and for the reasons set forth below, the Court **GRANTS** both motions.

## I.   BACKGROUND

Plaintiffs are Texas farmers and ranchers seeking to enjoin the United States Department

of Agriculture from administering a recently enacted loan-forgiveness program under section 1005

of the American Rescue Plan Act of 2021 (ARPA). That Act appropriated funds to the USDA and

required the Secretary to "provide a payment in an amount up to 120 percent of the outstanding

indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021," to pay off

qualifying Farm Service Agency (FSA) loans. ARPA, Pub. L. No. 117-2, § 1005 (2021). To be

1

**ER071**

eligible under the program, an applicant must be a "socially disadvantaged farmer or rancher" as defined in section 2501(a) of the Food, Agriculture Conservation, and Trade Act of 1990 (codified at 7 U.S.C. § 2279(a)). *See id.* That statute provides that a "'socially disadvantaged farmer or rancher' means a farmer or rancher who is a member of a socially disadvantaged group." 7 U.S.C. § 2279(a)(5). It defines "socially disadvantaged group" as "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." *Id.* § 2279(a)(6). In announcing a Notice of Funds Availability, the USDA stated that those groups include but are not limited to "American Indians or Alaskan Natives," "Asians," "Blacks or African Americans," "Native Hawaiians or other Pacific Islanders," and "Hispanics or Latinos." Notice of Funds Availability, 86 Fed. Reg. 28,330 (May 26, 2021).

Plaintiffs held qualifying FSA loans on January 1, 2021 but are white, making them ineligible for the funds under the Act. *See* Inj. Mot. 1–2, ECF No. 18-4; 1–2, ECF No. 18-5; 1–2, ECF No. 18-6; 1–2, ECF No. 18-7. On April 26, 2021, Plaintiffs filed a class action to enjoin the program as a violation of equal protection under the United States Constitution and a violation of Title VI of the Civil Rights Act of 1964. *See* Compl. 6, ECF No. 1. In the alternative, Plaintiffs argue in Claims Two and Three, that, as a matter of statutory interpretation, "socially disadvantaged group" must be construed to include white ethnic groups that have experienced discrimination and individuals who have any discernible trace of minority ancestry. *See id.* at 7–9. After filing their Complaint, Plaintiffs filed the present Motion for Class Certification and Motion for Preliminary Injunction on June 2, 2021. *See* Class Cert. Mot., ECF Nos. 12–13; Inj. Mot., ECF Nos. 17–18. After responses and replies, the motions are ripe for the Court's

consideration. *See* Class Cert. Resp., ECF No. 28; Inj. Resp., ECF No. 27; Class Cert. Reply, ECF No. 41; Inj. Reply, ECF No. 42.

## II.   LEGAL STANDARD

### A.  Class Certification

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)) (internal quotation marks omitted). The party seeking class certification "bear[s] the burden of proof to establish that the proposed class satisfies the requirements of Rule 23." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). "The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of rule 23." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). A district court must "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination'" of the certification issues. *Stukenberg*, 675 F.3d at 837 (quoting *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003)).

Federal Rule of Civil Procedure 23 governs whether a proposed class falls within this limited exception. "To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007).  Rule 23(a)'s four threshold requirements are

(1)   the class is so numerous that joinder of all members is impracticable;
(2)   there are questions of law or fact common to the class;
(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)   the representative parties will fairly and adequately protect the interests of the class.

**ER073**

Case 0:21-cv-00103-NDF   Document 28-1   Filed 07/19/21   Page 5 of 25

Appellate Case: 23-60079   Document 00516807701   Date Filed: 10/11/2023   Page: 78
Case 4:21-cv-00595-O   Document 60-1   Filed 07/01/21   Page 4 of 24   PageID 1449

Fed. R. Civ. P. 23(a). These four threshold conditions are "commonly known as numerosity, commonality, typicality, and adequacy of representation." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020) (citing Fed. R. Civ. P. 23(a)) (additional citation and internal quotation marks omitted). Additionally, the Fifth Circuit has articulated an "ascertainability" doctrine implicit in Rule 23. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."). "To maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam) (citations omitted).

Rule 23(b)(2) applies where the four threshold requirements are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This requirement is satisfied "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

### B. Preliminary Injunction

To prevail on an application for a preliminary injunction, the movant must show: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that granting the injunction is not adverse to the public interest. *See Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

**ER074**

To qualify for a preliminary injunction, the movant must clearly carry the burden of persuasion with respect to all four requirements. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003). If the movant fails to establish any one of the four prerequisites to injunctive relief, relief will not be granted. *See Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001). A movant who obtains a preliminary injunction must post a bond to secure the non-movant against any wrongful damages it suffers as a result of the injunction. *See* Fed. R. Civ. P. 65(c).

The decision to grant or deny preliminary injunctive relief is left to the sound discretion of the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (citing *Canal*, 489 F.2d at 572). A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). Even when a movant satisfies each of the four *Canal* factors, the decision whether to grant or deny a preliminary injunction remains discretionary with the district court. *Miss. Power & Light*, 760 F.2d at 621.

III.   **ANALYSIS**

A.  **Class Certification**

Plaintiffs move to certify two classes under Federal Rule of Civil Procedure 23(b)(2):

| Class | Class Representatives |
|-------|----------------------|
|       |                      |

**ER075**

| 1 | All farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act | Plaintiffs Greg Macha, James Meek, Jeff Peters, and Lorinda O'Shaughnessy |
|---|---|---|
| 2 | All farmers and ranchers in the United States who are currently excluded from the definition of 'socially disadvantaged farmer or rancher,' as defined in 7 U.S.C. § 2279(a)(5)–(6) and as interpreted by the Department of Agriculture | All named Plaintiffs |

### 1. Rule 23(a)

#### i. Numerosity

Plaintiffs argue that the number of white farmers and ranchers facing discrimination from the USDA on account of their race or ethnicity easily exceeds the numerosity threshold, as evidenced by 2017 census data showing some 239,351 white farmers and ranchers in Texas and 1,963,286 nationwide. *See* Class Cert. Mot. 5, ECF No. 13. Plaintiffs also point to the same data to show that there are an estimated 21,000 holders of qualifying FSA loans nationwide who do not qualify as "socially disadvantaged." *See id.* The Government does not contest the numerosity of the proposed classes. *See* Class Cert. Resp., ECF No. 28.

Courts have regularly certified classes far fewer in number than the tens of thousands of potential plaintiffs here. *See, e.g.*, *Mullen*, 186 F.3d at 625 ("[T]he size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement."). The actual number of class members is not necessarily "the determinative question, for '(t)he proper focus (under Rule 23(a)(1)) is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors.'" *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (quoting *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981)). "[A] number of facts other than the actual or

6

**ER076**

estimated number of purported class members may be relevant to the 'numerosity' question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman*, 651 F.2d at 1038 (citing *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980), *cert. denied*, 449 U.S. 1113 (1981)).

Here, Plaintiffs' unchallenged evidence demonstrates classes of plaintiffs sufficiently large and for whom joinder would be impracticable, if not impossible, due to size, geographic dispersion across the nation, and the inclusion of future members. Accordingly, the Court finds that Plaintiffs have satisfied the numerosity requirement for certification of both proposed classes.

## ii.  Commonality

Plaintiffs "seek to litigate a question of law common to all members of each of the two classes: does the United State Department of Agriculture violate the Constitution and Title VI of the Civil Rights Act of 1964 by limiting eligibility for government benefits to 'socially disadvantaged farmers or ranchers'?" Class Cert Mot. 6, ECF No. 13. Plaintiffs further contend that "[t]his question affects all class members because each of them is subject to discrimination on account of their race, as each of them is excluded from the definition of 'socially disadvantaged farmers or ranchers' because they are white." *Id.* The Government disagrees, arguing that there is no common legal question between the different claims Plaintiffs bring. *See* Class Cert. Mot. 13, ECF No. 28. With regard to the second class, the Government indicates that, because there are multiple programs for "socially disadvantaged farmers or ranchers," and the use of race in a benefit program must be narrowly tailored, no commonality can exist for the class members who are not included in that definition, as it necessitates individualized considerations for each of those programs. *See id.* at 15.

**ER077**

"In order to satisfy commonality under *Wal-Mart*, a proposed class must prove that the claims of every class member 'depend upon a common contention . . . that is capable of classwide resolution.'" *Stukenberg*, 675 F.3d at 838 (quoting *Wal-Mart*, 564 U.S. at 350). This occurs where "the contention is 'of such a nature . . . that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Stukenberg*, 675 F.3d at 838 (quoting *Wal-Mart*, 564 U.S. at 350). Put plainly, "Rule 23(a)(2) requires that all of the class member[s'] claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke.'" *Stukenberg*, 675 F.3d at 840 (quoting *Wal-Mart*, 564 U.S. at 350). And a court's "obligation to perform a 'rigorous analysis'" of the commonality prong may "entail some overlap with the merits of the plaintiff's underlying claim." *Stukenberg*, 675 F.3d at 840 (quoting *Wal-Mart*, 564 U.S. at 350).

The Court concludes that the proposed classes satisfy the commonality requirement. The complained-of discrimination by the USDA constitutes more than a common grievance with a particular legal provision, deemed insufficient for commonality by the Supreme Court in *Wal-Mart*. *See* 564 U.S. at 350 ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law." (citation and internal quotation marks omitted)). Answering Plaintiffs' substantive legal question will provide a common answer for all class members regarding a common issue of law: the availability of USDA program benefits to them absent racial and ethnic discrimination. *See DeOtte v. Azar*, 332 F.R.D. 188, 198 (N.D. Tex. March 30, 2019) (distinguishing its facts from *Stukenberg*, in which plaintiffs asserted "various harms, the risk of experiencing those harms, and the violation of constitutional rights in various ways"

ER078

(internal quotation marks omitted)). Resolution of the alleged conflict between, on the one hand, programs for "socially disadvantaged farmers or ranchers" and, on the other, Constitutional equal protection provides a common answer to a narrow question of law based in a specific alleged injury "in one stroke." *Wal-Mart*, 564 U.S. at 350. Accordingly, Plaintiffs have satisfied the commonality requirement for certification of both classes.

### iii.   Typicality

Plaintiffs argue that, not only are their claims typical, they are precisely the same as those of all members of the proposed classes. *See* Class Cert. Mot. 7, ECF No. 13. The Government focuses on Plaintiffs' alternative Claims Two and Three and alleges that proceeding on a class basis will not be economical, as there will be a need to litigate each member's unique inclusion in a disadvantaged group or an individual assessment of each government program that benefits "socially disadvantaged farmers or ranchers." *See* Class Cert. Resp. 16–18, ECF No. 28.

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* "[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen*, 186 F.3d at 625 (citations omitted). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality."

ER079

*James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) (quoting 5 James Wm. Moore et al.,

*Moore's Federal Practice* P 23.24[4] (3d ed. 2000)).

For similar reasons supporting commonality, the Court rejects the Government's arguments on typicality. First, Plaintiffs only seek classwide relief on Claim One and pleaded Claim Two and Three in the alternative. *See* Compl., ECF No. 1. Second, any fact-specific inquiries regarding a putative class member's challenge does not prevent certification of the class itself because, to the extent they are even necessary, these individualized membership or government program assessments can be made after class certification. *See, e.g., Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x 329, 334 (5th Cir. 2019) (requiring only that the plaintiff demonstrate "that the class is adequately defined" and "provide sufficient objective criteria from which to identify class members" (citation and internal quotation marks omitted)). Denying certification on this basis would be especially improper in cases like these, where the proposed classes seek only injunctive and declaratory relief regarding enforcement of a statute, and the usual complications of class certification and phased litigation of suits for money damages do not apply. *See, e.g., Rice v. City of Philadelphia*, 66 F.R.D. 17, 19 (E.D. Pa. 1974) ("[T]he precise definition of the [Rule 23(b)(2)] class is relatively unimportant. If relief is granted to the plaintiff class, the defendants are legally obligated to comply, and it is usually unnecessary to define with precision the persons entitled to enforce compliance."); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 431 n.28 (5th Cir. 1998) (citing Hebert B. Newberg & Alba Conte, *Newberg On Class Actions* § 4.41, at 4-51 to 52 (3d ed. 1992) and noting differing approaches to certification and litigation of individual trials for damages). Accordingly, Plaintiffs' claim is typical for both proposed classes.

    **iv.**    **Adequacy of Representation**

**ER080**

For the final Rule 23(a) factor, Plaintiffs argue that there are no conflicts of interest among the class members with respect to Claim One, the only claim on which Plaintiffs seek classwide relief. *See* Class Cert. Mot. 7–8, ECF No. 13. They contend "[a] classwide injunction will serve only to protect the class members' constitutional rights, as well as rights guaranteed under the Civil Rights Act of 1964[,]" conceding that classwide relief would not be appropriate for Claims Two and Three. *Id.*; *see* Class Cert. Reply 8, ECF No. 41. In response, the Government claims that, in seeking to prohibit the use of the socially-disadvantaged definition in USDA programs, Plaintiffs have a conflict in seeking to represent members who cannot opt out from any judgment that will necessarily bind the entire Rule 23(b)(2) class. *See* Class Cert. Resp. 18, ECF No. 28.

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Adequacy encompasses three separate but related inquiries (1) 'the zeal and competence of the representative[s'] counsel'; (2) 'the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees'; and (3) the risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (citing *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)). "[The] requirements [of commonality and typicality] . . . tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Falcon*, 457 U.S. at 158 n.13. Throughout litigation, the court "must continue carefully to scrutinize the adequacy of representation and withdraw certification if such representation is not furnished." *Grigsby v. N. Miss. Med. Center, Inc.*, 586 F.2d 457, 462 (5th Cir. 1978).

**ER081**

Here, Plaintiffs have carried their burden to show that they will adequately represent the interests of class members similarly situated in zealously pursuing the requested relief. All indications are that Plaintiffs are willing and able to control the litigation and to protect the interests of absent class members. *See Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982). Given the Court's conclusion as to the commonality and typicality prongs, *supra*, and because the Government has not shown any conflicts of interest, issues with competency of counsel, or other issues suggesting inadequacy of Plaintiffs' representation as to Claim One, the Court finds that Plaintiffs will adequately represent members of the proposed classes in pursuit of that claim.

### v. Ascertainability

Plaintiffs argue that both proposed classes are ascertainable under Fifth Circuit law. *See* Class Cert. Reply 10, ECF No. 41. They contend that nothing is imprecise or vague about the proposed classes, as a potential plaintiff is either "encountering racial discrimination on account of section 1005, or he isn't" and is "either included with the definition of 'socially disadvantaged farmer or rancher,' or he's not." *Id.* The Government argues that both proposed classes are imprecise. *See* Class Cert. Resp. 21–22, ECF No. 28. For the first class, the Government submits that it is unclear whether it would include, for example, individuals who fall within the definition of a socially disadvantaged farmer or rancher but claim discrimination based on other factors, such as accessibility to program services. *See id.* As for the second class, the Government argues that it "is not limited to those who have suffered any injury as a result of the fact that they do not fall within the definition of a 'socially disadvantaged farmer or rancher.'" *Id.* at 22.

**ER082**

While not a requirement of Rule 23, courts only certify classes ascertainable under objective criteria. *DeBremaecker*, 433 F.2d at 734 (citations omitted).[1] "There can be no class action if the proposed class is amorphous or imprecise." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n.5 (5th Cir. 2007). "[T]he court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (citations omitted). The Fifth Circuit has upheld the ascertainability of a class even when a definition necessitates individualized membership assessments that might *follow* litigation, so long as the class definition is sufficiently clear. *See, e.g.*, *Mullen v. Treasure Chest Casino*, 186 F.3d 620, 624 (5th Cir. 1999).

The Court finds that the proposed classes are ascertainable. The ascertainability inquiry is significantly relaxed for Rule 23(b)(2) certifications like this one. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 n.6 (5th Cir. 2004). Contrary to the Government's argument, "district courts do not err by failing to ascertain at the Rule 23 stage whether the class members include persons and entities who have suffered 'no injury at all.'" *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014). Plaintiffs here only seek classwide relief on their claim that section 1005 violates equal protection and Title VI, and the proposed definitions are sufficiently clear to identify class members at some stage of the proceeding for that claim. *See Frey*, 602 F. App'x at 168. As such,

---

[1] Ascertainability may not be applicable in the Rule 23(b)(2) context. *See, e.g.*, *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3rd Cir. 2015) ("[A]scertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief."); *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) ("The advisory committee's notes for Rule 23(b)(2) assure us that ascertainability is inappropriate in the (b)(2) context."); *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004) ("[W]hile the lack of identifiability [of class members] is a factor that may defeat Rule 23(b)(3) class certification, such is not the case with respect to class certification under Rule 23(b)(2)."). However, the Fifth Circuit has yet to endorse this view shared by other circuit courts. The Court need not decide whether it applies here, because the class is ascertainable.

**ER083**

both proposed classes are ascertainable. Accordingly, the Court concludes that Plaintiffs have satisfied the elements for class certification under Rule 23(a) and need only address whether the elements of Rule 23(b) are satisfied.

### 2. Rule 23(b)

Plaintiffs move for class certification under Rule 23(b)(2). *See* Compl. 9, ECF No. 1. The Government argues that the requirements of Rule 23(b)(2) are not met because the USDA has not acted or refused to act on any request by Plaintiffs for debt relief under section 1005. *See* Class Cert. Resp. 19–20, ECF No. 28. It argues that Plaintiffs have "the opportunity to seek inclusion of those groups by submitting a written request with supporting explanation" for consideration by the Secretary on a case-by-case basis. *Id.* at 20. For this reason, any denial of benefits would necessarily vary from group to group and Plaintiff to Plaintiff. *See id.*

The Government misconstrues the requirements of Rule 23(b)(2). A class action filed pursuant to Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) does not require "common issues," only "common behavior by the defendant towards the class." *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012). "Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23(b)(2) advisory committee's note to 1966 amendment.

Here, the USDA acts on grounds that apply generally to the classes in administering the debt-relief program in a racially discriminatory way, as required by the statute. Plaintiffs seek an injunction stopping the USDA from providing loan forgiveness to individuals based on their race

**ER084**

or ethnicity. *See* Inj. Mot. 1, ECF No. 18. As required, "a single injunction or declaratory

judgment" here "would provide relief to each member of the" classes. *Wal-Mart*, 564 U.S. at 360.

Because granting the requested relief would apply generally to the classes as a whole, the Court

finds that Rule 23(b)(2) is satisfied.

### B. Preliminary Injunction

#### 1. Substantial Likelihood of Success on the Merits

Plaintiffs contend they are substantially likely to succeed on the merits of their

constitutional challenge, as prioritized compensation for minorities for past discrimination by

society is foreclosed as a matter of law. *See* Inj. Mot. 3–4, ECF No. 18 (citing *City of Richmond v.

J.A. Croson Co.*, 488 U.S. 469 (1989)). The Government concedes its prioritization scheme is race-

based but maintains that it is allowed to use racial classification to remedy the lingering effects of

past racial discrimination against minority groups—a "well-established" compelling government

interest. *See* Inj. Resp. 26–27, ECF No. 27 (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S.

200, 237 (1995)). The Government also submits that Congress narrowly tailored the law to achieve

that compelling interest, considering the history of discrimination against minority farmers and

specific gaps in pandemic-related funding for those racial groups. *See id.* The Court disagrees.

As other courts to consider this issue already have, the Court concludes that Plaintiffs are

likely to succeed on the merits of their claim that the Government's use of race- and ethnicity-

based preferences in the administration of the loan-forgiveness program violates equal protection

under the Constitution. *See Faust v. Vilsack*, No. 21-C-548, 2021 WL 2409729, at *3 (E.D. Wis.

June 10, 2021); *Wynn v. Vilsack*, No. 3:21-CV-514-MMH-JRK, 2021 WL 2580678, at *12 (M.D.

Fla. June 23, 2021). "Government policies that classify people by race are presumptively invalid."

*Vitolo v. Guzman*, Nos. 21-5517/5528, 2021 WL 2172181, at *4 (6th Cir. May 27, 2021) (citing

**ER085**

U.S. Const. amend. XIV; *Adarand*, 515 U.S. at 235). It is the Government's burden to establish that its race-based distribution of taxpayer money is narrowly tailored to achieve a compelling interest. *See Adarand*, 515 U.S. at 227. To do so, it must provide a "strong basis in evidence for its conclusion that remedial action was necessary." *Croson*, 488 U.S. at 500 (quoting *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 277 (1986)). In an analogous case, the Sixth Circuit summarized the Government's burden as follows: (1) the policy must target a specific episode of past discrimination, not simply relying on generalized assertions of past discrimination in an industry; (2) there must be evidence of past intentional discrimination, not simply statistical disparities; and (3) the government must have participated in the past discrimination it now seeks to remedy. *Vitolo*, 2021 WL 2172181, at *4–5.

Instead of demonstrating a strong basis, the Government's evidence of a compelling interest is a mixed bag. On the one hand, the Government points to cases where the USDA settled claims for past discrimination, leading Congress to enact special legislation addressing the civil rights complaints. *See* Inj. Resp. 32–33, ECF No. 27. On the other hand, the Government admits that the USDA is not currently discriminating against any socially disadvantaged farmers or ranchers. *See* Inj. Hearing Tr. Instead, it points to evidence of past intentional discrimination that, it argues, has produced lingering effects that continue to negatively affect these groups. *See id.* For example, it cites a 1982 report from the United States Commission on Civil Rights to show that the Farmers Home Administration (FmHA), the predecessor to the FSA, provided inferior loans and services to blacks as compared to whites. *See* Inj. Resp. 30, ECF No. 27. However, the same report details that the FmHA provided its loans based on credit-worthiness and did not have "jurisdiction to make loans for social purposes." *See* USCCR Rep. 19 (1982). Likewise, evidence from a 2011 investigation highlighted statistics on racial disparities in access to USDA programs

**ER086**

and services and racial under-representation in USDA employment. *See* JL Rep. (2011). While this investigation yielded "concerns as to both inequitable service delivery, . . . employment discrimination" and "negative impact[s]" on minority farmers and ranchers, lacking was direct evidence of causation tying these results to government discrimination. *Id.* at 64, 131; *see also Croson*, 488 U.S. at 505 ("[I]t is especially important that the reasons for any such classification be clearly identified and unquestionably legitimate."). The same is true for evidence cited by the Government showing that a disproportionately low number of black farmers were aware of and provided funds from the USDA's Market Facilitation Program and first Coronavirus Food Assistance Program administered during the Trump administration. *See* Inj. Resp. 18–19, ECF No. 27.

All of this evidence shows disparate impact but requires an inference of intentional discrimination by the USDA or its agencies. *See Croson*, 488 U.S. at 503 (statistical disparity alone, absent a gross disparity, is insufficient to establish intentional discrimination); *Vitolo*, 2021 WL 2172181, at *4–5 ("there must be evidence of intentional discrimination in the past" at the hands of the government). Additionally, the Government puts forward no evidence of intentional discrimination by the USDA in at least the past decade. *See* Inj. Resp., ECF No. 27; Inj. Hearing Tr. To find intentional discrimination, then, requires a logical leap, as well as a leap back in time. In sum, the Government's evidence falls short of demonstrating a compelling interest, as any past discrimination is too attenuated from any present-day lingering effects to justify race-based remedial action by Congress. *See Gratz v. Bollinger*, 539 U.S. 244, 270 (2003) ("racial classifications are simply too pernicious to permit any but the most exact connection between justification and classification").

**ER087**

Case 0:21-cv-00103-NDF   Document 28-1   Filed 07/19/21   Page 19 of 25
Case 4:21-cv-00595-O   Document 60   Filed 07/01/21   Page 18 of 24   PageID 1463
Appellate Case: 21-2650   Document: 010110573703   Date Filed: 8/24/2021   Page: 92

Even if the evidence clearly established historical governmental discrimination to give rise to a compelling interest, the Government must then show that its proposed remedy in the race-exclusionary program is narrowly tailored. *See id.* In the racial classifications context, narrowly tailored means explicit use of even narrowly drawn racial classifications can be used only as a last resort. *See Croson*, 488 U.S. at 519. This requires "serious, good faith consideration of workable race-neutral alternatives." *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003). The Government's claim that new race-based discrimination is needed to remedy past race-based discrimination is unavailing. *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 721 (2007) (plurality opinion) ("remedying past societal discrimination does not justify race-conscious government action"). Namely, it is founded on a faulty premise equating equal protection with equal results. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273 (1979) ("[T]he Fourteenth Amendment guarantees equal laws, not equal results."). As it argues, past, race-neutral attempts by Congress to correct perceived discrimination were ineffective in achieving parity in number, amounts, and servicing of USDA loans by race. *See* Inj. Resp. 39, ECF No. 27. The Court is skeptical of racial "parity" arguments, as they tend to sound a lot like racial balancing, something abhorrent to the concept of equal protection. *See Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 320 (1978). In any event, the Government's evidence does not support the conclusion that these disparities are the result of systemic discrimination justifying the use of race classifications here.

As pointed out by Judge Howard considering the same issue, the loan-forgiveness program is simultaneously overinclusive and underinclusive: overinclusive in that the program provides debt relief to individuals who may never have experienced discrimination or pandemic-related hardship, and underinclusive in that it fails to provide any relief to those who have suffered such discrimination but do not hold a qualifying FSA loan. *See Wynn v. Vilsack*, 2021 WL 2580678, at

18

**ER088**

*10. The Government also wants to have it both ways in arguing that the appropriated funds are limitless, therefore Plaintiffs cannot establish irreparable harm, *see infra*, yet are limited enough that Congress was justified excluding some farmers and ranchers from the debt-relief program based on their race and ethnicity. *See* Inj. Hearing Tr. In short, the statute's check-the-box approach to the classification of applicants by race and ethnicity is far different than the "highly individualized, holistic review" of individuals in a classification system permitted as narrowly tailored in a case like *Grutter*. 539 U.S. at 337; *see also Fisher v. U. of Tex.*, 136 S. Ct. 2198, 2214 (2016). Because the Government has not demonstrated a compelling interest or a narrowly tailored remedy under strict scrutiny, the Plaintiffs have shown a substantial likelihood of success on the merits.

## 2.  Substantial Threat of Irreparable Harm

Plaintiffs contend that they "will suffer irreparable harm absent a preliminary injunction because the entirety of funds Congress appropriated under section 1005 will be unavailable to them," and "there is no mechanism to 'claw back' this money once the government dispenses it." Inj. Mot. 4, ECF No. 18. The Government responds that either Plaintiffs are eligible socially disadvantaged farmers or ranchers, in which case their claim to the appropriated funds will be unaffected by an injunction, or they are ineligible, in which case an "injunction to further delay distribution of needed funds to *others* who do fit within the definition still will not remedy any harm to Plaintiffs." Inj. Resp. 24–24, ECF No. 27.  The Government contends that, if Plaintiffs succeed on the merits of their claim, the Court could order debt relief from the program funds; therefore, any harm at this stage is reparable. *See id.* at 45–46. To show immediate and irreparable harm, Plaintiff must demonstrate he is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable

**ER089**

where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). But "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.* An injunction is appropriate only if the anticipated injury is imminent and not speculative. *See Winter*, 555 U.S. at 22.

Here, Plaintiffs are suffering a continuing and irreparable injury based on the direct effects of the race- and ethnicity-based application process. An ongoing constitutional deprivation can be sufficient to establish irreparable harm. *See Nat'l Solid Wastes Mgmt. Ass'n v. City of Dallas*, 903 F. Supp. 2d 446, 470 (N.D. Tex. 2012) ("[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable [harm] is necessary."). Aside from that, there is the risk that any Plaintiffs who do establish the right to relief on the merits will be unable to access program funding by the time they receive a judgment in their favor. The Government suggests that the appropriated funds are limitless and will last long enough for Plaintiffs to access them if and when they secure a judgment on the merits. *See* Inj. Hearing Tr. The limited nature of Congressional appropriations both in terms of time and money suggest otherwise. While the Government may at times act like it, the public fisc is not bottomless, and at any time, Congress can turn off the spigot. *See Baker v. Concord*, 916 F.2d 744, 749 (1st Cir. 1990) ("Public funding to assist the disadvantaged is, of course, not limitless.").

Second, "our constitutional structure does not permit [courts] to 'rewrite the statute that Congress has enacted.'" *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 136 S. Ct. 1938, 1949 (2016). Thus, contrary to the Government's argument, if Plaintiffs were to prove at the merits stage that they are ineligible under the program but that the program violates equal protection, this Court is unable to provide a remedy as part of a judgment in favor of Plaintiffs extending debt relief to them under the statute. To do so would be a violation of the Appropriations Clause and the plain

text of section 1005 of the ARPA, which explicitly limits how the appropriated funds may be spent. *See* ARPA, Pub. L. No. 117-2, § 1005 (2021) (only authorizing payments to "socially disadvantaged farmers" as defined in in section 2501(a) of the Food, Agriculture Conservation, and Trade Act of 1990). *See* U.S. Const. art. I, § 9, cl. 7; *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 ("no money can be paid out of the Treasury unless it has been appropriated by an act of Congress."). Given the Government's sovereign immunity and Plaintiffs' inability to seek damages retrospectively, these injuries are irreparable.

Finally, although the Government argues that any injunctive relief is unnecessary so long as injunctions on the same issue are in place from other courts, the existence of overlapping injunctive relief from other courts does not serve to automatically eliminate irreparable harm in parallel litigation, and the Government cites no authority to suggest otherwise. *See, e.g.*, *Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233 (4th Cir. 2018); *Hawaii v. Trump*, 878 F.3d 662 (9th Cir. 2017). Additionally as it concerns the scope of relief, Plaintiffs do not seek nationwide relief here, as the Government seems to suggest. *See* Inj. Resp. 46, ECF No. 27. Plaintiffs agree on the impropriety of a universal injunction and only seek relief tailored to any classes certified under Rule 23. *See* Inj. Reply 14–15, ECF No. 42.

Accordingly, the Court concludes that Plaintiffs face a substantial threat of irreparable harm absent a preliminary injunction because Plaintiffs are experiencing race-based discrimination at the hand of government officials and will be barred from even being considered for funding from the program as a result of this discrimination.

### 3. Balance of Hardships and the Public Interest

ER091

The Court next considers whether the threatened injury to Plaintiffs outweighs any damage to the Government and the public from the proposed preliminary injunction.[2] Plaintiffs argue that a "preliminary injunction will not only alleviate the financial harms that are being inflicted the plaintiffs, but it will also eliminate the injury to their constitutional right to be free from racial discrimination at the hands of the government." Inj. Mot. 6, ECF No. 18. Plaintiffs submit that, if an injunction is granted, any harm to socially disadvantaged farmers and ranchers could only come from the Government's choice to shut off funding to everyone in lieu of awarding loan forgiveness without considering race or ethnicity. *See id.* at 5. The Government disagrees, maintaining that Congress determined that timely debt relief for minority farmers was necessary to remedy past discrimination by the USDA. *See* Inj. Resp. 42, ECF No. 27.

The Government again fails to adequately explain how the exclusion of certain races and ethnicities from consideration for loan forgiveness benefits the already eligible socially disadvantaged farmers and ranchers or the public at large. Even if it could, the inherent harm from an unlawful government-run racially discriminatory program is detrimental to the public interest. *See Bakke*, 438 U.S. 265, 289–90 ("The guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color. If both are not accorded the same protection, then it is not equal."). The Court finds that Plaintiffs suffer an ongoing constitutional injury from the irreversible act of government-sanctioned racial discrimination and that, on balance, this harm weighs in favor of immediate injunctive relief here.

### 4. Bond

---

[2] The Court considers the balance of hardships and public interest factors together as they overlap considerably. *See Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), *aff'd*, 136 S. Ct. 2271 (2016).

**ER092**

Rule 65(c) provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any part found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of security required "is a matter for the discretion of the trial court," and the Fifth Circuit has held district courts have discretion to "require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (citing *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)). In determining the appropriate amount, the Court may elect to require no security at all. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996); *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 235 (S.D. Tex. 2011) (citing *EOG Resources, Inc. v. Beach*, 54 F. App'x 592 (5th Cir. 2002)). The Court finds no evidence that the Government will suffer any financial loss from a preliminary injunction, so there is no need for Plaintiffs to post security in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs have met their burden for class certification and certifies both proposed classes.[3] Additionally, Plaintiffs have met their burden demonstrating the need for a preliminary injunction in this case. Accordingly, the Court **GRANTS** Plaintiffs' Motion for Class Certification (ECF No. 12), **GRANTS** Plaintiffs' Motion for Preliminary Injunction (ECF No. 17), and **ENJOINS** Defendants Tom Vilsack, and the United States Department of Agriculture and their officers, agents, servants, employees, attorneys,

---

[3] Plaintiffs Greg Macha, James Meek, Jeff Peters, and Lorinda O'Shaughnessy may proceed in this case as representatives of themselves and "all farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act."

All named Plaintiffs may proceed in this case as representatives of themselves and "all farmers and ranchers in the United States who are currently excluded from the definition of 'socially disadvantaged farmer or rancher,' as defined in 7 U.S.C. § 2279(a)(5)–(6) and as interpreted by the Department of Agriculture."

**ER093**

designees, and subordinates, as well as any person acting in concert or participation with them from discriminating on account of race or ethnicity in administering section 1005 of the American Rescue Plan Act for any applicant who is a member of the Certified Classes. This prohibition encompasses: (a) considering or using an applicant Class Member's race or ethnicity as a criterion in determining whether that applicant will obtain loan assistance, forgiveness, or payments; and (b) considering or using any criterion that is intended to serve as a proxy for race or ethnicity in determining whether an applicant Class Member will obtain loan assistance, forgiveness, or payments.

      **SO ORDERED** this **1st day** of **July 2021**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

**ER094**

L. ROBERT MURRAY
Acting United States Attorney
NICHOLAS VASSALLO (WY Bar #5-2443)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Nick.vassallo@usdoj.gov

BRYAN M. BOYNTON
Acting Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
EMILY SUE NEWTON (Va. Bar No. 80745)
Senior Trial Counsel
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **LEISL M. CARPENTER**, <br><br> Plaintiff, <br><br> v. <br><br> **THOMAS J. VILSACK**, in his official capacity as Secretary of Agriculture, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 21-cv-103-F <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANTS' UNOPPOSED MOTION TO EXTEND
## DEADLINE TO ANSWER PLAINTIFF'S COMPLAINT

**ER095**

For the reasons stated herein, Defendants Thomas J. Vilsack, in his official capacity as Secretary of Agriculture, and Zach Ducheneaux, in his official capacity as Administrator of the Farm Service Agency (collectively, USDA or Defendants), move to extend the deadline to answer Plaintiff's Complaint from July 31, 2021, to August 31, 2021. Counsel for Defendants have conferred by phone with counsel for Plaintiff, and Plaintiff does not oppose this motion.

Good cause exists for this extension. This is one of twelve cases pending around the country bringing an equal protection challenge to Congress's authorization in Section 1005 of the American Rescue Plan Act of 2021 (ARPA) for the United States Department of Agriculture (USDA) to provide debt relief to socially disadvantaged farmers and ranchers nationwide. As Defendants' recent motion to stay all proceedings in this case explains, the Northern District of Texas recently certified the first-filed case as a class action. *See* Defs.' Mot. to Stay, ECF No. 28; Order on Class Cert. & PI, *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.), ECF No. 60. That class action includes Plaintiff here, as well as the plaintiffs in all other cases bringing similar challenges to Section 1005. Thus, Defendants are seeking a stay of all eleven cases with plaintiffs covered by the class action, to allow for uniform, and non-duplicative, litigation of the equal protection challenge to Section 1005 and to avoid the risk of inconsistent results. The requested 31-day extension to the answer deadline will provide time for the parties to brief, and the Court to consider, Defendants' stay motion and prevent expenditure of resources on a drafting another pleading in the meantime that may ultimately be unnecessary should the Court grant the requested stay. Additionally, the requested extension will not unduly delay proceedings in this case or prejudice Plaintiff, who consents to this request.

Accordingly, Defendants respectfully request an extension of the current answer deadline from July 31, 2021, to August 31, 2021.

**ER096**

Dated: July 23, 2021                    Respectfully submitted,

                                        L. ROBERT MURRAY
                                        Acting United States Attorney

                                        /s/ Nicholas Vassallo
                                        NICHOLAS VASSALLO (WY Bar #5-2443)
                                        Assistant United States Attorney
                                        P.O. Box 668
                                        Cheyenne, WY 82003-0668
                                        Telephone: 307-772-2124
                                        Nick.vassallo@usdoj.gov

                                        BRIAN M. BOYNTON
                                        Acting Assistant Attorney General

                                        LESLEY FARBY
                                        Assistant Branch Director
                                        Civil Division, Federal Programs Branch

                                        /s/ Kyla M. Snow
                                        EMILY SUE NEWTON (VA Bar No. 80745)
                                        Senior Trial Counsel
                                        KYLA M. SNOW (Ohio Bar No. 96662)
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, NW
                                        Washington, D.C. 20005
                                        Tel: (202) 514-3259 / Fax: (202) 616-8460
                                        Kyla.snow@usdoj.gov

                                        Attorneys for Defendants

**ER097**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

**FILED**

9:48 am, 7/26/21

**U.S. Magistrate Judge**

LEISL M. CARPENTER,    )
                       )
        Plaintiff,     )
                       )
v.                     )    Case No. 21-cv-103-F
                       )
THOMAS  J.  VILSACK, in his official )
capacity as Secretary of Agriculture, et al., )
                       )
        Defendants.    )
                       )

**ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION TO EXTEND
DEADLINE TO ANSWER PLAINTIFF'S COMPLAINT**

Before the Court is an unopposed Motion to Extend the Deadline to Answer Plaintiff's

Complaint, by Defendants Thomas J. Vilsack, in his official capacity as Secretary of Agriculture, and

Zach Ducheneaux, in his official capacity as Administrator of the Farm Service Agency.  For good

cause shown, Defendants' Motion is GRANTED.  Defendants shall answer Plaintiff's Complaint by

August 31, 2021.

IT IS SO ORDERED.

_____
KELLY H. RANKIN
UNITED STATES DISTRICT JUDGE

Date: __July 26, 2021_____

**ER098**

Timothy M. Stubson (Bar No. 6-3144)
CROWLEY FLECK, PLLP
111 W. 2nd Street, Suite 220
Casper, WY 82601
(307) 265-2279
tstubson@crowleyfleck.com

William E. Trachman (*pro hac vice*)
Corey C. Bartkus (*pro hac vice*)
MOUNTAIN STATES LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org
corey@mslegal.org

Kimberly S. Hermann (*pro hac vice*)
Braden Boucek (*pro hac vice*)
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Telephone: (770) 977-2131
khermann@southeasternlegal.org
bboucek@southeasternlegal.org

*Attorneys for Plaintiff Leisl M. Carpenter*

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| LEISL M. CARPENTER,<br><br>    Plaintiff,<br><br>    v.<br><br>THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, and<br><br>ZACH DUCHENEAUX, in his official capacity as Administrator of the Farm Service Agency,<br><br>    Defendants. | Case No. 0:21-cv-00103-NDF<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING RESOLUTION OF RELATED CLASS ACTION [ECF NO. 27]** |

**ER099**

Section 1005 of the American Rescue Plan Act offers COVID-19 relief exclusively based on racial classifications of farmers and ranchers.[1] Plaintiff has filed a valid complaint that challenges this law, as well as a challenge to the Department of Agriculture's position that recipients of race-based COVID-19 debt relief are still eligible for future loans, as distinct from all other borrowers. Nevertheless, the largest law firm in the world[2] seeks to stay this case while it litigates in a different court in which jurisdiction did not first attach. That case, *Miller v. Vilsack*, No. 4:21-cv-0595-O (N.D. Tex.), involves different counsel, and Plaintiff has no control over its pace or legal theories. The Court should thus reject the government's effort to stay this case. The Western District of Tennessee recently reached the same conclusion, applying a similar standard of review as that in the Tenth Circuit. *See* Order Den. Defs.' Mot. to Stay Proceedings Pending Resolution of Related Class Action, *Holman v. Vilsack*, No. 1:21-cv-01085-STA-jay (W.D. Tenn. Aug. 2, 2021), ECF No. 49 (Exhibit 3).

## STANDARD OF REVIEW

"A district court's power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). However, this power is not to be exercised lightly, since it is also clear that a party's "right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983); *see Landis*, 299 U.S. at 255 ("Only in rare circumstances will a litigant in one cause be compelled to

---

[1] Z. Ducheneaux, USDA Blog, *American Rescue Plan Socially Disadvantaged Farmer Debt Payments*, https://www.farmers.gov/blog/loans-and-grants/american-rescue-plan-socially-disadvantaged-farmer-debt-payments ("Q. Who qualifies for this debt relief? A. The American Rescue Plan Act uses the 2501 definition of socially disadvantaged, which includes Black/African American, American Indian or Alaskan native, Hispanic or Latino, and Asian American or Pacific Islander.").

[2] *A Career Counselor's Guide to Lateral Hiring at DOJ*, United States Department of Justice, https://www.justice.gov/oarm/images/lateralhiringguideforweb.pdf. (Exhibit 1).

-1-

**ER100**

stand aside while a litigant in another settles the rule of law that will define the rights of both.");
*Kennedy Oil v. Luca Tech., Inc.*, No. 12-cv-194, 2013 WL 12284416, *2 (D. Wyo. Apr. 19, 2013)
("[T]he right to proceed in court should not be denied except under the most extreme
circumstances.") (internal quotation marks omitted).

In reviewing a motion to stay, courts should consider four specific factors: (1) the movant's
likelihood of prevailing in the related proceeding; (2) whether, absent a stay, the movant will suffer
irreparable harm; (3) whether the issuance of the stay will cause substantial harm to the non-
movant; and (4) the public interests at stake. *See United Steelworkers of Am. v. Or. Steel Mills,
Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003); *Dietgoal Innovations LLC v. Taco John's Int'l*, No.
14-CV-00144-F, 2014 WL 11460456, at *3 (D. Wyo. Oct. 2, 2014) ("[I]f the three harm factors
weigh in favor of the movant, the 'likelihood of success' factor should be relaxed somewhat.").
When analyzing the factors, the Court "should weigh the three harm factors first and then proceed
to the likelihood of success factor." *Dietgoal Innovations*, 2014 WL 11460456, at *3. With respect
to the factors, the movant bears the burden of establishing why a stay should be granted. *Id.* ("[T]he
movant bears a heavy burden to show why a stay should be granted absent statutory
authorization.").

## ARGUMENT

The government fails to organize its motion in accord with the four *United Steelworkers*
factors referred to above. In sum, however, the government has failed to establish that it will be
irreparably harmed without a stay, that a stay would not substantially harm Plaintiff, or that the
public would benefit from a stay. Finally, with respect to the "likelihood" of success factor, several
other courts have already issued preliminary injunctions regarding Section 1005 of the American
Rescue Plan Act, concluding that plaintiffs are likely to succeed in their constitutional challenges.

**ER101**

Indeed, Section 1005 is a brazen racial classification, and the government has conceded that strict scrutiny applies. Separately, to the extent judicial economy is an additional consideration for the court, that factor does not outweigh the *United Steelworkers* analysis.

**1.    Factor 1:  Defendants Have Failed to Meet Their Burden of Establishing Irreparable Harm.**

The word "irreparable" is not mentioned once in the government's motion, and no declaration or other factual evidence attempting to prove irreparable harm is presented to the Court. The Court should deny the government's motion on this basis alone.

Nor, additionally, could the government make such a showing if it tried. "The party requesting a stay must make out a clear case of hardship or inequity, if there is even a fair possibility that the stay will damage another party." *Kennedy Oil*, 2013 WL 12284416, at *2. The government merely asserts that requiring it "to continue defending against duplicative claims in separate courts" would qualify as a hardship. Defs.' Mot. to Stay, ECF No. 28 at 1. These are exactly the types of concerns that litigants make in every stay motion, and which courts generally reject. *See, e.g.*, *Collins v. Ace Mortg. Funding, LLC*, No. 8-cv-1709, 2008 WL 4457850, *1 (D. Colo. Oct. 1, 2008) ("The ordinary burdens associated with litigating a case do not constitute undue burden."); *Lockyer v. Mirant Corp.*, 389 F.3d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*.").

In terms of litigation resources, it beggars belief that the Department of Justice could ever be "drained," given that it employs approximately 10,000 attorneys nationwide. *See Choose Justice: Guide to the U.S. Department of Justice for Law Students and Experienced Attorneys*, United          States          Department          of          Justice, https://www.justice.gov/sites/default/files/careers/docs/legal-careers-brochure.pdf.   (Exhibit   2).

-3-

**ER102**

Even in a matter involving a receivership for real property—and not the Department of Justice and an extraordinary public moment—courts have rejected the types of arguments made by the government here. *See Klein v. Brennan*, No. 2:19-cv-687, 2020 WL 816140, *1 (D. Utah Feb. 19, 2020) ("The time and costs that Defendant will expend litigating this case are also an insufficient hardship to warrant a stay.").

### 2.   Factor 2:  Defendants Have Failed to Meet Their Burden of Establishing that a Stay Would Not Cause Substantial Harm to the Plaintiff.

There can be no doubt that a stay would substantially harm Plaintiff. The Supreme Court has made it clear that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both," *Landis*, 299 U.S. at 255. The government asks the Court to allow other parties with other legal counsel in a court in a different judicial circuit to decide Plaintiff's fate.

The government, moreover, cannot establish that any stay would merely be for a discrete and limited time period. For instance, the government may opt to appeal the grant of class certification issued in *Miller*, or appeal the grant of preliminary injunction, before proceeding to any further proceedings on the merits. *See* Joint Report, *Miller*, No. 4:21-cv-595 (N.D. Tex. July 16, 2021), ECF No. 70 at 3 n.1 ("Defendants have not appealed or sought a stay of this Court's preliminary injunction, but reserve their right to do so."). Plaintiff has no say whatsoever in the pace at which *Miller* would proceed, including whether extensions of deadlines may be requested or granted by either party, whether the government may seek *en banc* review by the Fifth Circuit, or whether ultimate review by the U.S. Supreme Court may occur.

Indeed, Plaintiff expects that the government will propose an "expedited" scheduling plan like it has proposed in *Faust* and *Wynn*—should its motion for a stay in this case be denied—that would nevertheless still result in summary judgment briefing being completed around April 1

**ER103**

(*Wynn*) or May 6, 2022 (*Faust*), which is over a year after the passage of the American Rescue Plan Act. *See* Parties' Proposed Schedules, *Faust v. Vilsack*, No. 1:21-cv-548 (E.D. Wis. July 14, 2021), ECF No. 56 at 3; Joint Notice, *Wynn v. Vilsack*, No. 3:21-cv-514 (M.D. Fla. June 29, 2021), ECF No. 42 at 4. In other words, the government is suggesting that requiring it to complete briefing on summary judgment by next April or May—9 or 10 months from now—would "drain" the resources of the federal government. Even on its own terms, this is no grounds for stay. *See Commodity Futures Trading Comm'n*, 713 F.2d at 1484 ("[W]here a movant seeks relief that would delay court proceedings by other litigants he must make a *strong showing of necessity* because the relief would severely affect the rights of others." Thus, "the suppliant for a stay must make out a *clear case of hardship or inequity* in being required to go forward.") (emphasis added).

If a complete stay of all proceedings is granted, Plaintiff will simply have to sit and wait indefinitely, always wondering whether her claims will be heard in this judicial district some day. *See* Exhibit 3, at 2 ("Plaintiff could well have to wait years before he is able to resume his case in this Court."). Such an indefinite length of time cannot fairly be said to be "susceptible of prevision and description." *Landis*, 299 U.S. at 257. In the meantime, Plaintiff will watch counsel other than her own making strategic decisions and legal arguments that she has no say in.

The government incorrectly suggests that the cases "are not just similar—they are identical." Defs.' Mot. to Stay, ECF No. 28 at 6. But this case features a wholly distinct claim that is never mentioned in *Miller*—related to the government's position that it can allow future loan eligibility for those who receive loan forgiveness under Section 1005, which Plaintiff contends is a distinct equal protection violation in itself. *See* Compl., ECF No. 1 at 12-13 ("Because the Department has no authority to treat anyone who received loan forgiveness as eligible for future loans, but has said that it will do so anyway, it will be acting unlawfully."). These claims deserve

**ER104**

timely adjudication, regardless of how *Miller* proceeds. *Cf. Chavez v. Young Am. Ins. Co.*, No. 6-cv-02419, 2007 WL 683973, *2 (D. Colo. Mar. 2, 2007) (Staying the case for approximately 7.5 months while motion to dismiss was pending "could substantially delay the ultimate resolution of the matter, with injurious consequences.").

**3.     Factor 3:  The Government Has Failed to Establish that the Public Interests at Stake Justify a Stay.**

The government *barely* argues that a stay will benefit the public. The closest it gets is citing a First Circuit case, wherein that court stayed a matter, noting that the stay was in the public interest. Defs.' Mot. to Stay, ECF No. 28 at 10. Such an offhanded reference does not suffice to show that a stay in this case is in the interests of the public. Moreover, it is just as persuasive to argue that the public in this judicial district benefits from the robust and timely enforcement of constitutional rights, like those alleged in the instant matter. *See Collins*, 2008 WL 4457850, at *1 ("[T]he Court identifies a strong interest held by the public in general regarding the prompt and efficient handling of all litigation."); *see also Commodity Futures Trading Comm'n*, 713 F.2d at 1486 (reversing stay where court concluded that investor confidence was not likely to be promoted due to the "adverse effects of the denial of access to the courts"). Because the moving party bears the burden on this factor, even if the Court views this issue as a tie, such a conclusion should lead the Court to reject the motion to stay.

**4.     Factor 4:  The Government Has Failed to Establish that It Has a Likelihood of Succeeding on the Merits in *Miller*.**

The government ignores this factor as well. In any event, like the other factors, it cuts against the government, given that Section 1005 imposes a brazen racial classification, and is presumptively unconstitutional. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 218 (1995) ("[T]he guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color.") (quoting *Regents of U. of Calif. v.*

**ER105**

*Bakke*, 438 U.S. 265, 289-90 (1978) (Powell, J.); *see id.* at 290 ("If both are not accorded the same protection, then it is not equal."). The government's showing on strict scrutiny—which it has acknowledged applies—has been so weak that three preliminary injunctions have already been entered against the law. *See* Order, *Wynn*, No. 3:21-cv-514 (M.D. Fla. June 23, 2021), ECF No. 41; Order, *Miller*, No. 4:21-cv-595 (N.D. Tex. July 1, 2021), ECF No. 60; Order Granting Mot. for Prelim. Inj., *Holman*, No. 1:21-cv-01085-STA-jay (W.D. Tenn. July 8, 2021), ECF No. 41.

Moreover, as the Tenth Circuit has recognized, this factor is "relaxed" only "where the moving party has established that the three 'harm' factors tip decidedly in its favor." *Fed. Trade Comm'n v. Mainstream Mktg. Serv., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003) (describing "the four stay factors" and weighing the likelihood of success factor). In this case, no such showing has been made, and the factor weighs heavily against the government.

### 5. To the Extent Judicial Economy is a Factor, It Does Not Outweigh the Factors Described Above.

The government spends most of its motion on this subject, which is not technically part of the *United Steelworkers* analysis. In any event, the government cannot seek to indefinitely stay this matter merely because a suit in another jurisdiction involves Section 1005. "[J]udicial economy … considerations should rarely if ever lead to such broad curtailment of the access to the courts." *Commodity Futures Trading Comm'n*, 713 F.2d at 1485; *Nelson v. Granite State Ins. Co.*, No. CIV–08–1165–M, 2010 WL 680878, *1 (W.D. Okla. Feb. 25, 2010) ("The stay of a case is a discretion that will be used sparingly and only upon a clear showing by the moving party of hardship or inequity so great as to overbalance all possible inconvenience of the delay to his opponent.").

To be sure, the Court is within its discretion to stay a duplicative suit. *Smith v. Sec. and Exch. Comm'n*, 129 F.3d 356, 361 (6th Cir. 1997) ("When a federal court is presented with such a

**ER106**

duplicative suit, it may exercise its discretion to stay the suit before it, to allow both suits to proceed, or, in some circumstances, to enjoin the parties from proceeding in the other suit."). However, "the mere potential for conflict in the results of adjudications does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 816 (1976). Generally, courts consider whether another action involves "the same issues and litigants" and "substantially identical causes of action." *Ed Tobergte Assoc., Inc. v. Zide Sport Shop of Ohio, Inc.*, 83 F. Supp. 2d 1197, 1198 (D. Kan. 1999).

*Miller* does not involve the same parties, and will not adequately consider all of Plaintiff's interests. *See* Exhibit 3, at 3 ("Additionally, the interests of the *Miller* plaintiffs are not completely aligned with Plaintiff's interests, thus negating Defendants' claim of duplicative lawsuits.").[3] Thus, deferral under the first-filed approach would be inappropriate, because *Miller* will not "necessarily resolve the identical issues pending in the other court." *Victor Co. v. Ortho Organizers, Inc.*, 923 F.Supp. 261, 263 (D. Kan. 1996). A court abuses its discretion where it enjoins a party from proceeding due to another suit that is not truly duplicative of the suit before it. *See Span-Eng Assoc. v. Wiedner*, 771 F.2d 464, 470 (10th Cir. 1985).

The instant litigation is not truly duplicative. *Miller* will not "resolve the identical issues pending in" this case, because even if the *Miller* court rules that the government violated white farmers' and ranchers' equal protection rights by basing COVID-19 relief on race, such determination does not resolve Plaintiff's "entire action"—it leaves substantive questions still to

---

[3] Additionally, Plaintiff may yet pursue a request to opt out of the *Miller* classes. *See Penson v. Terminal Transp. Co., Inc.*, 634 F.2d 989 (5th Cir. 1981) (describing class actions that have provided for opt-outs under F.R.C.P. 23(b)(2) to "ameliorate any 'antagonistic interests' between the class representatives and the absent members" and to "permit the class members to seek monetary relief in individual actions if they so choose"). The argument that Plaintiff would necessarily be bound by a judgment impacting another class raises a "serious possibility" of a due process violation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011). Regardless of Plaintiff's ability to opt out of the *Miller* classes, however, this Court should deny Defendants' motion for stay. The Western District of Tennessee based its similar denial partly on this factor. *See* Exhibit 3, at 3 ("Finally, Plaintiff may choose to opt out of the *Miller* classes, thus leaving his interest unrepresented.").

**ER107**

be determined. Because the *Miller* case cannot resolve "*the same issues*" between the litigants, application of the first-to-file rule is not warranted. *Cf. Ed Tobergte Assoc.*, 83 F. Supp. 2d at 1199 (only because the earlier filed case could resolve all the issues between the parties, the chronology of the two actions favors applying the first-to-file rule).  Additionally, courts commonly reject one party's assertion that proceeding is merely a waste of time because another matter will resolve all issues. *See Wyoming v. United States Dep't of Interior*, Nos. 2:15–CV–043–SWS, 2:15–CV–041–SWS, 2015 WL 9463708, *2 (D. Wyo. Dec. 17, 2015) ("Although Intervenor–Respondents' assume the final administrative record may be immaterial to the outcome, this Court is not prepared to be so presumptuous.").

The government relies on out-of-circuit cases that are inapposite. For example, the government cites *Taunton Gardens Co. v. Hills*, 557 F.2d 877 (1st Cir. 1977) as "illustrat[ing] the propriety of a stay in circumstances strikingly similar to this case."  Defs' Mot. to Stay, ECF No. 28 at 10. Unlike here, the district court in *Taunton Gardens* was considering a motion for preliminary injunction by the time *a final judgment* in a concurrent case had been issued. *See Taunton Gardens Co. v. Hills*, 421 F. Supp. 524, 525-26 (D. Mass. 1976). And contrary to the indefinite stay proposed by the government in this case, the First Circuit noted that "the duration of the stay [was] adequately circumscribed by reference to the determination of the appeal presently pending." *Taunton Gardens*, 557 F.2d at 879.

The other cases the government cites are equally inapplicable. The court in *Aleman ex rel. Ryder Sys., Inc. v. Sancez*, for instance, was not addressing a stay motion whatsoever; the quoted language referred to an entirely separate case. No. 21-cv-20539, 2021 WL 917969, *2 (S.D. Fla. Mar. 10, 2021); *see* Defs' Mot. to Stay, ECF No. 28 at 9-10. Additionally, the court in *Richard K. v. United Behavioral Health* deferred to a class action lawsuit filed over four years before the

**ER108**

complaint was filed. No. 18-cv-6318, 2019 WL 3083019, *5 (S.D.N.Y. June 28, 2019), report and recommendation adopted, No. 18-cv-6318, 2019 WL 3080849 (S.D.N.Y. July 15, 2019); *see* Defs.' Mot. to Stay, ECF No. 28 at 10. These cases are inapposite and do not justify staying this case.

Finally, the government's argument that *Miller* was the "first filed" case rests on a false premise. Initially, the sole plaintiff and proposed class representative in *Miller* was Sid Miller, the Agriculture Commissioner for the State of Texas. *Miller*, No. 4:21-cv-595 (N.D. Tex. Apr. 26, 2021), ECF No. 1 at 3. *Miller* possessed neither farm nor ranch loans to press his claims, and thus lacked standing sufficient for the court in that case to exercise jurisdiction under Article III. He nonetheless sought to "represent a class of all farmers and ranchers in the United States who are currently excluded from the Department's interpretation of 'socially disadvantaged farmer.'" *Id.* at 9. Only *Miller's* amended complaint remedied this defect by adding plaintiffs with standing who held farm loans. The amended complaint in *Miller* was filed a week after Plaintiff filed her complaint, however, for which this Court's jurisdiction attached immediately. *Compare* Compl., ECF No. 1 (filed May 24, 2021), *with* Am. Compl., *Miller*, No. 4:21-cv-595 (N.D. Tex. June 2, 2021), ECF No. 11 (filed June 2, 2021). The government's argument that *Miller* was the first filed case is therefore inaccurate, and does not support the granting of a stay.

## CONCLUSION

For these reasons, the Court should deny the government's Motion to Stay.

**ER109**

Dated: <u>August 2, 2021</u>.                    Respectfully submitted,

    <u>*s/ William E. Trachman*</u>
William E. Trachman, CO. Bar No. 45684*
Corey C. Bartkus, CO. Bar No. 54789*
MOUNTAIN STATES LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, Colorado 80227
Tel: (303) 292-2021 | Fax: (303) 292-1980
wtrachman@mslegal.org | corey@mslegal.org

<u>*/s/ B.H. Boucek*</u>
Braden H. Boucek, TN BPR No. 021399*
Kimberly Hermann*
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Tel: (770) 977-2131
bboucek@southeasternlegal.org | coleary@southeasternlegal.org
*Appearing *Pro Hac Vice*

Timothy M. Stubson (Bar No. 6-3144)
CROWLEY FLECK, PLLP
111 W. 2nd Street, Suite 220
Casper, WY 82601
(307) 265-2279 | tstubson@crowleyfleck.com

Counsel for Plaintiff

**ER110**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2021, I caused a true and correct copy of the foregoing

document to be electronically filed with the Clerk of the Court using the Court's CM/ECF

system which sent notification of such filing to all counsel of record of this matter.

*/s/ William E. Trachman*
William E. Trachman

**ER111**

# EXHIBIT 1

**A Career Counselor's Guide to Lateral Hiring at DOJ**



### A CAREER COUNSELOR'S GUIDE TO LATERAL HIRING AT DOJ

The question isn't whether we have jobs; we do -- lots of them.  The Department (DOJ) hires more than 750 experienced attorneys nationwide each year.

The question isn't whether lawyers are interested in these jobs; they are.  Despite the robust market for legal talent, the competition for available positions at the Department remains strong.

The more relevant questions to ask are:

- Where are the jobs, and how can you find them?
- How does the hiring process work?
- What do the Department components look for in a candidate?

### AN OVERVIEW OF LATERAL HIRING AT DOJ

The lateral hiring process at the Department is similar to that of any large legal employer, but it has some unique features.

***DOJ is mission driven, not profit driven***.  The Department stands at the forefront of America's commitment to justice for all its citizens.  Each component within the Department has its own unique mission in meeting that commitment.

***There is a very broad range of legal practice and opportunity***.  With more than 9,500 attorneys, the Department of Justice is the largest legal employer in the world.  Attorneys at the Department, in Washington, D.C. and in field offices nationwide, work in virtually every area of legal practice.

***There is "no one-stop shopping" for experienced attorneys***.  The Department believes that each component within the Department is in the best position to know the kind of skills and talent it needs to achieve its mission and has given each component the authority to select its own candidates.  This means that lateral candidates must apply separately to each Department component in which they have an interest.  This decentralized philosophy can present a challenge for candidates.  There are more than 40 separate components at the DOJ, and within each of those components there are multiple sections, each with its own distinct focus.  Finding a "match" does require some research and thought.

**ER113**

*A Career Counselor's Guide to Lateral Hiring at DOJ*                    *Page 2*

*Candidate selection is individualized*.  Each DOJ component is free to develop a recruitment system that is geared to the specific needs and philosophy of that particular office. One section may decide to conduct group interviews while another may have a committee that conducts one-on-one interviews for the section.  There is a natural tendency to think of the Department as one entity, but, at least from a hiring perspective, it is better to view each Department component as an individual employer.

*Available positions are unpredictable*.  Budget, attrition, and expanding caseloads drive the hiring process.  Department managers are constantly juggling budget realities against staffing needs.  And, priorities constantly change.  Department managers have to make a case for additional hiring and, even when approval is granted to hire additional lawyers, there is always the unexpected.  These changing priorities can delay the hiring process.  Budget can prompt a "hiring freeze" which can halt the components' hiring for months at a time.

*Approval to hire attorneys generally is made at the division level, but recruiting, interviewing and hiring is generally done at the section level*.  As an example, in the Environment and Natural Resources Division, the hiring needs for each section within the division are determined quarterly by the division's leadership.  If, for example, the Appellate Section was given authority to hire one new attorney, the hiring process would be conducted solely by the attorneys in the Appellate Section.  For smaller sections (fewer than 25 attorneys) within the Department, the Section Chief may screen candidates and handle interviews.  For the larger sections, there is often a Hiring Committee that orchestrates the process and presents the "finalists" to the Section Chief and/or Assistant Attorney General for that division who makes the final selection.  The interviewing process is generally two-tiered with an initial interview at the section level and a final interview with the Section Chief or the Assistant Attorney General of that division.  Typically components will interview 10-15 people for each attorney position.  The process – from submission of the resume, to interview, to checking references, to offer – can take several months.

*The suitability process*.  Department attorneys hold positions of high public trust which frequently can have a significant bearing on the public interest.  Once an offer is extended and accepted, the FBI conducts a full-field background investigation to ensure that each attorney hired is suitable for appointment to an attorney position.  This process can take several months.  In most cases, experienced attorneys join the Department on a temporary, conditional appointment pending completion of that process.

RULES OF THUMB WHEN COUNSELING ALUMNI

*Questions to ask*.  Do you want to be a litigator, or do you want a policy or counselor/advisory position?  Do you want to be on the front-line as a trial attorney, or do you want an appellate practice?  Do you want to work as part of a litigation team, or do you want to work more independently?  Do you want to travel?  Once a candidate has a picture of his or her ideal profile, he or she can research the Department division/section that matches that profile.

**ER114**

*A Career Counselor's Guide to Lateral Hiring at DOJ*                    *Page 3*

***Talk to as many people as possible***.  Professors, colleagues, former classmates, and DOJ attorneys are good sources of information about potential opportunities and the work of the various divisions and offices.

***Utilize the Department's Web site***.  There is a wealth of information on OARM's web site, including hiring contacts, the number of recent hires, and the work of the divisions and their sections at www.usdoj.gov/oarm/arm/componentsdesc.htm.  The DOJ Practice Area Chart at www.usdoj.gov/oarm/images/practice.pdf is a very effective counseling tool for assisting attorneys in finding the component(s) which best match their interest and expertise.  The Field Office Location Chart at www.usdoj.gov/oarm/images/fieldoffice.pdf provides a handy reference for candidates looking for opportunities nationwide.

The Department's "What We Do" and "Press Room" sections of the Web site www.usdoj.gov are another good place to keep up with news and new initiatives that may have an impact on hiring.

***Bookmark the DOJ vacancy announcement page and respond to individual vacancy announcements*** – **www.usdoj.gov/oarm/attvacancies.htm**.  All attorney vacancies are advertised on our web site.  Checking this site frequently is the best way to keep up to date with advertised attorney vacancies.

***Apply to individual components directly***.  In addition to responding to specific vacancy announcements, attorneys should also be encouraged to apply to the hiring contact listed for each DOJ component in which they have an interest (www.usdoj.gov/oarm/arm/lar/larcontact.htm).  Department components are continuously receiving a large number of unsolicited resumes and many hire from that pool.  Candidates should be specific in their cover letter.  For example, *"While I am interested in the Civil Division generally, I am particularly interested in a position with the Torts Branch."*

***Review of resumes***.  Whether resumes are received in response to an advertised vacancy or through direct mailing by candidates, they are typically evaluated by the personnel office for the division.  Upon review, the personnel office forwards the resume either broadly around the division or to certain sections depending on the candidate's qualifications and specific interests.  Attorneys who are focused on a particular section can also send a resume directly to the Section Chief of that section.  The Federal Yellow Book, available in most law libraries, is a good resource for locating names and contact information for Department components.  As a rule of thumb, most components keep resumes active for six months.

**ER115**

*A Career Counselor's Guide to Lateral Hiring at DOJ*                                    *Page 4*

### What do Department Components Look For?

The candidate profiles vary from division to division and from section to section; however, there are some constants among the litigating divisions:

*Litigation experience*.  All components like to see a nexus between what they do and what the candidate has done.  As an example, the Fraud Section of the Criminal Division values court time – trying relevant cases, taking depositions, interviewing witnesses, etc.

*Demonstrated interest in the work of the division or section*.  One way candidates can show this is through the resume and/or the cover letter.  Candidates should include any relevant *pro bono*, clinical or work experience in their application materials.

*Diversity of experience, background, geography*.  Components aren't looking for cookie-cutter applicants, they want a variety of experiences and backgrounds.  Attorneys at DOJ are from all over the country and bring their experiences as former teachers, pilots, law enforcement personnel, engineers, law firm partners and associates, military officers, policy analysts, and more.

*Commitment to contribute to the mission of the particular component*.  Components are leery of candidates who are motivated by the perception that life will be easier in government practice.  They want those candidates who are driven to accomplish the goals of the component.

### Why do Attorneys Come to the Department?

Lawyers come to the Department, many taking significant pay cuts, for a range of personal and professional reasons.

*The work itself*.  Hands down, this is the biggest draw.  Laterals come because they want to work on important cases, they want more front-line experience, and/or they want to work on issues that are unique to the Department.  One attorney told us, *"when I talked to people both on the inside [DOJ] and outside, they all told me that working at DOJ would round out my legal experience and would make me a better lawyer whether I stay with DOJ or choose to return to private practice.  They said it's the best legal job you'll ever have."*

*The opportunity to manage your own cases*.  In most instances, Department attorneys get their own cases and handle everything from investigation to trial.  They aren't just doing the ground work for someone else.  It's their case from beginning to end.  Another plus is that they have great latitude in how they get their work done without some of the pressures found in the private sector.  The lack of billable hours and client development responsibilities allow Department attorneys to focus on practicing law.

**ER116**

*A CAREER COUNSELOR'S GUIDE TO LATERAL HIRING AT DOJ*                                              *Page 5*

***The opportunity to make a difference and have an impact***.  One Assistant United States Attorney (AUSA) said *"I never thought I would find a job that is so meaningful and fulfilling.  I have an opportunity to make a difference in my community by holding offenders accountable and working with victims of violent crimes."*

***A collegial work environment***.  Attorneys at the Department stress the benefit of working in a cooperative, as opposed to competitive, work environment.  They highlight the benefits of working in an environment where attorneys share ideas and where there are great opportunities for training and for mentoring.  Our attorneys say consistently that they have *"great teachers and managers."*

SOME FREQUENTLY ASKED QUESTIONS

***Where are the opportunities?***

More than 50% of the attorneys in the Department work in one of the 94 U.S. Attorneys' Offices.  The remainder of the attorneys are in the Department components.  See below for a quick picture of attorney hiring in the larger Department organizations in Fiscal Year 2007:

| Component | # of attorneys hired 2007 |
|---|---|
| U.S. Attorneys' Offices | 314 |
| Civil Division | 120 |
| United States Trustees' Offices | 61 |
| Criminal Division | 83 |
| Antitrust Division | 36 |
| Civil Rights Division | 36 |
| Tax Division | 70 |
| Environment and Natural Resources Division | 27 |
| Executive Office for Immigration Review | 29 |
| Federal Bureau of Investigation | 17 |
| Federal Bureau of Prisons | 9 |

Many of the smaller offices also hire experienced attorneys, but generally on a less frequent basis and/or in far fewer numbers than the larger components mentioned above.

**ER117**

*A Career Counselor's Guide to Lateral Hiring at DOJ*                    *Page 6*

### Who is eligible?

Any attorney who is an active member of the bar (any jurisdiction) and has at least one year post-J.D. experience is encouraged to apply for a position as an experienced attorney.

### Are all of the opportunities in the Washington, D.C. area?

No.  The majority of attorney positions with U.S. Attorneys' Offices, the Executive Office for Immigration Review and U.S. Trustees' Offices are located outside the Washington, D.C., area.  In addition, some Department components have offices located outside the Washington, D.C., area: for example, the Antitrust Division has seven field offices located in major cities around the country.  That said, most of the other litigating division positions are in D.C.  A table of "Field Office Locations Employing Attorneys" can be found at www.usdoj.gov/oarm/images/fieldoffice.pdf.

### Can you transfer within the Department?

It is not unusual for DOJ attorneys to move within the Department, either to another section within their current Division or to move to another Division entirely.  Some attorneys may hold several different positions within the Department over the course of their career.  Because every attorney within the Department undergoes a background investigation, the transition from one component to another can be accomplished quickly.

### What is the salary structure?

Attorneys at the Department are paid under one of two salary structures - the General Schedule (GS) or the Administratively Determined (AD) pay scale - depending on the component for which they work.  AUSAs are paid under the AD pay scale.  The vast majority of other attorneys at the Department are paid under the General Schedule.

Experienced attorneys under the General Schedule are hired in the GS-11 to GS-15 range, depending on the nature of the position to be filled, an attorney's years of experience, and the hiring component's policies.  AUSA salaries are based on the amount of professional attorney experience at the time hired, level of performance on the job, and the United States Attorneys' Offices pay practices.  Both GS and AD attorney positions receive geographic pay differentials based on the location of the position. We encourage you to visit the Office of Personnel Management's web site at http://www.opm.gov/Federal_Salaries_Wages for GS salaries and geographic pay information.  For AUSA pay ranges, please contact the Executive Office for United States Attorneys, Personnel Staff.

**ER118**

*A Career Counselor's Guide to Lateral Hiring at DOJ*                    *Page 7*

### What is the Department's promotion policy?

Attorneys may be considered for promotion from their current GS level (e.g., GS-13) to the next highest GS level (e.g., GS-14) once they have served the requisite minimum time-in-grade and satisfactory performance level. The following chart summarizes the promotion eligibility schedule for experienced attorneys under the General Schedule:

Grade Level Minimum Waiting Time for Consideration
GS-11 to GS-12 6 months
GS-12 to GS-13 6 months (if hired at the GS-12 level: otherwise 1 year)
GS-13 to GS-14 1 year
GS-14 to GS-15 1 year (with outstanding performance appraisal); otherwise, 18 months

It is possible for attorneys starting at the GS-12 grade level, for example, to reach the GS-15 level in only two and a half years.  Please note, however, that some components may require longer waiting periods or restrict the grade level to which non-supervisory attorneys may be promoted.  Assistant United States Attorneys receive an annual pay review that may lead to an increase in basic pay, based on the attorney's performance rating, current pay and pay range, and years of experience as an attorney.

### What kind of background check will be done?

It is the policy of the Department to achieve a drug-free workplace, and persons selected for employment will be required to pass a drug test to screen for current illegal drug use prior to final appointment.  Moreover, employment is contingent upon the completion and satisfactory adjudication of a full-field background investigation conducted by the FBI.  As part of its investigation, the FBI interviews or checks references and close personal associates; former spouse(s); employers and co-workers; neighbors and landlords; institutions of higher learning; court and financial records; and military and police records.  In addition, the Office of Attorney Recruitment and Management (OARM), which determines the suitability of all attorney applicants, will check your federal income tax filing/payment history, credit report, and certification of active bar membership.  (Please note that applicants for employment with the FBI are required to submit to a polygraph examination prior to entry on duty.)

The most common suitability issues that arise are: past unlawful use of drugs; failure to fulfill tax obligations; and failure to comply with financial obligations.  After an applicant has received a tentative offer of employment from the Department, OARM can advise him/her as to any issues regarding potential suitability problems.

### Can I work at the Department if I'm not a U.S. citizen?  What if I am a dual citizen?

Only U.S. citizens are eligible for employment with the Executive Office for Immigration Review (EOIR), U.S. Attorneys' Offices, U.S. Trustees' Offices, and the FBI.  Non-U.S. Citizens may apply for employment with other Department components (unless otherwise indicated in a vacancy announcement), but should be advised that appointments of non-U.S. Citizens are

**ER119**

*A CAREER COUNSELOR'S GUIDE TO LATERAL HIRING AT DOJ*                    *Page 8*

extremely rare. Such appointments are considered if necessary to accomplish the Department's mission and are subject to strict security requirements.  Dual citizens of the U.S. and another country will be considered on a case-by-case basis.

### *How much travel is required?*

The amount of travel required, if any, depends on the particular component and the nature of its practice.  A moderate to heavy travel schedule can be expected in the litigating divisions, whose attorneys often conduct depositions, lead grand jury investigations, and/or appear before Federal courts across the country.

### *What is the role of the U.S. Attorneys' Offices versus the divisions in litigating cases on behalf of the Department?*

There is a great deal of collaboration between the U.S. Attorneys' Offices and the other litigating divisions (Antitrust, Civil, Civil Rights, Criminal, Environment and Natural Resources, National Security and Tax).  Much of the day-to-day criminal and civil litigation is carried out in the field by the 94 U.S. Attorneys' Offices, with the litigating divisions having oversight duties and serving as sources of legal expertise and assistance.  In addition, the litigating divisions have primary responsibility for the investigation and prosecution of certain cases or categories of cases. They handle issues with broad policy or geographic impact.  The litigating divisions also help develop Department policy in their areas of responsibility, and assist the U.S. Attorneys' offices in resolving policy disputes or questions.

We hope our "Career Counselor's Guide to Lateral Hiring at DOJ" has eliminated some of the mystery surrounding the Department's lateral attorney hiring process.  We also hope you have a better sense of why experienced attorneys come to the Department, and why so many of them stay.  The Department is living proof that if you offer interesting work, personal rewards, and a comfortable salary, attorneys will beat a path to your door.

*Prepared for the National Association for Law Placement's Annual Education Conference, 2008, by the Office of Attorney Recruitment and Management, U.S. Department of Justice, 202-514-8900, www.usdoj.gov/oarm.*

**ER120**

# EXHIBIT 2

**Choose Justice - Guide to U.S. DOJ for Law Students and Exp. Attorneys**

Appellate Case: 22-8079   Document: 010110806323   Date Filed: 01/31/2023   Page: 126

U.S. Department of Justice



# *Choose*

# *Justice*



*Guide to the*
*U.S. Department of Justice*
*for Law Students and*
*Experienced Attorneys*

# *Choose Justice*



*Guide to the
U.S. Department of Justice
for Law Students and
Experienced Attorneys*

**ER123**



**ER124**

## TABLE OF CONTENTS



Introduction ............................................................................................................... i
User's Guide ............................................................................................................... ii

Overview
    Volunteer Legal Internships ............................................................................... 1
    Summer Law Intern Program .............................................................................. 2
    Attorney General's Honors Program .................................................................. 3
    Experienced Attorney Hiring .............................................................................. 5

Leadership Offices
    Office of the Attorney General ............................................................................ 9
    Office of the Deputy Attorney General ............................................................. 9
    Office of the Associate Attorney General .......................................................... 9
    Office of the Solicitor General ............................................................................. 9

Functions and Organizations of the U.S. Department of Justice ...................... 11

Organizations With More than 100 Attorneys
    Antitrust Division ................................................................................................ 13
    Civil Division ....................................................................................................... 15
    Civil Rights Division ........................................................................................... 18
    Criminal Division ................................................................................................ 20
    Environment and Natural Resources Division ................................................ 23
    Executive Office for Immigration Review ......................................................... 25
    Federal Bureau of Investigation ........................................................................ 26
    Federal Bureau of Prisons .................................................................................. 30
    National Security Division ................................................................................. 32
    Tax Division ......................................................................................................... 34
    U.S. Attorneys' Offices ....................................................................................... 35
    U.S. Trustee Program .......................................................................................... 37

Organizations With Fewer than 100 (But More than 10) Attorneys
    Bureau of Alcohol, Tobacco, Firearms and Explosives ................................. 39
    Drug Enforcement Administration .................................................................... 39
    Executive Office for U.S. Attorneys ................................................................... 39
    Justice Management Division ............................................................................ 40
    Office of Information Policy ................................................................................ 40
    Office of Justice Programs .................................................................................. 40
    Office of Legal Counsel ...................................................................................... 41
    Office of Legal Policy ......................................................................................... 41
    Office of Legislative Affairs ............................................................................... 41
    Office of Professional Responsibility ................................................................ 42
    Office of the Inspector General .......................................................................... 42
    U.S. Marshals Service ......................................................................................... 42

Organizations With 10 or Fewer Attorneys
    Community Relations Service ............................................................................ 43
    Foreign Claims Settlement Commission .......................................................... 43
    INTERPOL Washington, U.S. National Central Bureau ................................. 43
    National Drug Intelligence Center .................................................................... 43
    Office of Attorney Recruitment and Management .......................................... 43
    Office of Community Oriented Policing Services (COPS) ............................... 44
    Office of Dispute Resolution ............................................................................. 44
    Office of Intergovernmental and Public Liaison ............................................. 44
    Office of the Federal Detention Trustee ............................................................ 44
    Office of the Pardon Attorney ........................................................................... 44
    Office of Tribal Justice ........................................................................................ 44
    Office on Violence Against Women .................................................................. 45
    Professional Responsibility Advisory Office .................................................... 45
    U.S. Parole Commission ..................................................................................... 45

Appendices
    Appendix A. DOJ Field Office Locations Employing Attorneys ................... 46
    Appendix B. DOJ Organizational Practice Area Chart ................................... 48

**ER125**

**Robert F. Kennedy Department of Justice Building ("Main Justice")**
**950 Pennsylvania Ave., NW, Washington, DC**



View from the corner of Pennsylvania Avenue and 10th Street, showing the northeast corner of the Justice Building under construction. Photograph taken February 2, 1933. *Collection: National Archives, Audiovisual; photo no. 121-BCP-138A-16.*



Construction photograph taken August 1934, showing the 10th Street and Constitution Avenue fronts of the building. Note the platform along the parapet on the 10th Street side and the pediments on the Constitution Avenue side for the carvers working on the sculptural decoration of those areas. *Collection: National Archives, Audiovisual; photo no. 121-BCP-138B-15.*

**ER126**

## INTRODUCTION



### INTRODUCTION

Thank you for your interest in the United States Department of Justice (DOJ or Justice). This guide is designed to introduce you to the many challenging and rewarding opportunities available at Justice for law students and attorneys. Justice is proud of its talented and dynamic workforce, and recognizes that its employees are its most important asset. Justice employees are the vital link that ensures the fair administration of justice for all Americans. The Department of Justice is stronger, more credible, and more effective when its workforce includes highly-qualified individuals whose backgrounds reflect our nation's rich diversity. To this end, Justice strives to recruit and retain a workforce drawn from the broadest segments of society so that it is poised to meet the present and future needs of our nation. We invite you to explore the work of the DOJ organizations that employ law students and attorneys to find those that best match your interests and experience.

### Overview of Justice

- Justice serves to enforce the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans.

- Justice is headquartered in Washington, DC, and also has field offices in all states and territories and maintains offices in over 100 countries worldwide.

- Justice is the world's largest legal employer with more than 10,000 attorneys nationwide.

- 88% of Justice attorneys work in either 1 of 8 litigation divisions (Antitrust, Civil, Civil Rights, Criminal, Environment and Natural Resources, National Security, Tax, and U.S. Trustee Program) or with one of the 94 U.S. Attorneys' Offices.

- The remaining 12% of Justice attorneys focus on legal and policy issues (7%) or law enforcement issues (5%). The largest policy office is the Executive Office for Immigration Review. The two largest law enforcement components are the Federal Bureau of Prisons (BOP) and the Federal Bureau of Investigation (FBI). The FBI conducts its own recruitment.

- Justice attorneys work in virtually every legal practice area.

- Approximately 40 DOJ organizations that hire law students and attorneys are based primarily in Washington, DC, including the litigation divisions and the majority of policy offices.

- Justice has four attorney recruitment and hiring programs: Volunteer Legal Internships (see pages 1-2); the Summer Law Intern Program (see pages 2-3); the Attorney General's Honors Program (see pages 3-4); and Experienced (Lateral) Attorney Hiring (see page 5).

- The Department's legal careers website provides a comprehensive introduction to Justice's law student and attorney hiring programs. See *www.justice.gov/legalcareers*.

**ER127**   i

## USER'S GUIDE

### USER'S GUIDE



This guide highlights Justice's four law student and attorney recruitment and hiring programs, and is divided into three major sections:

- Part One (pages 1-8) gives an overview of Justice's four hiring programs, and provides information about eligibility, application processes, and frequently asked questions.

- Part Two (pages 9-45) highlights the DOJ organizations that employ law students and attorneys. This section first describes the DOJ organizations that employ the largest number of attorneys (*i.e.*, more than 100 attorneys) and, therefore, typically have the most hiring needs. Next are descriptions of the smaller DOJ organizations that hire attorneys.

- Part Three (pages 46-51) is composed of two directories. The first is a directory of field office locations employing law students and attorneys, which is included to help individuals interested in employment with Justice outside of the Washington, DC metropolitan area. The second is a chart of DOJ organizational practice areas, which is included to help you explore the work of the various DOJ organizations and find those that best match your interests and expertise.

There are over 130 separate organizations (including the 94 U.S. Attorneys' Offices) at Justice that hire law students and attorneys. Within each of those organizations there are multiple sections, each with its own distinct focus. This guide is one tool to help you find your career match.

Another useful tool is our legal careers website: *www.justice.gov/legalcareers*, which highlights all four hiring programs, discusses Justice's commitment to its workforce and diversity, and includes such features as a calendar of upcoming recruitment events.

To get the most out of this guide, you may find it helpful to first ask yourself some questions:

- Do you want to be a litigator or do you want a policy or counselor position?

- Do you want to be a trial attorney or do you want more of a motion or appellate practice?

- Do you want to work as part of a litigation team or do you want to work more independently?

- Do you want to travel? If so, how frequently?

**ER128**

## USER'S GUIDE

Once you have a picture of your ideal job profile, you can research the DOJ organizations that match that profile:

- ■ If you want information about eligibility, citizenship requirements, background investigations, and other employment-related issues ...

  Go to the Eligibility / Application Procedures on pages 1-5, and to the Frequently Asked Questions on pages 6-8.

- ■ If you are interested in applying to one or more of the 94 U.S. Attorneys' Offices ...

  Go to pages 35-36 for a general description of the work of those offices.

- ■ If you are interested in working in a particular geographic area (outside of the Washington, DC area) ...

  Go to the directory of DOJ field offices on pages 46-47.

- ■ If you have an interest in a specific practice area, *e.g.*, environment, national security, white collar crime, and want to find out which DOJ organizations do work in that area ...

  Go to the DOJ Organizational Practice Area Chart on pages 48-51.





**ER129**    iii

## OVERVIEW

### VOLUNTEER LEGAL INTERNSHIPS

Every year more than 1,800 volunteer legal interns serve in DOJ organizations, including U.S. Attorneys' Offices (USAOs), throughout the country. Approximately 800 legal interns volunteer during the academic year, and roughly 1,000 volunteer during the summer. These internships are highly sought after because they introduce students to public service, offer the opportunity to develop legal skills, and provide the chance to work on important and challenging assignments.

Most of the DOJ organizations highlighted in this guide typically recruit legal interns. Various DOJ organizations, including many of the 94 USAOs in particular, recruit significant numbers of volunteer interns. The specific number of volunteer internships available in each DOJ organization varies from year to year, and each organization has its own application requirements and deadlines. Legal internship opportunities are available nationwide.

#### Eligibility

First-year (second semester), second-year, and third-year law students are eligible to apply. First-year, first-semester law students may apply for a legal intern position after December 1 (Justice follows the NALP Association for Legal Career Professionals guidelines, which prohibit consideration of employment of such students prior to that date). Law students may work in volunteer positions with Justice only while they are enrolled in law school. Part-time law students and joint-degree candidates may also apply for volunteer internship positions. In general, law school graduation terminates eligibility for volunteer positions. Graduate law students (*e.g.*, LL.M. students) who are enrolled at least half time and not practicing law are eligible for volunteer positions.

U.S. citizenship is required by most DOJ organizations. Dual citizens of the United States and another country are considered on a case-by-case basis. See page 6 for more information.

Many DOJ organizations accommodate students who wish to split the summer, but these requests are handled on a case-by-case basis. Please keep in mind that some DOJ organizations require a minimum of 10-12 weeks during the summer. In addition, it may be possible for interns to receive work/study or academic credit depending on the relevant requirements of their respective law school.

#### Application Process

Each DOJ organization conducts its own recruitment for volunteer legal interns independently, and has its own internal application requirements. Students must apply separately and directly to each organization in which they have an interest. Application requirements vary, but typically include a resume, cover letter, and law school transcript. A listing of available internships for the fall, spring, and summer, including application procedures and contacts, is available on the DOJ legal careers website at: ***www.justice.gov/careers/legal/volunteer-intern.html***. Additional opportunities may be available with other DOJ organizations. Many volunteer legal intern positions have early application deadlines, so interested law students should plan to apply at least four to five months in advance.



**ER130**   1

## OVERVIEW

### Security and Suitability (Background Investigation)

Prior to entry on duty, all interns undergo a suitability determination based on information provided in their security forms, a credit report, and fingerprint check. This process can take two to three months to complete. The most common suitability issues that arise during the suitability review process are: past unlawful use of drugs, failure to comply with financial obligations, failure to register for the Selective Service, and misrepresentations or omissions on the security form.

More information about Volunteer Legal Internships is available at: *www.justice.gov/careers/legal/volunteer-intern.html.*

### SUMMER LAW INTERN PROGRAM

The Summer Law Intern Program (SLIP) is Justice's highly-competitive, centralized recruitment program for compensated summer internships. Typically, Justice annually hires anywhere from 60 to 120 SLIP interns. The majority of SLIP hires are second-year law students who work at Justice the summer between their second and third years of law school. But the SLIP is also open to recent law school graduates between graduation and the start of a judicial clerkship, a full-time graduate law program (*e.g.*, LL.M.), or a full-time qualifying legal fellowship. Every year, various DOJ organizations, including some U.S. Attorneys' Offices, hire students through the SLIP. The specific number of SLIP internships available in each participating DOJ organization varies from year to year.

Justice takes pride in the fact that it considers the "whole candidate" when making selections for the SLIP. Selections are made based on many elements of a candidate's background including a demonstrated commitment to government service, academic achievement, leadership, law review, moot court or mock trial experience, legal aid and clinical experience, past employment, and relevant extracurricular activities.

### Eligibility

Law students who have **completed at least one full semester** of law school by the application deadline are eligible to apply. Most successful applicants intern the summer between their second and third years of law school. Part-time law students are also eligible to apply. Graduating law students who will enter a judicial clerkship or a full-time graduate law program (*e.g.*, LL.M.) may intern following graduation subject to eligibility rules. These rules are set forth at: *www.justice.gov/careers/legal/summer-intern-eligibility.html.*

U.S. citizenship is required by most DOJ organizations. Dual citizens of the United States and another country are considered on a case-by-case basis. See page 6 for more information.

Many DOJ organizations accommodate students who wish to split the summer, but these requests are handled on a case-by-case basis. Some DOJ organizations require a minimum of 10-12 weeks during the summer.

### Application Process

The SLIP requires that candidates submit an electronic, online application. SLIP candidates apply in the fall for internships for the following summer.



**Frances Chang,**
Trial Attorney,
Criminal Division,
Office of International Affairs

*"From my first day in the office, I was given my own cases to handle, and expected to carry my own weight, though with plenty of offers of help from colleagues whose doors were—and still are—always open. No day in the office is routine or predictable, but every day is rewarding."*

**ER131**

## OVERVIEW

The SLIP is centrally managed by the DOJ Office of Attorney Recruitment and Management (OARM), but each participating DOJ organization reviews the applications submitted and makes independent hiring decisions.

More information about the SLIP, including a listing of participating DOJ organizations and the SLIP application checklist, is available at: *www.justice.gov/careers/legal/summer-intern.html.*

The SLIP operates within a finite time frame of deadlines and key dates:

- **Late July** – application opens
- **Early/Mid-September** – application closes
- **Late September/Early October** – candidates selected for interviews
- **Mid-October/Early November** – interviews conducted
- **Late November-January** – offers extended

### Security and Suitability (Background Investigation)

SLIP candidates are subject to suitability review and adjudication that includes a fingerprint check, credit check, drug test, and a thorough review of the summer candidate's pre-employment forms (which cover a period of seven to ten years). Some DOJ organizations require a National Agency Check with Inquiries through the Office of Personnel Management. The process normally takes at least two to three months. The most common suitability issues that arise during the suitability review process are: past unlawful use of drugs, failure to comply with financial obligations, failure to register for the Selective Service, and misrepresentations or omissions on the security form.

### THE ATTORNEY GENERAL'S HONORS PROGRAM

The Attorney General's Honors Program (Honors Program) is the largest and most prestigious federal entry-level attorney hiring program of its kind. Specifically, the Honors Program is Justice's highly-competitive, entry-level recruitment program, and is the only way the Department hires graduating law students. Typically, Justice annually hires anywhere from 75 to 200 entry-level attorneys through the Honors Program. Most students apply their third year of law school for an entry-level position following graduation. The program is also open to recent law school graduates who enter judicial clerkships, graduate law programs, or qualifying legal fellowships within nine months of law school graduation. Every year, various DOJ organizations, including a few U.S. Attorneys' Offices, hire entry-level attorneys through the Honors Program. The number of entry-level attorney positions varies from year to year.

Justice takes pride in the fact that it considers the "whole candidate" when making selections for employment through the Honors Program. Selections are made based on many elements of a candidate's background including a demonstrated commitment to government service, academic achievement, leadership, law review, moot court or mock trial experience, legal aid and clinical experience, past employment, and extracurricular activities that relate to the work of the Department of Justice.



**ER132**   3

## OVERVIEW

### Eligibility

Eligibility is generally limited to graduating law students and recent law school graduates who have entered or will enter a judicial clerkship, a graduate law program (*e.g.*, LL.M.), or a qualifying legal fellowship within nine months of law school graduation, and who meet additional eligibility requirements that are set forth at: *www.justice.gov/careers/legal/entry-eligibility.html*.



U.S. citizenship is required by most DOJ organizations. Dual citizens of the United States and another country are considered on a case-by-case basis. See page 6 for more information.

### Application Process

The Honors Program requires that candidates submit an electronic, online application. Candidates apply for positions that begin approximately one year following the application deadline.

The Honors Program is centrally managed by OARM, but each participating DOJ organization reviews the applications submitted and makes independent hiring decisions.

More information about the Honors Program, including a listing of participating DOJ organizations and an application checklist, is available at: *www.justice.gov/careers/legal/entry.html*.

The Honors Program operates within a finite time frame of deadlines and key dates:

- **Late July** – application opens
- **Early/Mid-September** – application closes
- **Late September/Early October** – candidates selected for interviews
- **Mid-October/Early November** – interviews conducted
- **Late November-January** – offers extended

### Security and Suitability (Background Investigation)

Candidates who accept an offer of employment must undergo a "full field" background investigation conducted by the Federal Bureau of Investigation (FBI). The investigation may take seven months or more to complete and includes a name and fingerprint check; interviews with references, close personal associates, former spouse(s), former employers, co-workers, neighbors, landlords, and educational institutions; and a thorough check of credit, military, tax, and police records. Depending on the level of clearance required by the employing organization, the background investigation covers a period of seven to ten years of the candidate's history. Most Honors Program attorneys start work on a temporary appointment. Conversion to a permanent position requires satisfactory performance and conduct, favorable adjudication of a background investigation and active bar membership within 14 months of entry on duty. The most common suitability issues that arise during the background investigation are: past unlawful use of drugs, failure to fulfill tax obligations (including filing all tax returns even if you expect to receive a refund), failure to comply with financial obligations, failure to register for the Selective Service, and misrepresentations or omissions on the security form.

**ER133**

## OVERVIEW

### EXPERIENCED (LATERAL) ATTORNEY HIRING

The Department offers a broad range of opportunities for experienced attorneys to work on many significant and complex issues that face our nation. Justice typically hires several hundred experienced attorneys each year. Opportunities are available nationwide, and our attorneys work in virtually every area of legal practice. Each DOJ organization (including each U.S. Attorney's Office) recruits experienced attorneys independently. The number and frequency of attorney vacancies vary by each DOJ organization from year to year.

### Eligibility

Any attorney who is an active member of the bar (any U.S. jurisdiction) and has at least one year post-J.D. legal or other relevant experience is eligible to apply for an experienced attorney position. Some positions may, however, require additional legal experience. U.S. Attorneys' Offices may have state specific admission requirements.

U.S. citizenship is required by most DOJ organizations. Dual citizens of the United States and another country are considered on a case-by-case basis. See page 6 for more information.

### Application Process

The Department of Justice stands at the forefront of America's commitment to justice for all its citizens, and each DOJ organization has its own unique mission in meeting that commitment. Because of the unique nature of each organization's work and differences in attorney position openings, Justice maintains a decentralized system of selecting experienced attorneys. This means that experienced attorney candidates must apply separately to each DOJ organization in which they have an interest.



All attorney vacancies within Justice are advertised on the DOJ legal careers website at: ***www.justice.gov/careers/legal/attvacancies.html***. The website includes a search function that allows individuals to search current experienced attorney vacancies by hiring organization, geographic location, and practice area. Experienced attorneys can apply by responding to a specific vacancy. You must submit a separate application in response to the specific DOJ organization in which you are interested, and your application must satisfy the specific requirements set forth in the relevant vacancy announcement.

### Security and Suitability (Background Investigation)

Candidates who accept an offer of employment must undergo a "full field" background investigation conducted by the FBI. As part of its investigation, the FBI interviews or checks references and close personal associates, former spouse(s), employers and co-workers, neighbors and landlords, institutions of higher learning; court and financial records; and military and police records. The most common suitability issues that arise during the background investigation are: past unlawful use of drugs, failure to fulfill tax obligations (including filing all tax returns even if you expect to receive a refund), failure to comply with financial obligations, failure to register for the Selective Service, and misrepresentations or omissions on the security form. This process can take seven months or more to complete. Many attorneys join the Department on a temporary appointment pending completion and adjudication of their background investigation.

**ER134**

## OVERVIEW

### FREQUENTLY ASKED QUESTIONS

*What do DOJ organizations look for when hiring a legal intern or attorney?*

Justice is interested in attracting a diverse pool of highly-qualified candidates. DOJ organizations look for a commitment to public service, a strong academic and professional record, energy and enthusiasm, and a demonstrated interest in the work of their particular office. Each DOJ organization, including the U.S. Attorneys' Offices (USAOs), has a unique mission and looks for different experiences and skills. All DOJ organizations consider multiple factors in making hiring selections. Merit System Principles are adhered to throughout the selection process. The following factors are not considered: color, race, religion, national origin, political affiliation, marital status, disability (physical or mental), age, sex, gender identity, sexual orientation, genetic information, status as a parent, membership or non-membership in an employee organization, on the basis of personal favoritism, or any non-merit factor.

*Can I work at DOJ if I am not a U.S. citizen?  What if I am a dual citizen?*

Only U.S. citizens are eligible for employment with the Executive Office for Immigration Review (EOIR), the Federal Bureau of Investigation (FBI), and the National Security Division (NSD). Appointments in the Executive Office for U.S. Attorneys (EOUSA) and the U.S. Attorneys' Offices are restricted to U.S. citizens or those who owe permanent allegiance to the United States (currently, natives of American Samoa, Swains Island, and certain inhabitants of the Commonwealth of the Northern Mariana Islands are the only group that owe permanent allegiance to the United States). Non-U.S. citizens may apply for employment with other Justice organizations (unless otherwise indicated in a vacancy announcement), but should be advised that appointments of non-U.S. citizens are extremely rare. Such appointments are considered if necessary to accomplish the Department's mission, and are subject to strict security requirements. Dual citizens of the United States and another country will be considered on a case-by-case basis.

*Are there any non-litigating, e.g., policy, job opportunities at DOJ for attorneys?*

Yes. Approximately 7% of the Department's attorneys work for DOJ organizations that focus on policy and legal issues. The largest policy office is the Executive Office for Immigration Review (EOIR). Other smaller policy offices exist within Justice, but these may hire more infrequently. In addition, some DOJ organizations have a dedicated policy office. Justice also has several investigatory and law enforcement offices that hire attorneys (5% of attorney workforce). These various offices are listed on page 11.

*Are all attorney positions located in the Washington, DC area?*

No. There are 94 U.S. Attorneys' Offices and 95 U.S. Trustees' Offices throughout the United States, Puerto Rico, Virgin Islands, Guam, and Northern Mariana Islands; and 59 Immigration Courts in 27 states and U.S. territories. Some DOJ organizations only offer employment opportunities in Washington, DC. Other DOJ organizations, such as the Antitrust Division, the Federal Bureau of Prisons, the Environment and Natural Resources Division, and the Bureau of Alcohol, Tobacco, Firearms & Explosives, have field offices located in various cities across



**Richard L. Parker**,
Trial Attorney,
Tax Division,
Appellate Section

*Working at Justice is an amazing experience as well as a privilege. As an appellate litigator in the Tax Division, I have, since day one, had the opportunity to take the lead in challenging cases representing the United States in courtrooms across the country. I also get to work with a great group of talented individuals committed to public service."*

**ER135**

## OVERVIEW

the country. Contact information for each U.S. Attorney's Office is available at *www.justice.gov/usao/offices/index.html*. More information about field office locations is available on the directory of DOJ field offices on page 46-47. In addition, each organization's heading, throughout the second section of this guide, indicates (under "Location(s)") where its offices are located. Finally, geographic areas of assignment are discussed at: *www.justice.gov/careers/legal/geo-areas.html*, and the directory of DOJ field offices appears at *www.justice.gov/careers/legal/field-offices.html*.

*How much travel is required of attorneys at DOJ?*

The amount of travel required varies by DOJ organization. In general, the trial components of the litigation divisions (Antitrust, Civil, Civil Rights, Criminal, Environment and Natural Resources, National Security, Tax, and the U.S. Trustee Program) often require moderate to heavy travel. Other DOJ organizations may require little or no travel depending on the nature and scope of individual cases.

*Once you are hired into the Department are there opportunities to work in other Divisions? Can you transfer within Justice?*

It is not unusual for Justice attorneys to move either to another section within their Division or to another Division or to a U.S. Attorney's Office. In addition, attorneys also can take advantage of "detail" opportunities to work on a short-term basis with another DOJ organization. The ability to move depends on one's practice area, timing, supervisory approval, and performance evaluations.

*How do I apply for a position with a U.S. Attorney's Office?*

Assistant United States Attorney (AUSA) opportunities are posted through the same public announcement process as other experienced attorney opportunities in the Department of Justice. Current vacancies can be found at: *www.justice.gov/careers/legal/attvacancies.html*. Interested applicants can also use this website to sign up for e-mail alerts as new vacancies arise. Some United States Attorneys' Offices (USAOs) participate in the Attorney General's Honors Program. USAOs may also advertise for Special Assistant United States Attorneys (SAUSAs) or Special Attorneys (SAs), typically for short durations. Vacancy announcements provide details regarding the specific practice area and desired background and experience, so read them carefully when applying. Vacancy announcements for some USAOs may also provide the opportunity for applicants to apply on-line. Regardless of the position, it is a highly competitive process and requires the completion of a background investigation prior to appointment. Contact information for the USAOs is available at: *www.justice.gov/usao/about/offices.html*.

*What is the salary structure and promotion policy of the Department?*

Attorneys at the Department of Justice are paid under one of two salary structures - the General Schedule (GS) or the Administratively Determined (AD) pay scale - depending on the organization for which they work. Assistant U.S. Attorneys (AUSAs) are paid under the AD pay scale. The vast majority of other attorneys at the Department are paid under the General Schedule. More information about salaries, promotions, and benefits is available on the DOJ legal careers website at: *www.justice.gov/legalcareers*.



**Patricia L. Petty**,
Senior Trial Attorney,
Criminal Division,
Office of International Affairs

*"Today, I do occasional international travel, meet with officials from foreign Ministries of Justice, provide litigation support to state, federal, and foreign prosecutors, and interact with the State Department and U.S. law enforcement agencies. Our office facilitates extradition and requests for legal assistance between the United States and foreign countries. At times, I feel like a diplomat and at other times a prosecutor: a true mixture of my interests."*

**ER136**   7

# OVERVIEW

*Does DOJ have an attorney student loan repayment program?*

Yes. Justice's Attorney Student Loan Repayment Program (ASLRP) provides student loan repayments for qualifying student loans in exchange for a three-year service commitment. Justice requires a minimum aggregate loan balance of $10,000 to initially qualify, and it matches individual attorney payments up to a maximum of $6,000 per year. ASLRP is highly competitive, and open to both entry-level and experienced attorneys. For additional information, you may view the ASLRP Policy at *www.justice.gov/oarm/aslrp/policy.htm*.

*What is the quality of life like for an attorney at DOJ?*

Many DOJ organizations have active work-life policies, *e.g.*, telecommuting and flexible work schedules, the availability of such programs is determined by each individual organization and is subject to supervisory approval. Many Justice attorneys cite the benefits of working in a supportive and cooperative work environment as an employment highlight. New attorneys with fewer than five years of experience are assigned a mentor to help shorten the learning curve and guide them through their first year. Justice also offers attorneys a robust training program through individual DOJ organizations and the National Advocacy Center. In addition, there are a number of active employee organizations at the Department, including DOJ Association of Black Attorneys, DOJ Association of Hispanic Employees for Advancement and Development, DOJ Indian Trial Lawyers Association, DOJ Pan Asia Employees Association, and DOJ Pride (LGBT).





**ER137**

## LEADERSHIP OFFICES

### OFFICE OF THE ATTORNEY GENERAL

Total # of Attorneys: 10
Website: *www.justice.gov/ag*

The Attorney General is responsible for the overall supervision and direction of the administration and operation of the Department. As Head of the Department of Justice and chief law enforcement officer of the Federal Government, the Attorney General represents the United States in legal matters generally and furnishes advice and opinions on legal matters to the President, the Cabinet, heads of the executive departments, and other agencies of the Federal Government.

### OFFICE OF THE DEPUTY ATTORNEY GENERAL

Total # of Attorneys: 21
[This total includes 11 attorneys on detail from other DOJ organizations.]
Website: *www.justice.gov/dag*

Advises and assists the Attorney General in formulating and implementing Department policies and programs and in providing overall supervision and direction to all organizational units of the Department.

### OFFICE OF THE ASSOCIATE ATTORNEY GENERAL

Total # of Attorneys: 10
Website: *www.justice.gov/asg*

Advises and assists the Attorney General and the Deputy Attorney General in formulating and implementing Departmental policies and programs pertaining to a broad range of civil justice, federal and local law enforcement, and public safety matters.

### OFFICE OF THE SOLICITOR GENERAL

Total # of Attorneys: 28
Website: *www.justice.gov/osg*

Main Building                           Avg. # of Laterals Hired per Year: 2
950 Pennsylvania Ave., NW               Location(s): Washington, DC
Ste 5143
Washington, DC 20530
Attn: Valerie H. Hall
Phone: (202) 514-2201

Supervises and conducts Government litigation on behalf of the United States in the Supreme Court. The Solicitor General determines the cases in which the United States will seek Supreme Court review and the position the United States will take before the Court. Deputy Solicitors General and Assistants to the Solicitor General participate in preparing the petitions, briefs, and other papers filed by the United States in its Supreme Court litigation. Oral argument in the vast majority of these cases is presented by the Solicitor General or one of the Deputies or Assistants. The Solicitor General also reviews all cases decided adversely to the United States in the lower courts to determine whether, and to what extent, they should be appealed and determines whether the Government will intervene or participate amicus curiae in cases in any appellate court, or in any trial court in which the constitutionality of an Act of Congress is challenged.



## FUNCTIONS AND ORGANIZATIONS OF THE DOJ



**ER139**

## FUNCTIONS AND ORGANIZATIONS OF THE DOJ

### ORGANIZATIONS OF THE U.S. DEPARTMENT OF JUSTICE

(The approximate number of attorneys, as of December, 2011, are in parentheses throughout this guide):

**Leadership Offices:**
> Office of the Attorney General (10)
> Office of the Deputy Attorney General (21)
> Office of the Associate Attorney General (10)
> Office of the Solicitor General (28)

**Management Offices:**
> Justice Management Division (21)
> Office of Dispute Resolution (2)
> Office of Legislative Affairs (15)
> Office of Professional Responsibility (23)
> Office of the Inspector General (17)

**Litigation Divisions and Offices:**
> Antitrust Division (345)
> Civil Division (1,022)
> Civil Rights Division (426)
> Criminal Division (560)
> Environment and Natural Resources Division (433)
> National Security Division (202)
> Tax Division (400)
> U.S. Attorneys' Offices (including Executive Office for
>    U.S. Attorneys) (5,921)
> U.S. Trustee Program (316)

**Legal and Policy Offices:**
> Community Relations Service (2)
> Executive Office for Immigration Review (470)
> Foreign Claims Settlement Commission (4)
> Office of Community Oriented Policing Services (8)
> Office of Information Policy (19)
> Office of Intergovernmental & Public Liaison (2)
> Office of Justice Programs (33)
> Office of Legal Counsel (25)
> Office of Legal Policy (20)
> Office of the Federal Detention Trustee (2)
> Office of Tribal Justice (4)
> Office on Violence Against Women (3)
> Professional Responsibility Advisory Office (5)

**Investigatory and Law Enforcement Offices:**
> Bureau of Alcohol, Tobacco, Firearms and Explosives (74)
> Drug Enforcement Administration (90)
> Federal Bureau of Investigation (236) (this figure includes
>    non-agent attorneys only)
> Federal Bureau of Prisons (186)
> INTERPOL Washington, U.S. National Central Bureau (1)
> National Drug Intelligence Center (2)
> Office of the Pardon Attorney (7)
> U.S. Marshals Service (20)
> U.S. Parole Commission (6)

**Approximate total attorney employment nationwide: 10,991**



**ER140**

**ER141**

# ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

## ANTITRUST DIVISION (ATR)

**Personnel Unit**
Liberty Square Building
450 Fifth St., NW
Washington, DC 20530
Email: atr.personnel@usdoj.gov

Total # of Attorneys: 345
Avg. # of Laterals Hired per Year: 10
Website: ***www.justice.gov/atr***
Location(s): Washington, DC; Atlanta, GA;
  Chicago, IL; Cleveland, OH; Dallas, TX;
  New York, NY; Philadelphia, PA;
  San Francisco, CA



**Ann O'Brien**,
Counsel to the
Assistant Attorney General,
Antitrust Division

*"I gained substantive knowledge about criminal antitrust enforcement from my supervisor, and even more important lessons about integrity and decision making. My supervisor always gave me as much responsibility as I asked for and was able to handle with just the right amount of oversight and encouragement."*

The mission of the Antitrust Division is to promote economic competition through enforcing and providing guidance on antitrust laws and principles. The goal of the antitrust laws is to protect economic freedom and opportunity by promoting free and fair competition in the marketplace. The majority of the Division's attorneys are employed in the following ten sections and in seven field offices (approximate number of attorneys in each section/office is indicated in parentheses):

1. **Appellate Section (10)**

   - Represents the Division in all appeals to U.S. Courts of Appeals and, in conjunction with the Solicitor General's Office, handles appeals before the U.S. Supreme Court

   - Files amicus briefs in selected private antitrust cases

2. **Foreign Commerce Section (10)**

   - Advises on the development and implementation of Division policy on international antitrust enforcement and competition issues

   - Helps the Division's litigating sections in matters with international aspects and facilitates enforcement and other cooperation between the Division and its counterparts around the world

   - Liaison with international organizations, such as the Organization for Economic Cooperation and Development (OECD), the International Competition Network (ICN), the Asia-Pacific Economic Cooperation forum (APEC), and the United Nations Conference on Trade and Development (UNCTAD)

3. **Legal Policy Section (10)**

   - Responsible for providing analyses of complex antitrust matters and supporting the Division's legislative program

   - Serves as liaison with state attorneys general and coordinates long-range planning projects and programs of special interest to the Assistant Attorney General

4. **Litigation I Section (25)**

   - Assesses the economic impact of proposed mergers in unregulated industries and acts to clear the proposed mergers, negotiate a restructuring of the proposals, or file suit to block the mergers

**ER142**

13

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

- Reviews and prosecutes civil violations of the antitrust laws in a broad range of unregulated industries, including health care, milk and dairy, pulp and paper, insurance, and cosmetics

5. **Litigation II Section (20)**

- Assesses the economic impact of proposed mergers in unregulated industries and acts to clear the proposed mergers, negotiate a restructuring of the proposals, or file suit to block the mergers

- Reviews and prosecutes civil violations of the antitrust laws in a broad range of unregulated industries, including defense, avionics and aeronautics, banking, industrial equipment, metals and mining, and waste industries

6. **Litigation III Section (20)**

- Assesses the economic impact of proposed mergers in unregulated industries and acts to clear the proposed mergers, negotiate a restructuring of the proposals, or file suit to block the mergers

- Reviews and prosecutes civil violations of the antitrust laws in a broad range of unregulated industries, including motion pictures, music publishing, radio, television, newspapers, advertising, credit cards, and real estate

7. **National Criminal Enforcement Section (20)**

- Responsible for conducting criminal investigations and litigation, and works in conjunction with its field office counterparts

- Handles criminal price-fixing and bid-rigging investigations in a wide range of industries

8. **Networks and Technology Enforcement Section (25)**

- Responsible for antitrust enforcement and competition policy in the areas of information technology, Internet-related businesses, financial services, and the securities industry

- Works closely with a variety of federal agencies and departments, including the Securities and Exchange Commission, Department of Commerce, Federal Reserve Board, and Commodities Futures Trading Commission

9. **Telecommunications and Media Enforcement Section (20)**

- Responsible for enforcing antitrust laws in the communications and media industries, investigating and litigating violations of the antitrust laws, and providing competition advocacy in the industry

- Participates in proceedings before the Federal Communications Commission

**ER143**

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS



**10. Transportation, Energy, and Agriculture Section (25)**

- ■ Enforces antitrust laws and investigates and litigates violations of antitrust laws within the transportation, energy, and agriculture industries

- ■ Participates in proceedings before such agencies as the Federal Energy Regulatory Commission, Environmental Protection Agency, and Department of Agriculture

**11. Field Offices (100)**

- ■ Each of the Division's seven field offices (Atlanta, Chicago, Cleveland, Dallas, New York, Philadelphia, and San Francisco) handles criminal matters arising in its respective area and serves as the Division's liaison with U.S. Attorneys, state attorneys general, and other regional law enforcement agencies

- ■ Participates significantly in the Division's investigations and prosecutions

## CIVIL DIVISION (CIV)

Victoria Jones                           Total # of Attorneys: 1,022
1100 L St., NW                           Avg. # of Laterals Hired per Year: 85
Washington, DC 20530                     Website: *www.justice.gov/civil*
Phone: (202) 514-9048                    Location(s): Washington, DC
Email: victoria.jones@usdoj.gov

The Civil Division represents the United States, its departments and agencies, Members of Congress, Cabinet Officers, and other federal employees in any civil or criminal matter within its scope of responsibility. The Civil Division's responsibilities include ensuring the federal government speaks with one voice in its view of the law; preserving the intent of Congress; advancing the credibility of the government before the courts; protecting consumers; and protecting the public fisc (the U.S. treasury). The majority of the Division's attorneys are employed in the following six branches (approximate number of attorneys in each branch is indicated in parentheses):

**1. Commercial Litigation Branch (317)**

- ■ This branch is divided into five sections, each of which is responsible for a major practice area of the branch:

- ■ Frauds Section: Recovers billions of taxpayer dollars that would otherwise be lost to fraud, waste or abuse by prosecuting individuals and companies that defraud the government

- ■ National Courts Section: Represents the interests of the United States in major contract disputes, often those involving complex projects by government agencies; defends the Nation's international trade policies from legal challenges

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

- Intellectual Property Section: Pursues those who infringe federal government patents and defends the government against claims of patent infringement

- Corporate and Financial Litigation Section: Protects the federal government's financial and commercial interests

- Office of Foreign Litigation: Represents the interests of the United States in all litigation brought in foreign courts, whether civil or criminal, affirmative or defensive

2. **Federal Programs Branch (136)**

- Represents the executive branch, including the President, Cabinet officers and other federal government officials, as well as federal agencies

- Defends federal statutes from constitutional challenges brought by states or private parties

- Protects federal government polices and programs by defending suits that attempt to: undermine national security interests; release sensitive or classified government information; dismantle large-scale government housing, agriculture, health care, or education programs; or invalidate federal personnel practices

- Asserts the rights of the federal government by bringing affirmative suits to enjoin state and local actions that conflict with the Supremacy Clause or agency statutory and regulatory powers

3. **Torts Branch (150)**

- This branch's four sections represent the United States against lawsuits brought under the Federal Tort Claims Act for money damages:

- Aviation and Admiralty Section (also known as "Crash and Splash"): Prosecutes and defends admiralty actions, such as oil spills, and also defends the federal government in aviation accidents

- Constitutional Torts Section: Represents individual federal government employees in suits stemming from their official acts, and also handles claims for injuries caused by childhood vaccines and exposure to radiation

- Environmental Torts Section: Defends the federal government against allegations of personal injury and property damage due to exposure to toxic materials

- Federal Torts Claims Act Section: Litigates on behalf of the United States in cases involving regulatory activities, law enforcement, maintenance of federal lands, and the provision of the medical care at federal facilities



**Kirsten L. Wilkerson**,
Senior Trial Counsel,
Civil Division, Torts Branch,
Environmental Torts

*"I was thrilled when I received an offer to join Justice, and have a successful career litigating interesting cases and protecting tax-payer dollars."*

**ER145**

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

4. **Consumer Protection Branch (42)**

   ■ Employs its civil and criminal authority to affirmatively target consumer fraud and abuse wherever it exists and to enforce the consumer protection statutes overseen by other federal agencies, such as the Federal Trade Commission, Federal Drug Administration, Consumer Product Safety Commission, and National Highway Transportation Administration

   ■ Works closely with U.S. Attorneys, as well as other federal agencies, to secure civil judgments and criminal convictions in courts across the country

   ■ This branch combines its broad authority with its unique expertise to enforce and defend laws aimed at protecting consumers, making an enormous impression in the consumer protection landscape

5. **Office of Immigration Litigation (OIL) (324)**

   ■ OIL's two sections counsel federal agencies involved in the administration of immigration and nationality statutes, as well as the related areas of border enforcement and national security:

   ■ Appellate Section: Oversees civil immigration litigation nation-wide and represents the United States at all federal court levels, including cooperating with U.S. Attorneys' Offices prosecuting criminal immigration issues, handling removal cases in the U.S. Courts of Appeals, and supporting the Office of the Solicitor General's immigration litigation efforts in the U.S. Supreme Court

   ■ District Court Section: Conducts civil immigration litigation in the federal district courts and handles appeals from decisions in those cases by bringing civil denaturalization cases, defending against challenges to government immigration policy, and providing advice and counsel to U.S. Attorneys' Offices

6. **Appellate Staff (60)**

   ■ Handles complex appeals cases from various administrative agencies as well as all of the Civil Division's branches

      ■ Drafts briefs and presents oral arguments in the U.S. Courts of Appeals

      ■ Prepares documents for the U.S. Supreme Court, including petitions for certiorari and briefs on the merits

      ■ Coordinates with the Division's branches in the handling of litigation involving legal questions likely to be ultimately decided by the U.S. Courts of Appeals



**Benjamin Mark Moss**,
Trial Attorney,
Civil Division,
Office of Immigration Litigation

*"In law school, I had the chance to volunteer at two different offices in the Department of Justice: the Civil Division, Office of Immigration Litigation, and the National Courts Section of Commercial Litigation, Civil Division. My volunteer experiences exposed me to the varied and important work of the 'Nation's largest law firm' and the wonderful opportunities being a Justice attorney offers."*

**ER146**      17

# ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

## CIVIL RIGHTS DIVISION (CRT)

**Human Resources Office**
600 E St., NW, 3rd Floor
Washington, DC 20004
Attn: Diane Petrie
Phone: (202) 514-3934
Email: Diane.E.Petrie@usdoj.gov

Total # of Attorneys: 426
Avg. # of Laterals Hired per Year: 30
Website: *www.justice.gov/crt*
Location(s): Washington, DC

The Civil Rights Division is primarily responsible for enforcing federal statutes and executive orders that prohibit, among other things, unlawful discrimination in voting, education, employment, housing, police services, public accommodations and facilities, and federally funded and conducted programs. The majority of the Division's attorneys are employed in the following eleven components (approximate number of attorneys in each section is indicated in parentheses):

1. **Appellate Section (24)**

   ▪ Handles civil rights cases in the U.S. Courts of Appeals and, in cooperation with the Solicitor General, in the Supreme Court (*e.g.*, defends the constitutionality of challenged civil rights statutes)

2. **Criminal Section (64)**

   ▪ Prosecutes violations of federal criminal civil rights statutes, which prohibit the violent interference with liberties and rights defined in the Constitution or federal law (*e.g.*, hate crimes, law enforcement misconduct, human trafficking, church arson, interference with access to reproductive health care)

3. **Disability Rights Section (54)**

   ▪ Enforces the Americans with Disabilities Act (ADA) to ensure access to, and nondiscrimination by, private entities (*e.g.*, hotels, theaters, stores) and state and local governments (*e.g.*, courts, prisons), and to combat employment discrimination by state and local governments

   ▪ Coordinates federal implementation of statutes prohibiting disability discrimination, and issues regulations and architectural standards

4. **Educational Opportunities Section (23)**

   ▪ Enforces federal laws prohibiting discrimination against students on the basis of race, gender, national origin, language proficiency, or disability (*e.g.*, enforces court orders requiring desegregation and initiates litigation such as the Virginia Military Institute case)

5. **Employment Litigation Section (47)**

   ▪ Enforces against state and local government employers the federal laws prohibiting employment practices that discriminate on the grounds of race, sex, religion, and national origin (*e.g.*, initiates litigation challenging hiring/testing practices of police and fire departments as discriminatory against minorities and women)

**ER147**

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

- Represents federal agencies in litigation challenging the lawfulness of affirmative action contracting programs, actions taken pursuant to Executive Order 11246 (prohibiting employment discrimination by federal contractors), and similar programs

- Enforces against private, state, and local government employers the federal law protecting uniformed servicemembers from discrimination in civilian employment based on past, current, or future uniformed service or status, and requiring employers, under certain circumstances, to reemploy servicemembers in appropriate positions after their return from absence for uniformed service

**6. Federal Coordination and Compliance Section (15)**

- Coordinates the enforcement by federal agencies of various civil rights statutes prohibiting discrimination in programs that receive federal financial assistance

- Investigates complaints of discrimination by recipients of funds from the Department of Justice

**7. Housing and Civil Enforcement Section (53)**

- Enforces the Fair Housing Act, which prohibits discrimination in housing; the Equal Credit Opportunity Act, which prohibits discrimination in credit; Title II of the Civil Rights Act of 1964, which prohibits discrimination in certain places of public accommodation, such as hotels, restaurants, nightclubs and theaters; the Religious Land Use and Institutionalized Persons Act, which prohibits local governments from adopting or enforcing land use regulations that discriminate against religious assemblies and institutions or which unjustifiably burden religious exercise; and the Servicemembers Civil Relief Act, which provides for the temporary suspension of judicial and administrative proceedings and civil protections in areas such as housing, credit and taxes for military personnel while they are on active duty

**8. Office of Special Counsel for Immigration Related Unfair Employment Practices (17)**

- Investigates and prosecutes allegations of national origin and citizenship status discrimination in employment (*e.g.*, protects the rights of work authorized individuals who face discrimination because they look or sound "foreign" or are not citizens)

**9. Policy and Strategy Section (6)**

- Supports and coordinates the policy work of the Division, providing a focal point for proactive policy development

- Analyzes policy matters relating to the Division's enforcement authority; convenes roundtables and conferences and provides timely after action reports; and coordinates with the State Department and other federal agencies on international human rights matters



**ER148**          19

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

■ Develops proactive legislative and regulatory proposals and provides comments and technical assistance on legislation, testimony, and regulations requested by Congress and the Office of Management and Budget

**10. Special Litigation Section (57)**

■ Enforces federal statutes governing: conditions of institutional confinement (*e.g.*, investigates abuse and neglect in nursing homes); access to reproductive health facilities and places of religious worship; and law enforcement misconduct (*e.g.*, investigates allegations of systemic problems – use of excessive force, false arrest, etc. – in law enforcement agencies)

**11. Voting Section (45)**

■ Enforces statutes designed to safeguard the right to vote by ensuring non-discrimination in voting procedures and ensuring access to registration and voting in federal elections

**Luis Saucedo**,
Acting Deputy Chief,
Civil Rights Division,
Special Litigation Section

*"As the son of immigrant parents and the first in my family to go to college, I was convinced that I could make valuable contributions to the Department's purpose."*

## CRIMINAL DIVISION (CRM)

**Office of Administration**
1400 New York Ave., NW
Ste 5000
Washington, DC 20530
Attn: Julie Zebrak
Attorney Recruitment Coordinator
Phone: (202) 514-2811

Total # of Attorneys: 560
Avg. # of Laterals Hired per Year: 40
Website: *www.justice.gov/criminal*
Location(s): Washington, DC and
   Worldwide

The Criminal Division serves the public interest through the enforcement of criminal statutes in a vigorous, fair, and effective manner. The Criminal Division exercises general supervision over the enforcement of all federal criminal laws, with the exception of those statutes specifically assigned to the Antitrust, Civil Rights, Environment and Natural Resources, or Tax Divisions. Criminal Division attorneys prosecute many nationally significant cases. In addition to its direct litigation responsibilities, the Division formulates and implements criminal enforcement policy and provides advice and assistance. (Approximate number of attorneys in each section/office is indicated in parentheses.)

**1. Appellate Section (28)**

■ Prepares draft briefs and certiorari petitions for the Solicitor General for filing in the U.S. Supreme Court; makes recommendations to the Solicitor General as to whether further review is warranted on adverse decisions in the district courts and courts of appeals; prepares briefs and argues cases in the courts of appeals; and prepares and argues motions in district courts in cases of national importance

**2. Asset Forfeiture and Money Laundering Section (61)**

■ Leads the Department's efforts to take the profit out of crime through anti-money laundering enforcement, forfeiture, law development, training, and technical assistance, as well as providing

**ER149**

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

oversight, management, and policy development for the DOJ Assets Forfeiture Fund, including returning money to victims, providing funding to federal, state, and local law enforcement, and sharing with international partners

**3. Capital Case Unit (11)**

- Prosecutes federal capital cases across the United States in partnership with U.S. Attorneys' Offices; assists the Attorney General's Review Committee on Capital Cases in its evaluation of potential death penalty matters; conducts an analysis of all cases in which a U.S. Attorney charges a crime punishable by death; provides legal, procedural, and policy guidance to U.S. Attorneys' Offices handling capital investigations and prosecutions

**4. Child Exploitation and Obscenity Section (20)**

- Prosecutes violations of federal law related to (1) the production, distribution, receipt, and possession of images depicting the sexual assault of children (child pornography); (2) the online inducement of children for sexually predatory purposes; (3) the sex trafficking of children, including the prostitution of children on our city streets; (4) child sex tourism involving offenders who travel to foreign, often impoverished countries to prey sexually on vulnerable children; and (5) the travel of offenders, or transportation of children by offenders, across state lines for sexually predatory purposes

**5. Computer Crime and Intellectual Property Section (40)**

- Implements the Department's national strategies in combating computer and intellectual property crimes worldwide; investigates and prosecutes offenses involving hacking, data thefts, cyberattacks on critical infrastructure, copyright and trademark infringement, and economic espionage; advises on and assists in the collection of electronic evidence and related computer forensics issues; combats computer and intellectual property crime by working with other government agencies, the private sector, academic institutions, and foreign counterparts

**6. Fraud Section (98)**

- Investigates and prosecutes complex, multi-district, and international white-collar criminal cases throughout the country; implements the Department's fraud enforcement policy; and coordinates information-sharing about white-collar crime with federal and state law enforcement agencies, focusing on corporate, securities and investment fraud, foreign bribery (Foreign Corrupt Practices Act), health care fraud, financial institution fraud, mortgage fraud, procurement and government program fraud (including fraud related to economic stimulus and recovery programs), mass-marketing fraud, and other complex criminal schemes



**ER150**   21

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

7. **Human Rights and Special Prosecutions Section (28)**

   ■ Investigates and prosecutes cases against human rights violators and other international criminals; handles prosecutions involving genocide, torture, war crimes, use of child soldiers and related immigration fraud to conceal such conduct; prosecutes perpetrators of other international violent crimes, particularly those working as employees or contractors for the United States, and persons involved in running international human smuggling organizations; and actively engages in policy work, both domestically and internationally

8. **Narcotic and Dangerous Drug Section (45)**

   ■ Investigates and prosecutes priority national and international drug trafficking groups; provides advice and support on a broad range of counternarcotics matters to the Attorney General and other Department policy makers; represents the Department and provides expert guidance on counternarcotics matters in the inter-agency, intelligence, and international communities

9. **Office of Enforcement Operations (53)**

   ■ Reviews all federal electronic surveillance requests to apply for court orders permitting the use of video surveillance; provides legal advice to federal prosecutors and federal law enforcement agencies and formulates and implements policies and guidelines regarding the use of sensitive law enforcement tools in all phases of federal investigations and prosecutions, including electronic surveillance (wiretaps), witness immunities, courtroom closures, the dual prosecution (Petite) policy, attorney and media subpoenas, attorney search warrants, international prisoner transfers, the use of consensual monitoring in sensitive public corruption matters, and the use of heightened contact and other confinement restrictions over high-risk federal inmates in terrorism, espionage, and violent crime cases

10. **Office of International Affairs (62)**

   ■ Provides advice and assistance on international criminal matters to the Attorney General and other senior Department of Justice officials, the Department's legal divisions, the U.S. Attorneys' Offices, and state and local prosecutors; secures the return of fugitives from abroad; and is the U.S. Central Authority for obtaining foreign evidence and witnesses and for executing foreign requests for assistance in criminal cases; with the Department of State, negotiates bilateral and multilateral law enforcement treaties

11. **Office of Policy and Legislation (6)**

   ■ Develops, reviews, and evaluates national crime, sentencing and corrections policy and legislation; develops legislative proposals, enforcement strategies, legal and policy analyses, and Congressional testimony; analyzes and prepares comments on pending legislation and other legislative matters affecting the



**Magdalena Boynton,**
Associate Director,
Criminal Division,
Office of International Affairs

*"I am proud to represent the United States in international criminal matters through my work at the Office of International Affairs. From handling extraditions and mutual legal assistance requests, to mapping out strategies for engaging law enforcement partners overseas, to negotiating treaties, OIA is a central figure in the international fight against transnational crime."*

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

federal criminal justice system; and helps represent the Department before the U.S. Sentencing Commission on sentencing-related issues, and before the Judicial Conference's Advisory Committees on Criminal Rules regarding the Federal Rules of Criminal Procedure

12. **Organized Crime and Gang Section (39)**

■ Pursues a multi-faceted approach to combating all forms of organized crime targets; supervises and assists in the investigation and prosecution of organized crime cases in U.S. Attorneys' Offices across the country that involve a broad spectrum of criminal statutes, including extortion, murder, bribery, fraud, money laundering, narcotics, and labor racketeering; reviews all proposed federal prosecutions under the Racketeer Influenced and Corrupt Organizations statute and provides extensive advice to prosecutors about the use of this powerful statute; leads the coordination, compilation and analysis of active International organized crime cases

13. **Overseas Prosecutorial Development, Assistance and Training (79)**

■ Develops and administers technical assistance designed to enhance the capabilities of foreign justice sector institutions and their law enforcement personnel, so they can effectively partner with the Department of Justice in combating terrorism, trafficking in persons, organized crime, corruption, and financial crimes

14. **Public Integrity Section (34)**

■ Oversees the federal effort to combat corruption through the prosecution of elected and appointed public officials at all levels of government, and supervises the nationwide investigation and prosecution of election crimes

### ENVIRONMENT AND NATURAL RESOURCES DIVISION (ENRD)

**Office of Human Resources**
Ben Franklin Station
PO Box 367
Washington, DC 20044-0367
Attn: Marcia Jordan-Burke
Email: marcia.burke@usdoj.gov

Total # of Attorneys: 433
Avg. # of Laterals Hired per Year: Varies
Website: *www.justice.gov/enrd*
Location(s): Washington, DC;
   Boston, MA; Denver, CO;
   Sacramento, CA; San Francisco, CA;
   Seattle, WA

The mission of the Environment and Natural Resources Division (ENRD) is to enforce the Nation's environmental laws to ensure clean air, water and land for all Americans; prosecute criminal cases under federal pollution and wildlife laws; defend environmental and natural resources laws and federal agency programs and actions; litigate cases under statutes providing for the management of public lands and natural and cultural resources; litigate cases to protect the rights of Indians under treaties, acts of Congress, and Executive Orders, and defend the United States in claims brought by Indians; prosecute eminent domain proceedings to acquire land on behalf of the United States for authorized public purposes;



**ER152**

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

conduct the Division's appellate litigation in federal circuit courts of appeals and state appellate tribunals, and assist the Office of the Solicitor General with appeals to the U.S. Supreme Court; and advise the Attorney General, Congress, the Office of Management and Budget, and the White House on matters of environmental and natural resources law. (Approximate number of attorneys in each section is indicated in parentheses.)

1. **Appellate Section (34)**

   ■ Briefs and argues appeals in Division cases in the federal courts of appeals, as well as in state appellate and supreme courts when those cases are litigated in the state courts; prepares for the Solicitor General's Office initial drafts of petitions, responses, and merits briefs for Division cases in the Supreme Court; files amicus briefs in courts of appeals on issues of significance to the Division

2. **Environmental Crimes Section (39)**

   ■ Prosecutes individuals and organizations for violations of laws designed to protect our Nation's water, air, land, and endangered and protected species (*e.g.*, prosecution of illegal dumping of pollutants and smuggling of protected wildlife)

3. **Environmental Enforcement Section (156)**

   ■ Brings civil judicial actions under most federal laws enacted to protect public health and the environment from adverse effects of pollution, such as the Clean Air and Water Acts, Safe Drinking Water Act, Oil Pollution Act, CERCLA, and RCRA

4. **Wildlife and Marine Resources Section (22)**

   ■ Litigates civil cases under federal wildlife and marine resource protection laws (*e.g.*, Endangered Species Act, protecting ocean fisheries)

5. **Environmental Defense Section (60)**

   ■ Represents the United States in complex civil litigation arising under a broad range of pollution control statutes; routinely handles both litigation in federal district court and cases within the original jurisdiction of the U.S. Courts of Appeals

6. **Natural Resources Section (78)**

   ■ Litigates under 80+ statutes related to the management of public lands and associated natural and cultural resources; all varieties of public lands are affected by this docket ranging from entire ecosystems, such as the Florida Everglades, to individual rangelands or wildlife refuges

7. **Indian Resources Section (15)**

   ■ Litigates to protect nearly 60 million acres of lands held in trust for the tribes and individual Indian lands as well as the rights and

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

resources associated with those lands; also defends challenges to decisions made by the Secretary of the Interior on behalf of tribes

**8. Land Acquisition Section (14)**

- Acquires land through condemnation proceedings for use by the Federal Government for various purposes ranging from establishing national parks and memorials to protecting national security interests

- Recent cases handled by LAS include the acquisition of land for the Flight 93 National Memorial, the Strategic Border Initiative, and expansion of the Florida Everglades National Park

**9. Law and Policy Section (15)**

- Advises and assists the Office of the Assistant Attorney General on cross-cutting legal questions

- Coordinates and directs the Division's legislative program, including review and drafting of proposed legislation

- Litigates amicus cases and undertakes other special litigation projects

### EXECUTIVE OFFICE FOR IMMIGRATION REVIEW (EOIR)

**Human Resources Staff**
5107 Leesburg Pike, Ste 2300
Falls Church, VA 22041
Attn: LaShon Adams
Phone: (703) 305-1134

Total # of Attorneys: 470
Avg. # of Laterals Hired per Year: 4
Website: *www.justice.gov/eoir*
Location(s): Falls Church, VA;
   59 immigration courts in 27 states
   and Puerto Rico

The Executive Office for Immigration Review is responsible for developing policies and directing activities related to the conduct of administrative hearings and appellate reviews on various matters of immigration law, including the determination of individuals' immigration status in the United States. The majority of EOIR's attorneys are employed in the following four components (approximate number of attorneys in each component is indicated in parentheses):

**1. Office of the Director (including Office of General Counsel) (23)**

- Attorneys assist the management staff and component heads by interpreting laws and regulations, reviewing legislative initiatives, preparing regulations and statements of policy, and maintaining liaison with the private bar and other immigration interest groups

- Attorneys administer programs under the Freedom of Information Act and Privacy Act, respond to complaints about improper conduct of immigration practitioners, and provide guidance on matters of ethics and legal procedure



**Jeffrey S. Pease**,
Supervisory Attorney Advisor,
Executive Office for
Immigration Review,
Board of Immigration Appeals

*"Justice provides its attorneys an incredible amount of responsibility and the unparalleled opportunity to ensure proper application of the nation's laws, including in the varied roles of litigator and adjudicator."*

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

2. **Board of Immigration Appeals (166)**

   - Quasi-judicial body of 15 permanent members with nationwide jurisdiction to hear appeals from certain decisions rendered by Immigration Judges and by officers of the Department of Homeland Security

   - Staff attorneys assist the Board in researching cases, identifying salient issues of law, and preparing decisions: they specialize in dealing with certain categories of cases and assist Board panels in determining the merits of certain cases for oral argument, en banc review, or published decision; attorneys promote pro bono activities among Government and private attorneys

3. **Office of the Chief Immigration Judge (277)**

   - Deputy and Assistant Chief Immigration Judges assist in overall policy direction and supervision of Immigration Courts in the field, recommending policy determinations, setting priorities, and streamlining court procedures

   - Immigration Judges conduct formal administrative hearings and adjudicate individual cases of aliens subject to removal from the United States, determining their eligibility for relief or other consideration under immigration law

4. **Office of the Chief Administrative Hearing Officer (2)**

   - Administrative Law Judges (ALJs) conduct hearings and adjudicate cases arising under the provisions of immigration law relating to unlawful employment of aliens, document fraud, and unfair immigration-related employment practices; the Chief Administrative Hearing Officer conducts administrative reviews of ALJ decisions in the first two categories of cases

   - Attorney-Advisors assist the ALJs in researching cases, identifying salient issues of law, and preparing decisions

## FEDERAL BUREAU OF INVESTIGATION (FBI)

**Office of the General Counsel**  
935 Pennsylvania Ave., NW, Rm 7427  
Washington, DC 20535  
Attn: Andrew Weissmann  
General Counsel  
Phone: (202) 324-6829

Total # of Attorneys: 208  
Avg. # of Laterals Hired per Year: Varies  
Website: *www.fbi.gov*  
Location(s): Washington, DC

The Federal Bureau of Investigation is unique in having dual roles: It is an intelligence/national security-driven agency that is a member of the U.S. Intelligence Community, that collects, analyzes, produces, and disseminates foreign intelligence and counterintelligence to support national and departmental missions, and it is a law enforcement agency that enforces and investigates violations of federal laws concerning organized crime, public corruption, civil rights, terrorism, interstate criminal activity, espionage, and fugitive and drug trafficking

**ER155**

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS



matters as part of the Department of Justice. The Office of the General Counsel (OGC) provides comprehensive legal advice to the Director, other FBI officials and divisions, and field offices on a wide array of national security, criminal, and administrative matters. In addition, this office defends civil actions against the FBI and its employees. Finally, the OGC provides essential legal training for FBI and DEA personnel, the National Academy, and other law enforcement groups. (Approximate number of attorneys in each branch is indicated in parentheses.)

1. **General Law Branch (38)**

   ■ Assists the General Counsel in supporting the operational and administrative components of the FBI by providing timely, accurate, and cogent legal advice and counsel on a wide range of issues and matters in the administrative law field. These issues include considerations of constitutional law, agency authority and organization, fiscal law, ethics and standards of conduct, information law and information sharing, privacy and civil liberties protection, federal personnel law, facilities and property, federal watchlisting matters, and government contracting and procurement

2. **Investigative Law and Legal Training Branch (49)**

   ■ Provides legal advice and guidance to FBI headquarter divisions and field offices concerning matters involving criminal investigative jurisdiction, operations, and techniques, to include counterterrorism, intelligence collection, weapons of mass destruction, computer intrusion/infrastructure protection, and international operations

   ■ Advises on matters regarding: the application and implementation of the Communications Assistance and Law Enforcement Act (CALEA); the technical implementation of lawful authorizations for electronic search and surveillance; digital forensics; and the use of advanced technologies to maximize the FBI's ability to analyze and sort through increasing volumes of data

   ■ Provides legal oversight for all aspects of the FBI's asset forfeiture program

   ■ Provides legal instruction to FBI new agent trainees, analysts, and other employees attending the FBI Academy and Center for Intelligence Training, including legal training for federal, state, local, and international officers

3. **Litigation Branch (46)**

   ■ Serves as legal counsel to the FBI and its employees in regard to civil liability advice, civil lawsuits, administrative claims, requests for testimony and/or documents, individual capacity representation matters, and related areas

   ■ Provides legal advice and education to FBI management regarding personnel actions and defends the FBI in personnel-related administrative hearings, and coordinates civil suits arising from personnel-related matters

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

- Provides legal and policy guidance to the FBI concerning Freedom of Information Act and Privacy Act (FOIA\PA) matters and actively manages FOIA\PA civil actions filed against the FBI

- Serves at the forefront of steering the FBI's electronically-stored information policies, technical requirements, and discovery obligations related to administrative investigations, civil lawsuits, or other legal matters

- Provides timely and high-quality civil discovery review and litigation support to FBI and Department of Justice offices to protect sensitive and privileged information (*e.g.*, classified information, confidential human sources, grand jury material) in civil lawsuits, personnel-related proceedings, internal investigations, and limited criminal proceedings

4. **National Security Law Branch (75)**

- Serves as legal counsel to the FBI and its employees in regard to the national security mission of the FBI. The national security mission includes counterterrorism, foreign counterintelligence, espionage, intelligence collection, weapons of mass destruction, counter-proliferation, and computer intrusion/infrastructure protection

- Provides legal advice and guidance to FBI headquarters and field office personnel related to national security investigations

- Supports all aspects of classified litigation, including classification and declassification determinations and Classified Information Procedures Act and Foreign Intelligence Surveillance Act litigation

- Creates and implements legal policies and procedures in support of the national security mission of the FBI. Drafts and comments on legislation related to national security matters

- Creates and presents training to FBI employees on national security legal authorities

- Conducts risk assessments, oversight and compliance related to the FBI's national security program, including use of investigative tools

- Develops and maintains liaison relationships with the U.S. Intelligence Community, Department of Defense, and other U.S. and foreign government agencies on legal issues and operational requirements relating to national security

### FBI Office of Equal Employment Opportunity Affairs (OEEOA)

Tonya Odom
Acting Assistant Director
Phone: (202) 324-4128

Total # of Attorneys: 2
Avg. # of Laterals Hired per Year: Varies
Website: ***www.fbi.gov***

- Provides an informal and formal complaint processing system pursuant to federal guidelines for individuals to address claims of discrimination. This office also provides a reasonable accommoda-

28

**ER157**

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS



tion process for persons with disabilities, an alternative dispute resolution program for workplace disputes, EEO training, and leads the agency's diversity initiative

- Attorneys within the OEEOA ensure that claims of discrimination are addressed in accordance with federal regulations and anti-discrimination statutes

- Attorneys work closely with FBI Special Agents tasked to investigate EEO complaints by providing legal and policy guidance, investigative planning, and a comprehensive review of investigative reports for legal sufficiency

- Attorneys also work closely with internal FBI stakeholders, the Department of Justice, and the U.S. Equal Opportunity Commission on issues affecting the function of its programs, compliance requirements, and policy development

### FBI Office of Integrity and Compliance (OIC)

Patrick Kelley                        Total # of Attorneys: 11
Assistant Director                    Avg. # of Laterals Hired per Year: 2
Phone: (202) 324-6110
Email: patrick.kelley@ic.fbi.gov

The FBI Office of Integrity and Compliance has two primary practice areas: Standards of Conduct and Ethics, and Legal Risk Management or Compliance. In addition to running and overseeing a traditional Federal Executive Branch agency ethics and standards of conduct program (training, advice and counseling, financial disclosure systems and review, etc.), OIC attorneys work closely with FBI management to identify, analyze, and develop mitigation plans to reduce legal risks associated with FBI operations, activities, and programs.

- Modeled on a private-sector compliance program, OIC works proactively to help ensure FBI personnel know and conform their conduct to the requirements of the law, address systemic compliance concerns, and foster an ethical environment that advances the FBI's adherence to its core values

- OIC attorneys review corporate policies, work on and lead "Red Teams," engage management at all levels and partner with their OGC counterparts to improve the overall compliance posture of the FBI

### FBI Office of Professional Responsibility (OPR)

Candice Will, Assistant Director       Total # of Attorneys: 15
Phone: (202) 220-7800                  Avg. # of Laterals Hired per Year: 2

- Ensures that the FBI's 35,000 employees conduct themselves with the highest level of integrity and professionalism. OPR conducts investigations into alleged employee misconduct, and impartially adjudicates each case

# ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

- OPR works closely with other FBI divisions and the Department of Justice to address allegations of employee misconduct

- Oversees the smooth and efficient operation of the FBI's internal disciplinary process, including adopting policies and procedures governing that process

- OPR attorneys review investigative files, prepare legal memoranda, and respond to inquiries about the disciplinary process as well as provide instruction to employees about the disciplinary process, including the conduct of oral hearings

## FEDERAL BUREAU OF PRISONS (BOP)

**Office of General Counsel**
320 First St., NW, Rm 948
Washington, DC 20534
Attn: B. Kevin Cardwell
Phone: (202) 514-6105

Total # of Attorneys: 186
Avg. # of Laterals Hired per Year: 4
Website: *www.bop.gov*
Location(s): Washington, DC;
   Annapolis Junction, MD; Atlanta, GA;
   Dallas, TX; Kansas City, KS;
   Philadelphia, PA; Stockton, CA

The Federal Bureau of Prisons oversees the operation of the federal prison system, which (as of October, 2011) consists of 117 institutions. BOP attorneys are employed within the Central Office in Washington, DC, in Regional Offices or Consolidated Legal Centers located nation-wide, which includes several institution locations. (Approximate number of attorneys in each office is indicated in parentheses.)

1.  **Central Office (Office of General Counsel) (69)**

    This office is divided into six branches:

    Commercial Law Branch

    - Provides legal guidance and review of agency procurements

    - Represents the BOP in protests and claims in government contract matters

    - Advises staff on various commercial matters including copyright, tax, and fiscal law

    Employment Law and Ethics Branch

    - Provides advice and counsel to staff regarding employment and ethics matters

    - Represents the agency in various forums including the Equal Employment Opportunity Commission, the Federal Labor Relations Authority, the Merit Systems Protection Board, the Federal Service Impasses Panel, and in labor arbitrations

**ER159**

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

- Assists with employment cases in U.S. District Courts nationwide and the U.S. Court of Appeals for the Federal Circuit

Legal Administrative Branch

- Processes Freedom of Information Act and Privacy Act (FOIA\PA) requests and assists in litigation of FOIA\PA cases

- Oversees all attorney personnel issues and computer services for legal staff

- Designs and provides speciality training for paralegal and attorneys nation-wide

Legislative and Correctional Issues Branch

- Provides legal assistance on correctional issues, such as inmate rights and conditions of confinement

- Drafts and reviews legislation that may affect the BOP and coordinates the BOP's rulemaking process

Litigation Branch

- Provides support on litigation filed in the District of Columbia and on cases having national impact on BOP programs and policies

- Oversees the inmate grievance program and claims filed under the Federal Tort Claims Act

Real Estate and Environmental Law Branch

- Provides legal assistance and litigation support on a variety of issues, including land transactions and environmental laws

2. **Regional Offices and Consolidated Legal Centers**
   **(which includes institution locations - 117)**

- Provide litigation support to U.S. Attorneys' Offices for inmate litigation arising out of the prisons located within the region/consolidated legal center (generally five to seven institutions) in the following types of lawsuits: *Bivens* actions claiming a federal employee has violated an inmate's constitutional rights (*e.g.*, an allegation that the conditions of confinement within an institution are unconstitutional); Federal Tort Claims Act suits (*e.g.*, an allegation that BOP staff members were negligent in failing to prevent personal injury to an inmate); Petitions for writ of habeas corpus (*e.g.*, an inmate claim that the sentence imposed has not been properly computed)

- Provide legal advice to regional office and prison administrators on a variety of legal issues involving constitutional rights, torts, contracts, administrative, labor and employment law

- Assist with prosecution of crimes that occur at BOP facilities



**ER160**   31

# ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

## NATIONAL SECURITY DIVISION (NSD)

**Executive Office**
950 Pennsylvania Ave., NW, Rm 7636
Washington, DC 20530
Attn: Kia Johnson
Email: Kia.Johnson@usdoj.gov

Total # of Attorneys: 202
Avg. # of Laterals Hired per Year: Varies
Website: *www.justice.gov/nsd*
Location(s): Washington, DC

The mission of the National Security Division is to combat terrorism and other national security threats. NSD performs many functions toward this goal, including: 1) Prosecuting suspected terrorists, spies, international pirates, and others who pose a risk to national security; 2) Litigating foreign intelligence surveillance matters, through representation of the Government before the Foreign Intelligence Surveillance Court (FISC) and other federal trial and appellate courts; 3) Providing legal and policy advice on national security matters; and 4) Conducting oversight of the activities of various Intelligence Community agencies. NSD is composed of six components with variable needs for experienced attorney hires:

1. **Counterterrorism Section**

   ■ Investigates and prosecutes domestic and international terrorism and terrorist financing cases

   ■ Investigates and prosecutes matters involving torture, genocide, and war crimes that are linked to terrorist groups and individuals

   ■ Promotes and oversees a coordinated national counterterrorism enforcement program, through close collaboration with Department leadership, the National Security Branch of the Federal Bureau of Investigation (FBI), the Intelligence Community, and the 94 U.S. Attorneys' Offices

   ■ Consults, advises, and collaborates with prosecutors nationwide on international and domestic terrorism investigations and prosecutions

2. **Counterespionage Section**

   ■ Supervises the investigation and prosecution of cases involving espionage and related statutes

   ■ Supports and oversees the expansion of investigations and prosecutions into the unlawful export of military and strategic commodities and technology by assisting and providing guidance to U.S. Attorneys' Offices

   ■ Coordinates and provides advice in connection with cases involving the unauthorized disclosure of classified information and supports resulting prosecutions

   ■ Enforces the Foreign Agents Registration Act of 1938 and related disclosure statutes

**ER161**

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

3. **Office of Intelligence**

   ■ Represents the United States before the FISC to obtain authorization under the Foreign Intelligence Surveillance Act (FISA) for the U.S. Government to conduct intelligence collection activities, such as electronic surveillance and physical searches

   ■ Coordinates and supervises intelligence-related litigation matters, including evaluating and reviewing requests to use information collected under FISA in criminal and non-criminal proceedings

   ■ Oversees foreign intelligence, counterintelligence, and other national security activities to ensure compliance with the Constitution, statutes, and executive branch policies to protect individual privacy and civil liberties

   ■ Identifies instances of individual and systemic non-compliance by various Intelligence Community elements with applicable legal authorities and works with the responsible agencies to correct existing problems and prevent future occurrences

4. **Office of Law and Policy**

   ■ Oversees the development, coordination, and implementation, in conjunction with relevant partners, of legislation and policies concerning intelligence, counterintelligence, counterterrorism, cybersecurity, international piracy, and other national security matters

   ■ Represents and advises the Government in appeals involving counterterrorism, counterespionage, and other national security matters

   ■ Provides legal assistance and advice to the Division, other components of the Department, the Attorney General, the White House, and other agencies on matters of national security law and policy

   ■ Performs prepublication classification review of materials proposed to be published by present and former Department employees

5. **Foreign Investment Review Staff**

   ■ Serves as DOJ's representative on the Committee on Foreign Investment in the United States (CFIUS), a multi-agency body which reviews foreign acquisitions of domestic entities that might affect national security

   ■ Tracks and monitors certain CFIUS transactions that have been approved, including those subject to mitigation agreements, and identifies unreported transactions that might merit CFIUS review

   ■ Provides opinions to the Federal Communications Commission as to whether granting particular licenses to foreign-owned or controlled entities will pose national security risks



**ER162**

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

6. **Office of Justice for Victims of Overseas Terrorism**

   ■ Ensures that the rights of victims and their families are honored and respected throughout the criminal justice process

### TAX DIVISION (TAX)

Human Resources Office
PO Box 813, Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-2774

Total # of Attorneys: 400
Avg. # of Laterals Hired per Year: 25
Website: *www.justice.gov/tax*
Location(s): Washington, DC; Dallas, TX

The mission of the Tax Division is to enforce the nation's tax laws fully, fairly, and consistently. The Division directly handles most civil litigation arising under the federal tax code in both federal and state courts and oversees the prosecution of all federal tax crimes. Most of the Division's attorneys are employed in the following sections (approximate number of attorneys in each section is indicated in parentheses):



**Steven K. Uejio,**
Attorney,
Tax Division,
Appellate Section

*"Based on my summer internship experience, I promptly accepted the offer to join the Tax Division through the Honors Program. It is a decision I am glad I made."*

1. **Appellate Section (50)**

   Appellate attorneys:

   ■ Review adverse court decisions in civil tax cases and prepare recommendations as to whether appeals should be taken

   ■ Prepare briefs and present oral argument in civil tax cases before federal and state courts of appeals

2. **Civil Trial Sections (including six regional sections and the Court of Federal Claims Section) (220)**

   Civil trial attorneys:

   ■ Handle all aspects of their cases, from inception through trial or settlement, in federal district and bankruptcy courts and state trial courts

   ■ Bring cases to collect taxes and penalties, foreclose tax liens, enjoin fraudulent tax return preparers and tax scam promoters, and seek other affirmative relief

   ■ Defend the United States and government officials in suits seeking tax refunds, civil damages, injunctions, invalidation of federal tax regulations, and other relief

3. **Criminal Enforcement Sections (including three regional sections and the Criminal Appeals and Tax Enforcement Policy Section) (110)**

   Criminal enforcement attorneys:

   ■ Review recommendations for prosecution of federal tax offenses received from the IRS and U.S. Attorneys to determine whether prosecutions should be authorized

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

- Review requests to initiate or expand grand jury investigations arising under federal tax laws

- Prosecute tax offenses in federal district courts

## UNITED STATES ATTORNEYS' OFFICES (USAOs)

Applications for employment with the U.S. Attorneys' Offices should be mailed directly to the office in which you have an interest. A chart of USAOs' contact information can be found at *www.justice.gov/usao/about/offices.html*

Total # of Attorneys: 5,866
Avg. # of Laterals Hired per Year: 300
Website: Each office's website can be accessed through the following website: *www.justice.gov/usao/about/offices.html*
Location(s): 94 offices nationwide (see page 46-47)

U.S. Attorneys are responsible for handling a significant portion of the criminal prosecutions and civil litigation on behalf of the Department of Justice and most other federal agencies. There are 93 U.S. Attorneys stationed throughout the United States, Puerto Rico, the Virgin Islands, Guam, and the Northern Mariana Islands. U.S. Attorneys are appointed by, and serve at the discretion of, the President of the United States, with the advice and consent of the United States Senate. One U.S. Attorney is assigned to each of the judicial districts, with the exception of Guam and the Northern Mariana Islands where a single U.S. Attorney serves in both districts. The U.S. Attorneys are the chief federal law enforcement officers in their districts, responsible for federal criminal prosecutions and civil cases involving the United States Government.

The U.S. Attorneys have three statutory responsibilities under 28 U.S.C. § 547:

- The prosecution of criminal cases brought by the federal government;

- The prosecution and defense of civil cases in which the United States is a party; and

- The collection of debts owed the federal government that are administratively uncollectible.

Although the distribution of caseload varies between districts, each U.S. Attorney's Office deals with every category of cases and handles a mixture of simple and complex litigation. Each U.S. Attorney is both the primary representative and the administrative head of the Office of the U.S. Attorney for their respective district, and in that role supervises the Office's staff, including trial attorneys, i.e., Assistant U.S. Attorneys (AUSAs), who have day-to-day responsibility for litigating cases.

AUSAs work in the following areas:

1. **Criminal**

- Criminal work includes the coordination of investigations and prosecution of a wide range of criminal activities, including



**Tiwana Wright,**
Trial Attorney,
Tax Division,
Northern Criminal
Enforcement Section

*e Tax Division, I am developing the unique trial skills required in complex white collar federal litigation. As an attorney in its Criminal Enforcement Section, I get to travel throughout the United States to assist U.S. Attorneys' offices in the prosecution of tax fraud crimes."*



**Nick Chase,**
Assistant U.S. Attorney,
U.S. Attorney's Office,
District of North Dakota

**ER164**

35

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

violent crime, terrorism, organized crime, computer fraud, environmental crime, public corruption, health care fraud, firearms violations, drug trafficking, money laundering, financial institutions fraud, asset forfeiture, and child support enforcement

Typically, AUSAs doing this type of work:

- Supervise and conduct investigations (*e.g.*, work with grand juries and criminal investigative agents, review evidence, interview witnesses, prepare search and seizure warrants, and conduct other work leading to trial)

- Prepare criminal complaints and indictments

- Negotiate and draft plea agreements

- Prepare for and conduct jury and court trials

- Brief and argue appeals



**Channing D. Phillips,**
Counselor to the
Attorney General

*"I joined Justice over 20 years ago for the chance to work on compelling cases and interesting issues that affect individual persons as well as whole communities and I have not been disappointed. As a young prosecutor in the Criminal Division and later as an Assistant U.S. Attorney prosecuting violent crime, drug trafficking, gun, and fraud offenses, Justice has provided me the opportunity to help effect change on many different levels. As a public servant, it just doesn't get any better as far as I'm concerned."*

### 2. Civil

Civil work includes:

- Initiating affirmative litigation and other civil cases to assert and protect the interests of the United States (*e.g.*, enforcement of environmental, public safety, health care, fair housing, and government program fraud laws)

- Defending the interests of the federal government in lawsuits filed against the United States (*e.g.*, tort and employment discrimination claims against federal agencies and judicial review of various administrative rulings)

- Enforcing the financial and property interests of the federal government in civil and criminal collections, real estate foreclosures, and bankruptcy proceedings

Typically, AUSAs doing this type of work:

- Conduct legal research on affirmative and defensive civil issues

- Draft motions to dismiss and for summary judgment and other pleadings

- Conduct depositions and pursue other fact discovery; interview lay fact witnesses and expert witnesses

- Appear in court for motion hearings and settlement conferences

- Prepare for and conduct jury and court trials

- Brief and argue appeals

**ER165**

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

### UNITED STATES TRUSTEE PROGRAM (USTP)

Office of Administration
Human Resources Division
20 Massachusetts Ave., NW, Rm 8214
Washington, DC 20530
Attn: Valerie Singley
Attorney Recruitment Coordinator
Phone: (202) 616-1013

Total # of Attorneys: 316
Avg. # of Laterals Hired per Year: 12
Website: *www.justice.gov/ust*
Location(s): 95 offices nationwide and
Executive Office in Washington, DC

The mission of the United States Trustee Program is to promote the integrity and efficiency of the bankruptcy system for the benefit of all stakeholders – debtors, creditors, and the public. The Program oversees the administration of all bankruptcy cases filed by individual and business debtors in every federal judicial district except those in Alabama and North Carolina. The U.S. Trustee's specific duties in a case depend on the chapter under which a debtor files a bankruptcy petition and the facts of the case.

The Program has an Executive Office for U.S. Trustees (EOUST) in Washington, DC, led by a Director; 21 regions managed by U.S. Trustees; and 95 field offices supervised by Assistant U.S. Trustees. Field office attorneys appear in court, almost daily, to ensure that bankruptcy cases are fairly and expeditiously administered.

Program Field Office Attorneys' responsibilities include:

- Protecting consumers by seeking sanctions and other penalties against mortgage servicers and other creditors who abuse debtors and the bankruptcy system

- Prosecuting discharge complaints and motions to dismiss to prevent fraud and abuse by bankruptcy filers

- Pursuing civil remedies against attorneys engaging in misconduct and non-attorney petition preparers who violate the law

- Ensuring the interests of creditors and other parties are adequately represented in Chapter 11 business reorganizations

- Overseeing the private trustees appointed to administer Chapter 7, 12, and 13 bankruptcy cases

- Working closely with the U.S. Attorneys, the FBI, and other law enforcement agencies to investigate and prosecute criminal bankruptcy fraud cases

The EOUST oversees the Program's substantive operations and handles its administrative functions. EOUST attorneys face an array of challenging issues relating to complex bankruptcy law, litigation and appeals, administrative and regulatory law, and pending or contemplated legislation.

Program EOUST Attorneys' responsibilities include:

- Managing the Program's civil enforcement efforts



**ER166**   37

## ORGANIZATIONS WITH MORE THAN 100 ATTORNEYS

- Prosecuting and defending appeals at the district court and circuit court levels

- Coordinating litigation of cases of first impression

- Providing legal advice to the U.S. Trustees

- Responding to Freedom of Information Act (FOIA) requests and managing congressional correspondence

- Developing legislative proposals

- Advising on ethics issues



**ER167**

## ORGANIZATIONS WITH FEWER THAN 100 (BUT MORE THAN 10) ATTORNEYS

### BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES (ATF)

| | |
|---|---|
| **Office of Chief Counsel** | Total # of Attorneys: 74 |
| 99 New York Ave., NE | Avg. # of Laterals Hired per Year: 2 |
| Washington, DC 20226 | Website: *www.atf.gov* |
| Attn: Yvette Younger | Location(s): Washington, DC and |
| Phone: (202) 648-7008 | 25 Field Divisions |

The primary mission of the Bureau of Alcohol, Tobacco, Firearms and Explosives is to prevent violent crime by enforcing and administering the federal firearms laws and regulations, various federal explosives laws and regulations, and alcohol and tobacco trafficking laws. The Office of Chief Counsel provides legal advice and guidance to ATF officials, researches legal issues regarding the laws within ATF's jurisdiction, and provides litigation support in defense of the Bureau and its employees in civil litigation. At ATF Headquarters the attorneys are divided into four sections: Administration and Ethics; Field Operations and Information; Firearms, Explosives and Arson; and Litigation. ATF attorneys are also based in 25 field divisions around the country where they work directly with ATF special agents and industry operations investigators on criminal cases and regulatory matters.

### DRUG ENFORCEMENT ADMINISTRATION (DEA)

| | |
|---|---|
| **Office of Chief Counsel** | Total # of Attorneys: 90 |
| 8701 Morrissette Dr. | Avg. # of Laterals Hired per Year: 5 |
| Springfield, VA 22152 | Website: *www.dea.gov* |
| Attn: Robert C. Gleason | Location(s): Washington, DC |
| Phone: (202) 307-8020 | |

As the primary narcotics enforcement agency for the federal government, the Drug Enforcement Administration enforces the Controlled Substances Act and related federal statutes. The Office of Chief Counsel serves as legal counsel to DEA, providing advice to DEA managers and employees on all aspects of the agency's operations worldwide. The Office is divided into ten sections: Domestic Criminal Law Section; International Law Section; Civil Litigation Section; Administrative Law Section; Diversion/Regulatory Litigation Section; Diversion/Regulatory Policy Section; Asset Forfeiture Section; Technology Law Section; Congressional Liaison Section; and Legal Instruction Section.

### EXECUTIVE OFFICE FOR U.S. ATTORNEYS (EOUSA)

| | |
|---|---|
| 600 E St., NW | Total # of Attorneys: 55 |
| Washington, DC 20530 | Avg. # of Laterals Hired per Year: 4 |
| Attn: Patricia Mallette | Website: *www.justice.gov/usao/eousa* |
| Phone: (202) 252-5500 | Location(s): Washington, DC |

Provides the 94 U.S. Attorneys' Offices with executive assistance and direction, policy development, administrative and operational support, and coordination with other organizations of the Department and other federal agencies.  The majority of the legal work in EOUSA is performed by attorneys in the following components: General Counsel's Office; Office of Legal and Victim Programs; Freedom of Information Act/Privacy Act Staff; Evaluation and Review Staff; and the Office of Legal Education (located at the National Advocacy Center, Columbia, South Carolina).



**Anthony N. Torres,**
Attorney,
Bureau of Alcohol, Tobacco,
Firearms & Explosives,
Office of Chief Counsel,
Field Operations and Information

*"The action at ATF is frantic and independence in working your cases a necessity. The most rewarding aspect of my career, however, has been working with so many highly-qualified and motivated individuals who care deeply about doing what's right."*

## ORGANIZATIONS WITH FEWER THAN 100 (BUT MORE THAN 10) ATTORNEYS

### JUSTICE MANAGEMENT DIVISION (JMD)

**JMD/Office of General Counsel**
145 N St., NE
Washington, DC 20530
Attn: Barbara Bush
Phone: (202) 514-3452

Total # of Attorneys: 21
Avg. # of Laterals Hired per Year: 1
Website: *www.justice.gov/jmd*
Location(s): Washington, DC

Provides assistance to senior management officials relating to basic DOJ policy for evaluation, budget and financial management, personnel management and training, equal opportunity programs, automatic data processing and telecommunications, security, records management, procurement, real property, and material management. The majority of the legal work carried out in the Justice Management Division is performed by 11 attorneys in the Office of General Counsel, which provides legal advice on a wide range of issues affecting the administration of the Department of Justice's programs. In addition, several attorneys with JMD HR Staff provide guidance and litigation assistance to DOJ organizations in the area of labor and employment law, and they practice before the MSPB, FLRA, and EEOC.

### OFFICE OF INFORMATION POLICY (OIP)

New York Avenue Building
1425 New York Ave., NW, Ste 11050
Washington, DC 20530
Attn: Director
Phone: (202) 514-3642

Total # of Attorneys: 19
Avg. # of Laterals Hired per Year: 2
Website: *www.justice.gov/oip*
Location(s): Washington, DC

Responsible for encouraging agency compliance with the Freedom of Information Act (FOIA) and develops and issues policy guidance to all agencies on proper implementation of the FOIA. In addition to its policy guidance and oversight responsibilities, the Office of Information Policy (OIP) manages the Department of Justice's obligations under the FOIA. This includes adjudicating administrative appeals from denials of access to records made by Department organizations under the FOIA or the Privacy Act of 1974; handling initial requests for records of the Offices of the Attorney General, Deputy Attorney General and Associate Attorney General, as well as other Senior Management Offices; providing staff support for the Department Review Committee, which reviews Department of Justice records containing classified information; and handling the defense of certain FOIA matters in litigation.

### OFFICE OF JUSTICE PROGRAMS (OJP)

810 Seventh St., NW, Rm 3321
Washington, DC 20531
Attn: Michelle Sicat
Associate Director of HR Operations
Phone: (202) 514-9605

Total # of Attorneys: 33
Avg. # of Laterals Hired per Year: 2
Website: *www.justice.gov/ojp*
Location(s): Washington, DC

Provides innovative leadership to federal, state, local, and tribal justice systems, by disseminating state-of-the art knowledge and practices across America, and providing grants for the implementation of these crime-fighting strategies. OJP works in partnership with the justice community to identify the most pressing crime-related challenges confronting the justice system and to provide information, training, coordination, and innovative strategies and approaches

**ER169**

## ORGANIZATIONS WITH FEWER THAN 100 (BUT MORE THAN 10) ATTORNEYS

for addressing these challenges. The majority of the legal work carried out in the Office of Justice Programs is performed by 20 attorneys in the Office of the General Counsel and by 10 attorneys in the Office of Civil Rights.

### OFFICE OF LEGAL COUNSEL (OLC)

| | |
|---|---|
| Main Building | Total # of Attorneys: 25 |
| 950 Pennsylvania Ave., NW | Avg. # of Laterals Hired per Year: 5 |
| Washington, DC 20530-0001 | Website: *www.justice.gov/olc* |
| Attn: Arline A. Gause | Location(s): Washington, DC |
| Phone: (202) 305-9250 | |

Assists the Attorney General in his function as legal advisor to the President and all executive branch agencies. Drafts legal opinions of the Attorney General and also provides its own written opinions and oral advice in response to requests from the Counsel to the President, the various agencies of the executive branch, and offices within the Department. The Office of Legal Counsel is also responsible for providing legal advice to the executive branch on constitutional questions and reviewing pending legislation for constitutionality.

### OFFICE OF LEGAL POLICY (OLP)

| | |
|---|---|
| Main Building | Total # of Attorneys: 20 |
| 950 Pennsylvania Ave., NW | Avg. # of Laterals Hired per Year: 1-2 |
| Washington, DC 20530-0001 | Website: *www.justice.gov/olp* |
| Attn: Matrina Matthews | Location(s): Washington, DC |
| Phone: (202) 616-0040 | |

Develops and implements the Justice Department's significant policy initiatives, handles special projects that implicate the interests of multiple Department components, coordinates with other interested Department components and other executive branch agencies, and serves as the primary policy advisor to the Attorney General and the Deputy Attorney General. OLP also reviews and coordinates all regulations promulgated by Department components, assists the Attorney General with responsibilities in recommending candidates for federal judgeships, and coordinates the judicial nomination and confirmation process with the White House and the Senate.

### OFFICE OF LEGISLATIVE AFFAIRS (OLA)

| | |
|---|---|
| Main Building | Total # of Attorneys: 15 |
| 950 Pennsylvania Ave., NW, Rm 1601 | Avg. # of Laterals Hired per Year: 1-2 |
| Washington, DC 20530 | Website: *www.justice.gov/ola* |
| Email: OLA.resumes@usdoj.gov | Location(s): Washington, DC |

Responsible for the development and implementation of strategies to advance the Department's legislative initiatives and other interests relating to Congress. OLA also articulates the Department's position on legislation proposed by Congress, facilitates the appearance of Department witnesses at congressional hearings, and manages the interagency clearance process led by the Office of Management and Budget. Additionally, OLA coordinates the Department's responses to congressional committee oversight requests and other inquiries from individual Members and congressional staff. OLA also participates in the Senate confirmation process for federal judges and Department nominees, such as Assistant Attorneys General and U.S. Attorneys.



## ORGANIZATIONS WITH FEWER THAN 100 (BUT MORE THAN 10) ATTORNEYS

### OFFICE OF PROFESSIONAL RESPONSIBILITY (OPR)

Main Building
950 Pennsylvania Ave., NW
Washington, DC 20530-0001
Attn: William J. Birney
Phone: (202) 514-3365

Total # of Attorneys: 23
Avg. # of Laterals Hired per Year: 2
Website: *www.justice.gov/opr*
Location(s): Washington, DC

Investigates allegations of misconduct involving Department of Justice attorneys that relate to the exercise of their authority to investigate, litigate or provide legal advice, as well as allegations of misconduct by Department law enforcement personnel when related to allegations of attorney misconduct within the jurisdiction of the Office of Professional Responsibility (OPR). The mission of OPR is to ensure that Department attorneys and law enforcement personnel continue to perform their duties in accordance with the high professional standards expected of the nation's principal law enforcement agency.

### OFFICE OF THE INSPECTOR GENERAL (OIG)

**Management and Planning Div.**
1425 New York Ave., NW, Ste 7000
Washington, DC 20530
Attn: Brandie Miller
Phone: (202) 616-4501

Total # of Attorneys: 17
Avg. # of Laterals Hired per Year: 4
Website: *www.justice.gov/oig*
Location(s): Washington, DC

Conducts independent investigations, audits, inspections, and special reviews of Department of Justice personnel and programs to detect and deter waste, fraud, abuse, and misconduct, and to promote integrity, economy, efficiency, and effectiveness in Department of Justice operations.

### U.S. MARSHALS SERVICE (USMS)

**Office of General Counsel**
2604 Jefferson Davis Highway,
CS-4, 10th Floor
Alexandria, VA 22301
Attn: Lisa Dickinson
Principal Deputy General Counsel
Phone: (202) 307-9054 (main)

Total # of Attorneys: 20
Avg. # of Laterals Hired per Year: Varies
Website: *www.usmarshals.gov*
Location(s): Washington, DC

Protects the federal courts and ensures the effective operation of the judicial system (*e.g.*, prisoner transportation, service and execution of court orders, court and judicial security, witness protection). The Office of General Counsel provides legal assistance to the Director and headquarter officials, as well as to U.S. Marshals nationwide.

**ER171**

## ORGANIZATIONS WITH 10 OR FEWER ATTORNEYS

### COMMUNITY RELATIONS SERVICE (CRS)
Total # of Attorneys: 2
Website: *www.justice.gov/crs*

Provides violence prevention and conflict resolution services for community conflicts and tensions arising from differences of race, color, or national origin. CRS is the only federal service mandated to help state and local government agencies, public and private organizations, and community groups resolve and prevent community racial conflicts through the use of mediation, conciliation, and other conflict resolution approaches.

### FOREIGN CLAIMS SETTLEMENT COMMISSION (FCSC)
Total # of Attorneys: 4
Website: *www.justice.gov/fcsc*

Adjudicates claims of U.S. nationals against foreign governments, either under specific jurisdiction conferred by Congress, pursuant to international claims settlement agreements or by referral from the Secretary of State.

### INTERPOL WASHINGTON, U.S. NATIONAL CENTRAL BUREAU
Total # of Attorneys: 1
Website: *www.justice.gov/usncb*

Facilitates international law enforcement cooperation as the United States' representative to the International Criminal Police Organization (INTERPOL) on behalf of the U.S. Attorney General.

### NATIONAL DRUG INTELLIGENCE CENTER (NDIC)
Total # of Attorneys: 2
Website: *www.justice.gov/ndic*

Provides strategic drug-related intelligence, document and media exploitation support, and training assistance to the drug control, public health, law enforcement, and intelligence communities of the United States in order to reduce the adverse effects of drug trafficking, drug abuse, money laundering, and other drug-related criminal activity.

### OFFICE OF ATTORNEY RECRUITMENT AND MANAGEMENT (OARM)
Total # of Attorneys: 8
Website: *www.justice.gov/oarm*

Oversees Justice's outreach and recruitment efforts for law students and attorneys with the goal of attracting a highly-qualified and diverse talent pool. OARM has delegated authority to take final action in matters pertaining to the employment, separation and general administration of Justice attorneys and law students in grades GS-15 (or equivalent) and below. OARM provides Justice components with guidance on a variety of attorney personnel issues and performs special attorney personnel duties as assigned by the Department's senior leadership offices. OARM oversees many key programs including the Attorney General's Honors Program, the Summer Law Intern Program, the Attorney Student Loan Repayment Program, the Attorney Mentor Program, and Attorney Certifications. OARM is also the Department's adjudicative office in FBI Whistleblower cases.



**ER172**

43

## ORGANIZATIONS WITH 10 OR FEWER ATTORNEYS

### OFFICE OF COMMUNITY ORIENTED POLICING SERVICES (COPS)

Total # of Attorneys: 8
Website: *www.cops.usdoj.gov*

Advances public safety through community policing by providing grants to state, local, and tribal law enforcement agencies nationwide, funding the development and delivery of community policing training and technical assistance resources, and funding the research and publication of community policing materials for law enforcement officers and the communities they serve.

### OFFICE OF DISPUTE RESOLUTION (ODR)

Total # of Attorneys: 2
Website: *www.justice.gov/odr*

Develops policy guidelines and provides legal advice and training on the use of alternative dispute resolution (ADR) in all of the Department of Justice's civil litigation.

### OFFICE OF INTERGOVERNMENTAL AND PUBLIC LIAISON (OIPL)

Total # of Attorneys: 2
Website: *www.justice.gov/oipl*

Represents the Department of Justice's leadership with tribal, state, and local governments. The office also works with leadership of all the major law enforcement organizations on issues affecting DOJ's leadership and other components. In addition, the office is responsible for building relationships with the public, including individuals, institutions and public constituency groups such as bar associations, advocacy groups, and membership organizations.

### OFFICE OF THE FEDERAL DETENTION TRUSTEE (OFDT)

Total # of Attorneys: 2
Website: *www.justice.gov/ofdt*

Manages and regulates the federal detention programs and the Justice Prisoner and Alien Transportation System (JPATS) by establishing a secure and effective operating environment that drives efficient and fair expenditure of appropriated funds. Attorneys provide legal advice on issues including contracts, criminal procedure, constitutional and appropriations law.

### OFFICE OF THE PARDON ATTORNEY (OPA)

Total # of Attorneys: 7
Website: *www.justice.gov/pardon*

Investigates and reviews all requests for executive clemency and prepares the Department of Justice's recommendation to the President for final disposition of each application.

### OFFICE OF TRIBAL JUSTICE (OTJ)

Total # of Attorneys: 4
Website: *www.justice.gov/otj*

Serves as the primary point of contact for the Department of Justice with federally-recognized Native American tribes, and advises the Department on legal and policy matters pertaining to Native Americans.





**Gaye Tenoso**,
Deputy Director,
Office of Tribal Justice

*"To me, there is no higher calling in the legal profession than protecting rights guaranteed by our laws and Constitution, and no more important institution in which to engage in those efforts than the U.S. Department of Justice. It has been my privilege to have worked at the Department to safeguard the rights of minority individuals and Indian tribes for more than a quarter of a century, first in the Civil Rights Division, and now in the Office of Tribal Justice."*

**ER173**

## ORGANIZATIONS WITH 10 OR FEWER ATTORNEYS

**OFFICE ON VIOLENCE AGAINST WOMEN (OVW)**
Total # of Attorneys: 3
Website: *www.ovw.usdoj.gov*

Responsible for providing legal and policy support for the administration of
OVW grants programs and special initiatives. Responds orally and in writing to
complex and novel requests for legal advice or questions involving interpretations
of legislation, including the Violence Against Women Act and other applicable
statutes, case law, federal regulations and other legal authorities relevant to
federal grants administration and national violence against women policy.

**PROFESSIONAL RESPONSIBILITY ADVISORY OFFICE (PRAO)**
Total # of Attorneys: 5
Website: *www.justice.gov/prao*

Provides advice to Department attorneys and Assistant U.S. Attorneys (AUSAs)
with respect to professional responsibility issues.

**U.S. PAROLE COMMISSION (USPC)**
Total # of Attorneys: 6
Website: *www.justice.gov/uspc*

Grants, modifies, or revokes paroles of eligible prisoners, supervises parolees
and prisoners released upon the expiration of their sentences with allowances
for statutory good time, and determines supervisory conditions and terms.





**ER174**   45

## APPENDIX A. — DOJ FIELD OFFICE LOCATIONS EMPLOYING ATTORNEYS

**ALABAMA**
| | |
|---|---|
| Birmingham | USAO |
| Huntsville | USAO |
| Mobile | USAO |
| Montgomery | USAO |

**ALASKA**
| | |
|---|---|
| Anchorage | USAO USTP |
| Fairbanks | USAO |
| Juneau | USAO |

**ARIZONA**
| | |
|---|---|
| Eloy | EOIR |
| Florence | EOIR |
| Flagstaff | USAO |
| Phoenix | ATF BOP EOIR USAO USTP |
| Tucson | BOP EOIR USAO |
| Yuma | USAO |

**ARKANSAS**
| | |
|---|---|
| Fort Smith | USAO |
| Little Rock | USTP |

**CALIFORNIA**
| | |
|---|---|
| East Mesa | EOIR |
| El Centro | EOIR |
| Fresno | USAO USTP |
| Imperial | EOIR |
| Lancaster | EOIR |
| Los Angeles | ATF BOP EOIR USAO USTP |
| Oakland | ENRD USAO USTP |
| Riverside | USAO USTP |
| Sacramento | EOIR USAO USTP |
| San Diego | USAO USTP |
| San Francisco | EOIR ENRD BOP USAO USTP |
| San Jose | ATF ATR ENRD EOIR |
| | USAO USTP |
| Santa Ana | USAO USTP |
| Santa Barbara | USTP |
| Stockton | BOP |
| Woodland Hills | USAO |

**COLORADO**
| | |
|---|---|
| Aurora | BOP |
| Denver | ATF ENRD EOIR USAO USTP |
| Durango | USAO |
| Florence | BOP |
| Grand Junction | USAO |

**CONNECTICUT**
| | |
|---|---|
| Bridgeport | USAO |
| Hartford | EOIR USAO |
| New Haven | USAO USTP |

**DELAWARE**
| | |
|---|---|
| Wilmington | USAO USTP |

**FLORIDA**
| | |
|---|---|
| Coleman | BOP |
| Fort Myers | USAO |
| Gainesville | USAO |
| Jacksonville | ATF USAO |
| Miami | EOIR USTP USAO |
| Miami Krome | USAO |
| Ocala | USAO |
| Orlando | EOIR USAO USTP |
| Panama City | USAO |
| Pensacola | USAO |
| Tallahassee | USAO USTP |
| Tampa | ATF USAO USTP |

**GEORGIA**
| | |
|---|---|
| Albany | USAO |
| Atlanta | ATF ATR BOP EOIR |
| | USAO USTP |
| Augusta | USAO |
| Columbus | USAO |
| Glynco | BOP |
| Macon | USAO USTP |
| Savannah | USAO USTP |
| Stewart | EOIR |

**GUAM & NORTHERN MARIANA ISLANDS**
| | |
|---|---|
| Hagatna | USAO |
| Saipan | EOIR USAO |

**HAWAII**
| | |
|---|---|
| Honolulu | BOP EOIR USAO USTP |

**IDAHO**
| | |
|---|---|
| Boise | USAO USTP |
| Coeur d'Alene | USAO |
| Pocatello | USAO |

**ILLINOIS**
| | |
|---|---|
| Benton | USAO |
| Chicago | ATF ATR BOP EOIR |
| | USAO USTP |
| Fairview Heights | USAO |
| Peoria | USAO |
| Rock Island | USAO |
| Rockford | USAO |
| Springfield | USAO |
| Urbana | USAO |

**INDIANA**
| | |
|---|---|
| Evansville | USAO |
| Fort Wayne | USAO |
| Hammond | USAO |
| Indianapolis | ATF EOIR USAO USTP |
| South Bend | USAO USTP |
| Terre Haute | BOP |

**IOWA**
| | |
|---|---|
| Cedar Rapids | USAO USTP |
| Davenport | USAO |
| Des Moines | USAO USTP |
| Sioux City | USAO |

**KANSAS**
| | |
|---|---|
| Kansas City | BOP USAO |
| Leavenworth | BOP |
| Topeka | USAO |
| Wichita | USAO USTP |

**KENTUCKY**
| | |
|---|---|
| Ft. Mitchell | USAO |
| Lexington | BOP USAO USTP |
| London | USAO |
| Louisville | ATF USAO USTP |
| Paducah | USAO |

**LOUISIANA**
| | |
|---|---|
| Baton Rouge | USAO |
| Lafayette | USAO |
| New Orleans | ATF EOIR USAO USTP |
| Oakdale | EOIR |
| Shreveport | USAO USTP |

**MAINE**
| | |
|---|---|
| Bangor | USAO |
| Portland | USAO USTP |

**MARYLAND**
| | |
|---|---|
| Annapolis Junc. | BOP |
| Baltimore | ATF EOIR USAO USTP |
| Greenbelt | USAO USTP |

**MASSACHUSETTS**
| | |
|---|---|
| Boston | ATF ENRD EOIR USAO USTP |
| Devens | BOP |
| Springfield | USAO |
| Worcester | USAO |

**MICHIGAN**
| | |
|---|---|
| Bay City | USAO |
| Detroit | ATF EOIR USAO USTP |
| Flint | USAO |
| Grand Rapids | USAO |
| Lansing | USAO |
| Marquette | USAO |

**MINNESOTA**
| | |
|---|---|
| Bloomington | EOIR |
| Minneapolis | USAO USTP |
| Rochester | BOP |
| St. Paul | ATF USAO |

**MISSISSIPPI**
| | |
|---|---|
| Gulfport | USAO |
| Jackson | USAO USTP |
| Oxford | USAO |

**MISSOURI**
| | |
|---|---|
| Cape Girardeau | USAO |
| Jefferson City | USAO |
| Kansas City | ATF EOIR USAO USTP |
| Springfield | BOP USAO |
| St. Louis | USAO USTP |

**MONTANA**
| | |
|---|---|
| Billings | USAO |
| Butte | USAO |
| Great Falls | USAO USTP |
| Helena | USAO |
| Missoula | USAO |

**NEBRASKA**
| | |
|---|---|
| Lincoln | USAO |
| Omaha | EOIR USAO USTP |

**NEVADA**
| | |
|---|---|
| Las Vegas | USAO USTP |
| Reno | USAO USTP |

**NEW HAMPSHIRE**
| | |
|---|---|
| Concord | USAO |
| Manchester | USTP |

**NEW JERSEY**
| | |
|---|---|
| Camden | USAO |
| Elizabeth | EOIR |
| Fort Dix | BOP |
| Newark | ATF EOIR USAO USTP |
| Trenton | USAO |

**NEW MEXICO**
| | |
|---|---|
| Albuquerque | USAO USTP |
| Las Cruces | USAO |

**NEW YORK**
| | |
|---|---|
| Albany | USAO USTP |
| Batavia | EOIR |
| Binghamton | USAO |
| Brooklyn | BOP USAO USTP |
| Buffalo | EOIR USAO USTP |
| Central Islip | USAO |
| Fishkill | EOIR |
| New York | ATF ATR BOP EOIR USAO USTP |
| Plattsburgh | USAO |
| Rochester | USAO USTP |
| Syracuse | USAO |
| Utica | USAO |
| Varick Street | EOIR |
| White Plains | USAO |

**NORTH CAROLINA**
| | |
|---|---|
| Asheville | USAO |
| Butner | BOP |
| Charlotte | ATF EOIR USAO |
| Greensboro | USAO |
| Raleigh | USAO |
| Winston-Salem | USAO |

**NORTH DAKOTA**
| | |
|---|---|
| Bismarck | USAO |
| Fargo | USAO |

**OHIO**
| | |
|---|---|
| Akron | USAO |
| Cincinnati | USAO USTP |
| Cleveland | ATR EOIR USAO USTP |
| Columbus | ATF USAO USTP |
| Dayton | USAO |
| Toledo | USAO |
| Youngstown | USAO |

**OKLAHOMA**
| | |
|---|---|
| Muskogee | USAO |
| Oklahoma City | BOP USAO USTP |
| Tulsa | USAO |

**OREGON**
| | |
|---|---|
| Eugene | USAO USTP |
| Medford | USAO |
| Portland | USAO USTP |

**PENNSYLVANIA**
| | |
|---|---|
| Allenwood | BOP |
| Erie | USAO |
| Harrisburg | USAO USTP |
| Johnstown | USAO |
| Lewisburg | BOP |
| Philadelphia | ATF ATR BOP EOIR USAO USTP |
| Pittsburgh | USAO USTP |
| Scranton | USAO |
| Williamsport | USAO |
| York | EOIR |

**PUERTO RICO**
| | |
|---|---|
| San Juan | BOP EOIR USAO USTP |

**RHODE ISLAND**
| | |
|---|---|
| Providence | USAO USTP |

**SOUTH CAROLINA**
| | |
|---|---|
| Charleston | USAO |
| Columbia | USAO USTP |
| Edgefield | BOP |
| Florence | USAO |
| Greenville | USAO |

**SOUTH DAKOTA**
| | |
|---|---|
| Aberdeen | USAO |
| Pierre | USAO |
| Rapid City | USAO |
| Sioux Falls | USAO |

**TENNESSEE**
| | |
|---|---|
| Chattanooga | USAO USTP |
| Columbia | USAO |
| Cookeville | USAO |
| Greeneville | USAO |
| Jackson | USAO |
| Johnson City | USAO |
| Knoxville | USAO USTP |
| Memphis | USAO USTP |
| Nashville | ATF USAO USTP |

**TEXAS**
| | |
|---|---|
| Alpine | USAO |
| Amarillo | USAO |
| Austin | USAO USTP |
| Beaumont | BOP USAO |
| Brownsville | USAO |
| Corpus Christi | USAO |
| Dallas | ATF ATR BOP EOIR USAO USTP |
| Del Rio | USAO |
| El Paso | EOIR USAO |
| El Paso SPC | EOIR |
| Fort Worth | BOP USAO |
| Grand Prairie | BOP |
| Harlingen | USAO |
| Houston | ATF EOIR USAO USTP |
| Houston SPC | EOIR |
| Laredo | ATF BOP USAO |
| Lubbock | USAO |
| Lufkin | USAO |
| McAllen | USAO |
| Midland | USAO |
| Pearsall | EOIR |
| Plano | USAO |
| Port Isabel | EOIR |
| San Antonio | EOIR USAO USTP |
| Sherman | USAO |
| Texarkana | USAO |
| Tyler | USAO |
| Victoria | USAO |

**UTAH**
| | |
|---|---|
| Salt Lake City | EOIR USAO USTP |

**VERMONT**
| | |
|---|---|
| Burlington | USAO |

**VIRGIN ISLANDS**
| | |
|---|---|
| St. Croix | USAO |
| St. Thomas | USAO |

**VIRGINIA**
| | |
|---|---|
| Abingdon | USAO |
| Alexandria | USAO |
| Arlington | EOIR |
| Charlottesville | USAO |
| Falls Church | EOIR |
| Norfolk | USAO |
| Newport News | USAO |
| Richmond | USAO |
| Roanoke | USAO |

**WASHINGTON**
| | |
|---|---|
| SeaTac | BOP |
| Seattle | ATF ENRD EOIR USAO USTP |
| Spokane | EOIR USAO |
| Tacoma | USAO |
| Yakima | USAO |

**WEST VIRGINIA**
| | |
|---|---|
| Beckley | BOP |
| Charleston | USAO |
| Clarksburg | USAO |
| Elkins | USAO |
| Huntington | USAO |
| Martinsburg | USAO |
| Wheeling | USAO |

**WISCONSIN**
| | |
|---|---|
| Madison | USAO USTP |
| Milwaukee | USAO USTP |

**WYOMING**
| | |
|---|---|
| Casper | USAO |
| Cheyenne | USAO |
| Lander | USAO |
| Yellowstone | USAO |
| National Park | USAO |

### U.S. Department of Justice Offices by State

Every DOJ component is headquartered in the Washington, DC metropolitan area. This listing highlights the U.S. Attorneys' Offices and DOJ components with additional field offices located outside the Washington, DC area. DOJ organizations that have offices only in Washington, DC are not specifically listed on this chart.

**KEY:**

**ATF** — Bureau of Alcohol, Tobacco, Firearms & Explosives
**ATR** — Antitrust Division
**BOP** — Federal Bureau of Prisons
**ENRD** — Environment and Natural Resources Division
**EOIR** — Executive Office for Immigration Review
**TAX** — Tax Division
**USAO** — United States Attorneys' Offices
**USTP** — United States Trustee Program

APPENDIX B.— DOJ ORGANIZATIONAL PRACTICE AREA CHART

# THE UNITED STATES DEPARTMENT OF JUSTICE
## PRACTICE AREA CHART

As our nation's largest legal employer, Justice offers opportunities for law students and attorneys in virtually every legal practice area. This chart will help you explore the work of various DOJ organizations, and find those that best match your interests and expertise.  More detailed information about specific DOJ organizations and Justice's legal hiring programs is available at www.justice.gov/legalcareers.

### DOJ ORGANIZATION ABBREVIATIONS

| | | | | |
|---|---|---|---|---|
| ATF | Bureau of Alcohol, Tobacco, Firearms and Explosives | | OIG | Office of the Inspector General |
| ATR | Antitrust Division | | OIP | Office of Information Policy |
| BOP | Federal Bureau of Prisons | | OIPL | Office of Intergovernmental and Public Liaison |
| CIV | Civil Division | | OJP | Office of Justice Programs |
| COPS | Community Oriented Policing Services | | OLA | Office of Legislative Affairs |
| CRM | Criminal Division | | OLC | Office of Legal Counsel |
| CRS | Community Relations Service | | OLP | Office of Legal Policy |
| CRT | Civil Rights Division | | OPA | Office of the Pardon Attorney |
| DEA | Drug Enforcement Administration | | OPR | Office of Professional Responsibility |
| ENRD | Environment and Natural Resources Division | | OSG | Office of the Solicitor General |
| EOIR | Executive Office for Immigration Review | | OTJ | Office of Tribal Justice |
| EOUSA | Executive Office for U.S. Attorneys | | OVW | Office on Violence Against Women |
| FBI | Federal Bureau of Investigation | | PRAO | Professional Responsibility Advisory Office |
| FCSC | Foreign Claims Settlement Commission | | TAX | Tax Division |
| JMD | Justice Management Division | | USAO | U.S. Attorneys' Offices |
| NDIC | National Drug Intelligence Center | | USMS | U.S. Marshals Service |
| NSD | National Security Division | | USPC | U.S. Parole Commission |
| OFDT | Office of the Federal Detention Trustee | | USTP | U.S. Trustee Program |

**If you are interested in . . .   consider applying to . . .**

| If you are interested in . . . | consider applying to . . . |
|---|---|
| ADMINISTRATIVE LAW | ATF, BOP, CIV, COPS, CRS, CRT, DEA, ENRD, EOIR, EOUSA, FBI, FCSC, JMD, NDIC, OIG, OIP, OIPL, OJP, OLC, OLP, OPA, TAX, USAO, USMS, USPC, USTP |
| AGRICULTURE | ATR, CIV, TAX |
| AVIATION / ADMIRALTY | ATR, CIV, ENRD, USAO, USMS |
| ADR / ARBITRATION | BOP, CIV, CRT, DEA, ENRD, EOUSA, OJP, TAX, USAO |
| ANTITRUST & TRADE REGULATION | ATR, USAO |
| APPELLATE PRACTICE | ATR, BOP, CIV, CRM, CRT, ENRD, EOIR, NSD, OIP, OSG, TAX, USAO, USPC, USTP |
| BANKING | ATR, CIV, CRM, CRT, TAX, USAO |
| BANKRUPTCY | BOP, CIV, CRM, ENRD, TAX, USAO, USTP |
| BUSINESS (TORTS, LITIGATION) | BOP, CIV, CRM, TAX, USAO, USTP |
| CHILDREN / YOUTH | CRM, EOIR, EOUSA, OJP, OLP, USAO |

| If you are interested in . . . | consider applying to . . . |
|---|---|
| CIVIL ENFORCEMENT | CIV, ENRD, TAX, USAO, USTP |
| CIVIL LITIGATION | ATF, ATR, BOP, CIV, CRM, CRT, DEA, ENRD, EOIR, EOUSA, FBI, NDIC, OIP, OJP, OLP, TAX, USAO, USMS, USTP |
| CIVIL RIGHTS | ATF, BOP, CIV, COPS, CRT, DEA, FBI, OIG, OJP, OLP, USAO |
| COMPLEX LITIGATION | ATR, CIV, CRM, CRT, DEA, ENRD, TAX, USAO, USTP |
| COMPLIANCE | DEA, FBI, OIG |
| COMPUTER CRIME / CYBER CRIME | CIV, CRM, EOUSA, FBI, NDIC, NSD, OLP, USAO |
| COMPUTERS / TECHNOLOGY | ATR |
| CONSTITUTIONAL LAW | ATF, BOP, CIV, CRM, CRT, DEA, ENRD, OFDT, OLC, OLP, TAX, USAO, USMS |
| CONSTRUCTION | BOP, CIV, USAO |
| CONSUMER PROTECTION | CIV, CRM, USAO, USTP |
| COPYRIGHTS & TRADEMARK/PATENT | ATR, BOP, CIV, COPS, CRM, FBI, USAO |
| CORPORATE FRAUD | CIV, CRM, FBI, FCSC, TAX, USAO |
| COUNTERTERRORISM | BOP, CIV, CRM, FBI, NSD, OIG, OLP, TAX, USAO |
| CRIMINAL LAW | ATF, ATR, BOP, CIV, COPS, CRM, CRT, DEA, ENRD, EOIR, FBI, NDIC, NSD, OFDT, OIG, OJP, OLP, OPA, OPR, TAX, USAO, USMS, USPC, USTP |
| CUSTOMS / TRADE | CIV, CRM |
| DEATH PENALTY | BOP, CRM, OLP, USAO |
| DISABILITY / MENTAL HEALTH | BOP, CIV, CRT, FBI, JMD, USAO |
| DOMESTIC VIOLENCE | COPS, CRM, EOUSA, FBI, OLP, OVW, USAO |
| DRUG ENFORCEMENT | CIV, CRM, DEA, FBI, NDIC, OLP, TAX, USAO |
| EDUCATION | CIV, CRT, USAO |
| EMPLOYMENT LAW | ATF, BOP, CIV, COPS, CRM, CRT, DEA, EOIR, EOUSA, FBI, JMD, NDIC, OIG, OJP, TAX, USAO, USMS, USTP |
| ENERGY | ATR, CIV, ENRD, TAX |
| ENVIRONMENT | BOP, CIV, CRM, CRT, DEA, ENRD, USAO |
| EMPLOYEE BENEFITS | CIV, CRM, DEA, FBI, JMD, TAX |
| FEDERAL EMPLOYEES | BOP, CIV, CRM, CRT, DEA, FBI, JMD, NDIC, OIG, OJP, USAO, USMS |
| FISCAL LAW / APPROPRIATIONS | JMD, OFDT, OJP |
| FORECLOSURE / MORTGAGE | EOUSA, TAX, USAO, USTP |
| FREEDOM OF INFORMATION ACT AND PRIVACY ACT | BOP, CIV, CRM, CRS, DEA, ENRD, EOUSA, FBI, JMD, NDIC, OIG, OIP, OJP, OLC, TAX, USAO, USMS, USPC, USTP |
| GAMING | CRM, ENRD, USAO |

48

**ER176** 49

## APPENDIX B. — DOJ ORGANIZATIONAL PRACTICE AREA CHART

| If you are interested in . . . | consider applying to . . . |
| --- | --- |
| GOVERNMENT CONTRACTS | ATF, BOP, CIV, COPS, CRM, CRT, DEA, EOUSA, FBI, JMD, NDIC, OFDT, OIG, OJP, USAO, USMS |
| GRANT LAW | CIV, COPS, JMD, OJP, OVW |
| HEALTH / MEDICAL | BOP, CIV, DEA, USAO |
| HEALTHCARE | ATR, BOP, CIV, CRM, CRT, DEA, TAX, USAO |
| HOUSING | CIV, CRT, USAO |
| HUMAN RIGHTS | CIV, CRM, CRT, EOIR, OLP, USAO |
| IMMIGRATION | CIV, CRM, CRT, EOIR, FBI, OLP, OVW, USAO |
| INDIAN LAW | CIV, COPS, CRM, CRT, ENRD, EOUSA, OJP, OLP, OTJ, OVW, TAX, USAO |
| INSURANCE | CIV, CRM, TAX |
| INTELLECTUAL PROPERTY | ATR, BOP, CIV, COPS, CRM, FBI, JMD, OIP, OLP, USAO |
| INTERNATIONAL | ATR, CIV, CRM, DEA, ENRD, FBI, FCSC, NSD, TAX, USAO |
| INTERNET / ELECTRONIC COMMERCE | CIV, CRM, DEA, JMD, OLP, USAO |
| JUVENILE | CRM, CRT, EOIR, FBI, OJP, OLP, USAO |
| LABOR | BOP, CIV, CRM, CRT, DEA, EOUSA, FBI, JMD, OIG, OJP, USAO, USMS |
| LEGISLATION | ATF, ATR, BOP, CIV, COPS, CRM, CRS, CRT, DEA, ENRD, EOUSA, FBI, NSD, OIG, OIP, OIPL, OJP, OLA, OLC, OLP, OVW, USMS |
| MALPRACTICE | BOP, CIV, USAO |
| MILITARY | CIV, CRM, NSD, USAO |
| NATIONAL SECURITY & INTELLIGENCE | BOP, CIV, CRM, DEA, ENRD, FBI, NSD, OIG, OLC, OLP, TAX, USAO |
| POLICE MISCONDUCT | CIV, CRS, CRT, DEA, FBI, OIG, USAO |
| PRISONERS' RIGHTS | BOP, CRT, DEA, OIG, USAO, USMS, USPC |
| PRODUCT LIABILITY | CIV, OLP |
| PROFESSIONAL RESPONSIBILITY / ETHICS | BOP, CIV, CRM, EOUSA, FBI, JMD, OIG, OJP, OLC, OPR, PRAO, USTP |
| RACIAL / ETHNIC JUSTICE | CRT, FBI, JMD, OIG, OLP, USAO |
| REAL ESTATE | BOP, CIV, ENRD, TAX, USAO |
| RELIGIOUS FREEDOM | BOP, CIV, CRT, USAO |
| REGULATION | ATF, BOP, CIV, COPS, CRT, DEA, ENRD, OJP, OLP, USAO, USTP |
| SECURITIES | ATR, CIV, CRM, TAX, USAO |
| SOCIAL SECURITY / PUBLIC BENEFITS | CIV, USAO |
| STATE AND LOCAL ISSUES | CIV, COPS, CRM, CRT, OIPL, OLP, TAX, USAO |

| If you are interested in . . . | consider applying to . . . |
| --- | --- |
| TAX | BOP, TAX, USAO |
| TELECOMMUNICATIONS | ATR, DEA, TAX |
| TORT LAW / PERSONAL INJURY | ATF, BOP, CIV, COPS, DEA, FBI, USAO, USMS |
| TRANSPORTATION | ATR, CIV, TAX |
| TRIAL PRACTICE | ATR, CIV, CRM, CRT, DEA, ENRD, TAX, USAO, USTP |
| VETERANS | CIV, CRT, JMD, USAO |
| VIOLENT CRIME / ORGANIZED CRIME / GANGS | CRM, DEA, EOUSA, NDIC, USAO |
| VOTING RIGHTS | CRM, CRT, USAO |
| WHITE COLLAR CRIME | CRM, EOUSA, TAX, USAO |
| WOMEN'S ISSUES | CRT, OJP, OLP, OVW, USAO |
| WORKERS' COMPENSATION | CIV, DEA, FBI, OIG |

## REASONABLE ACCOMMODATION STATEMENT

The U.S. Department of Justice is an Equal Opportunity/Reasonable Accommodation Employer. Except where otherwise provided by law, there will be no discrimination because of color, race, religion, national origin, political affiliation, marital status, disability (physical or mental), age, sex, gender identity, sexual orientation, genetic information, status as a parent, membership or non-membership in an employee organization, on the basis of personal favoritism, or any non merit factor. The Department of Justice welcomes and encourages applications from persons with physical and mental disabilities. The Department is firmly committed to satisfying its affirmative obligations under the Rehabilitation Act of 1973, to ensure that persons with disabilities have every opportunity to be hired and advanced on the basis of merit within the Department of Justice. This agency provides reasonable accommodation to applicants with disabilities where appropriate. If you need a reasonable accommodation for any part of the application and hiring process, please notify the agency. Determinations on requests for reasonable accommodation will be made on a case-by-case basis.

It is the policy of the Department to achieve a drug-free workplace and persons selected for employment will be required to pass a drug test which screens for illegal drug use prior to final appointment. Employment is also contingent upon the completion and satisfactory adjudication of a background investigation. Only U.S. citizens are eligible for employment with the Executive Office for Immigration Review and the United States Attorneys' Offices. Unless otherwise indicated in a particular job advertisement, non-U.S. citizens may apply for employment with other organizations, but should be advised that appointments of non-U.S. citizens are extremely rare; such appointments would be possible only if necessary to accomplish the Department's mission and would be subject to strict security requirements. Applicants who hold dual citizenship in the U.S. and another country will be considered on a case-by-case basis.

There is no formal rating system for applying veterans' preference to attorney appointments in the excepted service; however, the Department of Justice considers veterans' preference eligibility as a positive factor in attorney hiring. Applicants eligible for veterans' preference must include that information in their cover letter or resume and attach supporting documentation (*e.g.*, the DD 214, Certificate of Release or Discharge from Active Duty and other supporting documentation) to their submissions. Although the "point" system is not used, per se, applicants eligible to claim 10-point preference must submit Standard Form (SF) 15, Application for 10-Point Veteran Preference, and submit the supporting documentation required for the specific type of preference claimed (visit the OPM website, *www.opm.gov/forms/pdf_fill/SF15.pdf* for a copy of SF 15, which lists the types of 10-point preferences and the required supporting document(s)). Applicants should note that SF 15 requires supporting documentation associated with service-connected disabilities or receipt of nonservice-connected disability pensions to be dated 1991 or later except in the case of service members submitting official statements or retirement orders from a branch of the Armed Forces showing that his or her retirement was due to a permanent service-connected disability or that he/she was transferred to the permanent disability retired list (the statement or retirement orders must indicate that the disability is 10% or more).

**ER178**

## ABOUT JUSTICE

As the largest law firm in the nation, the Department of Justice serves as counsel for its citizens. It represents them in enforcing the law in the public interest. Through its thousands of lawyers, investigators, and agents, Justice plays a key role in safeguarding our national security, in protecting against criminals and subversion, in ensuring healthy competition of business in our free enterprise system, in safeguarding the consumer, and in enforcing drug, immigration, and naturalization laws. Justice also plays a significant role in protecting citizens through its efforts for effective law enforcement, crime prevention, crime detection, and prosecution and rehabilitation of offenders. Moreover, Justice conducts all suits in the Supreme Court in which the United States is concerned. It represents the Federal Government in legal matters generally, rendering legal advice and opinions, upon request, to the President and to the heads of the executive departments. The Attorney General supervises and directs these activities, as well as those of the U.S. Attorneys and U.S. Marshals in the various judicial districts around the country.

## DEPARTMENT OF JUSTICE DIVERSITY POLICY STATEMENT

The Department of Justice employs more than 115,000 talented and diverse women and men to help meet its mission and goals. We are stronger, more credible, and more effective when our workforce includes highly qualified individuals with backgrounds, cultures and traditions that reflect our Nation's rich diversity.

We value diversity in our workforce and embrace the cultural and demographic dimensions of our country. We work diligently to attract and retain a workforce that represents the range of personal and professional backgrounds, and experiences and perspectives that arise from differences of culture and circumstances. This includes persons of varying age, ethnicity, gender, disability, race, sexual orientation, gender identity, religion, national origin, political affiliation, socioeconomic and family status, and geographic region.

To further promote diversity within the Department, we have developed and implemented a Department-wide Diversity Management Plan. This plan will foster effective diversity management across the Department, sustain progress over time, and ensure accountability for results. Through respect, understanding, and open communication between and among the rich tapestry of our employees, we will enhance critical aspects of our management practices, including policy development, decision making, and problem solving.

The Justice organizational culture reflects our ongoing commitment to build and maintain a workplace environment that supports the efforts of all employees to effectively carry out the Department's mission while ensuring that all employees are encouraged to excel as public servants.

U.S. Department of Justice
Office of Attorney Recruitment and Management
www.justice.gov/oarm/

December 2011

**ER179**

# EXHIBIT 3

**Order Denying Motion to Stay**

Case 0:21-cv-00103-NDF   Document 31-3   Filed 08/02/21   Page 2 of 5
Case 1:21-cv-01085-STA-jay   Document 49   Filed 08/02/21   Page 1 of 4   PageID 1026
Appellate Case: 22-8079   Document: 010110806323   Date Filed: 01/31/2023   Page: 185

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT HOLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-01085-STA-jay |
| | ) | |
| THOMAS J. VILSACK, in his official | ) | |
| capacity as Secretary of the United States | ) | |
| Department of Agriculture, and | ) | |
| | ) | |
| ZACH DUCHENEAUX, in his official | ) | |
| capacity as Administrator of the Farm Service | ) | |
| Agency, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING DEFENDANTS' MOTION TO STAY PROCEEDINGS
## PENDING RESOLUTION OF RELATED CLASS ACTION

Before the Court is Defendants' motion to stay proceeding pending resolution of *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.), a related class action. (ECF No. 45). Plaintiff has filed a response and opposes the motion. (ECF No. 48.) For the reasons set forth below, Defendants' motion is **DENIED**.

"A district court's power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). However, "it is also clear that a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). "[T]he burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other

**ER181**

Case 0:21-cv-00103-NDF   Document 31-3   Filed 08/02/21   Page 3 of 5
Case 1:21-cv-01085-STA-jay   Document 49   Filed 08/02/21   Page 2 of 4   PageID 1027
Appellate Case: 22-8079   Document: 010110806323   Date Filed: 01/31/2023   Page: 186

party nor the public will suffer harm from entry of the order." *Id.* at 396; *see also Landis*, 299 U.S. at 255 ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.") In this case, Defendants have not met their burden.

As noted by Defendants, Plaintiff filed this action to challenge the USDA's implementation of Section 1005 of the American Rescue Plan Act of 2021 ("ARPA"). (ECF No. 1.) This Court granted Plaintiff's request for a preliminary injunction and enjoined disbursement of Section 1005 funds on a nationwide basis pending resolution of the case on the merits. (ECF No. 41.) Defendants contend that Plaintiff is a member of the two classes certified by the *Miller* Court under Rule 23(b)(2), and Defendants will be bound by any relief granted to the classes with respect to Plaintiff should the *Miller* plaintiffs' claim prevail. Defendants argue that, continued adjudication of Plaintiff's claims in this Court, separate from the class to which he belongs, would be unnecessarily duplicative and risk inconsistent results. Defendants further argue that a stay would not prejudice Plaintiff who will benefit from any judgment applicable to the classes and who, in the meantime, is protected by the preliminary injunctions entered by the *Miller C*ourt and this Court. According to Defendants, a stay would also preserve judicial resources and prevent hardship to Defendants who would otherwise be required to continue defending against duplicative claims in separate courts.

Plaintiff has responded by correctly pointing out that his primary authority, *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), is not binding precedent in *Miller*, whereas it is binding in this Court. ("The government asks the Court to take this matter out of the hands of a Plaintiff who has already prevailed on a motion for preliminary injunction, and have his fate determined by other parties with other legal counsel in a court in a different judicial circuit that isn't bound by *Vitolo*

2

**ER182**

Case 0:21-cv-00103-NDF  Document 31-3  Filed 08/02/21  Page 4 of 5
Case 1:21-cv-01085-STA-jay  Document 49  Filed 08/02/21  Page 3 of 4  PageID 1028
Appellate Case: 22-8079  Document: 010110806323  Date Filed: 01/31/2023  Page: 187

*v. Guzman*, 999 F.3d 353 (6th Cir. 2021)." (Resp. p. 8, ECF. No. 48.)) This fact alone militates against granting a motion to stay.

However, beyond that, the Court agrees with Plaintiff's argument that, if this matter is stayed, he "would have no say whatsoever in the pace at which *Miller* would proceed, including whether extensions of deadlines may be requested or granted by either party, or whether the government may seek en banc review by the Fifth Circuit, or whether ultimate review by the U.S. Supreme Court may occur." (*Id.* at p. 9.) Plaintiff could well have to wait years before he is able to resume his case in this Court.

Additionally, the interests of the *Miller* plaintiffs are not completely aligned with Plaintiff's interests, thus negating Defendants' claim of duplicative lawsuits. Plaintiff has alleged in his complaint that loan forgiveness will bar him from obtaining future loans from the USDA. While the government's position is that it can allow future loan eligibility for those who receive loan forgiveness under Section 1005, this Court has not decided the issue, and the issue has not been raised in *Miller*. Therefore, if the government accepts the suggestion of the *Miller* Court that "defendants will have a choice in whether to respond to the proposed injunction by extending loan forgiveness to all farmers and ranchers, or whether to respond by withholding loan forgiveness from everyone," *Miller*, No. 4:21-cv-595, ECF No 18 at PageID 675, and chooses to eliminate the race requirement of Section 1005, Plaintiff's claim concerning eligibility for future loans will be left unadjudicated. Finally, Plaintiff may choose to opt out of the *Miller* classes, thus leaving his interest unrepresented.

In summary, Defendants have not shown that a stay is warranted in this matter, and their motion to stay proceedings is **DENIED**. The parties are **DIRECTED** to confer and then submit a joint proposed scheduling order to the Court's ECF inbox in word processing format within

3

**ER183**

Case 0:21-cv-00103-NDF   Document 31-3   Filed 08/02/21   Page 5 of 5
Case 1:21-cv-01085-STA-jay   Document 49   Filed 08/02/21   Page 4 of 4   PageID 1029
Appellate Case: 22-8079   Document: 010110806323   Date Filed: 01/31/2023   Page: 188

fourteen (14) days of the entry of this order.  The Clerk of the Court will set a scheduling

conference by separate order.

IT IS SO ORDERED.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:  August 2, 2021.

**ER184**

L. ROBERT MURRAY
Acting United States Attorney
NICHOLAS VASSALLO (WY Bar #5-2443)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Nick.vassallo@usdoj.gov

BRIAN M. BOYNTON
Acting Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
EMILY SUE NEWTON (Va. Bar No. 80745)
Senior Trial Counsel
MICHAEL F. KNAPP (Cal Bar No. 314104)
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 305-83569 / Fax: (202) 616-8460
Emily.s.newton@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| **LEISL M. CARPENTER**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-cv-103-F |
| ) | |
| **THOMAS J. VILSACK**, in his official ) | |
| capacity as Secretary of Agriculture, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STAY
PROCEEDINGS PENDING RESOLUTION OF RELATED CLASS ACTION**

**ER185**

Plaintiff Carpenter is indisputably a member of a class certified in ongoing litigation in the Northern District of Texas. And like the central claim here, the class claim being pressed on her behalf in Texas is that Section 1005 of the American Rescue Plan Act violates equal protection. As explained, courts in these circumstances routinely stay, or even dismiss, the individual action in favor of the class action, to facilitate judicial economy by avoiding multiple suits on the same subject matter and to prevent inconsistent results. *See* Defs.' Mem. 8-10. Plaintiff fails to contend with this rationale and consequently does not undermine Defendants' showing that a stay is likewise warranted here.

At the outset, Plaintiff's Opposition relies on the wrong standard. As explained in *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222 (10th Cir. 2003), a district court may either stay *proceedings*, *id.* at 1227 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)), or may proceed to judgment but then stay the *judgment*, *id.* (citing *Battle v. Anderson*, 564 F.2d 388, 397 (10th Circ. 1977)).[1] The former uses the *Landis* factors, the latter, those in *Battle* (the "*Nken* factors," *see* Nken v. Holder, 556 U.S. 418 (2009)). To be sure, the Tenth Circuit's mention of two alternatives has caused confusion, but the "courts that have directly confronted the question have overwhelmingly concluded that the *Landis* test or something similar governs" a motion to stay proceedings. *Kuang v. DoD*, 2019 WL 1597495, at *3 (N.D. Cal. Apr. 15, 2019) (citing cases). Courts in this circuit have thus applied *Landis* when considering a stay of proceedings. *See Navico Inc. v. Garmin Int'l*, 2016 WL 8115365, at *2 (N.D. Okla. Jan. 15, 2016); *Kendall State Bank v. Fleming*, 2012 WL 3143866, at *2 (D. Kan. Aug. 1, 2012); *Sexton v. Col. Springs*, 2020 WL 6393111, at *4 (D. Colo. Nov. 2, 2020) (likelihood of success irrelevant).

Importantly then, contrary to Plaintiff's suggestion that judicial economy is irrelevant, *see* Pl.'s Opp. 7, judicial economy is a key factor when considering a motion to stay proceedings given the equities it is meant to address. *See Kuang*, 2019 WL 1597495, at *3 (quoting *Landis*, 299 U.S. at 254 ("'[T]he power to stay proceedings is incidental to the power inherent in every court to control the

---

[1] All internal alterations, citations, and subsequent history are omitted unless otherwise indicated.

**ER186**

disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'")). Even more so here. Because class actions seek "to facilitate judicial economy by avoidance of multiple suits on the same subject matter" and "to deter inconsistent results," *Yazzie v. Ray Vickers' Special Cars, Inc.*, 180 F.R.D. 411, 414 (D.N.M. 1998), those are the primary considerations used to assess stay motions in cases like this one, *see* Defs.' Mem. 5-7.

Plaintiff largely ignores this rationale and cites cases that did not involve concurrent class actions to suggest that stays, particularly stays based on judicial economy, should be "rare[]." Pl.'s Opp. 7. But the reasoning in the cases Plaintiff cites is that "'[t]he right to proceed in court should not be denied except under the most extreme circumstances.'" *Id.* at 2 (quoting *Kennedy Oil v. Luca Techs., Inc.*, 2013 WL 12284416, at *2 (D. Wyo. Apr. 19, 2013)). That rationale has no application here where Plaintiff *is* proceeding in court, as a member of classes certified in *Miller*, pressing an equal protection challenge to Section 1005.[2] In *those* circumstances—*i.e.*, "where, as here, the claims made in an individual lawsuit overlap with the claims being pursued by a certified class of which the individual is a member"—stays are "routine[]." *Richard K.*, 2019 WL 3083019, at *7; Defs.' Mem. 8-10.[3]

And routine for good reason: "If a class member cannot relitigate issues after final judgment in a class action suit, by analogy a class member should not be able to prosecute a separate equitable

---

[2] Plaintiff notes that she "may yet" seek to opt out of the classes certified in *Miller*, Pl.'s Opp. 8 n.3, and that the Government "may … appeal the grant of class certification," *id.* at 4. Attempts to avoid stays based on such speculation have been rejected for good reason. Defendants' request for a stay, rather than dismissal, "accommodates the possibilit[y]" that the *Miller* court could grant a future motion by Plaintiff to opt out of the classes or that the classes could be decertified. *Richard K. v. United Behavioral Health*, 2019 WL 3083019, at *8 (S.D.N.Y. June 28, 2019); *see also Thiele v. Energen Res. Corp.*, 2015 WL 13899009, at *2 (D. Colo. Dec. 7, 2015). Because Plaintiff "remains a member" of the *Miller* classes, *Richard K.*, 2019 WL 3083019, at *8, she is litigating her claim in two fora—contrary to the purpose of a (b)(2) class, the rule against maintaining two separate like actions, *see infra*, and the weight of authority on this issue. And Plaintiff is unlikely to succeed in any attempt to opt out of the *Miller* classes. *See Wal-Mart Stores v. Dukes*, 564 U.S. 338, 361-62 (2011) (explaining that Rule 23(b)(2) classes are "*mandatory* classes: The Rule *provides no opportunity* for…(b)(2) class members to opt out.").
[3] Indeed, other than the recent decision in *Holman v. Vilsack*, No. 21-01085 (W.D. Tenn. Aug. 2, 2021), ECF No. 49, Plaintiff fails to cite one case in which a court denied a stay in similar circumstances.

2

**ER187**

action once the member's class has been certified." *Bennett v. Blanchard*, 802 F.2d 456 (6th Cir. 1986). Indeed, allowing a member of a certified class to proceed with individual litigation in another court would "contravene the general principle that a party has no right to maintain two separate actions involving the same subject matter at the same time against the same defendant." *Richard K.*, 2019 WL 3083019, at *6. And it would "undermine the efficiency goals of class litigation," including "preventing inconsistent adjudications." *Id.*; *see also Horns v. Whalen*, 922 F.2d 835 (4th Cir. 1991) (explaining same).

Plaintiff attempts to circumvent this case law by arguing that "[t]he instant litigation is not truly duplicative" because she has brought "a wholly distinct claim" from those in *Miller*, namely her "loan forgiveness" claim in Count II. Pl.'s Opp. 5, 8. There are several problems with Plaintiff's argument. First, "in *Landis*, the Supreme Court rejected the argument that a court's authority to stay proceedings before it in favor of proceedings in another court is limited to those instances when the parties and issues in the several cases are identical." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484–85 (10th Cir. 1983). Second, Plaintiff fails to contend with the fact that her claims largely *do* overlap with those in *Miller*, with the consequent potential for inconsistent results. Third, Plaintiff's claim is not "wholly distinct" from those in *Miller*; indeed, if the classes in *Miller* were to succeed in invalidating § 1005, Plaintiff's "loan forgiveness" claim would be moot because it depends on the distribution of payments under § 1005. And fourth, Plaintiff's "loan forgiveness" claim should be dismissed because § 1005 does not provide "debt forgiveness" as the term is statutory defined and Plaintiff lacks standing to bring that claim because any harm to her would be based on multiple contingencies that cannot support an injury-in-fact for Article III purposes.[4]

---

[4] For this and other reasons, Defendants respectfully disagree with the *Holman* decision, which relied in part on the existence of the same "loan forgiveness" claim alleged here. *See* ECF 49 at 3.

If the Court does not stay proceedings, Defendants plan to file a motion to dismiss Count II of Plaintiff's Complaint. If the Court were persuaded by Plaintiff's argument that a stay should not be granted because of her additional claim, Defendants would propose that the Court defer proceedings except for briefing a motion to dismiss and defer ruling on the stay motion until it resolves the motion to dismiss. *See Sexton*, 2020 WL 6393111, at *4 (stay pending a ruling on motion to dismiss).

**ER188**

Plaintiff otherwise tries to distinguish the cases Defendants rely on, but she misstates the facts, and by focusing on their procedural history, again fails to deal with their central reasoning. For instance, she calls *Taunton Gardens* "inapposite" based on her representations that "the district court … was considering a motion for preliminary injunction by the time *a final judgment* in a concurrent case had been issued" and that, unlike the "indefinite stay proposed by the government in this case," "the duration of the stay [was] adequately circumscribed." Pl.'s Opp. 9. But the district court entered a stay in *Taunton Gardens* "pending entry of a final judgment in the [related] class action," 421 F. Supp. at 526, Defendants are likewise seeking a stay pending resolution of the class action, and in any event, the reasons for upholding the stay in *Taunton Gardens* apply equally here: "the public interest, the court's interest in efficient procedures, and the interest of justice would best be served by allowing [the Government] … to resolve its obligations in the national class action" where the "case presents issues of public moment"; "involves the administration of a major federal program"; and the Government "has been called upon to litigate the same issue in more than ten district courts." 557 F.2d at 879.[5]

The Court should also grant a stay because it will not prejudice Plaintiff but would harm Defendants and the public interest. In opposition, Plaintiff relies heavily on her assertion that she will be prejudiced by a stay, *see* Pl.'s Opp. 4-6, but she fails to address the fact that the interests she seeks to vindicate are protected by three nationwide injunctions that prohibit Defendants from making payments under Section 1005. *See* Order, *Faust v. Vilsack*, No. 21-548 (E.D. Wis.), ECF 49 (staying consideration of plaintiffs' motion for a preliminary injunction because plaintiffs "have the protection they seek" by virtue of a nationwide injunction of Section 1005). And, far from prejudicing Plaintiff,

---

[5] Plaintiff also argues that the first-filed rule does not support Defendants' request for a stay because "[t]he amended complaint in *Miller*," which Plaintiff contends corrected a jurisdictional deficiency, "was filed a week after Plaintiff filed her complaint." *Id.* But the filing date[]" is what "constitute[s] the date[] that jurisdiction attached." *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1126 (10th Cir. 2018). Plaintiff cites no authority to suggest that her view that the *Miller* court did not have jurisdiction over the original complaint—a question never adjudicated in *Miller*—has any bearing on the first-filed determination. *See* Pl.'s Opp. 10. And a stay should be granted regardless.

**ER189**

a stay would benefit her because she would not be required to expend further resources in this Court while maintaining the opportunity to obtain the relief she seeks as a class member in *Miller*. Plaintiff nonetheless argues that she would be prejudiced by a stay because "different counsel" will be determining the "legal theories" and "pace" of the *Miller* proceedings. Pl.'s Opp. 1, 4. But that will always be the case when a class is certified. Hence, as part of the certification in *Miller*, a district judge already determined that class counsel (who have already obtained a preliminary injunction for their clients while Plaintiff's complaint has been pending) "will adequately represent the interests of class members similarly situated in zealously pursuing the requested relief." Order 12, ECF 60. Any prejudice that Plaintiff could possibly suffer because her counsel is not in control of the *Miller* proceedings is not sufficient to deny a stay here, as evidenced by the numerous decisions granting similar stays in the context of a concurrent class action. *See* Defs.' Mem. 8-10.

Given the scant evidence of prejudice to Plaintiff, it is questionable whether "there is even a fair possibility that the [requested] stay … will work damage to [her]." *Kendall*, 2012 WL 3143866, at *2. But even if there were, Defendants have "ma[d]e out a clear case of hardship or inequity in being required to go forward." *Id.* The burdens of duplicative and varied discovery and proceedings have been found sufficient to warrant a stay when plaintiffs in just one concurrent case were members of a certified class. *See Richard K.*, 2019 WL 3083019, at *9. Even more so where Defendants are subject to twelve lawsuits challenging Section 1005. Plaintiff's only retort is that the Department of Justice is "the largest law firm in the world." Pl.'s Opp. 1. It is also the busiest.[6] And in any event, "[b]y conserving judicial resources, a stay will serve not only the interest of … the Parties," but also, of "the courts" "and the public in an orderly and efficient use of judicial resources." *Richard K.*, 2019 WL 3083019, at *9; *see also Sexton*, 2020 WL 6393111, at *3 (explaining same).

---

[6] *See, e.g.,* https://www.justice.gov/usao/page/file/1285951/download (statistics for 2019, indicating over 140,000 cases filed in 2019, *excluding* Main Justice).

**ER190**

Dated: August 9, 2021    Respectfully submitted,

           BRIAN M. BOYNTON
           Acting Assistant Attorney General

           LESLEY FARBY
           Assistant Branch Director
           Civil Division, Federal Programs Branch

           */s/ Emily Newton*
           EMILY SUE NEWTON (VA Bar No. 80745)
           Senior Trial Counsel
           MICHAEL F. KNAPP (Cal Bar No. 314104)
           KYLA M. SNOW (Ohio Bar No. 96662)
           Trial Attorneys
           United States Department of Justice
           Civil Division, Federal Programs Branch
           1100 L Street, NW
           Washington, D.C. 20005
           Tel: (202) 514-3259 / Fax: (202) 616-8460
           emily.s.newton@usdoj.gov

           *Counsel for Defendants*

**ER191**



**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

**FILED**

10:51 am, 8/16/21

**Margaret Botkins**
**Clerk of Court**

LEISL M. CARPENTER,

      Plaintiff,

vs.

THOMAS J. VILSACK, in his official
capacity as Secretary of Agriculture, et al.,

      Defendants.

Case No.  21-CV-0103-F

---

**ORDER GRANTING DEFENDANTS' MOTION TO STAY**

---

This matter comes before the Court on Defendants' motion to stay proceedings pending resolution of related class action. CM/ECF Document (Doc.) 27.  Defendants identify a related class action, *Miller v. Vilsack*, 4:21-cv-595 pending in the Northern District of Texas, wherein the judge ordered class certification under Federal Rule of Civil Procedure 23 and enjoined Defendants from administering a recently enacted loan-forgiveness program under Section 1005 of the American Rescue Plan Act of 2021 (ARPA) for socially disadvantaged farmers. Doc. 28-1.  Defendants argue Plaintiff is a member of the classes certified by *Miller* and Defendants will be bound by any relief granted to the classes with respect to Plaintiff should the equal protection claim prevail.  Because of this, Defendants request a stay of this case as continued adjudication of the case would be unnecessarily duplicative (thus waste resources) and risk inconsistent results.  Defendants

**ER192**

also argue a stay would not prejudice Plaintiff who is a class member and currently protected by the preliminary injunction entered in *Miller* as well as the nationwide injunctions entered by other courts.

Plaintiff opposes a stay arguing Defendants have failed to satisfy the standard for granting a stay and Plaintiff would be prejudiced because Plaintiff has no control over *Miller*'s pace or the legal theories advanced. For the reasons that follow, the Court is persuaded that Defendants satisfy the grounds for a stay of this case and any potential for prejudice can be mitigated by the Court.

<u>Background</u>

Plaintiff is a Wyoming rancher and young mother of Danish, Norwegian and Swedish ancestry. Doc. 1, p. 2. In 2012, she took out a real estate loan from the U.S. Department of Agriculture's Farm Service Agency which is covered under the terms of ARPA. *Id*. at p. 4. She alleges she would be eligible for the loan forgiveness program in Section 1005 of ARPA, and future FSA loans, except for the fact that she is not a member of any of the racial groups that are eligible for loan forgiveness. *Id*. She alleges Section 1005 of ARPA imposes racial classifications in violation of the Equal Protection clause of the Fifth Amendment of the U.S. Constitution. *Id*. at pp. 11-12. She also alleges Defendants are exceeding their authority in administering Section 1005, by illegally permitting persons who receive loan forgiveness under ARPA to be eligible for future FSA loans. *Id*. at pp. 12-13. Plaintiff seeks declaratory and injunctive relief.

**ER193**

<u>Applicable Legal Standard</u>

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "Allowing the same issue to be decided more than once wastes litigants' resources and adjudicators' time." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 140 (2015); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("[a]s between federal district courts, . . . the general principle is to avoid duplicative litigation"). Thus, it is a "well established policy that a court may, in its discretion, defer or abate proceedings where another suit, involving the identical issues, is pending . . . and it would be duplicative, uneconomical, and vexatious to proceed." *Blinder, Robinson & Co. v. SEC*, 692 F.2d 102, 106 (10th Cir. 1982).

However, courts are cautioned that the power to stay must not to be exercised lightly, considering a party's "right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Com'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). In exercising such discretion, courts weigh various factors, including (1) the interests of judicial economy, (2) hardship or inequity if the movant is required to go forward, (3) harm to the non-movant in the issuance of a stay, (4) and the public interests at stake. *See United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003) (quoting *Landis, et al. v. North American Co.*, 299 U.S. 248, 254, 57 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with

3

**ER194**

economy of time and effort for itself, for counsel, and for litigants").[1]  In short, the decision on whether to grant a stay is largely committed to the "carefully considered judgment" of the district court.  *Colo. River Water Conservation Dist.*, 424 U.S. at 818.

<u>Discussion</u>

*Interests of Judicial Economy*

Defendants argue a stay promotes judicial economy by avoiding simultaneous, duplicative litigation of Plaintiff's claim in multiple courts and the risk of conflicting results.  Defendants also argue courts regularly stay cases pending resolution of related class actions. *See, e.g., Yazzie v. Ray Vickers' Special Cars, Inc.*, 180 F.R.D. 411, 414 (D.N.M. 1998) (class actions seek "to facilitate judicial economy by avoidance of multiple suits on the same subject matter" and "to deter inconsistent results"); *Taunton Gardens Co. v. Hills*, 557 F.2d 877, 879 (1st Cir. 1977) (upheld stay as "within the district court's discretion to find that the public interest, the court's interest in efficient procedures, and the 'interest of justice'" should allow the government "a reasonable opportunity to resolve its obligations in the national class action").

Defendants also argue *Miller* was the first-filed case and under the first-filed rule, "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches

---

[1] Plaintiff relies on *United Steelworkers* in arguing for a different set of factors applicable to motions for stay, which includes the requirement to demonstrate movant's likelihood of prevailing in the related proceeding.  For the reasons argued by Defendants, the Court agrees that the factors argued by Plaintiff (taken from *Battle v. Anderson*, 564 F.2d 388, 397 (10th Cir. 1977)), relate to a motion to stay enforcement of a judgment, not a motion to stay consideration of a claim.  For this reason, the Court will not consider Plaintiff's argument that Defendants have failed to establish that they have a likelihood of succeeding on the merits in *Miller*.

**ER195**

has priority to consider the case." *Hospah Coal Co. v. Chaco Energy Co*., 673 F.2d 1161,

1163 (10th Cir. 1982) (citation omitted).  Under the "first-filed-rule," Defendants argue the

parties and issues are identical given that Plaintiff is a class member in the *Miller* case

which certified classes for purposes of resolution of the principle issue brought in this case.

*See Wakaya Perfection, LLC v. Youngevity Int'l, Inc*., 910 F.3d 1118, 1124 (10th Cir. 2018)

(factors for consideration are "(1) the chronology of events, (2) the similarity of the parties

involved, and (3) the similarity of the issues or claims at stake." (citation omitted)).

Plaintiff argues judicial economy is not a relevant factor and, if it were relevant,

Defendants fail to satisfy their burden.  Plaintiff argues *Miller* does not involve the same

parties, will not adequately consider all Plaintiff's interests and is not truly duplicative.  As

to the argument on the "first-filed-rule," Plaintiff argues the amended complaint in *Miller*

which added plaintiffs who held farm loans was filed a week after Plaintiff filed her

complaint, thus her complaint in this case is the first filed.

As to this factor, the Court concludes the interests of judicial economy strongly

favor a stay.  Defendants are correct that *Miller* involves the same parties given that

Plaintiff is a member of the classes certified by the *Miller* court under Fed. R. Civ. P.

23(b)(2) upon a finding that the four threshold requirements for class certification are met

and "a single injunction or declaratory judgment would provide relief to each member of

the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); Doc. 28-1.  Plaintiff

does not dispute that she is a class member and would receive relief in *Miller* but argues

she may opt-out of the classes.  This scenario is speculative especially considering that

Rule 23(b)(2) classes are "mandatory classes" with no opt-out opportunity. *Walmart*, 564

**ER196**

U.S. at 362.  Should Plaintiff seek and be permitted to opt-out, though, Plaintiff may advise the Court and seek to lift the stay.

Plaintiff also argues her interests in the pace of the litigation and the right to advance her own legal theories through her own counsel are not adequately protected by a stay. These interests are present in every situation wherein courts stay individual actions which overlap with claims pursued by a certified class of which the individual is a member.  *See, e.g., Richard K. v. United BeHavioral Health*, 2019 WL 3083019, at *7 (S.D.N.Y.). Further, Plaintiff's argument that her interests are only adequately served by her own attorneys flies against the *Miller* court's finding that counsel in the *Miller* case "will adequately represent the interests of class members similarly situated in zealously pursuing the requested relief." Doc. 28-1, p. 12.

Further, Plaintiff argues the issues are not identical as she has a second claim, not pled in *Miller*, that Defendants are illegally permitting persons who receive loan forgiveness under ARPA to be eligible for future FSA loans.  While this is correct, Defendants are also correct that Plaintiff's interests in her second claim are adequately protected by the *Miller* court's preliminary injunction because no person will receive loan forgiveness under ARPA for purposes of gaining eligibility for future FSA loans.

Finally, the chronology of events supports a stay.  Jurisdiction vested with the *Miller* court prior to the commencement of this action,[2] and the *Miller* court has already taken

---

[2] While Plaintiff argues the Court should consider only the date of the amended complaint in *Miller* for determining which case was filed first, this argument is unpersuasive.  There is no dispute that jurisdiction vested first with the *Miller* court.

ER197

significant action through its preliminary injunction and certification of classes.   In comparison, this action has not proceeded beyond the filing of Plaintiff's complaint and Defendant's motion for stay.

For all the foregoing reasons, the Court finds the interests of judicial economy weigh strongly in favor of a stay.

*Hardship or Inequity if the Movant is Required to go Forward*

Defendants argue, in the absence of a stay, they would be required to defend against identical, significant claims in multiple courts at the same time, including in eleven other cases around the country.  Plaintiff argues the motion should be denied for failure to show "irreparable harm."

In considering the relevant factor, the Court is satisfied that Defendants need not show irreparable harm, but rather Defendants are called upon "to make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which [Defendant] prays will work damage to some one else." *Landis*, 299 US at 256.  Plaintiff argues the concerns of defending against duplicative claims in separate courts does not satisfy the relevant factor.

As to this factor, the Court finds Defendants have made a case of hardship and inequity if required to defend against twelve cases simultaneously on varying schedules and in different jurisdictions.  There is no dispute that this is a burden on the government and, consequently on the taxpaying public.  Whether this is "a clear case" is subject to reasonable debate.  However, this factor must be considered in light of the importance of the issues at stake, and also judged (or balanced) against the possibility of damage or harm

7

**ER198**

to Plaintiff.  There is no dispute that the issues at stake in the litigation pending in the various districts are quite significant.  Plaintiffs in all cases are seeking a constitutional ruling which, if successful, would invalidate federal legislation.  The significance of the issues is supportive of Defendants' argument that they have made a clear case of hardship or inequity.  Further, given the Court's finding that a stay is not likely to harm Plaintiff, the Court finds, on balance, this factor weighs somewhat in favor of a stay.

*Harm to the Non-Movant in the Issuance of a Stay*

Defendants argue Plaintiff is a member of classes certified by the *Miller* court specific to Plaintiff's claim against the continued enforcement of the racial exclusions in Section 1005 of ARPA and, in the meantime, Plaintiff will benefit by the preliminary injunction entered by courts preserving the status quo which prohibits enforcement of the racial exclusions.  Defendants also point out that both cases are at early stages, thus a stay in this case would not disrupt or delay litigation, but rather would promote efficient resolution.

Plaintiff argues a stay would cause substantial harm because Plaintiff has no say as to the pace at which *Miller* would proceed in the district court or perhaps on appeal. Plaintiff also argues she will be required to watch counsel other than her own making strategic decisions and legal arguments that she has no say in.  Finally, Plaintiff identifies her second claim of illegal action as a claim not subject to adjudication in *Miller*, and that this claim warrants timely adjudication.

Plaintiff's arguments that she will be harmed by a stay have been adequately discussed in the context of the factor relating to judicial economy.  Further, the likelihood

**ER199**

of harm can be mitigated by the Court.  Should progress in the *Miller* case flounder, or in the unlikely event that the injunction is lifted, or the class is decertified, or the *Miller* court allows Plaintiff to opt out of the Rule 23(b)(2) classes, Plaintiff can certainly seek an order lifting the stay. In short, the Court finds that its authority to control the duration of the stay adequately mitigates any fair possibility that the stay will work damage against Plaintiff. Consequently, this factor weighs in favor of a stay.

*The Public Interests at Stake*

Defendants argue the public interests are served by a stay given the importance of the issues at stake and the public's interest in just and efficient resolution of cases – especially those like this one – of "extraordinary public moment." *Clinton*, 520 U.S. at 707 (citation omitted).

Plaintiff argues the public in general has a strong interest regarding the prompt and efficient handling of all litigation, specifically including this litigation, and that Defendants fail to satisfy their burden on this factor.

The public interests at stake include not just the prompt and efficient handling of this case.  Rather, those interests include the importance of the issues at stake as previously discussed, and the prompt and efficient resolution of those issues from the overall perspective of the litigation pending in all twelve district courts.  The taxpayer interests are not served by requiring the government to defend multiple suits on the same subject matter in all twelve courts.  The interests of farmers and ranchers who are disqualified from seeking loan-forgiveness under Section 1005 of ARPA (including Plaintiff) are not served by the potential for inconsistent results announced at varying times, should all cases

**ER200**

proceed separately.  And those interests which prompted Congress to enact Section 1005 of ARPA are similarly not served by a potential for inconsistent results.  Considering the public interests at stake in a case such as this, which exceed in scope Plaintiff's interest in "the usual rule that litigation is conducted by and on behalf of the individual named part[y] only," *Wal-Mart Stores, Inc*., 564 U.S. 348, the Court finds this factor weighs strongly in favor of a stay.

Conclusion

For all the foregoing reasons, the Court finds and concludes Defendants have met their burden to warrant a stay of this case.  Therefore, the Court GRANTS Defendant's Motion to Stay Proceedings Pending Resolution of Related Cass Action (Doc. 27).  On good cause, Plaintiff may, at any time, seek to lift the stay.  Further, Defendants shall file and serve a status report every six (6) months reporting on the *Miller* case progress, and shall also PROMPTLY report any action:

1. By the *Miller* court to decertify any class or otherwise proceed such that plaintiffs in the *Miller* case no longer represent themselves and "all farmers and ranchers in the United States who are currently excluded from the definition of 'socially disadvantaged farmer or rancher,' as defined in 7 U.S.C. § 2279(a)(5) – (6) and as interpreted by the Department of Agriculture." Doc. 28-1, p. 23, fn. 3.

2. By any court which affects the nationwide preliminary injunction which enjoins Defendants or any person acting in concert or participation with them, from discriminating on account of race or ethnicity in administering Section 1005 of ARPA for any applicant who is a member of the certified classes.

**ER201**

IT IS SO ORDERED.

Dated this ‾16th‾ day of August, 2021.



NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE

L. ROBERT MURRAY
United States Attorney
NICHOLAS VASSALLO (WY Bar #5-2443)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Nick.vassallo@usdoj.gov

BRYAN M. BOYNTON
Principal Deputy Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **LEISL M. CARPENTER**,            ) | |
| )  | |
| Plaintiff,            ) | |
| )  | |
| v.            ) | Case No. 21-cv-103-F |
| )  | |
| **THOMAS J. VILSACK**, in his official            ) | |
| capacity as Secretary of Agriculture, et al.,            ) | |
| )  | |
| Defendants.            ) | |
| )  | |

## DEFENDANTS' STATUS REPORT

**ER203**

In accordance with the Court's August 16, 2021, Order, ECF No. 33, Defendants respectfully submit this status report.

1. In this action, Plaintiff Leisl Carpenter challenges Section 1005 of the American Rescue Plan Act of 2021. Because Plaintiff is a member of the classes certified by the District Court for the Northern District of Texas in *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.), that similarly challenge the same statutory provision, Defendants moved for, and the Court granted, a stay of this action pending the outcome of the *Miller* litigation. *See* ECF No. 33 (Aug. 16, 2021).

2. The *Miller* class litigation remains ongoing. On September 22, 2021, the *Miller* court issued a scheduling order pursuant to which the parties will file cross-motions for summary judgment by March 11, 2022, and complete briefing on those motions by April 1, 2022.

3. On October 13, 2021, the *Miller* court denied a motion by plaintiffs in several other cases[1] to opt out of the certified classes, concluding that the classes, certified under Rule 23(b)(2), are mandatory classes that afford members no opportunity to opt out. ECF No. 100, *Miller*.

4. Because the *Miller* case is still pending, and Plaintiff remains a member of the classes certified in that case, the presumption against duplicative litigation and the interests of judicial efficiency weigh in favor of continuing the stay.

Dated: February 16, 2022                    Respectfully submitted,

                                            L. ROBERT MURRAY
                                            United States Attorney

                                            */s/ Nicholas Vassallo*
                                            NICHOLAS VASSALLO (WY Bar #5-2443)
                                            Assistant United States Attorney
                                            P.O. Box 668
                                            Cheyenne, WY 82003-0668
                                            Telephone: 307-772-2124
                                            Nick.vassallo@usdoj.gov

---

[1] Ms. Carpenter did not join the motion to opt out.

**ER204**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Kyla M. Snow*
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Counsel for Defendants*

**ER205**

L. ROBERT MURRAY
United States Attorney
NICHOLAS VASSALLO (WY Bar #5-2443)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Nick.vassallo@usdoj.gov

BRYAN M. BOYNTON
Principal Deputy Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| **LEISL M. CARPENTER**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-cv-103-F |
| | ) |
| **THOMAS J. VILSACK**, in his official | ) |
| capacity as Secretary of Agriculture, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' STATUS REPORT**

**ER206**

In accordance with the Court's August 16, 2021, Order, ECF No. 33, Defendants respectfully submit this status report.

1. In this action, Plaintiff Leisl Carpenter challenges Section 1005 of the American Rescue Plan Act of 2021 (ARPA). Because Plaintiff is a member of the classes certified by the District Court for the Northern District of Texas in *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.), which similarly challenge the same statutory provision, Defendants moved for, and the Court granted, a stay of this action pending the outcome of the *Miller* litigation. *See* ECF No. 33 (Aug. 16, 2021).

2. The *Miller* class litigation remains ongoing, with summary judgment briefing to be completed by August 22, 2022.

3. Because the *Miller* case is still pending, and Plaintiff remains a member of the classes certified in that case, the presumption against duplicative litigation and the interests of judicial efficiency weigh in favor of continuing the stay.

4. On Tuesday, August 16, 2022, the President signed into law the Inflation Reduction Act of 2022. https://www.congress.gov/117/bills/hr5376/BILLS-117hr5376enr.pdf. Section 22008 of the Act expressly repeals Section 1005 of ARPA and thus moots this case. If Plaintiff does not dismiss her case as moot by August 30, 2022, then Defendants propose to file another status report proposing next steps in the case by September 6, 2022.

Dated: August 16, 2022                    Respectfully submitted,

                                          L. ROBERT MURRAY
                                          United States Attorney

                                          NICHOLAS VASSALLO (WY Bar #5-2443)
                                          Assistant United States Attorney
                                          P.O. Box 668
                                          Cheyenne, WY 82003-0668
                                          Telephone: 307-772-2124
                                          Nick.vassallo@usdoj.gov

**ER207**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Kyla M. Snow*
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Counsel for Defendants*

**ER208**

NICHOLAS VASSALLO
Acting United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Nick.vassallo@usdoj.gov

BRYAN M. BOYNTON
Principal Deputy Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **LEISL M. CARPENTER**, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-cv-103-F |
| | ) |
| **THOMAS J. VILSACK**, in his official | ) |
| capacity as Secretary of Agriculture, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' STATUS REPORT

**ER209**

In accordance with the Court's August 16, 2021, Order, ECF No. 33, Defendants respectfully submit this status report.

1. In this action, Plaintiff Leisl Carpenter challenges Section 1005 of the American Rescue Plan Act of 2021 (ARPA). Because Plaintiff is a member of the classes certified by the District Court for the Northern District of Texas in *Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.), which similarly challenge the same statutory provision, Defendants moved for, and the Court granted, a stay of this action pending the outcome of the *Miller* litigation. *See* ECF No. 33 (Aug. 16, 2021).

2. On August 16, 2022, the President signed into law the Inflation Reduction Act of 2022. https://www.congress.gov/117/bills/hr5376/BILLS-117hr5376enr.pdf. Section 22008 of the Act expressly repeals Section 1005 of ARPA and thus moots this case.

3. That same day, Defendants filed a status report informing the Court of Section 1005's repeal.

4. On August 29, 2022, in light of the repeal of Section 1005, the parties in the *Miller* action stipulated to dismissal of the action because "the constitutional challenge to Section 1005 is moot." *See* Joint Stipulation of Dismissal, ECF No. 236, *Miller*, 4:21-cv-595 (attached as Ex. A). The *Miller* court subsequently terminated the case. *See* August 30, 2022 docket entry, *id.*

5. On August 22, 2022, Defense counsel reached out to Plaintiff's counsel to seek Plaintiff's position on dismissing the case in light of Section 1005's repeal. Plaintiff's counsel has not yet stated Plaintiff's position.

6. If Plaintiff does not voluntarily dismiss or stipulate to dismissal of the case by September 13, 2022, Defendants intend to move to dismiss this case as moot on that date.

**ER210**

Dated: September 6, 2022

Respectfully submitted,

NICHOLAS VASSALLO
Acting United States Attorney

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Kyla M. Snow*
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Counsel for Defendants*

**ER211**

# Exhibit A

*Joint Stipulation of Dismissal*

*ECF No. 236, Miller v. Vilsack, No. 4:21-cv-595 (N.D. Tex.)*

*August 29, 2022*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| **Sid Miller**, et al., | |
| Plaintiffs, | |
| v. | |
| **Tom Vilsack**, in his official capacity as Secretary of Agriculture, | Case No. 4:21-cv-00595-O |
| Defendant, | |
| and | |
| **Federation of Southern Cooperatives/Land Assistance Fund**, et al. | |
| Intervenors. | |

## JOINT STIPULATION OF DISMISSAL

The parties stipulate to dismiss this action without prejudice. *See* Fed. R. Civ. P. 41. The parties agree the constitutional challenge to Section 1005 is moot. Notice to the class is not necessary because the dismissal is without prejudice and does not bind the members of the class. *See* Fed. R. Civ. P. 23(e).

Respectfully submitted.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

 /s/ Michael F. Knapp
MICHAEL F. KNAPP

**ER213**

*Counsel for Plaintiffs and*
*the Certified Classes*

 /s/ Chase J. Cooper
CHASE J. COOPER
Texas Bar No. 24087342
Winston & Strawn LLP
2121 N. Pearl Street, Suite 900
Dallas, Texas 75201
(214) 453-6500 (phone)
ccooper@winston.com


*Counsel for Intervenor*

 /s/ David Muraskin
DAVID MURASKIN
1620 L Street NW, Suite 630
Washington, D.C. 20036
(202) 797-8600 (phone)
dmuraskin@publicjustice.net


*Counsel for Intervenor*

Dated: August 29, 2022

KYLA M. SNOW
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 305-8356 (phone)
(202) 616-8460 (fax)
michael.f.knapp@usdoj.gov
kyla.snow@usdoj.gov


*Counsel for Defendant*

**ER214**

## CERTIFICATE OF SERVICE

I certify that on August 29, 2022, I served this document through CM/ECF

upon:

MICHAEL F. KNAPP
KYLA M. SNOW
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 305-8356 (phone)
(202) 616-8460 (fax)
michael.f.knapp@usdoj.gov
kyla.snow@usdoj.gov

*Counsel for Defendants*

CHASE J. COOPER
Winston & Strawn LLP
2121 N. Pearl Street, Suite 900
Dallas, Texas 75201
(214) 453-6500 (phone)
ccooper@winston.com

*Counsel for Intervenor*

DAVID MURASKIN
1620 L Street NW, Suite 630
Washington, D.C. 20036
(202) 797-8600 (phone)
dmuraskin@publicjustice.net

*Counsel for Intervenor*

                                    /s/ Jonathan F. Mitchell
                                    JONATHAN F. MITCHELL
                                    *Counsel for Plaintiffs and*
                                    *the Certified Classes*

**ER215**

NICHOLAS VASSALLO
Acting United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Nick.vassallo@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **LEISL M. CARPENTER**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-cv-103-F |
| | ) |
| **THOMAS J. VILSACK**, in his official | ) |
| capacity as Secretary of Agriculture, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MOTION TO LIFT STAY AND
## TO DISMISS AS MOOT

For the reasons stated in the attached memorandum, Defendants Thomas J. Vilsack, in his

official capacity as Secretary of Agriculture, and Zach Ducheneaux, in his official capacity as

Administrator of the Farm Service Agency (collectively, USDA or Defendants), hereby move to lift

**ER216**

the stay of proceedings in this case and to dismiss the complaint as moot. Counsel for Defendants has

conferred with counsel for Plaintiff, who indicate that Plaintiff opposes this motion.

Dated: September 13, 2022          Respectfully submitted,

                                   NICHOLAS VASSALLO
                                   Acting United States Attorney

                                   BRIAN M. BOYNTON
                                   Principal Deputy Assistant Attorney General

                                   LESLEY FARBY
                                   Assistant Branch Director
                                   Civil Division, Federal Programs Branch

                                   /s/ Kyla M. Snow
                                   KYLA M. SNOW (Ohio Bar No. 96662)
                                   Trial Attorney
                                   United States Department of Justice
                                   Civil Division, Federal Programs Branch
                                   1100 L Street, NW
                                   Washington, D.C. 20005
                                   Tel: (202) 514-3259 / Fax: (202) 616-8460
                                   kyla.snow@usdoj.gov

                                   *Attorneys for Defendants*

**ER217**

NICHOLAS VASSALLO
Acting United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Nick.vassallo@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **LEISL M. CARPENTER**, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )  Case No. 21-cv-103-F<br>) |
| **THOMAS J. VILSACK**, in his official<br>capacity as Secretary of Agriculture, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO LIFT STAY AND
## TO DISMISS AS MOOT

In early 2021, Congress enacted Section 1005 of the American Rescue Plan Act to redress the

lingering effects of past racial discrimination in the Department of Agriculture's farm loan programs.

Plaintiff Leisl Carpenter challenged the Department's implementation of the law, as did several other

**ER218**

plaintiffs in jurisdictions around the country. Several other courts preliminarily enjoined Defendants from disbursing § 1005 funds. Because Congress has now repealed § 1005, Plaintiff's challenge to its implementation is moot. The Court should lift the stay of proceedings and dismiss the complaint.

## BACKGROUND

### I.    Section 1005 of the American Rescue Plan Act

The American Rescue Plan Act (ARPA) provided widespread pandemic relief to the American people. *See* Pub. L. No. 117-2, 135 Stat. 4 (2021). Section 1005 of ARPA appropriated funds to pay up to 120 percent of certain direct or guaranteed USDA farm loans held by a "socially disadvantaged farmer or rancher" (SDFR) and outstanding as of January 1, 2021. *See* ARPA § 1005.

### II.    Plaintiff's Lawsuit and Related Section 1005 Challenges

Plaintiff holds USDA farm loans that she alleges would have been eligible for debt relief under § 1005 but for the fact that she does not fall within one of the racial or ethnic groups considered "socially disadvantaged." *See* Compl. ¶ 13, ECF No. 1. She brings a claim under the Constitution, alleging that § 1005 violates the equal protection component of the Fifth Amendment's Due Process Clause, *id.* ¶¶ 52-62.[1] As relief, she seeks a declaratory judgment, an injunction, costs and fees, and nominal damages. *Id.* Prayer for Relief.

This case is one of twelve similar equal protection challenges to § 1005 filed in jurisdictions around the country. *See Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex.); *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla.); *Kent v. Vilsack*, 21-cv-540 (S.D. Ill.); *Faust v. Vilsack*, 1:21-cv-548 (E.D. Wis.); *Holman v. Vilsack*,

---

[1] Plaintiff also brings a claim for "illegally allowing future eligibility," Compl. p.12, Second Claim for Relief (capitalizations omitted), alleging that if USDA were to allow a recipient of a § 1005 payment to later receive forgiveness of a subsequent USDA loan, the Department "w[ould] be acting unlawfully," and without statutory authority, *id.* ¶¶ 63-69. This claim is wholly derivative of her challenge to § 1005, as the future, hypothetical unlawful action challenged depends on disbursement of § 1005 payments to individuals who later obtain another USDA loan (and then have that loan forgiven). As the § 1005 claim is moot, so, too, is this claim. And this second claim would fail for independent jurisdictional reasons, including for lack of standing and ripeness. *See* Order, ECF No. 72, *Holman*, 1:21-cv-1085 (dismissing materially identical claims for lack of subject matter jurisdiction).

**ER219**

1:21-cv-1085 (W.D. Tenn.); *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex.); *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn.); *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or.); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo.); *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D.); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn.). In three of the cases, courts entered preliminary injunctions prohibiting USDA from disbursing any § 1005 funds. PI Order, *Wynn*, ECF No. 41; Order on PI & Class Cert., *Miller*, ECF No. 60; PI Order, *Holman*, ECF No. 41.[2]

The *Miller* Court certified two classes under Federal Rule of Civil Procedure 23(b)(2). *See Miller* Order on PI & Class Cert., *filed at* ECF No. 28-1. The classes both challenged § 1005 on equal protection grounds and sought an injunction preventing the government from implementing racial exclusions or preferences when administering § 1005. *See generally id.* Because the *Miller* classes included Ms. Carpenter and advanced the same central claim, the government moved to stay these proceedings until the *Miller* proceedings were resolved. Defs.' Mot. to Stay, ECF No. 27. The Court granted the motion and stayed proceedings pending resolution of the class action in *Miller*. *See* Order, ECF No. 33.

### III.    The Inflation Reduction Act

While the *Miller* litigation continued, Congress passed, and last month the President signed, the Inflation Reduction Act of 2022 (IRA). *See* https://www.congress.gov/117/bills/hr5376/BILLS-117hr5376enr.pdf. In Section 22008 of the IRA, Congress expressly repealed Section 1005 of ARPA. *See* IRA § 22008 ("Section 1005 of the American Rescue Plan Act of 2021 (7 U.S.C. 1921 note; Public Law 117-2) is repealed."). Because of the repeal of Section 1005, the parties in *Miller* "agree[d] the constitutional challenge to Section 1005 is moot" and jointly stipulated to dismissal of the action. *See Miller* Joint Stipulation of Dismissal, *filed at* ECF No. 89-1. The *Miller* Court subsequently terminated the case. *See* August 30, 2022 docket entry. Plaintiffs in several other cases have subsequently

---

[2] The *Faust* court had entered a temporary restraining order (TRO) that prohibited disbursement of § 1005 funds but dissolved that TRO after the *Wynn* Court issued a preliminary injunction. Order, *Faust*, ECF No. 49.

**ER220**

voluntarily dismissed or agreed to stipulations of dismissal. *See* ECF No. 90, *Wynn*, 3:21-cv-514 (stipulation of dismissal); ECF No. 74, *Kent*, 21-cv-540 (stipulation of dismissal); ECF No. 72, *Faust*, 1:21-cv-548 (stipulation of dismissal); ECF No. 31, *Nuest*, 0:21-cv-1572 (stipulation of dismissal); ECF No. 48, *Dunlap*, 2:21-cv-942 (voluntary dismissal); ECF No. 25, *Tiegs*, 3:21-cv-147 (voluntary dismissal).

## ARGUMENT

The Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." U.S. Const. Art. III, § 2. For a Court to adjudicate a case, an "'actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (quoting *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975)). "[I]f in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021); *see also Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (same). And when a case becomes moot because a court cannot grant effectual relief, there is "no longer a 'Case' or 'Controversy' for purposes of Article III" and the case must be dismissed. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

In this suit, Plaintiff alleges that ARPA § 1005 is unconstitutional and seeks relief from the statute's terms. *See* Compl. ¶¶ A, F, Prayer for Relief. But Congress has now repealed § 1005, *see* IRA § 22008, and there is accordingly no further relief that this Court can enter. In these circumstances, Plaintiff's claims are moot and the Court now lacks jurisdiction to adjudicate them.

## I.   The repeal of Section 1005 moots any challenge to that law.

As the Supreme Court and Tenth Circuit have repeatedly held, the repeal of a law, like the IRA's repeal of ARPA § 1005, renders a lawsuit challenging that law moot. *See, e.g., Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 474 (1990); *Kremens v. Bartley,* 431 U.S. 119, 128 (1977); *Diffenderfer v. Cent. Baptist Church,* 404 U.S. 412, 415 (1972); *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1223 (10th Cir. 2001)

**ER221**

("Because 'parties have no legally cognizable interest in the constitutional validity of an obsolete statute,' [ ] a statutory amendment moots a case 'to the extent that it removes challenged features of the prior law[.]'" (citations omitted)); *Am. Charities for Reasonable Fundraising Regul., Inc. v. O'Bannon*, 909 F.3d 329, 331 (10th Cir. 2018); *Kansas Jud. Rev. v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009). As the Tenth Circuit has explained, "[a]ny decision" by courts "as to the constitutional validity of" a prior version of an amended or repealed "statute would constitute a 'textbook example of advising what the law would be upon a hypothetical state of facts' rather than upon an actual case or controversy as required by Article III of the Constitution." *Camfield*, 248 F.3d at 1223 (quoting *Nat'l Adver. Co. v. City & County of Denver*, 912 F.2d 405, 412 (10th Cir. 1990)).

A plaintiff may establish an exception to mootness after the "legislature repeals or amends a statute after it is judicially challenged" only by pointing to "evidence in the record to indicate that the legislature intends to reenact the prior version of the disputed statute." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1117 (10th Cir. 2010) (citing *Camfield*, 248 F.3d at 1223). "[T]he possibility of recurrence of the challenged conduct" must be more than a "speculative contingency." *Rio Grande*, 601 F.3d at 1117 (quoting *Burbank v. Twomey*, 520 F.2d 744, 748 (7th Cir. 1975)).

Here, Congress has repealed § 1005, *see* IRA § 22008, and there is no indication that Congress would reenact that statute if this case is dismissed. It would take another Act of Congress to restore the provisions of § 1005 that Plaintiff complains of, and the possibility of that "speculative contingency" is insufficient to avoid a finding of mootness. *Rio Grande*, 601 F.3d at 1117. Plaintiff therefore cannot meet her burden to show her claims are not moot.

## II.   Plaintiff's claim for nominal damages does not prevent mootness.

Plaintiff cannot escape mootness merely by seeking nominal damages in addition to injunctive and declaratory relief. *See* Compl., Prayer for Relief. Although a claim for nominal damages may

**ER222**

sometimes keep an otherwise moot suit alive, *see Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021), it cannot and does not do so in this case, for two independent reasons.

First, because there is no applicable waiver of sovereign immunity in this case, the Court lacks jurisdiction to award nominal damages. *See FDIC v. Meyer,* 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature."). That is true even though Plaintiff has named federal officials in their official capacity as defendants. *See Clark v. Libr. of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984) ("Sovereign immunity, however, does bar suits for money damages against officials in their *official* capacity absent a specific waiver by the government."). Plaintiff fails to plead any valid waiver of sovereign immunity as to her damages claim, and Defendants are not aware of one that would apply. *See* 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1212 (4th ed.) ("[T]he jurisdictional allegations in an original action or a counterclaim against the United States must include a reference to the statute containing an express or implied waiver of the government's immunity from suit." (footnotes omitted)); *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009) ("Because general jurisdictional statutes, such as 28 U.S.C. § 1331, do not waive the Government's sovereign immunity, a party seeking to assert a claim against the government under such a statute must also point to a specific waiver of immunity in order to establish jurisdiction.").

District courts therefore lack jurisdiction over claims, such as this one, seeking nominal damages from the United States or its officers sued in their official capacity. *See, e.g., ACLU of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 53 n.7 (1st Cir. 2013) ("[A] claim for nominal damages is foreclosed by HHS's sovereign immunity."); *Shahi v. U.S. Dep't of State*, 33 F.4th 927, 929–30 (7th Cir. 2022) ("Plaintiffs' request for nominal damages fails for the same reason" as their request for other money damages—"the problem is sovereign immunity."). "Nominal damages are money damages, and if other kinds of money damages are unavailable due to sovereign immunity, then so are nominal

6

**ER223**

damages." *Shahi v. United States Dep't of State*, 572 F. Supp. 3d 470, 481 (N.D. Ill. 2021), *aff'd*, 33 F.4th 927; *W. States Ctr., Inc. v. United States Dep't of Homeland Sec.*, No. 3:20-CV-01175-JR, 2021 WL 1896965, at *1 (D. Or. May 11, 2021) ("[Nominal damages] are not available because of sovereign immunity."); *Leonard v. U.S. Dep't of Def.*, 38 F. Supp. 3d 99, 105 (D.D.C. 2014), *aff'd*, 598 F. App'x 9 (D.C. Cir. 2015) ("[Plaintiffs] may not seek [nominal] damages because the United States has not waived sovereign immunity for monetary relief for unconstitutional acts taken by government employees acting in their official capacities."). Because this Court does not have jurisdiction to award nominal damages, Plaintiff's demand for nominal damages cannot save her claim from mootness.

Second, and wholly apart from the issue of sovereign immunity, Plaintiff cannot claim nominal damages in this case because she was never injured by the implementation of Section 1005. Because of the preliminary orders of several courts, USDA never fully implemented that statute. The Supreme Court in *Uzuegbunam* held only that nominal damages "provide the necessary redress for a *completed* violation of a legal right." 141 S. Ct. at 802 (emphasis added); *see also id.* at 802 n.* (emphasizing that nominal damages "are unavailable where a plaintiff has failed to establish a past, completed injury"). As to *prospective* violations of legal rights, the ordinary rule holds: a claim for nominal damages for unrealized conduct does not defeat mootness. *See Comm. for First Amend. v. Campbell*, 962 F.2d 1517, 1526 (10th Cir. 1992) (finding that a "nominal damages claim which relates to *past* (not future) conduct" could survive a finding of mootness); *see also Uzuegbunam*, 141 S. Ct. at 796 (holding that nominal damages can "redress a *past* injury" (emphasis added)); *id.* at 798 (distinguishing nominal damages claims related to past injury from nominal damages claims that provide prospective relief).

Here, Plaintiff's claim for nominal damages is unrelated to any past, completed injury. Because implementation of § 1005 was enjoined, Plaintiff never actually experienced such an injury. Plaintiff was never denied any payment under § 1005 because of her race or ethnicity and did not incur any injury for which nominal damages could theoretically be claimed. Because her claim for nominal

**ER224**

damages is unrelated to a "past injury" or a "completed injury," *Uzuegbunam*, 141 S. Ct. at 798, 802, it cannot prevent mootness.

**III.    Plaintiff's claim for costs and fees likewise does not prevent mootness.**

It is well established that claims for costs and fees are ancillary to the litigation and do not preserve a case that is otherwise moot. *In re W. Pac. Airlines, Inc.*, 181 F.3d 1191, 1196 (10th Cir. 1999) ("Precedent clearly indicates that 'an interest in attorney's fees is insufficient to create an Article III case or controversy where a case or controversy does not exist on the merits of the underlying claim.'" (quoting *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 n.4 (10th Cir. 1994), *superseded on other grounds as recognized in Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001))). A "fee award is wholly unrelated to the subject matter of the litigation[] and bears no relation to the statute whose constitutionality is at issue here." *Diamond v. Charles*, 476 U.S. 54, 70 (1986). Thus, a claim for fees is not an "injury with a nexus to the substantive character of the statute or regulation at issue" that "Art. III standing requires." *Id.* Any claim to fees does not prevent mootness.

## CONCLUSION

Congress has repealed the law that Plaintiff challenges. Under straightforward principles of mootness, Plaintiff's claims are moot and this Court lacks jurisdiction to adjudicate them. Accordingly, the Court should lift the stay and dismiss this action.

**ER225**

Dated: September 13, 2022               Respectfully submitted,

                                         NICHOLAS VASSALLO
                                         Acting United States Attorney

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General

                                         LESLEY FARBY
                                         Assistant Branch Director
                                         Civil Division, Federal Programs Branch

                                         */s/ Kyla M. Snow*
                                         KYLA M. SNOW (Ohio Bar No. 96662)
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, NW
                                         Washington, D.C. 20005
                                         Tel: (202) 514-3259 / Fax: (202) 616-8460
                                         Kyla.snow@usdoj.gov

                                         *Counsel for Defendants*

**ER226**

Timothy M. Stubson (Bar No. 6-3144)
CROWLEY FLECK, PLLP
111 W. 2nd Street, Suite 220
Casper, WY 82601
(307) 265-2279
tstubson@crowleyfleck.com

William E. Trachman (*pro hac vice*)
MOUNTAIN STATES LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org

Braden Boucek (*pro hac vice*)
Kimberly S. Hermann (*pro hac vice*)
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Telephone: (770) 977-2131
bboucek@southeasternlegal.org
khermann@southeasternlegal.org

*Attorneys for Plaintiff Leisl M. Carpenter*

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| LEISL M. CARPENTER,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, and<br><br>ZACH DUCHENEAUX, in his official capacity as Administrator of the Farm Service Agency,<br><br>Defendants. | Case No. 0:21-cv-00103-NDF<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO LIFT STAY AND TO DISMISS AS MOOT, MEMORANDUM IN SUPPORT THEREOF [ECF NO. 37 AND 38]** |

**ER227**

President Biden signed the American Rescue Plan Act on March 11, 2021. *See* Pub. L. No. 117-2, § 1005 (2021). Section 1005 of that law provided COVID-19 debt relief of up to 120% of debt to farmers and ranchers, based on their race. Subsequently, several lawsuits were filed against Section 1005, including one in the Eastern District of Wisconsin, which was filed on April 29, 2021. *See Faust v. Vilsack*, 1:21-cv-00548-WCG (D. Wisc., Apr. 29, 2021). On June 10, 2021, Judge Griesbach of that court issued the first order halting the implementation of Section 1005. *See Faust v. Vilsack*, 519 F. Supp. 3d 470, 475 (D. Wisc., 2021) ("Here, Defendants lack a compelling interest for the racial classifications."); *see id.* at 478 ("Defendants are enjoined from forgiving any loans pursuant to Section 1005 until the Court rules on Plaintiffs' motion for a preliminary injunction.").

By that time, however—June 10, 2021—Defendants had unfortunately already begun implementing Section 1005. They provided debt relief on at least 4 loans based exclusively on race, apparently accounting for at least around $1 million. *See* Declaration of William D. Cobb, *Faust v. Vilsack*, 1:21-cv-00548-WCG (filed June 8, 2021) (Exhibit 1); Brasher, *Democrats add farm debt relief to climate funding as Senate passage nears*, at 2 (Aug. 6, 2022) (Exhibit 2) ("USDA made nearly $ 1 million in forgiveness payments before the program was shut down."). They had also at least offered to provide forgiveness on a fifth loan. And USDA had likely credited back hundreds of loan payments to certain borrowers, again based solely on the race of the borrower. Plaintiff, of course, was ineligible for any of these benefits; she therefore suffered differential treatment on the basis of her race, which has never been remedied. And the mere repeal of Section 1005 does not suffice to undo her injuries stemming from prior implementation of the statute.

1

**ER228**

To this day, there has never been a full account of USDA's implementation of Section 1005. However, the Court may take notice that the government has offered no declaration—to meet its heavy burden now—stating that due to the repeal of Section 1005, all previous implementation of Section 1005 has been unwound, and that the playing field has been appropriately equalized, without regard to race. *See* ECF 38, at 7 (stating only that Section 1005 was never "fully" implemented).

Thus, this Court may still grant that relief to Plaintiff, and restore constitutional balance. *See Miller v. Vilsack*, No. 4:21-cv-0595-O, *20 (N.D. Tex., July 1, 2021) (Exhibit 3) ("Plaintiffs are suffering a continuing and irreparable injury based on the direct effects of the race- and ethnicity-based application process.").[1] Such relief constitutes *prospective* relief, and does not require a waiver of sovereign immunity, *see Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), or even an amendment of the Complaint, because Plaintiff's prayer for relief has never been limited to merely asking the Court to strike down Section 1005. This Court should thus permit the case to proceed apace, in order to vindicate Plaintiff's constitutional rights.

## STANDARD OF REVIEW

"[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks omitted). By contrast, "[a]s long as the parties have a concrete interest, *however small*, in the outcome of the litigation, the case is not moot." *Id.* at 172 (emphasis added). The burden is on the government to establish mootness; and that burden is a heavy one, when the government relies on its own conduct. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) ("That burden is

---

[1] Note that this Order is not available on Westlaw.

'heavy' where, as here, the only conceivable basis for a finding of mootness in the case is the respondent's voluntary conduct.") (internal brackets and quotation marks omitted); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010) ("Voluntary actions may, nevertheless, moot litigation if two conditions are satisfied: (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) *interim relief or events have completely and irrevocably eradicated the effects of the alleged violation*.") (emphasis added) (internal quotation marks omitted); *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA*, No: 19-CV-205-NDF, 2020 WL 10356243, *3 (D. Wyo., Feb. 13, 2020) (same).

"It is no small matter to deprive a litigant of the rewards of its efforts … Such action on grounds of mootness would be justified only if it were absolutely clear that the litigant no longer had any need of the judicial protection that it sought." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 224 (2000). Here, the government fails to meet the exceedingly high standard of "absolutely clear." Unless Defendants can carry their burden of establishing that it has restored the state of play that existed prior to the implementation of Section 1005—or that Plaintiff and others similarly situated are entitled to similar benefits as those who received debt relief under Section 1005—there is more for this Court to do. *See also American Wild Horse Preservation Campaign v. Jewell*, No: 14–CV–0152–NDF, 2015 WL 11070090, *5 (D. Wyo., Mar. 3, 2015) (reversed on other grounds) ("Because of this, and assuming Petitioners prevail on the merits, a determination can be issued with real-world effect, whether it is an order to return horses or to cure a procedural irregularity. Therefore, Petitioners' claims are not moot.").

**ER230**

**ARGUMENT**

Under the Equal Protection principles of the Fifth Amendment, the government has a duty not only to enact laws equally, but to generally maintain its benefits programs equally, without regard to race. *See Regents of University of California v. Bakke*, 438 U.S. 265, 289-90 (1978) ("The guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color. If both are not accorded the same protection, then it is not equal."); *see also Vitolo v. Guzman*, 999 F.3d 353, 366 (6th Cir. 2021) ("It has been twenty-five years since the Supreme Court struck down the race-conscious policies in *Adarand*. And it has been nearly twenty years since the Supreme Court struck down the racial preferences in *Gratz*. As today's case shows once again, the way to stop discrimination on the basis of race is to stop discriminating on the basis of race.").

Under Section 1005, Plaintiff was treated unequally because of her race. Every court to consider the question has held that Section 1005 was likely unconstitutional. But the government argues that this case is moot because USDA will not further implement Section 1005; in other words, the government merely avers that will not inflict additional injuries onto the Plaintiff under Section 1005.

But Defendants fail to establish that merely forgoing inflicting new injuries suffices for mootness. And because this Court may yet remedy Plaintiff's ongoing injury by requiring Defendants to claw back unconstitutional payments, Defendants have not "completely and irrevocably eradicated the effects of the alleged violation," and cannot establish that this matter is moot. *See Rio Grande Silvery Minnow*, 601 F.3d at 1110 ("The crucial question is whether granting a present determination of the issues offered will have some effect in the real world.") (internal

4

**ER231**

quotation marks omitted); *see also Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2012) ("[W]here a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint.").

**I.      Defendants Engaged in Race-Based Implementation of Section 1005 Before June 10, 2021, and Injured Plaintiff.**

At the outset, there is no doubt that Section 1005 was a race-based program. Section 1005 of ARPA expressly contemplated that the federal government would treat farmers and ranchers differently based on race. *See Holman v. Vilsack*, No. 21-1085-STA-jay, 2021 WL 2877915, *1 (W.D. Tenn., Jul 8, 2021) ("Farmers, such as Plaintiff, who have USDA loans and who are white/Caucasian are not considered to be socially disadvantaged and, thus, are not eligible for debt relief regardless of their individual circumstances."); *see id.* at *9 ("Under Section 1005, 'Black, American Indian/Alaskan Native, Hispanic, or Asian, or Hawaiian/Pacific Islander' farmers qualify for debt relief but not farmers of other races or ethnicities regardless of their financial condition and regardless of whether they obtained any financial relief during the pandemic."); *Miller v. Vilsack*, No. 4:21-cv-0595-O, *2 (N.D. Tex., July 1, 2021) ("Plaintiffs held qualifying FSA loans on January 1, 2021 but are white, making them ineligible for the funds under the Act.") (attached as Exhibit 3); *Faust*, 519 F. Supp. 3d at 476 ("Defendants make the extraordinary argument that racial discrimination inflicts no harm at all.").

Defendants undeniably provided COVID-19 loan forgiveness under Section 1005, based on race before being enjoined. *See Faust*, 519 F. Supp. 3d at 477 ("Defendants have already started to forgive loans, and the 8,580 farmers and ranchers who were sent offer letters represent approximately 49% of the loans that will be forgiven under the program."). Thus, implementation of Section 1005 occurred, and was ongoing until the order in *Faust* on June 10, 2021.

5

**ER232**

The Court in Wisconsin cited a June 8, 2021 declaration filed by USDA employee William D. Cobb in the *Faust* Matter. *See* Exhibit 1. In the Declaration, Mr. Cobb made the following statements:

> 28.   On Friday, May 28, 2021, to test the effectiveness of the procedures FSA established to deliver ARPA Section 1005 payments, FSA mailed five offer letters to eligible recipients in New Mexico. The state was selected based in part on having one of the larger volumes of direct loan borrowers eligible for ARPA and a high level of experienced staff. The eligible accounts were selected based on the borrowers being sole proprietorships rather than entities, and past interactions with FSA that reflected a willingness to be part of a pilot initiative.
>
> 29. On June 3, 2021, three of the five eligible recipients involved in the initial testing returned an accepted offer to FSA. *Payments were processed for the three eligible test recipients on that date.*
>
> 30. On June 7, 2021, the fourth eligible test recipient returned an accepted offer. *That payment was processed on Tuesday, June 8, 2021.*

Exhibit 1, at ¶¶ 28-30 (emphasis added). Thus, Defendants have acknowledged that at least 4 loans were forgiven under Section 1005, prior to the program's implementation being halted, with an additional offer to forgive a fifth loan pending as of June 8, 2021. Additional payments may have been made before Section 1005 was halted, although even 4 or 5 loans being forgiven is sufficient to end the Court's inquiry into mootness.

Note that Mr. Cobb's Declaration was signed and submitted on June 8, 2021—two days prior to the Temporary Restraining order being entered. Additional payments may have been processed in those days. *See also* Exhibit 1, at ¶ 32 ("Now that its procedures have been tested, FSA anticipates beginning to *process* and mail offer letters for 8,580 accounts on June 9, 2021.") (emphasis added). Indeed, the Wisconsin court issued a temporary restraining order because it recognized that USDA was trying to move as quickly as possible. *Faust*, 519 F. Supp. 3d at 477

**ER233**

("The entire $3.8 billion that has been allocated to the program may be depleted before briefing and consideration of the motion for a preliminary injunction.").

On top of the loan forgiveness payments, Mr. Cobb indicated that USDA planned to reverse prior payments made by Section 1005 recipients, at a rate of 700-800 borrowers per week:

> 23. 6,836 of the Farm Loan Program direct loan accounts have payments made after January 1, 2021. These payments must be reversed from the account to establish an accurate outstanding indebtedness on January 1, 2021, in order to calculate a payment in accordance with Section 1005 of ARPA. *FSA estimates that these reversals will require up to 9 weeks to complete at an estimated rate of 700 to 800 eligible recipients per week.*

Exhibit 1, at ¶ 23 (emphasis added). While it is currently unknown how many borrowers were actually credited back their payments made after January 1, 2021, it hardly matters. At this point, the government has failed to carry its substantial burden of showing that the case is moot, and that these payment reversals were themselves reversed.

By contrast, there can be no doubt that Defendants' forgiveness of some loans based solely on race injured Plaintiff. *See, e.g.*, *Miller v. Vilsack*, Exhibit 3, at 20 ("Plaintiffs are suffering a continuing and irreparable injury based on the direct effects of the race- and ethnicity-based application process."). Indeed, several courts enjoined Section 1005 because they held that even a partial deprivation of constitutional rights was technically irreparable. *Wynn v. Vilsack*, 545 F.Supp.3d 1271, 1290 (M.D. Fla., 2021) ("The harm he purports to suffer is the denial of his right to equal protection–his exclusion, solely on account of his race, from eligibility for an extraordinary government benefit under Section 1005. This constitutional harm is a real harm."); *Holman*, 2021 WL 2877915, *12 ("Therefore, even if Plaintiff obtained financial relief after a trial on the merits, he would have suffered irreparable harm merely by the deprivation of his constitutional rights during the pendency of this matter.").

**ER234**

Until the government addresses the loan payments that have already been dispensed, Plaintiff continues to be injured. Moreover, the recipients of Section 1005 benefits have no right to keep the ill-gotten gains of their race-based loan forgiveness, even if it is difficult for the government to remedy its unconstitutional program once it commenced. *See Wynn*, 545 F. Supp. 3d at 1293 ("Likewise, if Section 1005 is discriminatory, SDFRs have no legitimate right to the proceeds of a facially unconstitutional legislative enactment."); *Miller v. Vilsack*, Exhibit 3, at 22 ("[T]he inherent harm from an unlawful government-run racially discriminatory program is detrimental to the public interest.").

Indeed, a ruling that the instant dispute is moot would create perverse incentives for public officials: they would have an interest in doing as much unconstitutional activity as quickly as possible, with as little transparency as possible, before invidious race discrimination could be enjoined by courts, followed by a simple repeal of the program. That cannot be the appropriate result. In the end, the government has inflicted an ongoing injury, one that it has failed to satisfy its burden of proof of showing it has resolved.

## II.   There is no Bar to Courts Remedying the Effects of Unconstitutional State Action After Repeal of a Program.

The government's ongoing injury is redressable. It is firmly within this Court's power to order the Defendants to unwind, to the best of their ability, the implementation of Section 1005. Moreover, sovereign immunity is not a bar to relief, because plaintiffs seek prospective relief only.

Courts have long held that it is plainly permissible to order government officials to undo the constitutional damage that they have done in the past. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and

8

**ER235**

flexibility are inherent in equitable remedies."); *see id.* at 16-17 ("[A] school desegregation case does not differ fundamentally from other cases involving the framing of equitable remedies to repair the denial of a constitutional right. The task is to correct, by a balancing of the individual and collective interests, the condition that offends the Constitution.").

There is no *per se* bar to courts correcting ongoing injuries merely because the injury had its genesis in the past. *See Milliken v. Bradley*, 433 U.S. 267, 290 (1977) ("That the programs are also 'compensatory' in nature does not change the fact that they are part of a plan that operates prospectively to bring about the delayed benefits of a unitary school system. We therefore hold that such prospective relief is not barred by the Eleventh Amendment."). And the waiver of sovereign immunity found in 5 U.S.C. § 702 applies to equitable suits for specific relief, even when such relief would require monetary payments. *See, e.g., Zellous v. Brouadhead Assocs.*, 906 F.2d 94 (3d Cir. 1990) (a plaintiff seeking a payment that they are entitled to is not barred under sovereign immunity); *Texas American Banc-shares v. Clarke*, 740 F. Supp. 1243 (N.D. Tex. 1990) (a plaintiff may recover funds that he is entitled to under federal law). Surely, the same is true for unwinding payments that were made in violation of the Constitution.

Indeed, in numerous contexts, courts have held that government actors owe a duty to correct the wrongs of the past, if an injury lingers. *See Thomas S. by Brooks v. Flaherty*, 902 F.2d 250, 255 (4th Cir. 1990) ("If the present conditions under which class members live do not meet constitutional requirements as explained in *Youngberg*, or if a patient is presently suffering from unconstitutional conditions imposed while in the hospital, the decree provides appropriate prospective relief."); *see id.* at 255 ("The decree addresses the present needs of the patients."); *Ayala v. Armstrong*, No. 1:16-cv-00501-BLW, 2017 WL 3659161, *2 (D. Idaho, Aug. 24, 2017)

9

**ER236**

("Here, the State of Idaho's past unconstitutional acts have led to 'continuing conditions of inequality' for same-sex couples who desired to marry but were unconstitutionally denied that right by the State of Idaho.").[2]

The fact that the Defendants invoke sovereign immunity is of no matter. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690 (1949) ("A second type of case is that in which the statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional."); 5 U.S.C. § 702 ("An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States…").

A court may freely impose duties on public officials to prospectively comply with the Constitution, even if that means correcting past mistakes. *See Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) ("Here, the injunctions Flint seeks as related to past violations serve to expunge from University records the 2003 censure and 2004 denial of his Senate seat, which actions may cause Flint harm."); *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007) ("We are specifically required by *Ex parte Young* to examine whether there exists an ongoing violation of federal law.") (internal citation omitted); *Clark v. Cohen*, 794 F.2d 79, 84 (3d Cir. 1986) ("Given the square holding in *Milliken II* that a federal court may order state officials to fund from the state treasury remedial measures found necessary to undo the harmful effects of

---

[2] Defendants' efforts to defend Section 1005 have also been substantially undermined by the program's repeal. While no court ever accepted USDA's argument that Section 1005 was likely to survive strict scrutiny, courts at least evaluated those arguments seriously. There is hardly any colorable argument that there is a compelling government interest pursued by a narrowly tailored means in partially implementing a statute that is later repealed.

ER237

past constitutional violations, we hold that the Commonwealth defendants' eleventh amendment argument is meritless.").

To be sure, some courts have suggested that "clawing back" the loan forgiveness offered by Section 1005 is *impractical*. *See Wynn*, at 1292 ("The debt relief cannot be clawed back or undone …"). However, these statements are *dicta* that once bore on the necessity for implementing a stay-put injunction, owing to the difficulties involved with providing relief after-the-fact. *See Wynn*, 545 F. Supp. 3d at 1292 ("The violation of this right is imminent because in the immediate future, the Government will provide up to 120% debt relief to qualifying SDFRs, but not to Plaintiff solely because of his race. This, he has shown, is an actual constitutional harm that cannot be undone."). But the government has never averred that it is actually impossible to undo its implementation of Section 1005. Even if it were difficult, this Court can plainly order the government to address its constitutional infraction, to the best of its ability. *Accord Wynn*, 545 F. Supp. 3d at 1295 ("As noted by the Supreme Court, 'once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation.'").

In any event, the government may not sustain an argument regarding mootness based on mere impracticality alone. *See Chafin*, 568 U.S. at 176 ("However small that concrete interest may be due to potential difficulties in enforcement, it is not simply a matter of academic debate, and is enough to save this case from mootness.") (internal brackets and quotation marks omitted); *id.* at 177 ("Such relief would of course not be fully satisfactory, but with respect to the case as whole, even the availability of a partial remedy is sufficient to prevent a case from being moot.") (internal brackets and quotation marks omitted); *U.S. v. Hahn*, 359 F.3d 1315, 1323 (10th Cir. 2004) (en

**ER238**

banc) ("Further, the Supreme Court has held that even the availability of a partial remedy is sufficient to prevent a case from being moot.") (internal quotation marks omitted).

Separately, and admittedly, in ruling on a motion for stay, the court in *Holman* suggested that forgiving only 4 loans under Section 1005 was a *de minimis* constitutional injury. *See Holman v. Vilsack*, 582 F. Supp. 3d 568, 581 (W.D. Tenn. 2022) ("[T]he approval was limited to four recipients as part of a processing test. Any injury suffered by Plaintiff as the result of this limited approval is *de minimis*.").

With respect to the court in *Holman*, constitutional injuries are never *de minimis*. First, as a matter of the factual record, no court—including the *Holman* court—has ever had before it the full record of the implementation of Section 1005, before it was enjoined on June 10, 2021. But second, and more importantly, the weight of precedent strongly suggests that there is no such thing as a *de minimis* exception to an injury caused by invidious racial discrimination. *See, e.g.*, *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 712 (9th Cir. 1997) ("More important, we can find no authority, and appellees have cited none, for a *de minimis* exception to the Equal Protection Clause. … Race discrimination is never a 'trifle.'"); *Berkley v. U.S.*, 287 F.3d 1076, 1088 (Fed. Cir. 2002) (relying on *Monterey Mechanical*); *Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 814 (7th Cir. 2001) ("Although the effect on the student from this relatively minor and transitory discrimination might well have been minimal, especially when compared with the situations in more pervasive and enduring educational discrimination, our faithfulness to constitutional principles does not permit us to overlook it or to declare it a *de minimis* matter."); *Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988) ("A violation of constitutional rights is never *de minimis*, a phrase meaning so small or trifling that the law takes no account of it."); *Fennell v. Marion*

12

**ER239**

*Independent School Dist.*, 963 F. Supp. 2d 623, 635-36 (W.D. Tex. 2014) (relying on the above cases to hold that being "criticized and embarrassed" in front of classmates stated an equal protection injury); *Brazell-Hill v. Parsons*, No. 2:17-cv-912, 2020 WL 4748545, *10 (S.D. Oh., Aug. 17, 2020) ("[D]ifferential treatment on the basis of race by school officials is a constitutional violation, and there is no exception for 'de minimus violations.'"); *accord Lutheran Church-Missouri Synod v. F.C.C.*, 141 F.3d 344, 351 (D.C. Cir. 1998) ("While there is a textual basis under Title VII for drawing such a line, the Equal Protection Clause would not seem to admit a *de minimis* exception."); *Martinson v. Menifee*, No. 02 Civ. 9977(LTS)(HBP), 2007 WL 2106516, *9 (S.D.N.Y., Jul 18, 2007) ("Unlike claims of retaliation, there is no *de minimis* qualification constraining a plaintiff's ability to sustain claims brought under the Equal Protection Clause."); *Thomas v. Bartow*, No. 10-C-557, 2010 WL 11619701, *1 (E.D. Wisc., Jul. 20, 2010) (denying a prisoner's claim that he was denied ice cream to due to his race on *Iqbal* grounds, while still noting that "there is no such thing as a *de minimis* exception to the Equal Protection Clause…") (internal quotation marks omitted).

Plaintiff's injury—which is ongoing to this day—is not alleviated at all by the idea that she was treated differently based on her race only 4 or 5 times, and not thousands of times, as was the government's original plan. *See Vitolo*, 999 F.3d at 364 ("It is indeed a sordid business to divide us up by race. And the government's attempt to do so here violates the Constitution.") (internal quotation marks and citations omitted); *Wynn*, 545 F. Supp. 3d at 1290 ("Thus, that injury—the unequal treatment based solely on race—and not merely Plaintiff's inability to benefit from Section 1005 is the harm Plaintiff will suffer in the absence of injunctive relief.").

No reason exists that prevents the government from redressing its constitutional injury.

13

**ER240**

### III.   Defendants' Cases Are Inapposite.

Defendant cites several cases for the general proposition that the repeal of a statute challenged by a plaintiff ordinarily triggers the mootness doctrine. However, none of the cases involve an equal protection challenge where the government engaged in invidious race discrimination prior to the repeal of a statute, and failed to unwind its misconduct.

In *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472 (1990), for instance, an Illinois bank holding company challenged a Florida law under the dormant commerce clause. When Congress amended the Bank Holding Company Act of 1956, it undercut the very claim asserted in the case. The Supreme Court thus held that the challenge was moot. *See id.* at 477 ("[T]he only evidence of Continental's stake in the outcome was its application to establish and operate an ISB. … Thus, the stake represented by that application was eliminated by the 1987 amendments to the BHCA, which make it clear that no matter how the Commerce Clause issues in this suit are resolved the application can constitutionally be denied."). *Lewis*, however, did not pertain to a situation like this one, where the government already has inflicted an injury that remains ongoing.

In *Kremens v. Bartley*, 431 U.S. 119 (1977), the Court evaluated a suit by mental health patients between the ages of 15 and 18, which challenged Pennsylvania's laws governing commitment to Pennsylvania mental health institutions. When Pennsylvania's law changed in the middle of the appeal, the Supreme Court held that the plaintiffs had obtained all of the relief that they sought. *Id.* at 129 ("These concerns were eradicated with the passage of the new Act, which applied immediately to all persons receiving voluntary treatment."); *id.* at 129 ("After the passage of the Act, in no sense were the named appellees 'detained and incarcerated involuntarily in mental hospitals,' as they had alleged in the complaint."). Plaintiff has not obtained all the relief she

14

**ER241**

sought. By contrast to the plaintiffs in *Kremens*, continues to seek the unwinding of Section 1005 to correct an ongoing constitutional injury.

In *Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*, 404 U.S. 415 (1972), the Supreme Court dismissed as moot a challenge to a Florida law exempting certain church property from taxation. There, the Court held that because the challenge sought exclusively declaratory relief with respect to the taxation statute, and because Florida has amended the statute, the case was to be remanded with leave to amend the pleadings. *Id.* at 414-15 ("The only relief sought in the complaint was a declaratory judgment that the now repealed [statute] is unconstitutional as applied to a church parking lot used for commercial purposes and an injunction against its application to said lot. This relief is, of course, inappropriate now that the statute has been repealed."). By contrast, Plaintiff here has sought significantly more relief than merely the repeal of Section 1005.

Similarly, in *Camfield v. City of Okla. City*, 248 F.3d 1214 (10th Cir. 2001), the plaintiff challenged a law that precluded video rental stores from carrying an Oscar-award winning film due to alleged child pornography in the film. When the law was amended to change the scope of the law, the plaintiff's case was mooted because he had accomplished all that he had sought. *Id.* at 1223 ("Here, the Legislature deleted the 'simulated sex' language from section 1021.2 that Camfield argues is overbroad."). By contrast, Plaintiff has not yet obtained the remedy of unwinding the extant and ongoing differential treatment based on race that was caused by implementing Section 1005.

In *American Charities for Reasonable Fundraising Regulation, Inc. v. O'Bannon*, 909 F.3d 329 (10th Cir. 2018), the court dismissed as moot a challenge to Utah's permitting and registration

**ER242**

requirements for professional fundraising consultants. After the District Court had ruled for the Defendants, Utah amended its law. Because the new law no longer covered the plaintiff, the court deemed the case completely moot. *Id.* at 331 ("[D]uring the appeal, Utah substantially revised its law, prompting officials to concede that the new restrictions do not apply to Rainbow."). Here, by contrast, the government has never averred that Section 1005 was never implemented, or that its implementation has been fully unwound such that Plaintiff is no longer injured.

Last, Defendants cite *Kansas Judicial Review v. Stout*, 562 F.3rd 1240 (10th Cir. 2009). This case actually supports Plaintiff's theory of the case. *See id.* at 1246 ("In deciding whether a case is moot, *the crucial question is whether granting a present determination of the issues offered will have some effect in the real world.*") (emphasis added) (internal ellipses, quotation marks, and brackets omitted). In the case, the Tenth Circuit noted that certain canons of the Kansas Judicial Code were challenged as unconstitutional, but later repealed. *Id.* at 1246 ("As plaintiffs readily concede, in adopting the new canons, the Kansas Supreme Court completely eliminated the challenged portion of the Clause."). But the court noted that this was true only because an *old* injury had ceased with the repeal. *Id.* at 1246 ("[A]ny injury caused by the old Pledges and Commits Clauses has ceased because they are no longer in effect—the old canons thus cannot possibly chill the *future* speech of the plaintiffs.") (original emphasis). That is not the case here.

Plaintiff contends that her injury continues to this day. And there can be no doubt that an order by this Court to unwind payments made under Section 1005 will "have some effect in the real world." *Accord Vitolo,* 999 F.3d at 359 ("Mootness is a high hurdle. … What's more, the government must show that it has completely and irrevocably eradicated the effects of the program's race and sex preferences.") (internal quotation marks omitted). Here, as a factual matter,

**ER243**

the government has not established that it has completely and irrevocably eradicated the effects of its previous implementation of Section 1005.

**IV.    The Plaintiff's Prayer Requests Relief Other than Striking Down Section 1005.**

Plaintiff's complaint was filed on May 24, 2021. Of course, she had no knowledge that only days later, despite having filed her complaint, Defendants would begin forgiving loans on the basis of race. Nevertheless, the prayer for relief in her complaint fairly encompasses the unwinding of the implementation of Section 1005:

A.    Enter a declaratory judgment that the racial classifications under Section 1005 of the ARPA are unconstitutional under the Equal Protection principles of the Fifth Amendment of the United States Constitution.

…

F.    In the alternative, enjoin Defendants from enforcing Section 1005 of the American Rescue Plan Act in its entirety and enjoining Defendants from distributing loan assistance under Section 1005 to farmers and ranchers.

…

I.    Grant Plaintiff such other and further relief as the Court deems appropriate.

ECF 1, at 14. In the complaint, Plaintiff asks the Court to declare that Section 1005 imposed unlawful racial classifications. There is no reason why that must logically preclude unwinding racial classifications that occurred before the statute was repealed. She further asked the Court to enjoin Defendants from enforcing Section 1005 "in its entirety," which Plaintiff avers must include implementation that continues to injure Plaintiff. And, at a minimum, the Court is entitled to offer Plaintiff such other and further relief as it deems appropriate.

**ER244**

There can be no doubt that Defendants were on notice that Plaintiff was trying to prevent Section 1005 from unlawfully discriminating against her, in any form. *Accord Xiong v. Knight Transporation, Inc.*, 77 F.Supp.3d 1016, 1026 (D. Colo. 2014) ("The Court therefore finds that Ms. Xiong's prayer for relief sufficiently put the defendant on notice that she sought all interest to which she would be entitled under the law."). And, at worst, the Federal Rules of Civil Procedure unambiguously support Plaintiff's position. *See* F.R.C.P. 54(c) ("Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *Turner v. A. Passmore & Sons Inc.*, 341 Fed. Appx. 363, 367 (10th Cir. 2009) ("Again, this rule stresses the federal rules' simplification of procedure and rejection of formalism."); *Reynolds v. Slaughter*, 541 F.2d 254, 256 (10th Cir. 1976) ("Under the rule, which has been liberally applied, the court is not restricted to the relief set out in the pleadings; rather, it should grant the relief which is consistent with the pleadings or proof."). Indeed, the Court's duty extends to granting Plaintiff relief if she is entitled to as much. *See Kaszuk v. Bakery and Confectionery Union and Industry Intern. Pension Fund*, 791 F.2d 548, 559 (7th Cir. 1986) ("Rule 54(c) has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved.").

## CONCLUSION

Section 1005 unconstitutionally discriminated against Plaintiff based on her race. Plaintiff's injury continues if others who are similarly situated experienced a windfall based on their race. Defendants cannot come close to meeting their burden to establish that it is "absolutely clear" that the case is moot; indeed, the weight of the evidence is on the other side of the coin. For

**ER245**

these reasons, the Court should deny the government's motion to the extent it seeks dismissal of

this matter.

Dated:  September 27, 2022.            Respectfully submitted,

*/s/ William E. Trachman*
William E. Trachman*
CO. Bar No. 45684
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@ mslegal.org

*/s/ Braden H. Boucek*
BRADEN H. BOUCEK
TN BPR No. 021399
KIMBERLY HERMANN
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Telephone: (770) 977-2131
bboucek@southeasternlegal.org
khermann@southeasternlegal.org

*Appearing Pro Hac Vice

Timothy M. Stubson (Bar No. 6-3144)
Crowley Fleck, PLLP
111 W. 2nd Street, Suite 220
Casper, WY 82601
(307) 265-2279
tstubson@crowleyfleck.com

Counsel for Plaintiff

**ER246**

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2022, I caused a true and correct copy of the

foregoing document to be electronically filed with the Clerk of the Court using the Court's

CM/ECF system which sent notification of such filing to all counsel of record of this matter.

*/s/ William E. Trachman*
William E. Trachman

**ER247**

# EXHIBIT 1

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | |
|---|---|
| ADAM P. FAUST, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | )   Civil Action No. 21-cv-548-WCG |
| | ) |
| THOMAS J. VILSACK, in his official | ) |
| capacity as Secretary of Agriculture, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |
| | ) |

### DECLARATION OF WILLIAM D. COBB

1.  My name is William D. Cobb. I am over 21 years of age and fully competent and duly authorized to make this declaration. The facts in this declaration are based on my personal knowledge and are true and correct.

2.  I have been employed by the United States Department of Agriculture ("USDA") Farm Service Agency ("FSA") for over 37 years.  I am presently Deputy Administrator for Farm Loan Programs for the FSA and I am stationed in Washington, District of Columbia.  As Deputy Administrator for Farm Loan Programs, I oversee the Farm Loan Programs policies and activities within FSA.

3.  I am familiar with the statutory authorities, regulations, policies, and procedures that govern Farm Loan Programs[1] operations and loans as well as Farm Storage Facility Loans.[2]

4.  Section 1005 of the American Rescue Plan Act ("ARPA"), enacted on March 11, 2021, authorizes USDA to pay up to 120% of the outstanding indebtedness, as of January 1, 2021, of certain FSA Direct and Guaranteed Farm Loans and Farm Storage Facility Loans held by socially disadvantaged farmers or ranchers.

---

[1] Farm Loan Programs are administered primarily under the Consolidated Farm and Rural Development Act of 1961 ("CONACT"), as amended (7 U.S.C. 1922, et seq.).  A potential borrower must show inability to obtain sufficient credit elsewhere to qualify for a majority of these types of loans.

[2] Farm Storage Facility Loans are administered under the Commodity Credit Corporation ("CCC") Charter Act (15 U.S.C. 714, et seq.) and the Food and Conservation, and Energy Act of 2008 (7 U.S.C. 7971 and 8789).  A potential borrower need not show inability to obtain credit elsewhere to qualify for these types of loans.

5.  Section 1005(a)(1) of ARPA provides "for such funds as may be necessary, to remain available until expended" to make the ARPA loan payments.

6.  Section 1005(a)(2) of ARPA permits the Secretary of Agriculture to provide payments to a lender directly, to an eligible applicant, or a combination of both.

7.  Section 1005(a)(3) of ARPA provides that the term "socially disadvantaged farmer or rancher" has the meaning given to the term in section 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990 (7 U.S.C. 2279(a)).

8.  Section 2501(a) of the Food, Agriculture Conservation, and Trade Act of 1990 (7 U.S.C. 2279(a)) defines a "socially disadvantaged farmer or rancher" as someone "who is a member of a socially disadvantaged group," which is further defined as "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities."

9.  The 120 percent payment authorized by Section 1005 includes 100 percent toward loan indebtedness as of January 1, 2021, and an additional 20 percent of that indebtedness to eligible recipients.

10.  FSA published a Notice of Funds Availability ("NOFA") in the Federal Register (86 FR 28329) on May 26, 2021 ("May 2021 NOFA"), announcing the availability of funds for eligible borrowers with eligible direct loans as authorized by section 1005 of ARPA, with the exception of direct loans that no longer have collateral and have been previously referred to the Department of Treasury for debt collection for offset.

11.  The May 2021 NOFA announced that a subsequent NOFA is anticipated within 120 days, or by September 23, 2021, which will address guaranteed loans and direct loans that no longer have collateral and have been previously referred to the Department of Treasury for debt collection for offset.

12.  Under the May 2021 NOFA, members of socially disadvantaged groups include, but are not limited to: American Indians or Alaskan Natives, Asians, Blacks or African Americans, Native Hawaiians or other Pacific Islanders, and Hispanics or Latinos.  The Secretary of Agriculture will determine on a case-by-case basis whether additional groups qualify under this definition in response to a written request with supporting explanation.

13.  Under the provisions of the May 2021 NOFA, eligible recipients do not need to take any action until receipt of a payment offer letter from FSA (form FSA-2601).  FSA is identifying eligible recipients whose demographic designations in FSA systems qualifies them as socially disadvantaged based on race or ethnicity.  Direct and guaranteed loan borrowers who have not previously provided demographic designations to FSA or believe their records are not accurate can contact their local FSA offices to verify their designations.

14. FSA anticipates sending an offer to most eligible recipients under the May 2021 NOFA within 45 days of the publication of the NOFA, or by July 10, 2021, although for recipients with accounts that require payment reversals, this process is likely to take longer, as explained further below.

15. Offer notices mailed to eligible recipients will explain:

   a. Eligibility based on current information in FSA records

   b. FSA's calculation of payments and proposed distribution of payments

   c. Loans that are not included as eligible loans and will retain unpaid balances (if any) (for example, Economic Emergency loans or loans closed or disbursed after January 1, 2021)

   d. Any eligible loans that will be addressed through the subsequent NOFA (for example, guaranteed loans).

16. Eligible recipients may accept the offer and conditions, schedule a meeting to discuss the offer with FSA prior to making a decision (for example to discuss the loan calculation), or decline the offer.

17. If an offer has not been responded to within 30 days, FSA will send a reminder letter, and make a phone call or send an email if that information is on file.

18. If an offer has not been responded to within 60 days, FSA will send a second reminder letter notifying the eligible recipient that a payment will not be processed unless contacted by the eligible recipient. Should FSA establish a final deadline to request a payment, it will be publicly announced, and final notification will be provided to eligible recipients at least 30 days in advance of the deadline.

19. If an offer is accepted, the amount to pay off the eligible direct loans will be applied directly to the eligible recipient's FSA loans and the additional 20 percent, which can be used by recipients to offset tax liabilities, will be paid directly to the eligible recipient.

20. Both the payment to FSA and the additional 20 percent to eligible recipients will be reported to the Internal Revenue Service (IRS) as income using form IRS-1099 G.

21. The estimates provided in the following paragraphs are calculated based on FSA's identification of accounts having one or more eligible recipients. An account may have more than one loan that qualifies for an ARPA payment associated with it.

22. To date, FSA has identified 15,416 eligible Farm Loan Program direct loan accounts with 28,918 outstanding eligible direct loans. The total unpaid principal and interest on those loans as of January 1, 2021, was $2,404,972,793. These numbers may increase if additional eligible recipients update their demographic information with FSA.

23. 6,836 of the Farm Loan Program direct loan accounts have payments made after January 1, 2021. These payments must be reversed from the account to establish an accurate outstanding indebtedness

on January 1, 2021, in order to calculate a payment in accordance with Section 1005 of ARPA.  FSA estimates that these reversals will require up to 9 weeks to complete at an estimated rate of 700 to 800 eligible recipients per week.

24. To date, FSA has identified 186 eligible Farm Storage Facility Loan accounts with 253 outstanding eligible direct loans. These numbers may increase if additional eligible recipients update their demographic information with FSA.

25. Based on currently available information, USDA estimates that the loans covered by the May 2021 NOFA comprise 88% of the total ARPA-eligible payments that will be made to eligible accounts once Section 1005 is fully implemented.

26. Payments for the following eligible recipients will be addressed in the subsequent NOFA that will be issued by September 2021:

   a. As of May 19, 2021, FSA identified at least 2,377 accounts for eligible guaranteed Farm Loan Programs loan recipients with 3,519 outstanding eligible loans.  The total unpaid principal and interest on those loans as of January 1, 2021, was estimated at $1,330,771,488.  Payments for these eligible recipients will be addressed in the subsequent NOFA.

   b. As of May 24, 2021, FSA has identified 757 accounts for eligible direct Farm Loan Programs recipients with 1,489 loans with no collateral remaining that have been referred to the Department of Treasury for collection.  The total unpaid principal and interest of these loans is $55,835,381.

27. Based on currently available information, USDA estimates that the loans covered by the NOFA that will be issued by September 23, 2021 comprise 12% of the total ARPA-eligible payments that will be made to eligible accounts once Section 1005 is fully implemented.

28. On Friday, May 28, 2021, to test the effectiveness of the procedures FSA established to deliver ARPA Section 1005 payments, FSA mailed five offer letters to eligible recipients in New Mexico. The state was selected based in part on having one of the larger volumes of direct loan borrowers eligible for ARPA and a high level of experienced staff.  The eligible accounts were selected based on the borrowers being sole proprietorships rather than entities, and past interactions with FSA that reflected a willingness to be part of a pilot initiative.

29. On June 3, 2021, three of the five eligible recipients involved in the initial testing returned an accepted offer to FSA.  Payments were processed for the three eligible test recipients on that date.

30. On June 7, 2021, the fourth eligible test recipient returned an accepted offer.  That payment was processed on Tuesday, June 8, 2021.

31. Based on this very small sampling, FSA anticipates an average of 7 days from mailing of an offer letter to receipt of an accepted offer.

32. Now that its procedures have been tested, FSA anticipates beginning to process and mail offer letters for 8,580 accounts on June 9, 2021. This number accounts for all eligible Farm Loan Program and Farm Storage Facility Loan accounts under the May 2021 NOFA, except for the 6,836 accounts requiring reversal of payments received after January 1, 2021, which may take up to 9 weeks to process.

33. FSA anticipates it will require an average of 1.5 hours per account for the designated employees to coordinate and complete the validation and verification of payment amounts, and to print, copy and mail offer letters.  There are approximately 209 designated employees whose primary responsibility is to process offer letters and payments.  If these employees complete an average of five offers letters per day, then roughly 1,045 offer letters can be mailed per day.  Thus, theoretically, the initial 8,766 accounts would require 8.3 days to complete.  However, eligible recipients and designated employees are not equally disbursed among states, so completion of mailings in each state may vary, with the longest time period estimated to be 14 days based on the number of designated employees in that state.

34. The same designated employees will be tasked with balancing the preparation of outgoing offer letters with processing incoming acceptances, as well as any questions that arise from eligible recipients about the offer letters.

35. Beginning the week of June 14, 2021, FSA anticipates mailing offer letters on the final 6,836 accounts that will require payment reversals, as these reversals are completed over an estimated 9-week period at an average of rate of 700-800 per week.

36. African American, American Indian/Alaskan Native, Asian, and Pacific Islander borrowers account for a disproportionate number of disaster set-aside requests processed by FSA.  The disaster set-aside loan provision allowed farmers with USDA farm loans who were affected by COVID-19 to have their next payment moved to the end of the amortization schedule.  Although the aforementioned borrowers account for roughly 17.5% of FSA direct loan accounts, they account for 24.5% of disaster set-aside requests.

37. Of the 15,602 eligible recipients under the May 2021 NOFA, 299 accounts with 925 loans are currently in bankruptcy proceedings.  These recipients that are currently in bankruptcy are scheduled to be sent offer letters beginning June 9, 2021.

38. As of May 31, 2021, the ratio of White borrowers who are delinquent on an eligible FSA loan was 11%, compared to 37.9 % of African American/Black borrowers, 14.6% of Asian borrowers, 17.4% of American Indian/Alaskan Natives, and 68% of Hispanic borrowers.  As explained in the Frequently Asked Questions posted on the USDA website at https://www.farmers.gov/americanrescueplan/arp-faq: "USDA is not taking any adverse actions on

any eligible borrowers who do not make payments."  However, the Debt Collection Improvement Act prohibits loans to those delinquent on a Federal debt, and therefore an eligible recipient's eligibility for student loans, loans from the Small Business Administration, or loans from other Federal agencies could be adversely impacted by failure to make payments on eligible USDA loans before they are paid off under ARPA Section 1005.

39. A delay in these payments could result in the foreclosure on the farms of the eligible recipients, who account for a disproportionate number of foreclosures.  African American, American Indian/Alaskan Native, Asian, Pacific Islander, and Hispanics accounted for 20-24% of foreclosures in Fiscal Year 17 through Fiscal Year 19 even though they only account for 17.5% of the direct loan portfolio. While FSA has suspended acceleration and foreclosure on direct loans due to COVID-19, FSA cannot prevent other lenders from pursuing foreclosure action.  Third party foreclosure accounted for 40-65% of the foreclosure on FSA borrowers during Fiscal Years 2016 through 2020.

40. Currently, new FSA loan requests for ARPA-eligible applicants do not include ARPA-eligible FSA debt in the cash flow, security analysis or loan limit determinations.  Eligible recipients of payments under Section 1005 may be approved for, and have been approved for, new FSA loans on the condition that the ARPA-eligible debt is paid in full prior to loan closing.  Delays in these payments will delay the closing of these new FSA loans to such borrowers.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this day of 8 June, 2021.

*William D. Cobb*

Digitally signed by WILLIAM COBB
DN: c=US, o=U.S. Government,
ou=Department of Agriculture, cn=WILLIAM
COBB,
0.9.2342.19200300.100.1.1=12001000062109
Date: 2021.06.08 22:15:34 -04'00'
Adobe Acrobat version: 2021.001.20155

# EXHIBIT 2

# Democrats add farm debt relief to climate funding as Senate passage nears

08/06/22 8:57 PM
By Philip Brasher (/authors/1-philip-brasher)



A revised climate funding package Democrats are pushing through the Senate this weekend scraps a debt relief program for minority farmers that was blocked by the courts and replaces it with new programs earmarked for "distressed" USDA borrowers as well as farmers the department has discriminated against.

The new version of the bill (http://www.agri-pulse.com/ext/resources/pdfs/inflation_reduction_act_of_2022-212.pdf), dubbed the Inflation Reduction Act, earmarks $3.1 billion for aid to distressed holders of guaranteed and direct loans.

Another $2.2 billion would be provided for payments of up to $500,000 each to farmers who "experienced discrimination" prior to Jan. 1, 2021, in USDA farm lending programs. The payments would be based on "consequences experienced from the discrimination."

The original debt relief program that was part of the American Rescue Plan Democrats forced through Congress in 2021 (https://www.agri-pulse.com/search?exclude_datatypes%5B%5D=directory&exclude_datatypes%5B%5D=classified&exclude_datatypes%5B%5D=file&page=8&q=%22minority+farmers%22&user_id=6) offered payments worth 120% of a minority farmers' loan balance. Several judges ruled that basing the loan forgiveness on a farmer's race was unconstitutional (https://www.agri-pulse.com/articles/16022-usda-halts-minority-farmer-debt-relief-after-judges-order). USDA made nearly $1 million in forgiveness payments before the program was shut down.

USDA would have through fiscal 2031 to use the new funding.

The legislation cleared a key hurdle Saturday evening when Vice President Kamala Harris broke a 50-50 tie to bring the revised text up for debate. A final vote was not expected before early Sunday after debate on a series of largely symbolic votes on GOP amendments.

"This is one of the most comprehensive and impactful bills Congress has seen in decades: it will reduce inflation, it will lower prescription drug costs, it will fight climate change, it will close tax loopholes, and it will reduce—reduce—the deficit," said Senate Majority Leader Charles Schumer, D-N.Y. Republicans countered that the bill would do virtually nothing to reduce inflation and would impose new taxes that would indirectly affect middle-class Americans.

### Related Articles

House Ag Democrats advance ag stimulus package as GOP attacks minority farmer debt relief

Focus turns to farm bill, CCC for climate funding as Biden plan withers

The legislation, which represents a major win for President Joe Biden's goal of slashing U.S. greenhouse gas emissions in half by 2030, includes more than $20 billion to expand the adoption of climate-related farming practices, plus another $20 billion in USDA-run energy and forestry programs.

The bill's clean energy tax incentives include a new clean fuels tax credit for low-carbon biofuels.

Democrats from western states also secured in the revised bill $4 billion in funding for the Bureau of Reclamation to help water users cope with the impact of drought.

The revised bill also replaces some other assistance in the American Rescue Plan earmarked for underserved farmers.

The provisions would provide $125 million for outreach, mediation, financial training and other assistance on "issues concerning food, agriculture, agricultural credit, agricultural extension, rural development, or nutrition to underserved farmers, ranchers, or forest landowners, including veterans, limited resource producers, beginning farmers and ranchers, and farmers, ranchers, and forest landowners living in high poverty area."

The bill would provide another $250 million in grants and loans to organizations that help improve land access for underserved farmers, ranchers and forest landowners.



Philip Brasher

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **SID MILLER, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-0595-O** |
| | § | |
| **TOM VILSACK,** *in his official capacity as* | § | |
| *Secretary of Agriculture,* | § | |
| | § | |
| **Defendant.** | § | |

## <u>ORDER</u>

Before the Court are Plaintiffs' Motion for Class Certification (ECF Nos. 12–13), filed June 2, 2021; the Government's Response (ECF No. 28), filed June 11, 2021; Plaintiffs' Reply (ECF No. 41), filed June 18, 2021; Plaintiffs' Motion for Preliminary Injunction (ECF Nos. 17–18), filed June 2, 2021; the Government's Response (ECF No. 27), filed June 11, 2021; and Plaintiffs' Reply (ECF No. 42), filed June 18, 2021. Plaintiffs seek a preliminary injunction to enjoin the Department of Agriculture from providing loan forgiveness to farmers and ranchers on the basis of race or ethnicity. *See* Inj. Mot., ECF No. 18. Having considered the briefing, relevant facts, and applicable law, and for the reasons set forth below, the Court **GRANTS** both motions.

## I.    BACKGROUND

Plaintiffs are Texas farmers and ranchers seeking to enjoin the United States Department of Agriculture from administering a recently enacted loan-forgiveness program under section 1005 of the American Rescue Plan Act of 2021 (ARPA). That Act appropriated funds to the USDA and required the Secretary to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021," to pay off qualifying Farm Service Agency (FSA) loans. ARPA, Pub. L. No. 117-2, § 1005 (2021). To be

**ER260**

eligible under the program, an applicant must be a "socially disadvantaged farmer or rancher" as defined in section 2501(a) of the Food, Agriculture Conservation, and Trade Act of 1990 (codified at 7 U.S.C. § 2279(a)). *See id.* That statute provides that a "'socially disadvantaged farmer or rancher' means a farmer or rancher who is a member of a socially disadvantaged group." 7 U.S.C. § 2279(a)(5). It defines "socially disadvantaged group" as "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." *Id.* § 2279(a)(6). In announcing a Notice of Funds Availability, the USDA stated that those groups include but are not limited to "American Indians or Alaskan Natives," "Asians," "Blacks or African Americans," "Native Hawaiians or other Pacific Islanders," and "Hispanics or Latinos." Notice of Funds Availability, 86 Fed. Reg. 28,330 (May 26, 2021).

Plaintiffs held qualifying FSA loans on January 1, 2021 but are white, making them ineligible for the funds under the Act. *See* Inj. Mot. 1–2, ECF No. 18-4; 1–2, ECF No. 18-5; 1–2, ECF No. 18-6; 1–2, ECF No. 18-7. On April 26, 2021, Plaintiffs filed a class action to enjoin the program as a violation of equal protection under the United States Constitution and a violation of Title VI of the Civil Rights Act of 1964. *See* Compl. 6, ECF No. 1. In the alternative, Plaintiffs argue in Claims Two and Three, that, as a matter of statutory interpretation, "socially disadvantaged group" must be construed to include white ethnic groups that have experienced discrimination and individuals who have any discernible trace of minority ancestry. *See id.* at 7–9. After filing their Complaint, Plaintiffs filed the present Motion for Class Certification and Motion for Preliminary Injunction on June 2, 2021. *See* Class Cert. Mot., ECF Nos. 12–13; Inj. Mot., ECF Nos. 17–18. After responses and replies, the motions are ripe for the Court's

**ER261**

consideration. *See* Class Cert. Resp., ECF No. 28; Inj. Resp., ECF No. 27; Class Cert. Reply, ECF No. 41; Inj. Reply, ECF No. 42.

## II.   LEGAL STANDARD

### A.  Class Certification

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)) (internal quotation marks omitted). The party seeking class certification "bear[s] the burden of proof to establish that the proposed class satisfies the requirements of Rule 23." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). "The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of rule 23." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). A district court must "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination'" of the certification issues. *Stukenberg*, 675 F.3d at 837 (quoting *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003)).

Federal Rule of Civil Procedure 23 governs whether a proposed class falls within this limited exception. "To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007).  Rule 23(a)'s four threshold requirements are

(1)    the class is so numerous that joinder of all members is impracticable;
(2)    there are questions of law or fact common to the class;
(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)    the representative parties will fairly and adequately protect the interests of the class.

**ER262**

Fed. R. Civ. P. 23(a). These four threshold conditions are "commonly known as numerosity, commonality, typicality, and adequacy of representation." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020) (citing Fed. R. Civ. P. 23(a)) (additional citation and internal quotation marks omitted). Additionally, the Fifth Circuit has articulated an "ascertainability" doctrine implicit in Rule 23. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."). "To maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam) (citations omitted).

Rule 23(b)(2) applies where the four threshold requirements are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This requirement is satisfied "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

## B. Preliminary Injunction

To prevail on an application for a preliminary injunction, the movant must show: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that granting the injunction is not adverse to the public interest. *See Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

**ER263**

Case 2:21-cv-00103-NDF   Document 39-3   Filed 09/27/22   Page 6 of 25
Appellate Case: 22-8058   Document: 010110832021   Date Filed: 01/24/2023   Page: 6
Case 4:21-cv-00095-O   Document 60   Filed 07/01/21   Page 6 of 24   PageID 1450

To qualify for a preliminary injunction, the movant must clearly carry the burden of persuasion with respect to all four requirements. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003). If the movant fails to establish any one of the four prerequisites to injunctive relief, relief will not be granted. *See Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001). A movant who obtains a preliminary injunction must post a bond to secure the non-movant against any wrongful damages it suffers as a result of the injunction. *See* Fed. R. Civ. P. 65(c).

The decision to grant or deny preliminary injunctive relief is left to the sound discretion of the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (citing *Canal*, 489 F.2d at 572). A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). Even when a movant satisfies each of the four *Canal* factors, the decision whether to grant or deny a preliminary injunction remains discretionary with the district court. *Miss. Power & Light*, 760 F.2d at 621.

## III.   ANALYSIS

### A.  Class Certification

Plaintiffs move to certify two classes under Federal Rule of Civil Procedure 23(b)(2):

| Class | Class Representatives |
|---|---|

**ER264**

| 1 | All farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act | Plaintiffs Greg Macha, James Meek, Jeff Peters, and Lorinda O'Shaughnessy |
|---|---|---|
| 2 | All farmers and ranchers in the United States who are currently excluded from the definition of 'socially disadvantaged farmer or rancher,' as defined in 7 U.S.C. § 2279(a)(5)–(6) and as interpreted by the Department of Agriculture | All named Plaintiffs |

### 1. Rule 23(a)

#### i. Numerosity

Plaintiffs argue that the number of white farmers and ranchers facing discrimination from the USDA on account of their race or ethnicity easily exceeds the numerosity threshold, as evidenced by 2017 census data showing some 239,351 white farmers and ranchers in Texas and 1,963,286 nationwide. *See* Class Cert. Mot. 5, ECF No. 13. Plaintiffs also point to the same data to show that there are an estimated 21,000 holders of qualifying FSA loans nationwide who do not qualify as "socially disadvantaged." *See id.* The Government does not contest the numerosity of the proposed classes. *See* Class Cert. Resp., ECF No. 28.

Courts have regularly certified classes far fewer in number than the tens of thousands of potential plaintiffs here. *See, e.g.*, *Mullen*, 186 F.3d at 625 ("[T]he size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement."). The actual number of class members is not necessarily "the determinative question, for '(t)he proper focus (under Rule 23(a)(1)) is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors.'" *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (quoting *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981)). "[A] number of facts other than the actual or

**ER265**

estimated number of purported class members may be relevant to the 'numerosity' question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman*, 651 F.2d at 1038 (citing *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980), *cert. denied*, 449 U.S. 1113 (1981)).

Here, Plaintiffs' unchallenged evidence demonstrates classes of plaintiffs sufficiently large and for whom joinder would be impracticable, if not impossible, due to size, geographic dispersion across the nation, and the inclusion of future members. Accordingly, the Court finds that Plaintiffs have satisfied the numerosity requirement for certification of both proposed classes.

### ii.    Commonality

Plaintiffs "seek to litigate a question of law common to all members of each of the two classes: does the United State Department of Agriculture violate the Constitution and Title VI of the Civil Rights Act of 1964 by limiting eligibility for government benefits to 'socially disadvantaged farmers or ranchers'?" Class Cert Mot. 6, ECF No. 13. Plaintiffs further contend that "[t]his question affects all class members because each of them is subject to discrimination on account of their race, as each of them is excluded from the definition of 'socially disadvantaged farmers or ranchers' because they are white." *Id.* The Government disagrees, arguing that there is no common legal question between the different claims Plaintiffs bring. *See* Class Cert. Mot. 13, ECF No. 28. With regard to the second class, the Government indicates that, because there are multiple programs for "socially disadvantaged farmers or ranchers," and the use of race in a benefit program must be narrowly tailored, no commonality can exist for the class members who are not included in that definition, as it necessitates individualized considerations for each of those programs. *See id.* at 15.

**ER266**

"In order to satisfy commonality under *Wal-Mart*, a proposed class must prove that the claims of every class member 'depend upon a common contention . . . that is capable of classwide resolution.'" *Stukenberg*, 675 F.3d at 838 (quoting *Wal-Mart*, 564 U.S. at 350). This occurs where "the contention is 'of such a nature . . . that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Stukenberg*, 675 F.3d at 838 (quoting *Wal-Mart*, 564 U.S. at 350). Put plainly, "Rule 23(a)(2) requires that all of the class member[s'] claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke.'" *Stukenberg*, 675 F.3d at 840 (quoting *Wal-Mart*, 564 U.S. at 350). And a court's "obligation to perform a 'rigorous analysis'" of the commonality prong may "entail some overlap with the merits of the plaintiff's underlying claim." *Stukenberg*, 675 F.3d at 840 (quoting *Wal-Mart*, 564 U.S. at 350).

The Court concludes that the proposed classes satisfy the commonality requirement. The complained-of discrimination by the USDA constitutes more than a common grievance with a particular legal provision, deemed insufficient for commonality by the Supreme Court in *Wal-Mart*. *See* 564 U.S. at 350 ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law." (citation and internal quotation marks omitted)). Answering Plaintiffs' substantive legal question will provide a common answer for all class members regarding a common issue of law: the availability of USDA program benefits to them absent racial and ethnic discrimination. *See DeOtte v. Azar*, 332 F.R.D. 188, 198 (N.D. Tex. March 30, 2019) (distinguishing its facts from *Stukenberg*, in which plaintiffs asserted "various harms, the risk of experiencing those harms, and the violation of constitutional rights in various ways"

**ER267**

Case 2:21-cv-00103-NDF   Document 39-3   Filed 09/27/22   Page 10 of 25

Appellate Case: 22-1651   Document: 010110873261   Date Filed: 01/21/2022   Page: 272
Case 4:21-cv-00595-O   Document 60   Filed 07/01/21   Page 9 of 24   PageID 1454

(internal quotation marks omitted)). Resolution of the alleged conflict between, on the one hand, programs for "socially disadvantaged farmers or ranchers" and, on the other, Constitutional equal protection provides a common answer to a narrow question of law based in a specific alleged injury "in one stroke." *Wal-Mart*, 564 U.S. at 350. Accordingly, Plaintiffs have satisfied the commonality requirement for certification of both classes.

### iii.    Typicality

Plaintiffs argue that, not only are their claims typical, they are precisely the same as those of all members of the proposed classes. *See* Class Cert. Mot. 7, ECF No. 13. The Government focuses on Plaintiffs' alternative Claims Two and Three and alleges that proceeding on a class basis will not be economical, as there will be a need to litigate each member's unique inclusion in a disadvantaged group or an individual assessment of each government program that benefits "socially disadvantaged farmers or ranchers." *See* Class Cert. Resp. 16–18, ECF No. 28.

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* "[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen*, 186 F.3d at 625 (citations omitted). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality."

**ER268**

Case 2:21-cv-00103-NDF   Document 39-3   Filed 09/27/22   Page 11 of 25

Appellate Case: 22-00595   Document 601   Filed 07/01/21   Date Filed 01/24/2023   Page 273
Case 4:21-cv-00595-O   Document 60   Filed 07/01/21   Page 10 of 24   PageID 1455

*James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) (quoting 5 James Wm. Moore et al.,

*Moore's Federal Practice* P 23.24[4] (3d ed. 2000)).

For similar reasons supporting commonality, the Court rejects the Government's arguments on typicality. First, Plaintiffs only seek classwide relief on Claim One and pleaded Claim Two and Three in the alternative. *See* Compl., ECF No. 1. Second, any fact-specific inquiries regarding a putative class member's challenge does not prevent certification of the class itself because, to the extent they are even necessary, these individualized membership or government program assessments can be made after class certification. *See, e.g., Seeligson v. Devon Energy Prod. Co., L.P.*, 761 F. App'x 329, 334 (5th Cir. 2019) (requiring only that the plaintiff demonstrate "that the class is adequately defined" and "provide sufficient objective criteria from which to identify class members" (citation and internal quotation marks omitted)). Denying certification on this basis would be especially improper in cases like these, where the proposed classes seek only injunctive and declaratory relief regarding enforcement of a statute, and the usual complications of class certification and phased litigation of suits for money damages do not apply. *See, e.g., Rice v. City of Philadelphia*, 66 F.R.D. 17, 19 (E.D. Pa. 1974) ("[T]he precise definition of the [Rule 23(b)(2)] class is relatively unimportant. If relief is granted to the plaintiff class, the defendants are legally obligated to comply, and it is usually unnecessary to define with precision the persons entitled to enforce compliance."); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 431 n.28 (5th Cir. 1998) (citing Hebert B. Newberg & Alba Conte, *Newberg On Class Actions* § 4.41, at 4-51 to 52 (3d ed. 1992) and noting differing approaches to certification and litigation of individual trials for damages). Accordingly, Plaintiffs' claim is typical for both proposed classes.

**iv.   Adequacy of Representation**

Case 2:21-cv-00103-NDF   Document 39-3   Filed 09/27/22   Page 12 of 25
Appellate Case: 22-00595   Document 601   Filed 07/01/21   Date Filed: 01/24/2022   Page: 274
Case 4:21-cv-00595-O   Document 60   Filed 07/01/21   Page 11 of 24   PageID 1456

For the final Rule 23(a) factor, Plaintiffs argue that there are no conflicts of interest among the class members with respect to Claim One, the only claim on which Plaintiffs seek classwide relief. *See* Class Cert. Mot. 7–8, ECF No. 13. They contend "[a] classwide injunction will serve only to protect the class members' constitutional rights, as well as rights guaranteed under the Civil Rights Act of 1964[,]" conceding that classwide relief would not be appropriate for Claims Two and Three. *Id.*; *see* Class Cert. Reply 8, ECF No. 41. In response, the Government claims that, in seeking to prohibit the use of the socially-disadvantaged definition in USDA programs, Plaintiffs have a conflict in seeking to represent members who cannot opt out from any judgment that will necessarily bind the entire Rule 23(b)(2) class. *See* Class Cert. Resp. 18, ECF No. 28.

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Adequacy encompasses three separate but related inquiries (1) 'the zeal and competence of the representative[s'] counsel'; (2) 'the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees'; and (3) the risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (citing *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)). "[The] requirements [of commonality and typicality] . . . tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Falcon*, 457 U.S. at 158 n.13. Throughout litigation, the court "must continue carefully to scrutinize the adequacy of representation and withdraw certification if such representation is not furnished." *Grigsby v. N. Miss. Med. Center, Inc.*, 586 F.2d 457, 462 (5th Cir. 1978).

**ER270**

Here, Plaintiffs have carried their burden to show that they will adequately represent the interests of class members similarly situated in zealously pursuing the requested relief. All indications are that Plaintiffs are willing and able to control the litigation and to protect the interests of absent class members. *See Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982). Given the Court's conclusion as to the commonality and typicality prongs, *supra*, and because the Government has not shown any conflicts of interest, issues with competency of counsel, or other issues suggesting inadequacy of Plaintiffs' representation as to Claim One, the Court finds that Plaintiffs will adequately represent members of the proposed classes in pursuit of that claim.

> ### v.   Ascertainability

Plaintiffs argue that both proposed classes are ascertainable under Fifth Circuit law. *See* Class Cert. Reply 10, ECF No. 41. They contend that nothing is imprecise or vague about the proposed classes, as a potential plaintiff is either "encountering racial discrimination on account of section 1005, or he isn't" and is "either included with the definition of 'socially disadvantaged farmer or rancher,' or he's not." *Id.* The Government argues that both proposed classes are imprecise. *See* Class Cert. Resp. 21–22, ECF No. 28. For the first class, the Government submits that it is unclear whether it would include, for example, individuals who fall within the definition of a socially disadvantaged farmer or rancher but claim discrimination based on other factors, such as accessibility to program services. *See id.* As for the second class, the Government argues that it "is not limited to those who have suffered any injury as a result of the fact that they do not fall within the definition of a 'socially disadvantaged farmer or rancher.'" *Id.* at 22.

**ER271**

Case 2:21-cv-00103-NDF   Document 39-3   Filed 09/27/22   Page 14 of 25
Appellate Case: 22-8043   Document: 010110699308   Date Filed: 10/24/2022   Page: 276
Case 4:21-cv-00595-O   Document 60   Filed 07/01/21   Page 13 of 24   PageID 1458

While not a requirement of Rule 23, courts only certify classes ascertainable under objective criteria. *DeBremaecker*, 433 F.2d at 734 (citations omitted).[1] "There can be no class action if the proposed class is amorphous or imprecise." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n.5 (5th Cir. 2007). "[T]he court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Frey v. First Nat'l Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (citations omitted). The Fifth Circuit has upheld the ascertainability of a class even when a definition necessitates individualized membership assessments that might *follow* litigation, so long as the class definition is sufficiently clear. *See, e.g.*, *Mullen v. Treasure Chest Casino*, 186 F.3d 620, 624 (5th Cir. 1999).

The Court finds that the proposed classes are ascertainable. The ascertainability inquiry is significantly relaxed for Rule 23(b)(2) certifications like this one. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 n.6 (5th Cir. 2004). Contrary to the Government's argument, "district courts do not err by failing to ascertain at the Rule 23 stage whether the class members include persons and entities who have suffered 'no injury at all.'" *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014). Plaintiffs here only seek classwide relief on their claim that section 1005 violates equal protection and Title VI, and the proposed definitions are sufficiently clear to identify class members at some stage of the proceeding for that claim. *See Frey*, 602 F. App'x at 168. As such,

---

[1] Ascertainability may not be applicable in the Rule 23(b)(2) context. *See, e.g.*, *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3rd Cir. 2015) ("[A]scertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief."); *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) ("The advisory committee's notes for Rule 23(b)(2) assure us that ascertainability is inappropriate in the (b)(2) context."); *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004) ("[W]hile the lack of identifiability [of class members] is a factor that may defeat Rule 23(b)(3) class certification, such is not the case with respect to class certification under Rule 23(b)(2)."). However, the Fifth Circuit has yet to endorse this view shared by other circuit courts. The Court need not decide whether it applies here, because the class is ascertainable.

**ER272**

both proposed classes are ascertainable. Accordingly, the Court concludes that Plaintiffs have satisfied the elements for class certification under Rule 23(a) and need only address whether the elements of Rule 23(b) are satisfied.

### 2.   Rule 23(b)

Plaintiffs move for class certification under Rule 23(b)(2). *See* Compl. 9, ECF No. 1. The Government argues that the requirements of Rule 23(b)(2) are not met because the USDA has not acted or refused to act on any request by Plaintiffs for debt relief under section 1005. *See* Class Cert. Resp. 19–20, ECF No. 28. It argues that Plaintiffs have "the opportunity to seek inclusion of those groups by submitting a written request with supporting explanation" for consideration by the Secretary on a case-by-case basis. *Id.* at 20. For this reason, any denial of benefits would necessarily vary from group to group and Plaintiff to Plaintiff. *See id.*

The Government misconstrues the requirements of Rule 23(b)(2). A class action filed pursuant to Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) does not require "common issues," only "common behavior by the defendant towards the class." *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012). "Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23(b)(2) advisory committee's note to 1966 amendment.

Here, the USDA acts on grounds that apply generally to the classes in administering the debt-relief program in a racially discriminatory way, as required by the statute. Plaintiffs seek an injunction stopping the USDA from providing loan forgiveness to individuals based on their race

**ER273**

Case 2:21-cv-00103-NDF   Document 39-3   Filed 09/27/22   Page 16 of 25

Appellate Case: 22-00595   Document 60-1   Filed 06/03/22   Date Filed 05/24/2022   Page: 15 of 24   PageID 1460   278
Case 4:21-cv-00595-O   Document 60-1   Filed 07/01/21   Page 15 of 24   PageID 1460

or ethnicity. *See* Inj. Mot. 1, ECF No. 18. As required, "a single injunction or declaratory judgment" here "would provide relief to each member of the" classes. *Wal-Mart*, 564 U.S. at 360. Because granting the requested relief would apply generally to the classes as a whole, the Court finds that Rule 23(b)(2) is satisfied.

### B. Preliminary Injunction

#### 1. Substantial Likelihood of Success on the Merits

Plaintiffs contend they are substantially likely to succeed on the merits of their constitutional challenge, as prioritized compensation for minorities for past discrimination by society is foreclosed as a matter of law. *See* Inj. Mot. 3–4, ECF No. 18 (citing *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989)). The Government concedes its prioritization scheme is race-based but maintains that it is allowed to use racial classification to remedy the lingering effects of past racial discrimination against minority groups—a "well-established" compelling government interest. *See* Inj. Resp. 26–27, ECF No. 27 (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 237 (1995)). The Government also submits that Congress narrowly tailored the law to achieve that compelling interest, considering the history of discrimination against minority farmers and specific gaps in pandemic-related funding for those racial groups. *See id.* The Court disagrees.

As other courts to consider this issue already have, the Court concludes that Plaintiffs are likely to succeed on the merits of their claim that the Government's use of race- and ethnicity-based preferences in the administration of the loan-forgiveness program violates equal protection under the Constitution. *See Faust v. Vilsack*, No. 21-C-548, 2021 WL 2409729, at *3 (E.D. Wis. June 10, 2021); *Wynn v. Vilsack*, No. 3:21-CV-514-MMH-JRK, 2021 WL 2580678, at *12 (M.D. Fla. June 23, 2021). "Government policies that classify people by race are presumptively invalid." *Vitolo v. Guzman*, Nos. 21-5517/5528, 2021 WL 2172181, at *4 (6th Cir. May 27, 2021) (citing

**ER274**

Case 2:21-cv-00103-NDF   Document 39-3   Filed 09/27/22   Page 17 of 25

Appellate Case: 22-2060   Document 00101906762   Date Filed: 01/24/2023   Page: 279
Case 4:21-cv-00595-O   Document 60   Filed 07/01/21   Page 16 of 24   PageID 1461

U.S. Const. amend. XIV; *Adarand*, 515 U.S. at 235). It is the Government's burden to establish that its race-based distribution of taxpayer money is narrowly tailored to achieve a compelling interest. *See Adarand*, 515 U.S. at 227. To do so, it must provide a "strong basis in evidence for its conclusion that remedial action was necessary." *Croson*, 488 U.S. at 500 (quoting *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 277 (1986)). In an analogous case, the Sixth Circuit summarized the Government's burden as follows: (1) the policy must target a specific episode of past discrimination, not simply relying on generalized assertions of past discrimination in an industry; (2) there must be evidence of past intentional discrimination, not simply statistical disparities; and (3) the government must have participated in the past discrimination it now seeks to remedy. *Vitolo*, 2021 WL 2172181, at *4–5.

Instead of demonstrating a strong basis, the Government's evidence of a compelling interest is a mixed bag. On the one hand, the Government points to cases where the USDA settled claims for past discrimination, leading Congress to enact special legislation addressing the civil rights complaints. *See* Inj. Resp. 32–33, ECF No. 27. On the other hand, the Government admits that the USDA is not currently discriminating against any socially disadvantaged farmers or ranchers. *See* Inj. Hearing Tr. Instead, it points to evidence of past intentional discrimination that, it argues, has produced lingering effects that continue to negatively affect these groups. *See id.* For example, it cites a 1982 report from the United States Commission on Civil Rights to show that the Farmers Home Administration (FmHA), the predecessor to the FSA, provided inferior loans and services to blacks as compared to whites. *See* Inj. Resp. 30, ECF No. 27. However, the same report details that the FmHA provided its loans based on credit-worthiness and did not have "jurisdiction to make loans for social purposes." *See* USCCR Rep. 19 (1982). Likewise, evidence from a 2011 investigation highlighted statistics on racial disparities in access to USDA programs

**ER275**

Case 2:21-cv-00103-NDF   Document 39-3   Filed 09/27/22   Page 18 of 25
Appellate Case: 22-8025   Document: 010110697731   Date Filed: 07/24/2022   Page: 280
Case 4:21-cv-00595-O   Document 60   Filed 07/01/21   Page 17 of 24   PageID 1462

and services and racial under-representation in USDA employment. *See* JL Rep. (2011). While this investigation yielded "concerns as to both inequitable service delivery, . . . employment discrimination" and "negative impact[s]" on minority farmers and ranchers, lacking was direct evidence of causation tying these results to government discrimination. *Id.* at 64, 131; *see also Croson*, 488 U.S. at 505 ("[I]t is especially important that the reasons for any such classification be clearly identified and unquestionably legitimate."). The same is true for evidence cited by the Government showing that a disproportionately low number of black farmers were aware of and provided funds from the USDA's Market Facilitation Program and first Coronavirus Food Assistance Program administered during the Trump administration. *See* Inj. Resp. 18–19, ECF No. 27.

All of this evidence shows disparate impact but requires an inference of intentional discrimination by the USDA or its agencies. *See Croson*, 488 U.S. at 503 (statistical disparity alone, absent a gross disparity, is insufficient to establish intentional discrimination); *Vitolo*, 2021 WL 2172181, at *4–5 ("there must be evidence of intentional discrimination in the past" at the hands of the government). Additionally, the Government puts forward no evidence of intentional discrimination by the USDA in at least the past decade. *See* Inj. Resp., ECF No. 27; Inj. Hearing Tr. To find intentional discrimination, then, requires a logical leap, as well as a leap back in time. In sum, the Government's evidence falls short of demonstrating a compelling interest, as any past discrimination is too attenuated from any present-day lingering effects to justify race-based remedial action by Congress. *See Gratz v. Bollinger*, 539 U.S. 244, 270 (2003) ("racial classifications are simply too pernicious to permit any but the most exact connection between justification and classification").

**ER276**

Even if the evidence clearly established historical governmental discrimination to give rise to a compelling interest, the Government must then show that its proposed remedy in the race-exclusionary program is narrowly tailored. *See id.* In the racial classifications context, narrowly tailored means explicit use of even narrowly drawn racial classifications can be used only as a last resort. *See Croson*, 488 U.S. at 519. This requires "serious, good faith consideration of workable race-neutral alternatives." *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003). The Government's claim that new race-based discrimination is needed to remedy past race-based discrimination is unavailing. *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 721 (2007) (plurality opinion) ("remedying past societal discrimination does not justify race-conscious government action"). Namely, it is founded on a faulty premise equating equal protection with equal results. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273 (1979) ("[T]he Fourteenth Amendment guarantees equal laws, not equal results."). As it argues, past, race-neutral attempts by Congress to correct perceived discrimination were ineffective in achieving parity in number, amounts, and servicing of USDA loans by race. *See* Inj. Resp. 39, ECF No. 27. The Court is skeptical of racial "parity" arguments, as they tend to sound a lot like racial balancing, something abhorrent to the concept of equal protection. *See Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 320 (1978). In any event, the Government's evidence does not support the conclusion that these disparities are the result of systemic discrimination justifying the use of race classifications here.

As pointed out by Judge Howard considering the same issue, the loan-forgiveness program is simultaneously overinclusive and underinclusive: overinclusive in that the program provides debt relief to individuals who may never have experienced discrimination or pandemic-related hardship, and underinclusive in that it fails to provide any relief to those who have suffered such discrimination but do not hold a qualifying FSA loan. *See Wynn v. Vilsack*, 2021 WL 2580678, at

**ER277**

Case 2:21-cv-00103-NDF   Document 39-3   Filed 09/27/22   Page 20 of 25
Appellate Case: 22-00595   Document 60   Date Filed: 07/01/21   Page: 19 of 24   Page ID: 1464
Case 4:21-cv-00595-O   Document 60   Filed 07/01/21   Page 19 of 24   PageID 282

*10. The Government also wants to have it both ways in arguing that the appropriated funds are limitless, therefore Plaintiffs cannot establish irreparable harm, *see infra*, yet are limited enough that Congress was justified excluding some farmers and ranchers from the debt-relief program based on their race and ethnicity. *See* Inj. Hearing Tr. In short, the statute's check-the-box approach to the classification of applicants by race and ethnicity is far different than the "highly individualized, holistic review" of individuals in a classification system permitted as narrowly tailored in a case like *Grutter*. 539 U.S. at 337; *see also Fisher v. U. of Tex.*, 136 S. Ct. 2198, 2214 (2016). Because the Government has not demonstrated a compelling interest or a narrowly tailored remedy under strict scrutiny, the Plaintiffs have shown a substantial likelihood of success on the merits.

### 2. Substantial Threat of Irreparable Harm

Plaintiffs contend that they "will suffer irreparable harm absent a preliminary injunction because the entirety of funds Congress appropriated under section 1005 will be unavailable to them," and "there is no mechanism to 'claw back' this money once the government dispenses it." Inj. Mot. 4, ECF No. 18. The Government responds that either Plaintiffs are eligible socially disadvantaged farmers or ranchers, in which case their claim to the appropriated funds will be unaffected by an injunction, or they are ineligible, in which case an "injunction to further delay distribution of needed funds to *others* who do fit within the definition still will not remedy any harm to Plaintiffs." Inj. Resp. 24–24, ECF No. 27. The Government contends that, if Plaintiffs succeed on the merits of their claim, the Court could order debt relief from the program funds; therefore, any harm at this stage is reparable. *See id.* at 45–46. To show immediate and irreparable harm, Plaintiff must demonstrate he is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable

ER278

where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). But "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.* An injunction is appropriate only if the anticipated injury is imminent and not speculative. *See Winter*, 555 U.S. at 22.

Here, Plaintiffs are suffering a continuing and irreparable injury based on the direct effects of the race- and ethnicity-based application process. An ongoing constitutional deprivation can be sufficient to establish irreparable harm. *See Nat'l Solid Wastes Mgmt. Ass'n v. City of Dallas*, 903 F. Supp. 2d 446, 470 (N.D. Tex. 2012) ("[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable [harm] is necessary."). Aside from that, there is the risk that any Plaintiffs who do establish the right to relief on the merits will be unable to access program funding by the time they receive a judgment in their favor. The Government suggests that the appropriated funds are limitless and will last long enough for Plaintiffs to access them if and when they secure a judgment on the merits. *See* Inj. Hearing Tr. The limited nature of Congressional appropriations both in terms of time and money suggest otherwise. While the Government may at times act like it, the public fisc is not bottomless, and at any time, Congress can turn off the spigot. *See Baker v. Concord*, 916 F.2d 744, 749 (1st Cir. 1990) ("Public funding to assist the disadvantaged is, of course, not limitless.").

Second, "our constitutional structure does not permit [courts] to 'rewrite the statute that Congress has enacted.'" *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 136 S. Ct. 1938, 1949 (2016). Thus, contrary to the Government's argument, if Plaintiffs were to prove at the merits stage that they are ineligible under the program but that the program violates equal protection, this Court is unable to provide a remedy as part of a judgment in favor of Plaintiffs extending debt relief to them under the statute. To do so would be a violation of the Appropriations Clause and the plain

**ER279**

text of section 1005 of the ARPA, which explicitly limits how the appropriated funds may be spent. *See* ARPA, Pub. L. No. 117-2, § 1005 (2021) (only authorizing payments to "socially disadvantaged farmers" as defined in in section 2501(a) of the Food, Agriculture Conservation, and Trade Act of 1990). *See* U.S. Const. art. I, § 9, cl. 7; *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 ("no money can be paid out of the Treasury unless it has been appropriated by an act of Congress."). Given the Government's sovereign immunity and Plaintiffs' inability to seek damages retrospectively, these injuries are irreparable.

Finally, although the Government argues that any injunctive relief is unnecessary so long as injunctions on the same issue are in place from other courts, the existence of overlapping injunctive relief from other courts does not serve to automatically eliminate irreparable harm in parallel litigation, and the Government cites no authority to suggest otherwise. *See, e.g.*, *Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233 (4th Cir. 2018); *Hawaii v. Trump*, 878 F.3d 662 (9th Cir. 2017). Additionally as it concerns the scope of relief, Plaintiffs do not seek nationwide relief here, as the Government seems to suggest. *See* Inj. Resp. 46, ECF No. 27. Plaintiffs agree on the impropriety of a universal injunction and only seek relief tailored to any classes certified under Rule 23. *See* Inj. Reply 14–15, ECF No. 42.

Accordingly, the Court concludes that Plaintiffs face a substantial threat of irreparable harm absent a preliminary injunction because Plaintiffs are experiencing race-based discrimination at the hand of government officials and will be barred from even being considered for funding from the program as a result of this discrimination.

### 3.  Balance of Hardships and the Public Interest

**ER280**

Case 2:21-cv-00103-NDF   Document 39-3   Filed 09/27/22   Page 23 of 25
Case 4:21-cv-00595-O   Document 60   Filed 07/01/21   Page 22 of 24   PageID 1467
Appellate Case: 22-2000595-O   Document 60-1   Filed 07/01/21   Date Filed 06/24/2022   Page: 285

The Court next considers whether the threatened injury to Plaintiffs outweighs any damage to the Government and the public from the proposed preliminary injunction.[2] Plaintiffs argue that a "preliminary injunction will not only alleviate the financial harms that are being inflicted the plaintiffs, but it will also eliminate the injury to their constitutional right to be free from racial discrimination at the hands of the government." Inj. Mot. 6, ECF No. 18. Plaintiffs submit that, if an injunction is granted, any harm to socially disadvantaged farmers and ranchers could only come from the Government's choice to shut off funding to everyone in lieu of awarding loan forgiveness without considering race or ethnicity. *See id.* at 5. The Government disagrees, maintaining that Congress determined that timely debt relief for minority farmers was necessary to remedy past discrimination by the USDA. *See* Inj. Resp. 42, ECF No. 27.

The Government again fails to adequately explain how the exclusion of certain races and ethnicities from consideration for loan forgiveness benefits the already eligible socially disadvantaged farmers and ranchers or the public at large. Even if it could, the inherent harm from an unlawful government-run racially discriminatory program is detrimental to the public interest. *See Bakke*, 438 U.S. 265, 289–90 ("The guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color. If both are not accorded the same protection, then it is not equal."). The Court finds that Plaintiffs suffer an ongoing constitutional injury from the irreversible act of government-sanctioned racial discrimination and that, on balance, this harm weighs in favor of immediate injunctive relief here.

### 4. Bond

---

[2] The Court considers the balance of hardships and public interest factors together as they overlap considerably. *See Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), *aff'd*, 136 S. Ct. 2271 (2016).

**ER281**

Case 2:21-cv-00103-NDF   Document 39-3   Filed 09/27/22   Page 24 of 25
Appellate Case: 22-8050   Document: 010110697698   Date Filed: 09/16/2022   Page: 286
Case 4:21-cv-00595-O   Document 60   Filed 07/01/21   Page 23 of 24   PageID 1468

Rule 65(c) provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any part found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of security required "is a matter for the discretion of the trial court," and the Fifth Circuit has held district courts have discretion to "require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (citing *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)). In determining the appropriate amount, the Court may elect to require no security at all. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996); *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 235 (S.D. Tex. 2011) (citing *EOG Resources, Inc. v. Beach*, 54 F. App'x 592 (5th Cir. 2002)). The Court finds no evidence that the Government will suffer any financial loss from a preliminary injunction, so there is no need for Plaintiffs to post security in this case.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs have met their burden for class certification and certifies both proposed classes.[3] Additionally, Plaintiffs have met their burden demonstrating the need for a preliminary injunction in this case. Accordingly, the Court **GRANTS** Plaintiffs' Motion for Class Certification (ECF No. 12), **GRANTS** Plaintiffs' Motion for Preliminary Injunction (ECF No. 17), and **ENJOINS** Defendants Tom Vilsack, and the United States Department of Agriculture and their officers, agents, servants, employees, attorneys,

---

[3] Plaintiffs Greg Macha, James Meek, Jeff Peters, and Lorinda O'Shaughnessy may proceed in this case as representatives of themselves and "all farmers and ranchers in the United States who are encountering, or who will encounter, racial discrimination from the United States Department of Agriculture on account of section 1005 of the American Rescue Plan Act."

All named Plaintiffs may proceed in this case as representatives of themselves and "all farmers and ranchers in the United States who are currently excluded from the definition of 'socially disadvantaged farmer or rancher,' as defined in 7 U.S.C. § 2279(a)(5)–(6) and as interpreted by the Department of Agriculture."

**ER282**

Case 2:21-cv-00103-NDF   Document 39-3   Filed 09/27/22   Page 25 of 25

Appellate Case: 22-8058   Document: 010110672363   Date Filed: 01/24/2023   Page: 287
Case 4:21-cv-00595-O   Document 60   Filed 07/01/21   Page 24 of 24   PageID 1469

designees, and subordinates, as well as any person acting in concert or participation with them from discriminating on account of race or ethnicity in administering section 1005 of the American Rescue Plan Act for any applicant who is a member of the Certified Classes. This prohibition encompasses: (a) considering or using an applicant Class Member's race or ethnicity as a criterion in determining whether that applicant will obtain loan assistance, forgiveness, or payments; and (b) considering or using any criterion that is intended to serve as a proxy for race or ethnicity in determining whether an applicant Class Member will obtain loan assistance, forgiveness, or payments.

     **SO ORDERED** this **1st day** of **July 2021**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

**ER283**

NICHOLAS VASSALLO
Acting United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Nick.vassallo@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
LESLEY FARBY
Assistant Branch Director
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259 / Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **LEISL M. CARPENTER**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-cv-103-F |
| | ) |
| **THOMAS J. VILSACK**, in his official | ) |
| capacity as Secretary of Agriculture, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPLY BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO LIFT STAY AND
## TO DISMISS AS MOOT

**ER284**

# INTRODUCTION

Plaintiff Leisl Carpenter challenges Section 1005 of the American Rescue Plan Act (ARPA),[1] alleging that it violates the equal protection principles of the Fifth Amendment of the U.S. Constitution. But § 1005 was expressly repealed by the Inflation Reduction Act.[2] Because Plaintiff has "no legally cognizable interest in the constitutional validity of" § 1005—a now "obsolete statute"— her case is now moot. *Camfield v. City of Okla. City*, 248 F.3d 1214, 1223 (10th Cir. 2001) (quoting *Citizens for Responsible Gov't State Political Action Comm. v. Davidson,* 236 F.3d 1174, 1182 (10th Cir. 2000)). The Court should dismiss the case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

Plaintiff does not dispute § 1005 has been repealed, and that USDA therefore cannot implement it in any way going forward. Instead, Plaintiff asserts that alleged past harms stemming from discrete actions Defendants took toward implementation of the repealed statute nearly eighteen months ago keep her case alive. But whether Plaintiff was injured by § 1005 in the past is beside the point. Any such past harms establish no ongoing case or controversy such that Plaintiff could obtain prospective injunctive or declaratory relief concerning the constitutionality of § 1005. In short, because the Court can grant no effective relief on Plaintiff's challenge to the constitutional validity of the now-repealed § 1005, Plaintiff's case is moot and should be dismissed.

# ARGUMENT

**I.   Because there is no meaningful relief the Court could order on Plaintiff's constitutional challenge to an obsolete statute, Plaintiff's case is moot.**

When determining whether a case is moot, "[t]he crucial question is whether granting a *present* determination of the issues offered will have some effect in the real world." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010) (emphasis in original) (quoting

---

[1] Pub. L. No. 117-2, 135 Stat. 4 (2021).
[2] Pub. L. No. 117-169 § 22008, 136 Stat. 1818, 2023 (2022).

1

**ER285**

*Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005)). Thus, a court "must ascertain what type of relief the [plaintiff] seek[s]" and determine whether it "can, at th[at] juncture, afford [her] meaningful relief." *Id.* Where, as here, a plaintiff challenges the constitutionality of a statute, the repeal of the statute necessarily means that ruling on its constitutionality would have no real-world effect. As the Tenth Circuit has stated, "parties have no legally cognizable interest in the constitutional validity of an obsolete statute." *Camfield*, 248 F.3d at 1223 (citation omitted). Declaring a void statute unconstitutional or enjoining its application in the future "would constitute a 'textbook example of advising what the law would be upon a hypothetical set of facts[.]'" *Id.* (quoting *Nat'l Advert. Co. v. City & Cnty. of Denver,* 912 F.2d 405, 412 (10th Cir. 1990)).

Under straightforward application of this precedent, there is no question that Plaintiff's equal protection challenge to § 1005 is moot. Through this suit, Plaintiff seeks a declaration that § 1005 is "unconstitutional under the Equal Protection principles of the Fifth Amendment of the United States Constitution" and an injunction precluding the government from enforcing its terms. *See* Compl, Relief Requested, ECF No. 1. Yet Plaintiff does not dispute that § 1005 was repealed in its entirety, and that the government accordingly cannot implement it. Nor does she argue that any evidence shows a congressional intent to reenact § 1005, which is the only basis on which she might establish an exception to mootness despite § 1005's repeal. *See Rio Grande Silvery Minnow*, 601 F.3d at 1117; *see also* Mem. in Supp. of Defs.' Mot. to Lift Stay & to Dismiss as Moot ("Defs.' Mot. to Dismiss") 5, ECF No. 38. Thus, Plaintiff no longer has any legally cognizable interest in § 1005's constitutional validity. An order declaring § 1005 unconstitutional and enjoining its application would afford Plaintiff no meaningful relief. Her case is therefore moot.

Plaintiff's efforts to avoid this conclusion are meritless. According to Plaintiff, her alleged *past* injuries stemming from the past steps taken by Defendants toward § 1005's implementation keep her

**ER286**

case alive. In particular, Plaintiff contends that a few test payments to New Mexican farmers,[3] made in June 2021 during the initial stages of pre-injunction implementation of § 1005, inflict an *ongoing* injury to her that the Court may remedy through a ruling on § 1005.[4] *See generally* Pl.'s Opp'n, ECF No. 39. Therefore, she contends, her case is not moot. Not so.

These handful of past test payments create no ongoing injury with respect to Plaintiff's equal protection claim. The mere payment of funds to other farmers does not constitute an equal protection injury. In an equal protection case of this nature, "the right asserted" is "the right to *receive* benefits distributed according to classifications which do not without sufficient justification differentiate among covered applicants solely on the basis of impermissible criteria" *Day v. Bond*, 500 F.3d 1127, 1133 (10th Cir. 2007) (emphasis added) (alterations, quotation marks and citation omitted). In an equal protection case, the "injury in fact is simply 'the existence of a government erected barrier that makes it more difficult for members of one group *to obtain* a benefit than it is for members of another group.'" *Id.* (quoting *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 493 (10th Cir. 1998)) (emphasis added). Thus, it is the denial of "the opportunity to compete for [the government benefit] on an equal basis," which constitutes the equal protection injury. *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003); *see also Byers*

---

[3] Plaintiff also speculates that the government might have credited back loan payments or provided debt relief to other borrowers before an injunction was entered. Opp'n to Defs.' Mot. to Lift Stay & to Dismiss as Moot ("Pl.'s Opp'n") 1, 6, ECF No. 39. While Defendants deny making any such payments or providing debt relief, for the same reasons that the four test payments do not constitute an ongoing injury, *infra* at 3-5, Plaintiff's speculations about any other payments that might have been made fail to show any ongoing or future injury on which the Court may grant effective relief.

[4] Plaintiff misconstrues the declaration Defendants filed in *Faust v. Vilsack*, No. 21-cv-548 (E.D. Wis.). *See* Ex. 1 to Pl.'s Opp'n, ECF No. 39-1 That declaration explains that USDA issued test payments to four borrowers who were eligible for § 1005 relief, *id.* ¶¶ 28-30, and not that USDA paid off the entirety of those four borrowers' loans. Regardless, the amount of payment these recipients received pursuant to USDA's testing procedures prior to implementing § 1005, and prior to the entry of any injunction, is irrelevant. For reasons explained herein, any alleged injury stemming from such payments, or any other steps Defendants took toward implementing § 1005 before it was enjoined, do not create a continuing injury supporting a claim for prospective relief as to the constitutional validity of that provision after its repeal.

3

**ER287**

*v. City of Albuquerque*, 150 F.3d 1271, 1276 (10th Cir. 1998) (explaining that "the denial of the opportunity to compete on equal footing" is the injury in fact in an equal protection case). The injury is "not the ultimate inability to obtain the benefit," *Gratz*, 539 U.S. at 262, but is "the imposition of the barrier itself," *Day*, 500 F.3d at 1133 (citation omitted).

Plaintiff thus suffers no equal protection injury from the payment of funds to others.[5] Any injury stems from the alleged unequal treatment of denying *Plaintiff* debt relief under § 1005 on the basis of her race. But Plaintiff does not, and cannot, show any likelihood of such unequal treatment in the future, given that § 1005 has been repealed. Neither Plaintiff nor any other farmer will obtain any benefits under the now-repealed § 1005. Plaintiff's argument that a handful of past payments create a lingering harm lacks any legal or factual basis—ultimately, Plaintiff's arguments do nothing more than "merely recast[] a past harm as a continuing one." *Dorce v. City of New York*, 2 F.4th 82, 95–96 (2d Cir. 2021).

Alleged past unequal treatment does not show a continuing case or controversy. "[I]t is not enough that [the] dispute" over § 1005 "was very much alive when suit was filed." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). To obtain the prospective injunctive and declaratory relief sought here, Plaintiff must "demonstrate a good chance of being likewise injured by [Defendants] *in the future.*" *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded on other grounds as recognized in Walker v. UPS, Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001) (citation omitted) (emphasis added). In other

---

[5] Indeed, it is axiomatic that while a plaintiff need not "show that he *would* have obtained the benefit but for the discriminatory effects of a government-erected barrier, the plaintiff must nevertheless demonstrate that he *could* have obtained the benefit." *Day v. Bond*, 500 F.3d 1127, 1135 (10th Cir. 2007). If "a plaintiff cannot do so because nondiscriminatory classifications would disqualify him from eligibility for the benefit even absent the challenged discriminatory classification, he cannot show injury caused by the discrimination, nor can he show injury that would be redressed by a decision in his favor; he therefore lacks standing to bring his claim." *Id.* Here, the test payments were limited to farmers in New Mexico for reasons unrelated to race or ethnicity, *see* Pl.'s Opp'n 6 (quoting Cobb Decl. ¶ 28, ECF No. 39-1), and so Plaintiff could not have obtained a test payment even if the government had not considered her race or ethnicity.

ER288

words, it is not enough that, as Plaintiff contends, Defendants previously denied her the opportunity to obtain § 1005 debt relief solely because of her race. She must show that Defendants will deny her that opportunity in the future. Plaintiff cannot do so, because § 1005—the basis for the alleged unequal treatment—is obsolete.

The Sixth Circuit's decision in *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), does not stand for a contrary proposition, despite Plaintiff's reliance on that case. *See* Pl.'s Opp'n 16. There, the court found that an equal protection claim was not moot because "[r]ace and sex preferences continue[d] to bear on whether an applicant receives a grant" under an extant statute. *Vitolo*, 999 F.3d at 359. Thus, the court explained that "a court order ending those preferences will relieve the plaintiffs' injury" stemming from the use of racial preferences as provided by the statute. *Id.* Here, however, a court order on the constitutional validity of considering race in implementing § 1005 will not relieve any injury to Plaintiff, because Defendants are not considering race in implementing § 1005—they are not implementing § 1005 at all, as that statute no longer exists.

Plaintiff's assertion that the government must "unwind its misconduct" by recovering funds previously paid to moot her claim of unequal treatment, Pl.'s Opp'n 14, is therefore meritless. Plaintiff no longer suffers any equal protection injury because her eligibility for § 1005 debt relief no longer turns on her race or ethnicity: she is ineligible for § 1005 benefits, just like every other farmer, because § 1005 has been repealed. Nor does Plaintiff identify any case imposing such a requirement for mootness. In any event, the Court could not order the type of "unwind[ing]" relief that Plaintiff now purports to seek. Plaintiff asserts that "recipients of Section 1005 benefits have no right to keep" any funds previously administered to them. *Id.* at 8. There is no legal basis for the Court to order non-parties to reimburse the government, and Plaintiff identifies no legal theory on which the government could demand reimbursement for payments made pursuant to an Act of Congress before it was preliminarily enjoined. There is thus no "meaningful relief" the Court could order to remedy any

**ER289**

lingering injury from a handful of past payments, even assuming one existed. *Rio Grande Silvery Minnow*, 601 F.3d at 1110–11. Accordingly, Plaintiff's case must be dismissed as moot.

## II. Plaintiff forfeited any claims for nominal damages or costs and fees, but those claims would not prevent mootness even if they had not been forfeited.

Finally, by failing to respond to Defendants' arguments regarding Plaintiff's claims for nominal damages and costs and fees, *see* Defs.' Mot. to Dismiss 5-8, Plaintiff has forfeited any such claims for damages and costs and fees initially sought in her Complaint, *see* Compl., Relief Requested. *Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) (respondent's failure to "address [an] argument" that a claim should be dismissed "amount[ed] to a forfeiture of the . . . claim"); *Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 875 (W.D. Mich. 2014) (cursory response to arguments in motion to dismiss two claims were a "fail[ure] to respond or to otherwise oppose" the motion).

As Defendants explained in their motion, the government has not waived sovereign immunity for nominal damages. *See Clark v. Libr. of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984) ("Sovereign immunity, however, does bar suits for money damages against officials in their official capacity absent a specific waiver by the government." (emphasis removed)). And it is well established that claims for costs and fees are ancillary to the litigation and do not preserve a case that is otherwise moot. *See, e.g., In re W. Pac. Airlines, Inc.*, 181 F.3d 1191, 1196 (10th Cir. 1999); *see also* Defs.' Mot. to Dismiss 8. Accordingly, any claim to nominal damages or fees and costs would not prevent mootness. The Court need not even address these claims, however, as Plaintiff has forfeited any argument against mootness based on these claims.

## CONCLUSION

For all of these reasons, and those set forth in Defendants' motion to dismiss, the Court should dismiss Plaintiff's case as moot under Federal Rule of Civil Procedure 12(b)(1).

**ER290**

Dated: October 4, 2022                    Respectfully submitted,

                                          NICHOLAS VASSALLO
                                          Acting United States Attorney

                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General

                                          LESLEY FARBY
                                          Assistant Branch Director
                                          Civil Division, Federal Programs Branch

                                          _/s/ Kyla M. Snow_____
                                          KYLA M. SNOW (Ohio Bar No. 96662)
                                          Trial Attorney
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          1100 L Street, NW
                                          Washington, D.C. 20005
                                          Tel: (202) 514-3259 / Fax: (202) 616-8460
                                          Kyla.snow@usdoj.gov

                                          _Counsel for Defendants_

7

**ER291**



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

**3:25 pm, 10/7/22**

**Margaret Botkins**
**Clerk of Court**

| | |
|---|---|
| LEISL M. CARPENTER, | |
| Plaintiff, | |
| vs. | Case No.  21-CV-0103-F |
| THOMAS J. VILSACK, in his official capacity as Secretary of Agriculture, et al., | |
| Defendants. | |

---

**ORDER GRANTING DEFENDANTS' MOTION TO
LIFT STAY AND DISMISS AS MOOT**

---

This matter comes before the Court on Defendants' *Motion to Lift Stay and Dismiss Case as Moot.*  ECF 37.  Defendants argue the case is now moot given the express repeal of Section 1005 of the American Rescue Plan Act (ARPA), which section was challenged by Plaintiff as violative of the equal protection principles of the Fifth Amendment of the U.S. Constitution.   Plaintiff opposes Defendants' motion, arguing Plaintiff's injury continues because others who are similarly situated experienced a windfall based on their race by way of payments made under Section 1005 which should be unwound to restore constitutional balance.   Based on the conclusion that there is no ongoing case or controversy under which Plaintiff can obtain relief on the claims pled, the Court GRANTS Defendants' motion to lift stay and DISMISSES the case.

**ER292**

Background

The parties are familiar with the facts and procedural history of this case so the Court will not repeat it here in any detail.  Suffice to say that Section 1005 provided debt relief to farmers and ranchers based on their race.  Even though Plaintiff is a rancher with qualifying debt, her Norwegian and Swedish ancestry disqualified her from Section 1005 relief.  Plaintiff filed her complaint seeking declaratory and injunctive relief and "other and further relief as the Court deems appropriate." ECF 1, p. 14.  Plaintiff's contention is that Section 1005 – and Defendants' implementation of that section – violates the U.S. Constitution's guarantee of equal protection of the laws.

The Court stayed this case recognizing, among other considerations, that the preliminary injunctions entered by other courts prohibited enforcement of Section 1005's racial exclusions.  ECF 33.  Now Congress has definitively acted to repeal Section 1005. *See* Inflation Reduction Act of 2022 (IRA) § 22008.  However, before the injunctions and the repeal, Defendants tested "the effectiveness of the procedures" to deliver debt relief by mailing five Section 1005 "offer letters" to eligible recipients in New Mexico.  ECF 39-1, ¶ 28.  New Mexico was selected for the test "based in part on having one of the larger volumes of direct loan borrowers eligible for [debt relief] and a high level of experienced staff."  *Id*.  Four eligible test recipients responded and received debt relief payments. *Id*. at ¶¶ 28-30.

Applicable Legal Standard

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Disability Law Ctr. v. Millcreek*

**ER293**

*Health Ctr*., 428 F.3d 992, 996 (10th Cir. 2005) (quoting *McClendon v. City of Albuquerque*, 100 F.3d 863,867 (10th Cir. 1996)).   The Tenth Circuit summarized the mootness doctrine as follows:

> In cases involving mootness, "[t]he starting point for [our] analysis is the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413, (1971)). The mootness doctrine "derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *Id*. The Supreme Court has described it as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363,1384 (1973)). "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Wyoming v. U.S. Dep't of Agric*., 414 F.3d 1207, 1212 (10th Cir. 2005) (quoting *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1223 (10th Cir. 2001)). "Put another way, a case becomes moot 'when a plaintiff no longer suffers "actual injury that can be redressed by a favorable judicial decision." ' " *Ind v. Colo. Dep't of Corr*., 801 F.3d 1209, 1213 (10th Cir. 2015) (quoting *Rhodes v. Judiscak*, 676 F.3d 931, 933(10th Cir. 2012)).

*Ghailani v. Sessions*, 859 F.3d 1295, 1300-1301 (10th Cir. 2017).

<u>Discussion</u>

There is no question that Section 1005 has been repealed.  Consequently, Plaintiff's request to enjoin Defendants from applying, implementing, or enforcing Section 1005 is moot.  Simply put, the legislative repeal means that Defendants lack any authority to apply, implement, or enforce Section 1005 and this Court cannot alter this situation.

3

**ER294**

Further, the repeal also moots Plaintiff's requests for declarations relating to Plaintiff's eligibility for Section 1005 loan forgiveness and the constitutional soundness of further loans to those who receive Section 1005 loan forgiveness. Following the repeal of Section 1005, neither Plaintiff nor anyone else may receive loan forgiveness or further loans under this section. Therefore, this Court lacks any power to alter or affect the rights of Plaintiff or others relating to these questions.

The only remaining issue is Plaintiff's argument that the case is not moot because Defendants' past actions in the New Mexico test continue to injure Plaintiff's equal protection rights. According to Plaintiff, this injury can only be remedied by a declaration that Defendant's actions in testing Section 1005 violated the constitution, and an award of "other relief" to require that Defendants claw back the benefits provided. For the following reasons, Plaintiff's last argument is unpersuasive.

In returning to Tenth Circuit precedent, the analysis is clearer by reviewing mootness in the context of "standing set in a timeframe." *Ghailani*, 859 F.3d at 1300 (quoting *U.S. Parole Comm'n*, 445 U.S. at 397). Plaintiff's personal interest is specifically pled. Plaintiff raises cattle and farms hay in Wyoming. ECF 1, ¶ 20. Plaintiff took out a real estate loan from the Farm Service Agency (FSA), and she would be eligible for the Section 1005 loan forgiveness program, and future FSA loans,[1] except for the fact that she is not a member of any of the racial groups that are eligible for loan forgiveness. *Id*. at ¶¶ 13.

---

[1] The law prohibits her from obtaining further loans from the Department of Agriculture if she received any form of debt forgiveness on her FSA loan, with the only exception being loan forgiveness under Section 1005. ECF 1, ¶ 22.

**ER295**

Given the repeal of Section 1005, Plaintiff's personal interest in Section 1005 benefits (i.e., receiving loan forgiveness and future FSA loans) is now entirely lost to her and everyone else.  In other words, while Plaintiffs personal interest in the benefits of Section 1005 existed at the commencement of her case, that interest doesn't continue now.  Also, any "claw back" of past benefits to others in New Mexico in no way advances or affects the specific personal interest Plaintiff pled in this case.  The actual injury pled was that Plaintiff could not receive loan forgiveness with an opportunity to obtain a future FSA loan, and this injury cannot be redressed by a favorable judicial decision.  In short, this is a classic case for the application of the mootness doctrine.

Finally, Plaintiff has no persuasive argument to equalize the playing field by unwinding Defendant's test of Section 1005.  Completely apart from any considerations of race, Plaintiff was never within that so-called "playing field" for the simple reason that her property is in Wyoming.  Thus, Plaintiff fails to show any actual injury, in 2021 or now, from the actions taken by Defendants that solely affected FSA loan borrowers in New Mexico.

For the forgoing reasons, the Court GRANTS Defendant's motion to lift stay and dismiss the case.  The stay entered by order of the Court (ECF 33) is LIFTED.  Because the Court lacks jurisdiction, this case is DISMISSED.

Dated this 7th day of October, 2022.

_____
NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE

**ER296**

Timothy M. Stubson (Bar No. 6-3144)
CROWLEY FLECK, PLLP
111 W. 2nd Street, Suite 220
Casper, WY 82601
(307) 265-2279
tstubson@crowleyfleck.com

William E. Trachman (*pro hac vice*)
MOUNTAIN STATES LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org

Kimberly S. Hermann (*pro hac vice*)
Braden Boucek (*pro hac vice*)
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Telephone: (770) 977-2131
khermann@southeasternlegal.org
bboucek@southeasternlegal.org

*Attorneys for Plaintiff Leisl M. Carpenter*

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| LEISL M. CARPENTER, | Case No. 0:21-cv-00103-NDF |
| *Plaintiff*, | |
| v. | |
| THOMAS J. VILSACK, in his official capacity as Secretary of the United States Department of Agriculture, and | **NOTICE OF APPEAL** |
| ZACH DUCHENEAUX, in his official capacity as Administrator of the Farm Service Agency, | |
| *Defendants*. | |

**ER297**

**NOTICE OF APPEAL**

Pursuant to Federal Rules of Appellate Procedure 3 and 4, notice is hereby given that Plaintiff Leisl M. Carpenter appeals to the U.S. Court of Appeals for the Tenth Circuit from this Court's Order, granting Defendants' Motion to Lift Stay and Dismiss as Moot (ECF No. 37), dated and entered October 7, 2022 (ECF No. 41). Plaintiff Carpenter also hereby appeals all prior orders and decisions that merge into that Order.

Dated: <u>November 28, 2022</u>.

1

Respectfully submitted,

/s/ William E. Trachman
William E. Trachman*
CO Bar No. 45684
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
wtrachman@mslegal.org

/s/ B.H. Boucek
BRADEN H. BOUCEK
TN BPR No. 021399
KIMBERLY HERMANN
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Telephone: (770) 977-2131
bboucek@southeasternlegal.org

*Appearing Pro Hac Vice

Timothy M. Stubson (Bar No. 6-3144)
Crowley Fleck, PLLP
111 W. 2nd Street, Suite 220
Casper, WY 82601
(307) 265-2279
tstubson@crowleyfleck.com

*Counsel for Plaintiff Leisl M. Carpenter*

2

**ER299**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 28, 2022, I caused a true and correct copy of the foregoing

document to be electronically filed with the Clerk of the Court using the Court's CM/ECF system

which sent notification of such filing to all counsel of record of this matter.

*/s/ William E. Trachman*
William E. Trachman

**ER300**