**[ORAL ARGUMENT NOT REQUESTED]**

**No. 22-8079**

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

—————————————

LEISL M. CARPENTER,

*Plaintiff-Appellant,*

v.

THOMAS J. VILSACK, in his official capacity as
Secretary of Agriculture, et al.,

*Defendants-Appellees.*

—————————————

On Appeal from the United States District Court for the
District of Wyoming [No. 2:21-cv-103 (Freudenthal, J.)]

—————————————

**BRIEF FOR DEFENDANTS-APPELLEES**

—————————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

NICHOLAS VASSALLO
  *United States Attorney*

ABBY C. WRIGHT
JEFFREY E. SANDBERG
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7214*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-4453*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED APPEALS

STATEMENT OF JURISDICTION .................................................................. 1

STATEMENT OF THE ISSUE ..................................................................... 1

STATEMENT OF THE CASE ...................................................................... 2

A.    Factual Background ........................................................................ 2

    1.    ARPA Section 1005 ................................................................... 2

    2.    Litigation Challenging Section 1005 .......................................... 4

    3.    Repeal of Section 1005 ............................................................. 7

B.    This Lawsuit .................................................................................... 8

    1.    Plaintiff's Complaint ................................................................. 8

    2.    Stay and Dismissal ................................................................... 9

SUMMARY OF ARGUMENT ..................................................................... 12

STANDARD OF REVIEW ......................................................................... 13

ARGUMENT ............................................................................................ 14

PLAINTIFF'S CHALLENGE TO SECTION 1005 IS MOOT ...................... 14

A.    Because Section 1005 Has Been Repealed, Plaintiff No Longer
    Suffers Any Cognizable Injury. ..................................................... 14

B.    Plaintiff's Attempts To Manufacture An Ongoing Case Or
    Controversy Fail ............................................................................ 17

CONCLUSION .......................................................................................... 32

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                         **Page(s)**

*Alaska v. USDA,*
   17 F.4th 1224 (D.C. Cir. 2021) .............................................. 18-19, 20

*Allen v. Wright,*
   468 U.S. 737 (1984) ........................................................................ 26

*Already, LLC v. Nike, Inc.,*
   568 U.S. 85 (2013) .................................................................... 14, 18

*American Bar Ass'n v. FTC,*
   636 F.3d 641 (D.C. Cir. 2011) ......................................................... 18

*American Charities for Reasonable Fundraising Regulation, Inc. v.*
   *O'Bannon,*
   909 F.3d 329 (10th Cir. 2018) ......................................................... 27

*Arizona Christian Sch. Tuition Org. v. Winn,*
   563 U.S. 125 (2011) ........................................................................ 26

*Arizonans for Official English v. Arizona,*
   520 U.S. 43 (1997) .................................................................... 14, 27

*Baca v. Colorado Dep't of State,*
   935 F.3d 887 (10th Cir. 2019), *rev'd on other grounds,*
   140 S. Ct. 2316 (2020) .................................................................... 27

*Board of Trs. of Glazing Health & Welfare Tr. v. Chambers,*
   941 F.3d 1195 (9th Cir. 2019) (en banc) ........................................... 19

*Bronson v. Swensen,*
   500 F.3d 1099 (10th Cir. 2007) ........................................................ 8

*Brown v. Buhman,*
   822 F.3d 1151 (10th Cir. 2016) .................................... 14, 15, 19, 27

*Camfield v. City of Oklahoma City,*
   248 F.3d 1214 (10th Cir. 2001) .................................... 12, 15, 16, 20

- ii -

*Campbell-Ewald Co. v. Gomez,*
   577 U.S. 153 (2016) ........................................................................... 14

*Checker Cab Operators, Inc. v. Miami-Dade County,*
   899 F.3d 908 (11th Cir. 2018) ........................................................... 16

*Citizens for Responsible Gov't State Political Action Comm. v. Davidson,*
   236 F.3d 1174 (10th Cir. 2000) ......................................................... 15

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ....................................................................... 22, 23

*County of Suffolk v. Sebelius,*
   605 F.3d 135 (2d Cir. 2010) ............................................................... 28

*Davis ex rel. Davis v. United States,*
   343 F.3d 1282 (10th Cir. 2003) ......................................................... 13

*Day v. Bond,*
   500 F.3d 1127 (10th Cir. 2007) ................................................... 24, 25

*Dorce v. City of New York,*
   2 F.4th 82 (2d Cir. 2021) ................................................................... 22

*Faust v. Vilsack,*
   519 F. Supp. 3d 470 (E.D. Wis. 2021) ....................................... 4, 5, 31

*Freedom From Religion Found., Inc. v. Abbott,*
   58 F.4th 824 (5th Cir. 2023) ............................................................. 16

*Fuller v. Norton,*
   86 F.3d 1016 (10th Cir. 1996) ........................................................... 25

*Genesis Healthcare Corp. v. Symczyk,*
   569 U.S. 66 (2013) ............................................................................. 15

*Ghailani v. Sessions,*
   859 F.3d 1295 (10th Cir. 2017) ......................................................... 19

*Hendrickson v. AFSCME Council 18,*
   992 F.3d 950 (10th Cir. 2021) ........................................................... 14

*Holloway v. City of Virginia Beach,*
   42 F.4th 266 (4th Cir. 2022) ............................................................. 16

*Holman v. Vilsack*:
    582 F. Supp. 3d 568 (W.D. Tenn. 2022) ........................................... 30
    No. 1:21-cv-1085, 2021 WL 2877915 (W.D. Tenn. July 8, 2021)........... 4, 5, 31

*Jordan v. Sosa*,
    654 F.3d 1012 (10th Cir. 2011) ............................................. 21, 22, 29

*Kansas Judicial Review v. Stout*,
    562 F.3d 1240 (10th Cir. 2009) ............................................. 12, 15, 16

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990) ................................................................. 25, 27

*Milliken v. Bradley*,
    433 U.S. 267 (1977) ....................................................................... 28

*Navy Chaplaincy, In re*,
    534 F.3d 756 (D.C. Cir. 2008) ......................................................... 22

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ....................................................................... 31

*New Mexico Health Connections v. U.S. Dep't of Health & Human Servs.*,
    946 F.3d 1138 (10th Cir. 2019) ........................................................ 19

*Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v.
City of Jacksonville*,
    508 U.S. 656 (1993) ....................................................................... 17

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ....................................................................... 21

*Peterson v. Bell Helicopter Textron, Inc.*,
    806 F.3d 335 (5th Cir. 2015) ........................................................... 28

*Prison Legal News v. Federal Bureau of Prisons*,
    944 F.3d 868 (10th Cir. 2019) ............................................... 15, 16, 19

*Queen v. TA Operating, LLC*,
    734 F.3d 1081 (10th Cir. 2013) ........................................................ 31

*Rio Grande Silvery Minnow v. Bureau of Reclamation,*
    601 F.3d 1096 (10th Cir. 2010) ........................................... 13, 18, 19, 20, 22, 29

*SandRidge Energy, Inc., In re,*
    875 F.3d 1297 (10th Cir. 2017) .......................................................... 15

*Smith v. Becerra,*
    44 F.4th 1238 (10th Cir. 2022)..................................................... 14, 15, 19, 20

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998).................................................................... 22, 23

*Swann v. Charlotte-Mecklenburg Bd. of Educ.,*
    402 U.S. 1 (1971)............................................................................ 28

*Town of Portsmouth v. Lewis,*
    813 F.3d 54 (1st Cir. 2016).......................................................... 28

*U.S. Dep't of the Treasury v. Galioto,*
    477 U.S. 556 (1986)....................................................................... 23

*United Bldg. & Constr. Trades Council of Camden Cty. & Vicinity*
    *v. Mayor & Council of Camden,*
    465 U.S. 208 (1984).................................................................... 23

*United States v. W.T. Grant Co.,*
    345 U.S. 629 (1953)..................................................................... 29

*Uzuegbunam v. Preczewski,*
    141 S. Ct. 792 (2021)...................................................................... 16

*Vitolo v. Guzman,*
    999 F.3d 353 (6th Cir. 2021) ..................................................... 20-21

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)...................................................................... 9

*Weise v. Casper,*
    424 F. App'x 799 (10th Cir. 2011) ............................................... 31

*Whitehead v. Marcantel,*
    766 F. App'x 691 (10th Cir. 2019) ............................................... 28

*Wilson v. Glenwood Intermountain Props., Inc.*,
   98 F.3d 590 (10th Cir. 1996) ............................................................. 24

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
   681 F.3d 1208 (10th Cir. 2012) ........................................................ 29

*Wynn v. Vilsack*:
   545 F. Supp. 3d 1271 (M.D. Fla. 2021)............................................. 4, 5, 16, 31
   No. 3:21-CV-514, 2021 WL 7501821 (M.D. Fla. Dec. 7, 2021)........................ 7

**Constitution:**

Art. III, § 2, cl. 1 ................................................................................. 14

**Statutes:**

American Rescue Plan Act of 2021,
   Pub. L. No. 117-2, 135 Stat. 4 ........................................................... 2
     § 1005(a)(1)-(2), 135 Stat. at 12-13 ......................................... 2
     § 1005(b)(3), 135 Stat. at 13 ...................................................... 3

Inflation Reduction Act of 2022,
   Pub. L. No. 117-169, 136 Stat. 1818 ................................................ 7
     § 22008, 136 Stat. at 2028........................................................... 7

7 U.S.C. § 2279(a)(5) ........................................................................... 3

7 U.S.C. § 2279(a)(6) ........................................................................... 3

28 U.S.C. § 1291 .................................................................................. 1

28 U.S.C. § 1331 .................................................................................. 1

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ................................................................... 1

Fed. R. Civ. P. 23(b)(2)......................................................................... 4, 9

Fed. R. Civ. P. 54(c).............................................................................. 26, 27, 28

**Legislative Materials:**

167 Cong. Rec. H765-66 (daily ed. Feb. 26, 2021) ................................ 2

167 Cong. Rec. H1273 (daily ed. Mar. 10, 2021) ................................. 3

167 Cong. Rec. S1262-66 (daily ed. Mar. 5, 2021) ................................ 2

H.R. Rep. No. 117-7 (2021) ................................................................... 2

S. 278, 117th Cong. § 4(a)(1)-(2) (2021) ................................................ 3

**Other Authorities:**

86 Fed. Reg. 28,329 (May 26, 2021) ....................................................... 3

Order, *Miller v. Vilsack*, No. 4:21-cv-595
    (N.D. Tex. July 1, 2021) (Dkt. No. 60) .................................... 4, 5, 31

Order, *Rogers v. Vilsack*, No. 1:21-cv-1779
    (D. Colo. Mar. 27, 2023) (Dkt. No. 46) ................................. 8, 17, 24

SAM.gov, *USDA, Assistance Listings: American Rescue Plan Act
    of 2021 Loan Payment*, https://perma.cc/V5CU-DAC7 ............................... 6

## STATEMENT OF RELATED APPEALS
### (10th CIR. R. 28.2(C)(1))

Counsel are not aware of any prior or related appeals in this Court. Eleven other suits presenting the same constitutional challenge to Section 1005 of the American Rescue Plan Act were filed in other district courts. As noted in this brief, following the repeal of Section 1005, all of those other actions were either dismissed voluntarily or by stipulation,[*] or in one other instance, dismissed on the government's motion.[†]

---

[*] *Miller v. Vilsack*, No. 4:21-cv-595 (N.D. Tex.) (class action); *Wynn v. Vilsack*, No. 3:21-cv-514 (M.D. Fla.); *Kent v. Vilsack*, No. 3:21-cv-540 (S.D. Ill.); *Nuest v. Vilsack*, No. 21-cv-1572 (D. Minn.); *Tiegs v. Vilsack*, No. 3:21-cv-147 (D.N.D.); *Dunlap v. Vilsack*, No. 2:21-cv-942 (D. Or.); *Holman v. Vilsack*, No. 1:21-cv-1085 (W.D. Tenn.); *Joyner v. Vilsack*, No. 1:21-cv-1089 (W.D. Tenn.); *McKinney v. Vilsack*, No. 2:21-cv-212 (E.D. Tex.); *Faust v. Vilsack*, No. 1:21-cv-548 (E.D. Wis.).

[†] *Rogers v. Vilsack*, No. 1:21-cv-1779 (D. Colo.).

# GLOSSARY

ARPA    American Rescue Plan Act of 2021

FSA     Farm Service Agency (USDA component)

USDA    United States Department of Agriculture

## STATEMENT OF JURISDICTION

Plaintiff invoked the jurisdiction of the district court under 28 U.S.C. § 1331.  ER 12 (Compl. ¶ 16).[1]  The district court dismissed this suit as moot on October 7, 2022.  ER 292-96.  Plaintiff filed a notice of appeal on November 28, 2022, within the time allowed by Fed. R. App. P. 4(a)(1)(B).  ER 297-99.  This Court's appellate jurisdiction rests on 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

A since-repealed statutory provision, Section 1005 of the American Rescue Plan Act, would have provided loan-repayment assistance to socially disadvantaged farmers and ranchers with certain outstanding loans from the U.S. Department of Agriculture (USDA).  Plaintiff brought suit challenging Section 1005's eligibility criteria and seeking declaratory and injunctive relief.  After the program was preliminarily enjoined, Congress repealed Section 1005, thus eliminating the program.  The question presented is whether this suit was properly dismissed as moot.

---

[1] "ER" refers to Appellant's Excerpts of Record filed on January 31, 2023.

## STATEMENT OF THE CASE

**A.    Factual Background**

**1.    ARPA Section 1005**

In March 2021, the President signed into law the American Rescue Plan Act of 2021 (ARPA), which provided various emergency assistance to families, businesses, and State, local, and Tribal governments in the wake of the COVID-19 pandemic and economic recession.  Pub. L. No. 117-2, 135 Stat. 4.  Section 1005 of ARPA directed the Secretary of Agriculture to "provide a payment in an amount up to 120 percent of the outstanding indebtedness" for certain direct and guaranteed farm loans held by "each socially disadvantaged farmer or rancher as of January 1, 2021."  *Id.* § 1005(a)(1)-(2), 135 Stat. at 12-13.  Congress included this emergency assistance in ARPA in light of evidence that minority farmers and ranchers had been subject to decades of discrimination in USDA programs, faced foreclosure at disproportionately high rates, and had not benefited from recent pandemic relief and agricultural subsidies to the same extent as other farmers.  *See, e.g.*, H.R. Rep. No. 117-7, at 12 (2021); 167 Cong. Rec. H765-66 (daily ed. Feb. 26, 2021); 167 Cong. Rec. S1262-66 (daily ed. Mar. 5, 2021);

167 Cong. Rec. H1273 (daily ed. Mar. 10, 2021); S. 278, 117th Cong. § 4(a)(1)-(2) (2021).

Section 1005 specified that the term "socially disadvantaged farmer or rancher" carried the same meaning "given the term in section 2501(a) of the Food, Agriculture, Conservation, and Trade Act of 1990 (7 U.S.C. 2279(a))." ARPA § 1005(b)(3), 135 Stat. at 13.  That is, it is "a farmer or rancher who is a member of a socially disadvantaged group," 7 U.S.C. § 2279(a)(5), which in turn is defined as "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities," *id.* § 2279(a)(6).  Consistent with the statutory definition, USDA's Farm Service Agency (FSA) explained in its Notice of Funds Availability for Section 1005 that "[m]embers of socially disadvantaged groups include, but are not limited to[,] American Indians or Alaskan Natives; Asians; Blacks or African Americans; Native Hawaiians or other Pacific Islanders; and Hispanics or Latinos."  86 Fed. Reg. 28,329, 28,330 (May 26, 2021).  The Secretary of Agriculture would also "determine on a case-by-case basis whether additional groups qualify under this definition." *Id.*

### 2.    Litigation Challenging Section 1005

Twelve lawsuits were brought challenging Section 1005's eligibility criteria on equal-protection grounds.  In June 2021, a district court entered a temporary restraining order preventing USDA from "forgiving any loans pursuant to Section 1005" pending further proceedings.  *Faust v. Vilsack*, 519 F. Supp. 3d 470, 478 (E.D. Wis. 2021).  Shortly thereafter, two other courts entered nationwide preliminary injunctions barring USDA "from issuing any payments, loan assistance, or debt relief" under Section 1005. *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1295 (M.D. Fla. 2021); *Holman v. Vilsack*, No. 1:21-cv-1085, 2021 WL 2877915, at *14 (W.D. Tenn. July 8, 2021).  A third district court not only similarly enjoined USDA from considering race in implementing Section 1005, but also simultaneously certified a mandatory class action under Federal Rule of Civil Procedure 23(b)(2) that included "[a]ll farmers and ranchers in the United States" who would be eligible for Section 1005 assistance but for the definition of socially disadvantaged farmer or rancher.  Order at 5-6, 23-24, *Miller v. Vilsack*, No. 4:21-cv-595 (N.D. Tex. July 1, 2021) (Dkt. No. 60) (*Miller* Order).

In entering these various orders, the courts concluded that injunctive relief was necessary to prevent irreparable harm.  The plaintiffs argued that,

4

absent an injunction, USDA would begin making payments under Section 1005 and "there is no mechanism to 'claw back' this money once the government dispenses it."  Br. in Supp. of Pls.' Mot. for P.I. at 4-5, *Miller*, No. 4:21-cv-595 (N.D. Tex. June 2, 2021) (*Miller* P.I. Br.).[2]  The courts accepted these arguments.  *See Wynn*, 545 F. Supp. 3d at 1292 (concluding that provision of "debt relief to qualifying [socially disadvantaged farmers and ranchers]" is "harm that cannot be undone"); *Faust*, 519 F. Supp. 3d at 477-78 ("Once a loan is forgiven, it cannot easily be undone."); *Holman*, 2021 WL 2877915, at *11 (finding that the plaintiff would be irreparably injured if "all the funds allotted for the program … have already been spent" by the time of final judgment); *Miller* Order at 19-21 (acknowledging the class plaintiffs' concern about the lack of any "'mechanism to 'claw back' th[e] money'" and concluding that their alleged injuries were irreparable "[g]iven the Government's sovereign immunity and [the] inability to seek damages retrospectively").

---

[2] *See also, e.g.*, Mem. in Supp. of Mots. for T.R.O. & P.I. at 25-26, *Faust v. Vilsack*, No. 1:21-cv-548 (E.D. Wis. June 3, 2021) ("Once the money budgeted for [Section 1005] is spent, there will be no practical way to un-spend the money…."); Mot. for P.I. at 18, *Dunlap v. Vilsack*, No. 2:21-cv-942 (D. Or. June 29, 2021) ("Even if the Court eventually invalidates Section 1005, that would not reinstitute any loans forgiven for competitors during the pendency of the litigation ….").

In response, USDA immediately ceased all payment activity under Section 1005.  The only monies the agency ever disbursed under the statute were four partial payments, each made to recipients in New Mexico in early June 2021, before any temporary restraining order or injunction had issued. ER 253 (Cobb Decl. ¶¶ 28-30).  These partial payments were made "to test the effectiveness of the procedures FSA established to deliver ARPA Section 1005 payments." *Id.*  The State of New Mexico was selected for this test "based in part on having one of the larger volumes of direct loan borrowers … and a high level of experienced staff." *Id.*  The particular recipients, in turn, were chosen "based on the borrowers being sole proprietorships rather than entities" and on their "past interactions with FSA that reflected willingness to be a part of a pilot initiative." *Id.*  These four test payments, which collectively totaled $160,218, were made by electronic transfer to the recipients' bank accounts and reported as taxable income to the Internal Revenue Service. *See* SAM.gov, *USDA, Assistance Listings: American Rescue Plan Act of 2021 Loan Payment*, https://perma.cc/V5CU-DAC7 (reflecting direct payments of $160,218 in FY 2021).

### 3.     Repeal of Section 1005

Thereafter, further litigation proceeded primarily in the Northern District of Texas, with most other courts staying the parallel cases in light of the certification of a mandatory class action in *Miller*.  *See, e.g.*, *Wynn v. Vilsack*, No. 3:21-CV-514, 2021 WL 7501821, at *3 (M.D. Fla. Dec. 7, 2021) (granting stay in light of *Miller*, and citing stays entered in other cases).

In August 2022, Congress enacted the Inflation Reduction Act.  *See* Pub. L. No. 117-169, 136 Stat. 1818 (2022).  Among other provisions, that Act expressly repealed Section 1005 of ARPA.  *See id.* § 22008, 136 Stat. at 2023 ("Section 1005 of the American Rescue Plan Act of 2021 (7 U.S.C. 1921 note; Public Law 117-2) is repealed.").

Following this repeal, the parties in *Miller* "agree[d] the constitutional challenge to Section 1005 is moot" and jointly stipulated to dismissal of the class action.  ER 213.  The plaintiffs in nine other cases likewise voluntarily dismissed or stipulated to dismissal of their lawsuits.[3]  In the remaining two

---

[3] *See Kent v. Vilsack*, No. 3:21-cv-540 (S.D. Ill. Aug. 30, 2022) (Dkt. No. 74) (stipulation of dismissal); *Dunlap v. Vilsack*, No. 2:21-cv-942 (D. Or. Sept. 7, 2022) (Dkt. No. 48) (voluntary dismissal); *Tiegs v. Vilsack*, No. 3:21-cv-147 (D.N.D. Sept. 7, 2022) (Dkt. No. 25) (voluntary dismissal); *Faust v. Vilsack*, No. 1:21-cv-548 (E.D. Wis. Sept. 9, 2022) (Dkt. No. 72) (stipulation of dismissal); *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla. Sept. 12, 2022) (Dkt. No.

*Continued on next page.*

cases, including this one, the court granted the government's motion to dismiss the case as moot. *See* ER 292-96; Order, *Rogers v. Vilsack*, No. 1:21-cv-1779 (D. Colo. Mar. 27, 2023) (Dkt. No. 46) (*Rogers* Order).

## B.     This Lawsuit

### 1.     Plaintiff's Complaint

This lawsuit, brought by Plaintiff Leisl Carpenter in the District of Wyoming, is one of the 12 aforementioned suits. In her complaint, Plaintiff alleged that she would be eligible for loan repayment under Section 1005 but for the fact that she did not fall within the statutory definition of socially disadvantaged. ER 9, 11 (Compl. ¶¶ 1, 13). She claimed that her lack of eligibility violated the equal protection component of the Fifth Amendment's Due Process Clause. ER 18-19 (*id.* ¶¶ 52-62).[4] As relief, Plaintiff requested a

---

90) (stipulation of dismissal); *Nuest v. Vilsack*, No. 21-cv-1572 (D. Minn. Sept. 13, 2022) (Dkt. No. 31) (stipulation of dismissal); *Joyner v. Vilsack*, No. 1:21-cv-1089 (W.D. Tenn. Sept. 14, 2022) (Dkt. No. 28) (stipulation of dismissal); *Holman v. Vilsack*, No. 1:21-cv-1085 (W.D. Tenn. Sept. 14, 2022) (Dkt. No. 83) (stipulation of dismissal); *McKinney v. Vilsack*, No. 21-cv-212 (E.D. Tex. Sept. 29, 2022) (Dkt. No. 48) (voluntary dismissal).

[4] In a separate claim, Plaintiff also argued that USDA lacked statutory authority to allow recipients of assistance under Section 1005 to remain eligible for future USDA loans. ER 19-20 (Compl. ¶¶ 63-69). In her opening brief, Plaintiff does not contest that this statutory claim has become moot, so any contrary contention is now forfeited. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

declaratory judgment that Section 1005's existing eligibility criteria were unconstitutional and "that Plaintiff is eligible to receive loan forgiveness pursuant to ARPA"; an order permanently enjoining USDA from considering race under Section 1005, or alternatively, barring implementation of Section 1005 in its entirety; and an award of nominal damages, costs, and attorney's fees.  ER 21.

## 2.  Stay and Dismissal

Before the government's deadline to answer or respond to Plaintiff's complaint, a class action challenging Section 1005 was certified in *Miller* under Federal Rule of Civil Procedure 23(b)(2).  Because the certified class included Plaintiff and was mandatory, *cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (explaining that (b)(2) classes are "mandatory classes" with no "opt out"), the government moved to stay this case until the *Miller* class action was resolved.  The district court, over Plaintiff's objection, granted that motion and stayed this case.  ER 192-202.

As noted above, upon Section 1005's repeal, the parties in *Miller* "agree[d]" that "the constitutional challenge to Section 1005 is moot" and jointly stipulated to dismissal of the class action without prejudice.  ER 213; *see id.* (noting that the dismissal "d[id] not bind" class members).

9

Plaintiff, by contrast, declined to dismiss her separate (stayed) suit. The government accordingly moved to lift the stay and to dismiss the suit as moot in light of Section 1005's repeal. ER 218-26. Plaintiff opposed that motion, asserting that she still wished to litigate the lawfulness of now-repealed Section 1005 and positing that the four test payments made by USDA constituted not completed past events under a defunct statute, but rather, a "continu[ing]" injury to Plaintiff. ER 235, 245; *see* ER 227-46.

The district court dismissed Plaintiff's complaint without prejudice. ER 292-96. It readily concluded that, insofar as "Congress has definitively acted to repeal Section 1005," "Plaintiff's request to enjoin Defendants from applying, implementing, or enforcing Section 1005 is moot." ER 293-94. Likewise, "Plaintiff's requests for declarations relating to Plaintiff's eligibility for Section 1005 loan forgiveness" are moot because, "[f]ollowing the repeal of Section 1005, neither Plaintiff nor anyone else may receive loan forgiveness" under that section. ER 295.

The district court rejected Plaintiff's assertion that "Defendants' past actions in the New Mexico test continue[d] to injure Plaintiff's equal protection rights." ER 295. It explained that the injury pled in Plaintiff's complaint—her "personal interest" in vindicating race-neutral eligibility for

"Section 1005 benefits (i.e., receiving loan forgiveness and future FSA loans)"—is "now entirely lost to her and everyone else" in light of the program's repeal.  ER 296.  The resulting inability of an Article III court to redress "[t]he actual injury pled" by Plaintiff thus made this a "classic case for the application of the mootness doctrine."  *Id.*

The district court also explained that the extraordinary relief Plaintiff belatedly demanded—a "'claw back' of past benefits to others in New Mexico"—was insufficient to preserve any Article III controversy.  ER 296.  Such relief would "in no way advance[] or affect[] the specific personal interest Plaintiff pled in this case."  *Id.*  Moreover, "[c]ompletely apart from any considerations of race," Plaintiff lacked standing to challenge the test payments; she was ineligible for those payments "for the simple reason that her property is in Wyoming" and the payments caused her no material injury.  *Id.*  Plaintiff thus "fail[ed] to show any actual injury"—"in 2021 or now"—from actions "that solely affected FSA loan borrowers in New Mexico."  *Id.*

## SUMMARY OF ARGUMENT

Congress enacted Section 1005 of ARPA to provide emergency assistance to socially disadvantaged farmers and ranchers who had suffered past discrimination and had not fully benefited from other pandemic relief. A dozen lawsuits were brought, and after Section 1005's implementation was enjoined by several courts (including in a certified class action), Congress repealed the program. Nearly all of the lawsuits challenging Section 1005 were promptly voluntarily dismissed. Plaintiff, by contrast, has sought to continue litigating the constitutionality of the repealed statute.

The district court correctly dismissed as moot Plaintiff's claims for declaratory and injunctive relief. "Generally, repeal of a challenged statute causes a case to become moot," *Kansas Judicial Review v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009), because a plaintiff has no "legally cognizable interest in the constitutional validity of an obsolete statute," *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1223 (10th Cir. 2001). Now that Section 1005 has been repealed, Plaintiff has not identified—and cannot identify— any ongoing conduct by USDA that could be enjoined or declared unlawful.

Plaintiff's efforts to escape this straightforward conclusion are unavailing. The heightened bar for mootness under the voluntary-cessation

doctrine does not apply here, but this case is moot even if considered under that doctrine. Plaintiff's demand for a "claw back" of the New Mexico test payments fails for any or all of numerous reasons, including that she identifies no continuing Article III injury; she never had standing to challenge the test payments, as she was not otherwise eligible for them; she did not timely request the relief she now seeks; and she has not demonstrated that claw-back relief is even legally available. And even were this Court to find some residual Article III controversy, this suit would not warrant the exercise of equitable relief.

## STANDARD OF REVIEW

This Court applies "a de novo standard of review" to "question[s] of constitutional mootness." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1122-23 (10th Cir. 2010). Factual findings bearing on jurisdiction are "reviewed for clear error." *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1295 (10th Cir. 2003).

## ARGUMENT

## PLAINTIFF'S CHALLENGE TO SECTION 1005 IS MOOT

### A.   Because Section 1005 Has Been Repealed, Plaintiff No Longer Suffers Any Cognizable Injury.

**1.**  Article III of the Constitution limits federal court jurisdiction to

"Cases" and "Controversies."  U.S. Const., art. III, § 2, cl. 1.  That principle

requires "that an actual controversy … be extant at all stages of review, not

merely at the time the complaint is filed."  *Campbell-Ewald Co. v. Gomez*,

577 U.S. 153, 160 (2016).  "No matter how vehemently" a plaintiff "dispute[s]

the lawfulness of the conduct that precipitated the lawsuit, the case is moot if

the dispute is no longer embedded in any actual controversy about [her]

particular legal rights."  *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir.

2022) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

Generally speaking, "[m]ootness is 'standing set in a time frame:

The requisite personal interest that must exist at the commencement of the

litigation (standing) must continue throughout its existence (mootness).'"

*Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 957 (10th Cir. 2021)

(quoting *Brown v. Buhman*, 822 F.3d 1151, 1164 (10th Cir. 2016)); *see*

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997).  Thus,

"[i]n ascertaining whether a case has become moot, the court considers

14

whether subsequent events have deprived the plaintiff of standing" as "the case appears now." *In re SandRidge Energy, Inc.*, 875 F.3d 1297, 1302 (10th Cir. 2017). "[I]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed[.]" *Smith*, 44 F.4th at 1247 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)). The "crucial question" is "whether granting a *present* determination of the issues offered will have some effect in the real world" vis-à-vis the plaintiff. *Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting *Brown*, 822 F.3d at 1165-66).

Among the circumstances in which litigation becomes moot is when a plaintiff seeks equitable relief against a law that is subsequently amended or repealed. A party can "have no legally cognizable interest in the constitutional validity of an obsolete statute." *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1223 (10th Cir. 2001) (quoting *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)). The "repeal of a challenged statute causes a case to become moot because it extinguishes the plaintiff's legally cognizable interest in the outcome, rendering any remedial action by the court ineffectual." *Kansas*

15

*Judicial Review v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009); *see Camfield*, 248 F.3d at 1223 ("[A] statutory amendment moots a case 'to the extent it removes challenged features of the prior law[.]'"). Thus, in the absence of "evidence 'indicat[ing] that the legislature intends to reenact the prior version of the disputed statute,'" constitutional challenges to a statute become moot upon the statute's repeal. *Kansas Judicial Review*, 562 F.3d at 1246 (quoting *Camfield*, 248 F.3d at 1223-24); *accord, e.g.*, *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023); *Holloway v. City of Virginia Beach*, 42 F.4th 266, 273 (4th Cir. 2022); *Checker Cab Operators, Inc. v. Miami-Dade County*, 899 F.3d 908, 915-16 (11th Cir. 2018).[5]

**2.**  The district court properly applied these settled principles in determining that Plaintiff's suit is moot. Plaintiff brought this case to

---

[5] An exception, not relevant here, applies when a plaintiff seeks money damages for a past legal violation. *Prison Legal News*, 944 F.3d at 880; *cf. Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021) (holding that "an award of nominal damages by itself can redress a past injury"). Although Plaintiff purported to request nominal damages in her complaint, such relief is plainly barred by sovereign immunity. *Cf., e.g.*, *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1289 (M.D. Fla. 2021). Plaintiff has not contended otherwise, either on appeal or in opposing the government's motion below. *See* ER 235 (contesting mootness but representing that "plaintiffs [sic] seek prospective relief only").

challenge the eligibility criteria for loan-repayment assistance under Section 1005 of ARPA—specifically, the limitation of benefits to socially disadvantaged farmers and ranchers.  But "[t]here is no question that Section 1005 has been repealed" and, with it, the eligibility criteria Plaintiff sought to challenge.  ER 294.  That repeal "means that Defendants [now] lack any authority to apply, implement, or enforce Section 1005," so there is nothing left to enjoin or declare unlawful.  *Id.*  Similarly, Plaintiff no longer has a live interest in "receiv[ing] loan forgiveness" under Section 1005 or in ensuring that payments under that statute do not reflect any consideration of race.  ER 296; *accord Rogers* Order at 3 (concluding in light of Section 1005's repeal that "Rogers no longer has a personal stake in the outcome of the lawsuit").  Once the alleged discriminatory "barrier" is eliminated, *Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993), so too is any equal-protection injury attributable to the barrier's existence.

## B.  Plaintiff's Attempts To Manufacture An Ongoing Case Or Controversy Fail.

Plaintiff does not dispute that Section 1005 has been repealed, and she does not identify any current or future agency conduct that could be enjoined or declared unlawful.  Nor does Plaintiff deny that she would lack standing to

challenge Section 1005 if this lawsuit were filed today.  Instead, she asserts

that Defendants have not shown that "there is no reasonable expectation that

the alleged violation will recur" or that "events have completely and

irrevocably eradicated the effects of the alleged violation."  Br. 12-13

(emphasis omitted) (quoting *Rio Grande Silvery Minnow v. Bureau of

Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010)); *see* Br. 19-20, 29.

Her contention fails at every level.

1.  First, the voluntary-cessation doctrine—the principle that "a

defendant cannot automatically moot a case simply by ending its unlawful

conduct once sued," *Already, LLC*, 568 U.S. at 91—does not apply here.

As Plaintiff emphasizes, she brings this case against "two Executive Branch

agency officials" (Br. 3-4).  But the intervening event is not an action taken

by those USDA officials.  Rather, it is a legislative act by Congress, a distinct

branch of the United States government.  When an agency does not itself

change or abandon the challenged policy, but instead loses authority to act

through "the enactment of intervening legislation," the "'voluntary cessation'

exception to mootness has no play."  *American Bar Ass'n v. FTC*, 636 F.3d

641, 648 (D.C. Cir. 2011); *see also, e.g.*, *Alaska v. USDA*, 17 F.4th 1224, 1229-

30 (D.C. Cir. 2021) (similar, where the intervening event was not an action undertaken at the defendants' own initiative).

Second, even if Congress's repeal of Section 1005 could be deemed voluntary action by USDA, the formal rescission of a law is enough to establish mootness. This Court, like other courts of appeals, expressly "afford[s] a government official's voluntary conduct 'more solicitude' than that of private actors." *Smith*, 44 F.4th at 1250 n.9; *see Rio Grande Silvery Minnow*, 601 F.3d at 1116 n.15; *Prison Legal News*, 944 F.3d at 881; *Ghailani v. Sessions*, 859 F.3d 1295, 1302 (10th Cir. 2017); *Brown*, 822 F.3d at 1167-68.[6] Agency officials—unlike private litigants—are presumed to act in good faith, not to engage in the "gamesmanship" that voluntary-cessation doctrine exists to counteract. *New Mexico Health Connections v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1138, 1159-60 (10th Cir. 2019). This presumption of good faith can be defeated only by clear evidence that the government's "self-correction" is a "sham." *Prison Legal News*, 944 F.3d at

---

[6] *Accord, e.g.*, *Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc) ("[W]e join the majority of our sister circuits in concluding that legislative actions should not be treated the same as voluntary cessation of challenged acts by a private party, and that we should assume that a legislative body is acting in good faith in repealing or amending a challenged legislative provision[] ….").

881.  Plaintiff's invitation (Br. 10, 11) to assume unscrupulous, bad-faith

conduct by Congress and the Executive Branch in repealing Section 1005 is

flatly inconsistent with precedent and with the respect that Article III courts

show to coordinate branches of government.  *Alaska*, 17 F.4th at 1227.

Third, even taking Plaintiff's argument on its own terms, this case is

moot.  Section 1005 has been repealed and "there is no evidence in the record

to indicate that the legislature intends to reenact [it]."  *Rio Grande Silvery*

*Minnow*, 601 F.3d at 1116 (quoting *Camfield*, 248 F.3d at 1223-24).  The

termination of the USDA loan-repayment program has "completely and

irrevocably eradicated" the eligibility criteria about which Plaintiff

complains.  *Id.* at 1115.  And Plaintiff has not identified any lingering

"effects" of Section 1005 that will influence her relationship with USDA

going forward.  This case is therefore plainly moot as to Plaintiff.  *See, e.g.*,

*Smith*, 44 F.4th at 1252 (finding case moot under voluntary-cessation

standards where intervening events had "remedied the effects of the

Secretary's allegedly wrongful conduct towards Smith, the only plaintiff in

this case").

The cases cited by Plaintiff (Br. 9, 13), which involved continuing

effects, do not advance her argument.  *Cf., e.g.*, *Vitolo v. Guzman*, 999 F.3d

353, 359 (6th Cir. 2021) (concluding, in a case involving an extant agency program, that the plaintiffs suffered Article III injury because minority applicants continued to enjoy preferential access to program funds based on the earlier submission dates of their applications).

2. Unable to identify any way in which her interests as a borrower remain affected, Plaintiff instead asserts that USDA's past conduct vis-à-vis third parties—specifically, its partial test payments made to four recipients in New Mexico in early June 2021—should be deemed a "continuing" injury to Plaintiff that creates a live Article III case or controversy and requires redress. That argument is unavailing for numerous reasons.

*First*, Plaintiff is wrong to characterize USDA's actions as continuing. The four test payments were made and completed in early June 2021. That is past—not present—conduct. And "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (alterations omitted) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Similarly, "in the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that [s]he was wrongly harmed by the defendant." *Id.* at 1025. A

declaratory judgment is appropriate only if it will "settl[e] … some dispute which affects the behavior of *the defendant toward the plaintiff*." *Id.* (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1110); *see, e.g.*, *Dorce v. City of New York*, 2 F.4th 82, 95-96 (2d Cir. 2021) (rejecting a plaintiff's effort to "recast[] a past harm as a continuing one" for purposes of standing to seek equitable relief for an equal-protection claim).

As already discussed, Plaintiff has not identified any such "present adverse effects," *Jordan*, 654 F.3d at 1024, such as an ongoing harm to her business.  Nor has she identified any way in which USDA is not currently "treat[ing] [her] equally under the laws of the nation" (Br. 8).  Rather, all that remains "ongoing today" (Br. 7) is Plaintiff's dissatisfaction with past events.  But a plaintiff's "mere personal offense to government action"—even allegedly unconstitutional action—is "not … a cognizable Article III injury." *In re Navy Chaplaincy*, 534 F.3d 756, 763 (D.C. Cir. 2008) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) (reaffirming that "[t]he emotional consequences of a prior act simply are not a sufficient basis" for equitable relief).  As the district court properly explained, Plaintiff's cognizable "personal interest" in this litigation was in seeking access to Section 1005's

22

benefits on race-neutral terms—an interest that is no longer live now that the program has ceased.  ER 296.

That this case involved an equal-protection claim in no way alters the Article III analysis.  Plaintiff offers no precedent for her assertion that past payments made to "similarly situated" persons under a defunct benefits program "continue to injure [her] to this day" (Br. 14).  Again, "past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."  *Lyons*, 461 U.S. at 103.  Equal-protection claims, just like other constitutional claims, can become moot upon repeal or amendment of the relevant statute.  *See, e.g.*, *U.S. Dep't of the Treasury v. Galioto*, 477 U.S. 556, 559-60 (1986) (plaintiff's "equal protection" claim became moot upon Congress's amendment of challenged statute); *United Bldg. & Constr. Trades Council of Camden Cty. & Vicinity v. Mayor & Council of Camden*, 465 U.S. 208, 213 (1984) (amendment to affirmative action plan "moot[ed] appellant's equal protection challenge" in relevant part).

Plaintiff's desire for the "psychic satisfaction" of unwinding allegedly unlawful payments made to strangers in another State is insufficient to prolong the litigation.  *Steel Co.*, 523 U.S. at 107.  Indeed, if Plaintiff's view of

the law were correct, every past instance of alleged discrimination in history that has not yet been the subject of litigation would apparently remain a live injury for purposes not only of seeking damages (when available) but also injunctive relief. That is obviously mistaken; equitable relief exists to stop current and future harm, not to rewrite the past.

*Second*, even if past implementation of a defunct statute could be deemed a "continuing" injury, Plaintiff lacks standing to challenge the test payments at issue here. "Discrimination cannot be the cause of injury to an applicant who could not have obtained the benefit even in the absence of the discrimination." *Day v. Bond*, 500 F.3d 1127, 1134 (10th Cir. 2007) (alteration omitted) (quoting *Wilson v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590, 594 (10th Cir. 1996)). Plaintiff lacked eligibility for the test payments because Plaintiff was not a New Mexico resident and did not meet the other criteria USDA selected for participation in its pilot payment process. *See supra* p. 6; *accord Rogers* Order at 4 ("Regardless of whether Section 1005 debt relief was predicated on race, Ms. Rogers would not have been eligible for test payments."). Because those criteria "disqualif[ied]" Plaintiff for the test payments "even absent the challenged discriminatory classification," she "cannot show injury" from those payments. *Day*, 500 F.3d at 1135; *see, e.g.*,

*id.* at 1134 & n.5 (plaintiffs lacked "equal footing" standing to challenge

provision of tuition subsidies to certain non-U.S. citizens residing in Kansas

because plaintiffs did not meet Kansas residency requirements); *Wilson*,

98 F.3d at 593-94 (plaintiffs lacked "equal footing" standing to challenge

alleged gender discrimination in student rental housing because, "[a]s non-

students," they would not "qualif[y] to rent the student apartments");

*Fuller v. Norton*, 86 F.3d 1016, 1027 (10th Cir. 1996) (similar).

Nor can Plaintiff identify any material injury to her that was caused by

the test payments and would be redressed by their rescission.  Plaintiff—a

farmer and rancher in Wyoming—has made no allegation that her business

suffered competitive harm from the four payments in New Mexico or that

she would gain a material advantage if those funds were recaptured by

USDA.  As the district court noted, "Plaintiff has no persuasive argument to

equalize the playing field" because she is not on the same "field."  ER 296.

That Plaintiff has no real-world stake in the test payments made in New

Mexico renders *this* case moot without regard to whether some other

litigant—or the agency itself—would have standing to pursue such relief.

*See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 479 (1990) (dismissing

constitutional challenge as moot upon amendment of statute and explaining

25

that "the Article III question is not whether the requested relief would be nugatory as to the world at large, but whether [the plaintiff] *Continental* has a stake in that relief"); *cf., e.g.*, *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 130 (2011) (reaffirming that a plaintiff taxpayer's opposition to allegedly unlawful distribution of government funds "is not generally deemed sufficient to establish standing in federal court"); *Allen v. Wright*, 468 U.S. 737, 756 (1984) (rejecting claim of "abstract stigmatic injury" under which "a person in Hawaii could challenge the grant of a tax exemption to a racially discriminatory school in Maine").

*Third*, Plaintiff not only lacks standing to demand a "claw back" of test payments; she never requested that remedy. Even though Plaintiff alleged in her complaint that USDA would soon begin paying funds under Section 1005, ER 16-17, she nowhere included any demand for rescission of payments once made. Plaintiff posits (Br. 3, 33-35) that such a demand is implicit in her boilerplate request for "such other and further relief as the Court deems appropriate," ER 21; *cf.* Fed. R. Civ. P. 54(c). But such a belatedly identified theory, "extracted late in the day from [a plaintiff's] general prayer for relief and asserted solely to avoid otherwise certain mootness," requires "close inspection" to ensure that the Court's jurisdiction is not transgressed.

*Arizonans for Official English*, 520 U.S. at 71; *cf. Lewis*, 494 U.S. at 480

("Where on the face of the record it appears that the only concrete interest in

the controversy has terminated, reasonable caution is needed to be sure that

mooted litigation is not pressed forward, and unnecessary judicial

pronouncements on even constitutional issues obtained, solely in order to

obtain reimbursement of sunk costs.").[7]

Apart from her belated "claw back" demand (Br. 19), Plaintiff

identifies no other remedy she believes a court could enter, asserting that

that is "not [her] job" (Br. 8). But an Article III case cannot remain live

based only on metaphysical speculation that some unknown remedy

providing real-world benefit to Plaintiff might hereafter be discovered. On

the contrary, Plaintiff's failure to identify any available remedy means that

she has forfeited any claim of error by the district court. Although Federal

Rule of Civil Procedure 54(c) authorizes district courts to award relief even

when not specifically requested (Br. 34-35), it does not excuse parties from

---

[7] Thus, for example, this Court has declined to rely upon the implicit inclusion of damages in a general prayer for relief as a basis to excuse mootness where the plaintiff had not previously and expressly demanded damages. *See American Charities for Reasonable Fundraising Regulation, Inc. v. O'Bannon*, 909 F.3d 329, 333 (10th Cir. 2018); *Brown*, 822 F.3d at 1169-70; *cf. Baca v. Colorado Dep't of State*, 935 F.3d 887, 923-24 (10th Cir. 2019) (citing cases), *rev'd on other grounds*, 140 S. Ct. 2316 (2020).

compliance with ordinary rules of appellate presentation. *See, e.g.*, *Town of Portsmouth v. Lewis*, 813 F.3d 54, 61 (1st Cir. 2016) (plaintiff forfeited any right to "a remedy first raised on appeal" notwithstanding Fed. R. Civ. P. 54(c)); *Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340-41 (5th Cir. 2015) (similar, and citing other cases); *Whitehead v. Marcantel*, 766 F. App'x 691, 702 (10th Cir. 2019) (plaintiff forfeited claim for injunctive relief not raised in opening brief).

*Fourth*, on the merits, Plaintiff has not offered a single example of an Article III court entering the extraordinary relief she now requests. Whatever the scope of a court's authority to craft compensatory remedies for systemic discrimination in continuing programs, such as in *de facto* segregated public schools, *cf. Milliken v. Bradley*, 433 U.S. 267 (1977); *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15-18 (1971), Plaintiff has not identified any case holding that a claw-back of benefits (or other affirmative action to redress past harms) is a necessary or appropriate component of relief where, as here, the relevant program or activity has been entirely discontinued. *Cf., e.g.*, *County of Suffolk v. Sebelius*, 605 F.3d 135, 142 (2d Cir. 2010) (concluding that plaintiff's suit became moot once all relevant program funds had been distributed).

**3.** Finally, even if this case were not moot, principles of equity would preclude the relief that Plaintiff seeks. Plaintiff makes no effort to explain how directing USDA to claw back funds—even assuming that were possible—would be at all equitable with respect to the four New Mexico recipients, who acted in reliance on the government's payments and who are not parties to this action and therefore not bound by any order in this case.

"[C]laims for equitable relief … appeal to the 'remedial discretion' of the courts." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012). Wholly apart from Article III, "any party invoking the equitable remedial powers of the federal courts must still 'satisfy the court that requested relief is needed.'" *Id.* at 1211 (alteration omitted) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953)). "Even if a case is not constitutionally moot, a court may dismiss a case under the prudential-mootness doctrine if the case is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand." *Jordan*, 654 F.3d at 1024 (alteration omitted) (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1121). This doctrine—relevant "where, as here, a plaintiff seeks injunctive or declaratory relief"— "addresses 'not the *power* to grant relief, but the court's *discretion* in the exercise of that power.'" *Id.*

29

These prudential considerations would counsel dismissal here in all events. As discussed, the challenged statute has been repealed, and Plaintiff has not identified any respect in which USDA is currently treating her any differently than other farmers or ranchers on the basis of race. Plaintiff instead has identified one past episode—undertaken as preparation to implement that since-repealed statute—in which USDA allegedly took unlawful action. That is not enough to justify the exercise of discretionary relief by a court in equity (or, as explained above, even to preserve an Article III controversy). The modest payments made to New Mexico recipients—correctly characterized by another court as "*de minimis*," *Holman v. Vilsack*, 582 F. Supp. 3d 568, 581 (W.D. Tenn. 2022)—have long since been disbursed, accounted for tax purposes, and very likely spent.[8] The authority of federal district courts to fashion equitable relief is not properly invoked to inflict financial harm on absent third parties in these circumstances.

Moreover, the position that Plaintiff now takes is contrary to the basic premises on which the overall Section 1005 litigation has proceeded. As

---

[8] Plaintiff mistakenly asserts (Br. 1-2) that the payments "apparently account[ed] for nearly $1 million," citing an unsourced assertion from a third-party website. As noted (*supra* p. 6), the four test payments collectively amounted only to $160,218. Plaintiff's speculation that other payments occurred (Br. 2) is likewise incorrect.

discussed (*supra* pp. 7-8) and as Plaintiff acknowledges (Br. 14-15), both the plaintiff class in *Miller* and the individual plaintiffs in several other cases sought—and obtained—preliminary injunctions by asserting that any payments made under Section 1005 would constitute "irreparable" harm. *See, e.g.*, *Miller* P.I. Br. at 4-5 (asserting that "there is no mechanism to 'claw back' this money once the government dispenses it"). The district courts agreed. *See Faust*, 519 F. Supp. 3d at 477-78; *Wynn*, 545 F. Supp. 3d at 1292; *Holman*, 2021 WL 2877915, at *11; *Miller* Order at 20-21. Though Plaintiff herself did not move for a preliminary injunction, she indisputably received its benefits, including directly as a class member in *Miller*. Litigants who benefit from an injunction against a federal statute, imposed on a theory that agency action is irreversible, should not later be permitted to demand relief premised on the opposite understanding. *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 744-50 (2001) (addressing estoppel principles); *Queen v. TA Operating, LLC*, 734 F.3d 1081 (10th Cir. 2013); *Weise v. Casper*, 424 F. App'x 799, 802 (10th Cir. 2011).[9]

---

[9] Although, as Plaintiff notes (Br. 31-32), the government opposed the requests for preliminary injunctive relief in *Miller* and related cases in part by denying the existence of irreparable harm, that was not because the government maintained that a claw-back of funds was possible. Rather, the

*Continued on next page.*

## CONCLUSION

For the foregoing reasons, the judgment should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
    *Attorney General*

NICHOLAS VASSALLO
  *United States Attorney*

ABBY C. WRIGHT
 */s/ Jeffrey E. Sandberg*
JEFFREY E. SANDBERG
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7214*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 532-4453*
  *jeffrey.e.sandberg@usdoj.gov*

  *Counsel for Defendants-Appellees*

APRIL 2023

---

government asserted that any alleged harm could be remedied at final judgment by expanding Section 1005 eligibility to include the plaintiffs. *See, e.g.*, Defs.' Opp. to Mot. for P.I. at 35-37, *Holman v. Vilsack*, No. 1:21-cv-1085 (W.D. Tenn. June 24, 2021) (Dkt. No. 28-1).

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-appellant has requested oral argument.  The government believes that the judgment may be affirmed without oral argument, but the government stands ready to present argument if the Court would find it helpful.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,691 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

/s/ Jeffrey E. Sandberg
Jeffrey E. Sandberg
*Counsel for Defendants-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2023, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

/s/ Jeffrey E. Sandberg
Jeffrey E. Sandberg
*Counsel for Defendants-Appellees*